IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) ) | Civil Action No. 06-131 (GK) Next-Scheduled Court Deadline |
| v. | ) ) | Filing Dispositive Motions: |
| MIDWEST DRYWALL CO., INC. | ) ) | January 30, 2008 |
| Defendant. | ) ) ) | |

DEFENDANT MIDWEST DRYWALL CO., INC.'S
MOTION FOR SUMMARY JUDGMENT

Defendant Midwest Drywall Co., Inc., (Midwest Drywall) by and through its undersigned attorneys and pursuant to Local Civil Rule 7(h) and all other applicable rules, hereby submits its Motion for Summary Judgment requesting this Court to enter summary judgment in its favor against Plaintiff International Painters and Allied Trades Industry Pension Fund (Pension Fund).

As discussed more fully in the accompanying Memorandum in Support of this Motion, Defendant's Rule 56.1 Statement of Material Facts As To Which There Is No Genuine Issue and the supporting exhibits and Declaration of Steven A. Nienke, to which the Court is respectively referred, Midwest Drywall is entitled to summary judgment on the grounds that the collective bargaining agreement between Midwest Drywall and Painters and Allied Trades Local #159 (Painters Local 159), upon which the Pension Fund seeks to rely in support of its claim, cannot be enforced to apply to all of Midwest Drywall's employees working outside the jurisdiction of Painters Local 159 and to foreign local unions with whom Midwest Drywall does not have a statutory 8(f) or 9(a) relationship as required under the National Labor Relations Act. Such an interpretation would command conduct in violation of federal labor law that prohibits enforcing on an employer's employees the terms and conditions of a labor agreement without the existence of a collective bargaining relationship between

an employer and the bargaining representative of the employer's employees with protection of the

employees' Section 7 rights, would be contrary to the Joint Trade Board of the Painters and

Decorators Joint Committee, Inc.'s interpretation of the Painters Local 159 agreement, and would be

contrary to the course of dealing between Painters Local 159 and Midwest Drywall. Accordingly,

Midwest Drywall is entitled to summary judgment as a matter of law.

WHEREFORE, Midwest Drywall respectively requests that the Court grant its Motion for

Summary Judgment and dismiss Plaintiff's Complaint in its entirety and with prejudice.

Respectively submitted,

By  s/Robert D. Overman
Robert D. Overman
KS Bar No. 08155
MORRIS, LAING, EVANS, BROCK &
KENNEDY, CHTD.
300 N. Mead, Suite 200
Wichita, Kansas  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226
E-mail:  roverman@morrislaing.com

Charles F. Walters
D.C. Bar No. 444529
SEYFARTH SHAW, LLP
815 Connecticut Avenue, N.W., Suite 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 828-5393
E-mail:  cwalters@seyfarth.com

January 24, 2008          *Attorneys for Defendant Midwest
                          Drywall Co., Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | Civil Action No. 06-131 (GK) |
| v. | ) ) | Next-Scheduled Court Deadline Filing Dispositive Motions: |
| MIDWEST DRYWALL CO., INC. | ) | January 30, 2008 |
| Defendant. | ) ) ) | |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Robert D. Overman
KS Bar No. 08155
MORRIS, LAING, EVANS, BROCK &
KENNEDY, CHTD.
300 N. Mead, Suite 200
Wichita, Kansas  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226
E-mail:  roverman@morrislaing.com

Charles F. Walters
D.C. Bar No. 444529
SEYFARTH SHAW, LLP
815 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 828-5393
E-mail:  cwalters@seyfarth.com

January 24, 2008          *Attorneys for Defendant Midwest Drywall Co., Inc.*

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................................... 2

III.  ARGUMENT  ........................................................................................................ 11

    A.    It Is Inconsistent With Law to Apply the No. 159 CBA 50-50 Clause to Require
        Contributions as to Hours Worked by Midwest Drywall Employees Outside the
        Jurisdiction of Painters Local 159.................................................................... 11

            1.    Absent a Statutorily Permissible Collective Bargaining Relationship
                Between Midwest Drywall and a Foreign Union, It Is Unlawful
                Under Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA to Impose
                Terms and Conditions of a Foreign Local Union's Agreement on
                Midwest Drywall's Employees ..................................................... 13

            2.    Binding Midwest Drywall to Foreign CBAs Through the 50-50 Clause
                Would Undercut Collective Bargaining in Foreign Jurisdictions In
                Violation of the NLRA ................................................................. 19

            3.    The Interpretation Advanced by the Pension Fund Violates Statutory
                Employee Rights to Determine Whether They Wish to be
                Represented and by Whom............................................................ 20

    B.    Painters Local 159 Cannot Bind Foreign Local Unions to a Collective Bargaining
        Agreement With Midwest Drywall Without the Foreign Local Union's Express
        Authority or Consent....................................................................................... 25

    C.    The No. 159 CBA 50-50 Clause Is Susceptible to More Than One Reasonable
        Interpretation and Is Therefore Ambiguous.................................................... 27

            1.    The Intent of Painters Local 159 Is That No Contributions Are Due From
                Midwest Drywall in the Absence of a Signed Foreign Jurisdiction
                CBA ............................................................................................. 29

            2.    The No. 159 CBA 50-50 Clause as Interpreted by the Painters and Decorators
                Joint Committee, Inc. Requires Midwest Drywall and Foreign Local Unions
                to Establish a Collective Bargaining Relationship and to Enter Into a
                Collective Bargaining Agreement Before Determination of Lost Wages and
                Benefits....................................................................................... 30

            3.    The Pension Fund's Claim Conflicts With Other Provisions of
                the No. 159 CBA ......................................................................... 33

    D.    The Pension Fund's Claim That Midwest Drywall Is Liable for Contributions for
        Employees of Subcontractors Who Perform Work Outside the Jurisdiction of
        Painters Local 159 Is Inconsistent With the Law ......................................... 35

E.    The Pension Fund Lacks Standing to Bring Suit in Its Own Name When the
      Alleged Injury Was to Other Funds. ............................................................ 36

IV.    CONCLUSION ............................................................................................................... 37

## TABLE OF AUTHORITIES

## CASES

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,*
   106 F.3d 11 (2d Cir. 1997) .................................................................36
*Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,*
   493 U.S. 67 (1989).........................................................................23
*\*Connell Construction Company, Inc. v. Plumber & Steamfitters Local 100,*
   421 U.S. 616, 95 S. Ct. 1030 (1975).............................. 14, 28, 35
*Consolidated Gas Transmission Corp. v. F.E.R.C.,*
   771 F.2d 1536 (D.C. Cir. 1985)..................................................27
*\*Dana Corporation,*
   351 NLRB No. 28 (2007) ............................................................13
*Donald Schriver, Inc. v. N.L.R.B.,*
   635 F.2d 859  (D.C. Cir. 1980)....................................................14
*Flynn v. Anthony Mion & Sons, Inc.,*
   112 Fed. Appx. 101 (2004)...........................................................36
*Flynn v. Dick Corporation,*
   384 F. Supp. 2d 189 ( D.D.C. 2005) (rev'd and remanded on other grounds,*
   481 F.3d 824 (D.C. Cir. 2007))...................................17, 18, 19, 20
*Flynn v. Dick Corporation,*
   481 F.3d 824 (D.C. Cir. 2007)........................................18, 19, 29
*Flynn v. Tiede-Zoeller, Inc.,*
   412 F. Supp. 2d 46 (D.D.C. 2006)...............................................27
*\*H. K. Porter Co. v. N.L.R.B.,*
   397 U.S. 99 (1970)...............................................................19, 25
*\*Howell Insulation Co.,*
   311 NLRB 1355 (1993) ..............................................................14
*\*Int'l Ladies' Garment Workers Union v. N.L.R.B.,*
   366 U.S. 731 (1961)....................................................................14
*\*John Deklewa & Sons,*
   282 NLRB 1375, enf'd 843 F.2d 770 (3d Cir. 1988), cert. denied*
   109 S. Ct. 222 (1988)................................................14, 17, 22, 23
*\*Kaiser Steel Corporation v. Mullins,*
   455 U.S. 72, 102 S. Ct. 851 (1982).......................................15, 24
*Local 7-210, Oil, Chemical & Atomic Workers v. Union Tank Car Co.,*
   475 F.2d 194 (7th Cir. 1973) ......................................................14
*M & M Backhoe Service Inc. v. NLRB,*
   469 F.3d 1047 (D.C. Cir. 2006) ..................................................17
*Moglia v. Geoghegan,*
   403 F.2d 110 (2d Cir. 1968) .......................................................26
*NLRB v. Retail Clerks Local 588,*
   587 F.2d 984 (9th Cir. 1978) ......................................................14
*Rock Technologies Inc.,*
   179 LRRM 1192 (N.L.R.B. 2006)...............................................17
*Service Employees International Union, Local 722 v. Washington Hosital Center,*
   1983 U.S. Dist. LEXIS 16895 (D.C.D.C. 1983)..........................33
*Steele v. Louisville & Nashville Railroad,*
   323 U.S. 192 (1944)....................................................................23

*Stockton Roofing Co.,*
    304 NLRB No. 88 (1991) ..........................................................................................22

*\*Trustees of the B.A.C. Local 32 Insurance Fund v. Ohio Ceiling & Partition Co., Inc.,*
    48 Fed. Appx. 188 (6th Cir. 2002)...................................................................21, 29

*Trustees of the National Automatic Sprinkler Industry Pension Fund v. Fairfield*
*County Sprinkler Co. Inc.,*
    243 F.3d 112 (2d Cir. 2001) ....................................................................20, 26

*\*Vaca v. Sipes,*
    386 U.S. 171 (1967).................................................................................23

*\*Walsh v. E. A. Schlecht,*
    429 U.S. 401 (1976)..............................................................................13, 14

## ARBITRATION DECISION

*International Brotherhood of Painters and Allied Trades, Local
Union No. 159 v. Midwest Drywall Co., Inc.
Proceeding before the Joint Trade Board of the Painters and Decorators
Joint Committee, Inc. (April, 2000) .............................................................8, 30, 31, 32, 33

## STATUTES

29 U.S.C. §§ 141-187 ...............................................2, 15, 16, 18, 19, 20, 24, 26, 35, 36, 37
29 U.S.C. §§ 151-169 ..................2, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 24, 28, 32, 34, 35, 36, 37
29 U.S.C. § 151...............................................................................................19, 21
29 U.S.C. § 157.....................................................12, 16, 17, 18, 21, 22, 24, 37
29 U.S.C. § 158(a)(1) and (2) ....................................12, 13, 14, 18, 21, 24, 37
29 U.S.C. § 158(b)(1)(A) ...........................................12, 13, 14, 18, 21, 24, 37
29 U.S.C. § 158(d) ..........................................................................................19, 21
29 U.S.C. § 158(e) ................................................................................................35
29 U.S.C. § 158(f).........................................2, 3, 4, 8, 9, 10, 13, 14, 15, 16, 17, 20, 21, 22, 23, 24, 28
29 U.S.C. § 159(a) ...........................................2, 3, 9, 13, 14, 16, 17, 21, 24, 34
29 U.S.C. § 185....................................................................................................36
29 U.S.C. § 186..............................................................................................18, 19, 35
29 U.S.C. § 1145.......................................................................................1, 11, 26, 36

## RESTATEMENTS

Restatement (Second) of Contracts, § 203(a) ....................................................34

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | Civil Action No. 06-131 (GK) |
| v. | ) ) | Next-Scheduled Court Deadline Filing Dispositive Motions: |
| MIDWEST DRYWALL CO., INC. | ) ) | January 30, 2008 |
| Defendant. | ) ) ) | |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Midwest Drywall Co., Inc. (Midwest Drywall), by and through its undersigned attorneys and pursuant to Local Civil Rule 7(h) and all other applicable rules, hereby submits its Memorandum of Points and Authorities in Support of its Motion for Summary Judgment. As shown below, Midwest Drywall is entitled to summary judgment on the Plaintiff Pension Fund's claims as a matter of law and there are no genuine issues of material fact.

## I.    INTRODUCTION

The Pension Fund alleges that Midwest Drywall failed to pay to the Pension Fund and to "Ancillary Funds" monies under unspecified labor contracts, and allegedly violated Section 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145. The Pension Fund does not claim that Midwest Drywall failed to pay monies specified in a detailed basis in collective bargaining agreements Midwest Drywall has entered through mutual collective bargaining relationships with International Union of Painters and Allied Trades, AFL-CIO, CLC District Councils and Local Unions (Painters District Councils and Painters Local Unions). The Pension Fund instead asserts its claim solely through the 50-50 Clause in the collective bargaining agreement

1

between Midwest Drywall and Painters Local 159 (No. 159 CBA). Midwest Drywall in its Answer identified the collective bargaining agreements it has entered with Painters District Councils or Painters Local Unions through collective bargaining relationships and admitted that it has made all contributions as specified in a detailed basis in said collective bargaining agreements during the period of time of the Pension Fund's claim. For Midwest Drywall to make any other payments would be illegal.

The 50-50 Clause cannot lawfully be interpreted to apply to all of Midwest Drywall's employees working outside the jurisdiction of Painters Local 159 and to local unions with whom Midwest Drywall does not have a statutory 8(f) or 9(a) relationship as required under the National Labor Relations Act (NLRA). (29 U.S.C. §§ 158(f) and 159(a).) The construction alleged by the Pension Fund not only would require the Court to ignore the full language of the No. 159 CBA, but would force the Court to adopt a construction that violates the NLRA (29 U.S.C. §§ 151-169) and the Labor Management Relations Act (LMRA) (29 U.S.C. §§ 141-187) and would be contrary to the Joint Trade Board of the Painters and Decorators Joint Committee, Inc.'s interpretation of the No. 159 CBA and to the course of dealing between Painters Local 159 and Midwest Drywall. Accordingly, for all the reasons more fully set forth below, Midwest Drywall is entitled to summary judgment as a matter of law.

## II.    __STATEMENT OF FACTS__

1.    Midwest Drywall is a drywall specialty contractor headquartered in Wichita, Kansas with its employees engaged in construction work in and outside the State of Kansas and with local offices in other states. (Defendant's Statement of Material Facts As To Which There Is No Genuine Issue (SOMF) ¶1.)

2.    In 1986, Midwest Drywall, pursuant to 29 U.S.C. § 158(f), established a collective bargaining relationship and entered into a collective bargaining agreement with Painters District Council No. 3 with successor negotiated agreements. After November 24, 1993, Midwest Drywall,

pursuant to 29 U.S.C. § 159(a), established a collective bargaining relationship and entered into collective bargaining agreements with Painters District Council No. 3 with the agreements' jurisdiction extending to specified counties in Missouri and Kansas. (No. 3 CBA.)  The No. 3 CBA entered into by Midwest Drywall and Painters District Council No. 3 did not contain any basis upon which payments were to be made to the Pension Fund, but did provide that Midwest Drywall was required to make contributions for its employees working within the jurisdiction of the agreement to the Labor Management Cooperative Fund. Midwest Drywall made contributions as specified in the No. 3 CBA. (SOMF ¶3.)

3.      In 1984, Midwest Drywall, pursuant to 29 U.S.C. § 158(f), established a collective bargaining relationship and entered into a collective bargaining agreement with Painters Local 76 with successor negotiated agreements. Since May 19, 2003, Midwest Drywall, pursuant to 29 U.S.C. § 159(a), has established a collective bargaining relationship and entered into collective bargaining agreements with said labor organization with the agreements' jurisdiction extending to specified counties in Kansas, including the city of Wichita. (No. 76 CBA.) During the time period of the Pension Fund's claim, the No. 76 CBAs entered into by Midwest Drywall and Painters Local 76 do not contain any basis upon which payments are to be made to the Pension Fund. In a prior No. 76 CBA, Midwest Drywall agreed to make, for employees covered by the agreement, contributions to the International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund (IUPAT-JATF) and to the International Union of Painters and Allied Trades Labor Management Cooperative Fund (LMCF) and made contributions as specified in the No. 76 CBA. In the current No. 76 CBA, Midwest Drywall agreed to make contributions to the IUPAT-JATF and has made contributions as specified in said agreement. (SOMF ¶4.)

4.      In April, 1998, Midwest Drywall, pursuant to 29 U.S.C. § 158(f), established a collective bargaining relationship and entered into a collective bargaining agreement with Painters Local 159, affiliated with Painters District Council 15, covering its employees performing specified

work including painting, drywall taping, and drywall finishing in an area including specified counties in Nevada. The No. 159 CBAs entered into by Midwest Drywall and Painters Local 159 contain detailed basis, as to each employee engaged in work covered by said agreement, for contributions to be made to the Pension Fund. Midwest Drywall has complied with said provisions. In the No. 159 CBA, Midwest Drywall also agreed to make contributions for employees covered by said agreement to the LMCF and to honor authorizations for check-off of political contributions from employees who are union members to the Political Action Together – Political Committee (PAT-PC). Midwest Drywall has complied with said provisions. (SOMF ¶5.)

5.    In reference to the employees represented by Painters Local 159 and employed by Midwest Drywall within the geographical jurisdiction of Painters Local 159, during the time period of the Pension Fund's claim none of these employees were brought by Midwest Drywall to work in an outside (foreign) jurisdiction. (SOMF ¶5.)

6.    Also, in 1998, Midwest Drywall, pursuant to 29 U.S.C. § 158(f), established collective bargaining relationships and entered into collective bargaining agreements that included specified counties in Nevada with the Southern California-Nevada Regional Council of Carpenters and Affiliated Local Unions, United Brotherhood of Carpenters and Joiners of America, Labors International Union of North America, Local Union No. 872, and Operative Plasters and Cement Masons International Association, Local Union 797. (SOMF ¶7.)

7.    In July, 1999, Midwest Drywall established a collective bargaining relationship with Painters District Council 80, International Brotherhood of Painters & Allied Trades, AFL-CIO, CLC (Painters District Council 80) and entered into a collective bargaining agreement titled "Memorandum of Understanding and Area Contract" with Painters District Council 80 effective from July 13, 1999, until the substantial completion of Midwest Drywall's work on the FDA Jefferson Laboratories, Jefferson, Arkansas job. (No. 80 CBA). Midwest Drywall has paid all

contributions to funds as specified in the No. 80 CBA, including contributions to the Pension Fund. (SOMF ¶8.)

8.      Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the collective bargaining agent for Midwest Drywall's foreign jurisdiction employees. (SOMF ¶10.)

9.      Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the authorized agent for foreign Painters District Councils and/or Painters Local Unions. (SOMF ¶11.)

10.     Painters District Council 3, Painters District Council 80, and Painters Local Union 76 have not represented to Midwest Drywall that Painters Local 159 was or is the collective bargaining agent for Midwest Drywall's employees working in their jurisdictional areas or was or is their authorized agent for collective bargaining. (SOMF ¶12.)

11.     Midwest Drywall is not signatory to and has not entered into any national agreement with the International Painters and Allied Trades Union, nor does the Pension Fund claim that Midwest Drywall has done so. (SOMF ¶13.)

12.     In reference to Painters District Councils and Painters Local Unions, Midwest Drywall has only had collective bargaining relations with and entered into collective bargaining agreements with Painters District Council 3, Painters District Council 80, Painters Local 76, and Painters Local 159/District Council 15. (SOMF ¶14.)

13.     In the summer of 1999, Midwest Drywall's President, Steven A. Nienke, met with Painters Local 109 representative and discussed a proposed Painters Local 109 collective bargaining agreement including jurisdiction: what it would cover and what it would require. Painters Local 109 gave Steven Nienke a copy of a proposed agreement to cover in specified counties in Iowa and Nebraska drywall taper and/or finisher or installing and/or finishing of exterior insulation finish systems (E.I.F.S.). Steven Nienke told Painters Local 109 that he did not have a problem with

painting work in a proposed Agreement, but he did have a problem with work that was not painting work and to have non-painting work in an agreement with the Painters would cause problems for Midwest Drywall. Painters Local 109's representative responded that the work specified in the agreement was the way the agreement was written and he would not negotiate it out. Steven Nienke told Painters Local 109 that he was there to negotiate an agreement as to painting work; he had no problem signing an Agreement that day only as to painting work. Later, Painters Local 109's representative telephoned Steven Nienke and said that there was no way Painters Local 109 would change its proposed agreement. No Agreement was agreed to between Midwest Drywall and Painters Local 109. (SOMF ¶15.)

14.     In a letter dated September 28, 1999, sent to Midwest Drywall's President, Leonard Wittman, representative of Painters Local 159, stated:  "It has been brought to my attention that your company was engaged in contracting work covered by the collective bargaining agreement between Midwest Drywall and Painters Local 159 and that Midwest Drywall Co., Inc. appears to be in violation of that agreement to wit: Article IV 50/50 Clause, Section 1 (b)",  and requested Midwest Drywall to "notify this office that this oversight has been rectified by close of business October 8, 1999 to avoid further action by Local 159." (SOMF ¶16.)

15.     In a letter dated October 4, 1999, sent to Leonard Wittman, Steven Nienke, President of Midwest Drywall, stated that: "Midwest Drywall Co., Inc. denies that it has violated any lawful terms of and/or intent of the collective bargaining agreement with Painters Local No. 159" and asked Painters Local 159 to respond as to what it claimed Midwest Drywall had done that was a violation of that agreement and when it claimed the violation had occurred. (SOMF ¶17.)

16.     In a letter dated November 3, 1999, sent to Midwest Drywall, Leonard Wittman, stated:

> "Local 159 is in contact with Mr. Pat Stoysich of Local 109 in Omaha Nebraska who states he has spoken to your company about becoming signatory to his Local. As you can see our

Article IV, clearly states that your company agrees to abide by the Agreement in place, in the 'outside the geographical area.'

Please understand it is not the position of Local 159 or that of Local 109 to 'hammer' a contractor into becoming signatory. I am confident that if you or your representative would meet with Mr. Stoysich both sides would come to an agreement."

(SOMF 18.)

17.     In a letter dated November 8, 1999, to Leonard Wittman, Midwest Drywall's

President, stated to Painters Local 159:

"For your information purpose, prior to your recent correspondence, Midwest Drywall met with Local 109 representatives in Omaha, Nebraska for collective bargaining. Midwest Drywall offered to sign a collective bargaining agreement with Local 109 including lawful clauses of an Agreement. Its offer is still there for Local 109 to accept." (SOMF ¶19.)

18.     In March, 2000, Midwest Drywall was notified that charges had been brought against

it for violation of the No. 159 CBA, Article IV, 50-50 Clause, Section 1, and that a hearing would be

held by the Painters and Decorators Joint Committee, Inc. (Joint Committee). The No. 159 CBA in

Article XXV, Section 6, vests in the Joint Committee the power to adjust all disputes and grievances

that may arise out of the application or interpretation of the Agreement and that the decisions of the

Joint Committee shall be final and binding on both parties to the Agreement. (SOMF ¶20.)

19.     On April 10, 2000, a hearing was held before the Joint Committee and Midwest

Drywall was informed that Painters Local 159 asserted a violation of the No. 159 CBA, Article IV,

Section 1(b) (50-50 Clause) caused by Midwest Drywall's continuing failure to enter into a collective

bargaining agreement with Painters Local 109 in Omaha, Nebraska. Midwest Drywall through

Steven Nienke provided facts at the hearing as to its negotiations in 1999 with Painters Local 109,

that it had not reached an agreement, and that Midwest Drywall had not signed an agreement with

Painters Local 109. The Joint Committee stated at the close of the hearing that it determined that

Midwest Drywall had violated the 50-50 Clause because it had not signed an agreement in Omaha

with Painters Local 109, it wanted Midwest Drywall to work with Painters Local 109 to sign a

collective bargaining agreement, and directed Painters Local 159 to work with Painters Local 109 and the International Brotherhood of Painters & Allied Trades to resolve the continuing violation. (SOMF ¶21.)

20.    After the Hearing, Leonard Wittman said to Steven Nienke that the Union was "not going to enforce the finding." (SOMF ¶21.)

21.    The Joint Committee issued its Decision and Order on April 14, 2000. After receipt of the Decision and Order of the Joint Committee, Midwest Drywall was not contacted further by the Joint Committee, by a Painters Local 159 representative, by a Painters Local 109 representative, or by an IBPAT representative as to the finding of the Joint Committee. The Joint Committee retained jurisdiction of the matter for purpose of entering a final order and enforcement. No further action was taken by Joint Committee, by Painters Local 159, or by Painters Local 109. (SOMF ¶22.)

22.    Since April, 2000, the Joint Committee has on numerous occasions stated in written communication to Midwest Drywall that Midwest Drywall is current in its payment of fringe benefits. (SOMF ¶23.)

23.    On April 16, 2004, the Painters Local 159 in an email to Gary Meyers, the Administrator of the Pension Fund, stated that Midwest Drywall is "living up to the terms and conditions (including wage and benefit increases) of the new agreement". (SOMF ¶24.)

24.    Midwest Drywall has relied upon Painters Local 159's promise and representations concerning the application of Article IV in the No. 159 CBA. (SOMF ¶25.)

25.    In 1999, Midwest Drywall, pursuant to 29 U.S.C. § 158(f), established a collective bargaining relationship and entered into a collective bargaining agreement with the Heartland Regional Council of Carpenters affiliated Local 444 of the United Brotherhood of Carpenters and Joiners of America (Carpenters Local Union No. 444) covering work performed in specified counties in Iowa and Nebraska. (SOMF ¶ 26.) In a letter dated November 30, 2001, Carpenters Local Union No. 444 submitted evidence to Midwest Drywall that it represented a majority of Midwest Drywall's

tapers. Thereafter, Midwest Drywall, pursuant to 29 U.S.C. § 158(f), entered into a collective

bargaining agreement with Carpenters Local Union Nos. 444 and 1055 covering certain work,

including drywall taping and finishing work. (SOMF ¶27.)

     26.     On May 31, 2003, the collective bargaining agreement between Midwest Drywall and

Carpenters Local Union Nos. 444 and 1055 expired. Thereafter, the Carpenters Local Union Nos.

444 and 1055 filed a Petition with the National Labor Relations Board's Regional Office (NLRB) for

an election. The NLRB held an election by secret ballot among the employees in the appropriate unit

and a majority of the valid votes counted were not cast for the union. Carpenters Local Union Nos.

444 and 1055 filed objections to the conduct of the election with the NLRB. After a hearing, the

NLRB issued a Decision finding that a majority of the valid ballots were not cast for Carpenters

Local Union Nos. 444 and 1055 and the labor organization is not the exclusive representative of the

bargaining unit employees. (SOMF ¶28.)

     27.     During the term of its collective bargaining agreements with Carpenters Local Union

Nos. 444 and 1055, Midwest Drywall made contributions for employees performing work covered by

the agreements, including drywall finishing and taping work, to the Omaha Construction Industry

Pension Fund in accord with said agreements. After the termination of the agreements, Midwest

Drywall reached an agreement with the Omaha Construction Industry Pension Fund as to assessment

of withdrawal liability and paid an additional $490,000.00 into said pension fund. (SOMF ¶29.)

     28.     Midwest Drywall has had collective bargaining relationships with other affiliated

District/Regional Councils/or Local Unions of the United Brotherhood of Carpenters and Joiners of

America dating back to 1973. Pursuant to 29 U.S.C. § 159(a) and NLRB certification of the unions as

the exclusive bargaining representative for employees in appropriate bargaining units including

drywall finishing, Midwest Drywall entered into collective bargaining agreements with the United

Brotherhood of Carpenters and Joiners of America, AFL-CIO and the Kaw Valley & Vicinity

District Council of Carpenters Locals #918, #1445, and #2279 covering work performed by its

9

employees, including drywall finishing in specified counties in north central and eastern Kansas

(outside of Kansas City). (SOMF ¶30.)

29.　　On January 30, 2007, Painters District Council 15 proposed language to Midwest

Drywall's representative for negotiations, Thomas G. Pfundstein (Senior Executive Director,

Painting and Decorating Contractors of America, Southern Nevada Chapter), for a Memorandum of

Understanding between Painters District Council 15 (which includes Painters Local 159) and

Midwest Drywall. Painters District Council 15 represented to Thomas Pfundstein that the proposed

Memorandum of Understanding would be re-established with the new July 1, 2007, Agreement.

(SOMF ¶31.)

30.　　On February 8, 2007, Painters District Council 15 and Midwest Drywall entered into

a Memorandum of Understanding that provides:

> "This Memorandum of Understanding between International Union of Painters and Allied
> Trades, District Council 15 (Union) and Midwest Drywall (the Employer) constitutes as a
> waiver of Article 4 of the current Painters and Decorators Master Agreement, to which the
> Employer is signatory. The parties agree that this Memorandum shall be in effect for the
> current Agreement, for the duration of the Agreement." (SOMF ¶32.)

31.　　On July 12, 2007, after the new July 1, 2007, Master Agreement was agreed with

Painters Local 159, Thomas Pfundstein informed Midwest Drywall that Painters Local 159 and

Painters District Council 15's representative stated that he would re-issue a new Memorandum of

Understanding for the new agreement. (SOMF ¶34.)

32.　　In June, 2007, Midwest Drywall's President, pursuant to 29 U.S.C. § 158(f),

established a collective bargaining relationship with the United Brotherhood of Carpenters and

Joiners of America (UBCJA), and the UBCJA proposed an International Agreement to Midwest

Drywall. (SOMF ¶35.)

33.　　On June 28, 2007, Midwest Drywall and the UBCJA agreed to a Memorandum of

Understanding wherein, in addition to other provisions, Midwest Drywall agreed to become

signatory to a No. 1 International Agreement and a Drywall Addendum with the UBCJA for the

period July 1, 2007 to June 30, 2011, to cover all work within the jurisdiction of the UBCJA,

"including but not limited to drywall hanging, drywall finishing and wet wall finish work

(plastering)" and that said "provision regarding drywall finish and plastering will not apply in those

areas where the Company (Midwest Drywall) is already signed to an agreement with another labor

organization as long as such an agreement remains in effect." (SOMF ¶36.)

34.    The Pension Fund in response to Midwest Drywall's Request for Production of

Documents to Plaintiff has not produced any document showing that a Painters District Council

and/or Painters Local Union, outside the jurisdiction of Painters Local 159, agreed to the terms of a

collective bargaining agreement with Midwest Drywall, much less signed one, that specified the

detailed basis for payments to the Pension Fund. (Exhibit 29, International Painters and Allied Trades

Pension Fund Responses and Objections to Midwest Drywall Co., Inc.'s First Request for Production

of Documents to Plaintiff.) (SOMF ¶ 37.)

35.    The Pension Fund does not own the causes of action for any of the Ancillary Funds

named in the Complaint. (SOMF ¶ 38.)

## III.    ARGUMENT

### A.    It Is Inconsistent With Law to Apply the No. 159 CBA 50-50 Clause to Require Contributions as to Hours Worked by Midwest Drywall Employees Outside the Jurisdiction of Painters Local 159.

The Pension Fund alleges that Midwest Drywall failed to pay to the Pension Fund and to

"Ancillary Funds" monies under unspecified labor contracts allegedly in violation of Section 515 of

ERISA. That Section provides:

> "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, **to the extent not inconsistent with law**, make such contributions in accordance with the terms and conditions of such plan or such agreement."

29 U.S.C. § 1145. (Emphasis added). The Pension Fund does not claim that Midwest Drywall failed

to pay monies to funds as specified in collective bargaining agreements Midwest Drywall has entered

through mutual collective bargaining relationships with Painters District Councils and Painters Local

Unions. Instead, the Pension Fund asserts its claim through the 50-50 Clause in the No. 159 CBA

between Midwest Drywall and Painters Local 159 which provides in part in Article IV:

> "It being understood that the principle place of business and the employment of the
> employer is in the area jurisdiction as stated, but that such employer on occasion
> undertakes painting work in other cities and areas, on which occasions such employer
> employs such additional employees, residents of such other city or area as the needs of
> the work require; now therefore, be it resolved:
> .  .  .
> (b)  And further provided that the employer or contractor, when engaged in work outside
> the geographical jurisdiction of the Union party to this Agreement shall comply with all
> of the lawful clauses of the collective bargaining agreement in effect in said other
> geographical jurisdiction and executed by the employers of the industry and the local unions
> in that jurisdiction, including but not limited to, the provisions of the wages, hours, working
> conditions and all fringe benefits therein provided, including grievances; provided,
> however, that as to employees employed by such employer from within the geographical
> jurisdiction to the Union party to this Agreement and who are brought into an outside
> jurisdiction, such employees, and fringe benefit contributions on behalf of such
> employees shall be made solely to their home funds in accordance with their governing
> documents.  . . . " (Exhibit 3, at pp. 5-6.)

The Pension Fund claims that Midwest Drywall is obligated to pay contributions as may be

described in unidentified agreements between foreign local unions and other employers without the

existence of a collective bargaining relationship and a signed agreement between Midwest Drywall

and a foreign local union. To require Midwest Drywall to make contributions to the Pension Fund

based solely on the 159 CBA 50-50 Clause would command conduct that renders the promise an

illegal undertaking under the NLRA. 29 U.S.C. §§ 158(a)(1) and (2) and 158(b)(1)(A), (Sections

8(a)(1) and (2) and 8(b)(1)(A) of the NLRA), prohibit enforcing on employees the terms and

conditions of a labor agreement without the existence of a collective bargaining relationship between

an employer and the collective bargaining representative of the employer's employees with

protection of the employee's 29 U.S.C. § 157 (Section 7) rights. Enforcement of the Pension Fund's

claims based on hours worked by employees outside the jurisdiction of Painters Local 159 violates

the NLRA because such enforcement voids the Section 7 rights of employees. To avoid unlawful

application of the No. 159 CBA 50-50 Clause, it should be construed to apply to foreign collective

bargaining agreements entered into through collective bargaining relations between Midwest Drywall

and a foreign Painters District Council or a foreign Painters Local Union.

>    **1.    Absent a Statutorily Permissible Collective Bargaining Relationship Between Midwest Drywall and a Foreign Union, It Is Unlawful Under Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA to Impose Terms and Conditions of a Foreign Local Union's Agreement on Midwest Drywall's Employees.**

The NLRA permits labor organizations to bargain only for employees they represent under

Section 9(a) or Section 8(f) of the NLRA. Painters Local 159 did not and has not expressly or

impliedly represented itself to Midwest Drywall to be the collective bargaining agent for Midwest

Drywall's foreign jurisdiction employees. (SOMF ¶10.) Painters Local 159 did not and has not

expressly or impliedly represented itself to Midwest Drywall to be the authorized agent for foreign

Painters District Councils and/or Painters Local Unions. (SOMF ¶11.) Painters District Council 3,

Painters District Council 80, and Painters Local Union 76 have not represented to Midwest Drywall

that Painters Local 159 was or is the collective bargaining agent for Midwest Drywall's employees

working in their jurisdictional areas or was or is their authorized agent for collective bargaining.

(SOMF ¶12.)

Interpreting the 50-50 Clause to apply to unrepresented Midwest Drywall employees outside

the jurisdiction of Painters Local 159 would render the No. 159 CBA unlawful under the NLRA.

Courts should avoid constructions that would render a collective bargaining agreement unlawful.

*Walsh v. E. A. Schlecht,* 429 U.S. 401, 408 (1976).

The collective bargaining relationships between employers engaged in interstate commerce

and labor organizations are governed by the NLRA. The NLRA permits labor organizations to gain

rights to represent employees through voluntary recognition agreements based on a union's showing

of majority support or an NLRB conducted election under Section 9 of the NLRA or in the

construction industry by recognition of representation with safeguards for protection of employee

free choice under Section 8(f) of the NLRA. See, *Dana Corporation*, 351 NLRB No. 28 (2007) and

*John Deklewa & Sons*, 282 NLRB 1375, 1380-1381, *enf'd* 843 F.2d 770 (3d Cir. 1988), *cert. denied* 109 S. Ct. 222 (1988). The United States Supreme Court, in a case challenging the enforcement of a subcontracting provision in an 8(f) agreement, held that such "authorization extends only to agreements in the context of collective-bargaining relationships" and not to agreements with "stranger" contractors, not limited to any particular job site. *Connell Construction Company, Inc. v. Plumbers & Steamfitters Local 100*, 421 U. S. 616, 633, 95 S. Ct. 1030, 1840 (1975). In *Donald Schriver, Inc. v. N.L.R.B.*, 635 F.2d 859, 870-873 (D.C. Cir. 1980), the Circuit Court held that the test set forth in *Connell* is satisfied when a union seeks a contractual relationship with an employer and seeks to secure representation of the employer's employees through an 8(f) relationship. The NLRB in *Howell Insulation Co.*, 311 NLRB 1355 (1993), held that an outside jurisdiction clause, similar to that contained in the No. 159 CBA, Article IV, 50-50 Clause, does not by itself confer statutory 8(f) or 9(a) representation of employee rights on the outside local union. Without a statutory permissible 8(f) or 9(a) relationship, an unnamed foreign local union is not the statutory bargaining representative of Midwest Drywall employees. **In the absence of a statutory collective bargaining relationship, it is unlawful under Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA to impose the terms and conditions of a foreign local union's agreement with another employer on Midwest Drywall's employees.** Contract rights cannot exist independent of the union's right to represent the bargaining unit. See, *Int'l Ladies' Garment Workers Union v. N.L.R.B.*, 366 U.S. 731 (1961), *NLRB v. Retail Clerks Local 588*, 587 F.2d 984 (9th Cir. 1978), *Local 7-210, Oil, Chemical & Atomic Workers v. Union Tank Car Co.*, 475 F.2d 194,199 (7th Cir. 1973), and *John Deklewa & Sons, supra*. But that is exactly what the Pension Fund claims the 50-50 Clause should be applied to accomplish. Such a construction would be unlawful under the NLRA. The NLRA permits unions to bargain only for employees they represent under Section 9(a) or Section 8(f) of the NLRA. The Court should construe the No. 159 CBA to avoid such illegal results. *Walsh v. E. A. Schlecht, supra.* at 408. In the alternative, the Court should simply decline enforcement of No. 159 CBA urged by the Pension Fund

14

because such enforcement is illegal. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S. Ct. 851 (1982) (holding that a court may not enforce a contract, including contributions to a multiemployer pension fund, that violates the NLRA).

The following events demonstrate why the construction asserted by the Pension Fund is wrong:

a.      Midwest Drywall is not signatory to and has not entered into any national agreement with the International Painters and Allied Trades Union, nor does the Pension Fund claim that Midwest Drywall has done so.

b.      In the summer of 1999, Midwest Drywall established a statutory 8(f) collective bargaining relationship with Painters District Council 80 that led to Midwest Drywall entering into a Memorandum of Understanding and Area Contract with Painters District Council 80 as to Midwest Drywall's employees effective from July 13, 1999, until the substantial completion of Midwest Drywall's work on the FDA Jefferson Laboratories, Jefferson, Arkansas job. Upon substantial completion of Midwest Drywall's work on that job, the No. 80 CBA terminated. However, under the Pension Fund's claim, Midwest Drywall, contrary to its statutory collective bargaining relationship with Painters District Council 80, would nevertheless continue to be bound by the terms of a collective bargaining agreement signed by another employer. In direct violation of the NLRA and the LMRA, the Pension Fund's claim would do away with statutory collective bargaining relationships between Midwest Drywall and a Painters District Council or Local Union, because the Pension Fund claims that Midwest Drywall is, by fiat, already bound.

c.      In the summer of 1999, Midwest Drywall met with Painters Local Union 109's representative, discussed what the union proposed for a collective bargaining agreement, including scope of work, but did not reach an agreement with Painter's Local Union 109 covering specified work, including taper work, in Omaha, Nebraska.

In November, 2001, Carpenters Local Union No. 444 represented and submitted evidence to Midwest Drywall that it represented a majority of Midwest Drywall's tapers employed in Omaha, Nebraska. Midwest Drywall thereafter through a statutory 8(f) relationship entered into a collective bargaining agreement with Carpenters Local Union Nos. 444 and 1055 covering work, including taper work, in Omaha, Nebraska. That collective bargaining agreement terminated in May, 2003, and Carpenters Local Union Nos. 444 and 1055 filed a 9(a) representation petition with the NLRB. The NLRB conducted an election for bargaining unit employees and issued a Decision and Order that a majority of the employees' votes were not cast for the union.

However, under the Pension Fund's claim Midwest Drywall, contrary to its statutory collective bargaining relationship with Carpenters Local Union Nos. 444 and 1055 and contrary to Section 7 rights of Midwest Drywall's employees, would continue to be bound by the terms of a collective bargaining agreement signed by a Painters Local Union with another employer in Omaha, Nebraska. In violation of the NLRB and the LMRA, the Pension Fund's claim would do away with statutory collective bargaining relationships and statutory protected employees' rights.

d.      In 1984, Midwest Drywall, pursuant to 29 U.S.C. § 158(f), established a collective bargaining relationship and entered into a collective bargaining agreement with Painters Local Union 76 with successor negotiated agreements. After the expiration of a collective bargaining agreement established through an 8(f) relationship, Painters Local Union 76 petitioned the NLRB to conduct a secret ballot election. The NLRB conducted a secret ballot election and a majority of the employees' votes cast were in favor of representation by Painters Local Union 76. Since May 19, 2003, Midwest Drywall, pursuant to 29 U.S.C. § 159(a), has established a collective bargaining relationship and entered into collective bargaining agreements with Painters Local Union 76. In violation of the NLRB and the LMRA, the Pension Fund's claim would do away with this statutory collective bargaining relationship and the statutory protected employees' rights, because the Pension Fund claims that Midwest Drywall and its employees would, by fiat, be bound to a Painters Local Union

agreement with another employer. If that were the case, there would be no mechanism for Midwest

Drywall employees employed in foreign jurisdictions to exercise their Section 7 right of free choice.

Such a result would illegally void one of the major tenets of the NLRA.

     e.     Further, under the Pension Fund's claimed application of the 50-50 Clause, if Midwest

Drywall had timely provided notice in 2003 to terminate its 8(f) collective bargaining agreement with

Painters Local 76, lawfully repudiated that 8(f) relationship in accord with *John Deklewa & Sons,*

*supra*, and no one petitioned the NLRB for a representation election, Midwest Drywall and its

employees would nevertheless be bound to a Painters Local Union 76 agreement with another

employer. This interpretation is contrary to the principles of an 8(f) relationship and the employee

right protections described by the NLRB in *John Deklewa & Sons, supra*. (See, *Rock Technologies*

*Inc.,* 179 LRRM 1192 (N.L.R.B. 2006), holding that when a relationship is entered into pursuant to

Section 8(f), the union is the "limited 9(a) representative of the unit employees for the period covered

by the contract.")[1]

    Although United States Magistrate Judge Kay in *Flynn v. Dick Corporation*, 384 F. Supp. 2d

189 ( D.D.C. 2005) (*rev'd and remanded on other grounds*, 481 F.3d 824 (D.C. Cir. 2007)), did not

articulate these principles in the context of the NLRA, Magistrate Judge Kay in footnote 7 stated:

> "This interpretation obviates the need for local unions to negotiate with employer signatories
> to a foreign jurisdiction CBA containing a traveling contractor's clause because the employer
> is, by fiat, already bound. Stated slightly differently, there would be little or no utility in an
> employer entering into a CBA in any jurisdiction after it has signed a CBA in another
> jurisdiction, which contained the traveling contractor's clause (assuming the *Beeler*
> construction), because regardless of whether it signed the CBA, it would nevertheless be
> bound by the operation of the terms of the traveling contractor's clause in every other
> geographic location where the BAC had an extant CBA."
> 384 F. Supp. 2d at 199 n.7).

---

[1] In *M & M Backhoe Service Inc. v. NLRB*, 469 F.3d 1047 (D.C. Cir. 2006), in discussing 8(f)
relationships, the Circuit Court recognized that pre-hire agreements are an exception to the rule that
employers must bargain in good faith with unions only if the union has been designated or selected by
majority of the employees in a unit appropriate for such purposes. In an 8(f) relationship, "either party
may repudiate the terms of a pre-hire agreement when it expires. (Citations omitted). The employer then
has no obligation to bargain with the union, 'because the union enjoys no presumption that it ever had
majority support.' "*Id.* at 1048, 1049. (Citations omitted).

Separate from the opinion expressed in footnote 7, Magistrate Judge Kay initially found that

Sections 302(c)(5)(A) and (B) of the LMRA, 29 U.S.C. §§ 186(c)(5)(A) and (B), precluded the

contributions sought by the Trustees because the agreement submitted by the Trustees failed to

provide the "detailed basis" required for lawful contributions from an employer to a trust fund

under Section 302(c)(5)(B), and the contributions sought were not for the "sole and exclusive

benefit" of Dick Corporation's employees because the at issue work was entirely performed by

employees of subcontractors. The Trustees moved for reconsideration, and Magistrate Judge Kay

agreed that union affidavits had been misconstrued, found that a "detailed basis" had in fact been

established, and vacated the grant of summary judgment to the extent it was based on the

absence of a detailed basis for benefit contributions under the LMRA, but granted summary

judgment to Dick Corporation because the requested contributions were not for the "sole and

exclusive benefit" of Dick Corporation's employees. The Trustees appealed the decision. The

Circuit Court reversed and remanded that decision. *Flynn v. Dick Corporation*, 481 F.3d 824 (D.C.

Cir. 2007).

     The Pension Fund may urge the Court to consider the Circuit Court's decision in *Flynn v.*

*Dick Corporation*, *supra*, as controlling precedent in the present case. The Circuit Court's decision in

*Flynn v. Dick Corporation*, *supra,* is not controlling here. The decision is not legal precedent that

contract language such as the 50-50 Clause is automatically deemed to be lawful. On appeal, the

Circuit Court did not address the issues of law raised here that Sections 8(a)(1) and (2) and

8(b)(1)(A) of the NLRA prohibit enforcing on employees the terms and conditions of a labor

agreement without the existence of a collective bargaining relationship between an employer and the

collective bargaining representative of the employer's employees with protection of the employee's

Section 7 rights. Instead, the Circuit Court first found that the outside jurisdiction clause was

ambiguous allowing the Circuit Court to consider evidence as to the intent of the parties to

interpret the meaning of the contract; second the Circuit Court found that based on an affidavit

submitted by a union representative, not controverted by Dick Corporation, the clause at issue

bound Dick Corporation to a collective bargaining agreement in force at a foreign jurisdiction

even if not signed; and third the Circuit Court found that Section 302(c)(2) of the LMRA, 29

U.S.C. § 186(c)(2), is applicable where the Trustees alleged and Dick Corporation conceded that

it breached the foreign collective bargaining by hiring nonunion subcontractors, that the

subcontractor clause was a valid contractual provision, and the Trustees were entitled to damages

resulting from that breach in the form of benefit contributions. 481 F.3d at 828 to 832. It is clear

that the issues of law and undisputed material facts raised here have not been considered by the

Circuit Court.

> **2.    Binding Midwest Drywall to Foreign CBAs Through the 50-50 Clause Would Undercut Collective Bargaining in Foreign Jurisdictions In Violation of the NLRA.**

One of the expressed purposes of federal labor law is "encouraging the practice and

procedure of collective bargaining" between unions and employers. *H. K. Porter*, 397 U.S. 99, 103

(1970); 29 U.S.C. § 151. For purposes of the conduct of employers and unions under the NLRA and

LMRA, Congress provided in 29 U.S.C. § 158(d) (Section 8(d)) in part that:

> "... **to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party**, but such obligation does not compel either party to agree to a proposal or require the making of a concession .   .   . ".  (Emphasis added.)

Binding Midwest Drywall and a foreign local union to an agreement that was not established by them

through a mutual collective bargaining relationship violates the federal labor law. As noted by the

District Court in *Dick Corp.*, *supra*, at 198, n.7, if the Pension Fund's claim is adopted, once an

employer signs a 50-50 Clause there is no incentive for the employer or for any foreign local union

(or both) to bargain about the terms governing the local relationship. Regardless of what an employer or foreign local union may wish to do, an employer will be bound by the terms of other local agreements with other employers in foreign jurisdictions.

Unions have attempted to use these abusive tactics in the past, as discussed in *Trustees of the National Automatic Sprinkler Industry Pension Fund v. Fairfield County Sprinkler Co. Inc.*, 243 F.3d 112 (2d Cir. 2001). In that case, the employer was party to two local union agreements. When one agreement expired, the employer sought to re-negotiate or cancel its relationship with that local as permitted in Section 8(f). Rather than the dispute being resolved at the bargaining table or through a representation petition as the NLRA contemplates, the Trustees of the multiemployer pension fund tried to block post-expiration renegotiation or cancellation by citation to the travelers clause (an outside jurisdiction clause similar to the 50-50 Clause in the present case) found in an agreement with a different local. The Circuit Court expressed "considerable doubt" regarding this approach and ultimately found, for other reasons, that it violated the LMRA.

Expressing similar concerns, the District Court in *Flynn v. Dick Corporation*, *supra*, in footnote 7, as noted above, recognized that such an interpretation urged by trustees "obviates the need for local unions to negotiate with employer signatories to a foreign jurisdiction CBA containing a traveling contractor's clause because the employer is, by fiat, already bound." 384 F. Supp. 2d at 199, n.7.) The enforcement of a contract with that result violates the federal labor law.

> **3.** **The Interpretation Advanced by the Pension Fund Violates Statutory Employee Rights to Determine Whether They Wish to be Represented and by Whom.**

Painters Local 159's Bylaws and Working Rules in Article 3 require that to become a member of Painters Local 159, the individual must pass the exam given by an examination board governed by Painters Local 159. (Exhibit 5, p. 7.) Also, the Bylaws and Working Rules in Article 6 require that the member must fully comply with the hiring hall and dispatching provisions of Painters Local 159 (to work in the Painters Local 159's jurisdiction and to work on a job for a signatory

employer). (Exhibit 5, p. 12.) Also, the Bylaws and Working Rules in Article 21 provide that only members of Painters Local 159 have the right to vote on a working agreement negotiated by Painters Local 159. (Exhibit 5, p. 39.) Further, the Bylaws and Working Rules in Article 7 provide that membership in Painters Local 159 is equated to authorization of Painters Local 159 to be the exclusive bargaining representative for the individual. (Exhibit 5, p. 17.) Therefore, Painters Local 159, by its Bylaws and Working Rules, expressly limits the right to join Local 159 and to participate in its affairs to employees who work in Painters Local 159's jurisdiction.

Although the Pension Fund presumably would argue that these employees can participate in negotiating the terms of foreign collective bargaining agreements through foreign local unions, that is impractical and if the foreign local unions are not their bargaining representative, impossible. The No.159 CBA creates no mechanism for employees to know about and enforce their rights under a foreign collective bargaining agreement.

The NLRA expressly provides that its purpose of "encouraging the practice and procedure of collective bargaining" is in conjunction with "protecting the exercise by workers of full freedom of association, self organization, and designation of representative of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C. § 151. The Act's purpose is codified in the rights of employees expressed in Section 7, in the protections provided in Sections 8(a)(1) and 8(b)(1)(A) and in the provisos in Sections 8(d) and (f), and in the selection of representative procedure in Section 9. The Pension Fund's claim, contrary to the full rights of employees under the NLRA, would assume that the foreign jurisdiction employees want to be members of and pay dues to a union, or want to join the foreign painters local union as opposed to the carpenters union or any another labor organization that seeks to represent them.

The Court of Appeals for the Sixth Circuit noted similar concerns in refusing to adopt a broad construction of an outside jurisdiction clause in *The Trustees of the B.A.C. Local 32 Insurance Fund*

*v. Ohio Ceiling and Partition Co., Inc.*, 48 Fed. Appx. 188 (6th Cir. 2002) (unpublished). The Circuit Court found that the Bricklayers Trustees in that case were attempting to use an outside jurisdiction clause to "press a jurisdictional dispute" with the United Brotherhood of Carpenters, which asserted jurisdiction over the work in the foreign jurisdiction. It rejected a broad construction based in part on these concerns. A similar attempt is made in the present case, as exemplified by Omaha Painters Local 109's attempt to impose a foreign agreement, not negotiated with or entered into by Midwest Drywall, on employees who later expressed a desire to be represented by an Omaha Carpenters Local Union as to terms and conditions of their employment with Midwest Drywall, and to be governed by a collective bargaining agreement entered into and signed by Midwest Drywall. Midwest Drywall employees in Omaha, Nebraska later further exercised their Section 7 rights to vote not to be represented by the Carpenters Local Union. This specific exercise of employees' Section 7 rights would be barred to Midwest Drywall's employees if the Pension Fund's claim is enforced.

The Pension Fund's claim that the terms and conditions of Midwest Drywall's employees working in foreign jurisdictions are automatically governed by unspecified collective bargaining agreements between a foreign local union and other employers so long as Midwest Drywall is signatory to the No. 159 CBA, despite the expiration dates of foreign collective bargaining agreements, violates the NLRA. The NLRB in *John Deklewa & Sons, supra*, in finding that in the construction industry a collective bargaining relationship is presumed to be governed by Section 8(f) of the NLRA, recognized that a Congressional objective in enacting Section 8(f) was to "lend stability to the construction industry while fully protecting employee free choice principles." *Id*. at 1388. The Pension Fund's claim in effect bars to Midwest Drywall's employees the right to exercise their Section 7 right to seek an election under the NLRA and/or to seek representation by another labor organization upon the expiration of a foreign collective bargaining agreement. See, *John Deklewa & Sons, supra*, and *Stockton Roofing Co*., 304 NLRB No. 88 (1991).

Further, the United States Supreme Court has held that as an incident to a union's representative status the law imposes "on the bargaining representative of a craft or class of employees the duty to exercise fairly the powers conferred upon it on behalf of those for whom it acts." *Steele v. Louisville & Nashville Railroad*, 323 U.S. 192, 202-203 (1944). The Supreme Court has repeatedly held that "the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca v. Sipes*, 386 U.S. 171, 182 (1967). The NLRB has extended these same obligations to unions in the construction industry that gain bargaining rights under Section 8(f). *John Deklewa & Sons, supra*, at 1388. The duty of fair representation, the authority to represent employees, and membership in the bargaining unit are inherently linked and cannot be untangled. *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 88 (1989). ("Together with this authority [to negotiate the collective bargaining agreement] comes the responsibility to exercise it in a nonarbitrary, nondiscriminatory fashion, because the members of the bargaining unit have entrusted the union with the task of representing them.")

The Bylaws and Working Rules for Painters Local 159 designate its area jurisdiction as including "Clark, Lincoln, Nye and Esmeralda Counties, State of Nevada, La Paz and Mohave Counties, State of Arizona, floorcovering to include the preceding and also to include the State of Utah . . ." (Exhibit 5, p. i) and prescribe that persons seeking membership into Painters Local 159 must make written application and sign out-of-work lists maintained at the headquarters of the Painters Local 159 (Exhibit 5, pp. 8-10) and that by virtue of membership in Painters Local 159 authorize Painters Local 159 to act as the employee's exclusive bargaining representative (Exhibit 5, p. 11). Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the collective bargaining agent for Midwest Drywall's foreign jurisdiction employees. (SOMF ¶10). Permitting Painters Local 159 to bargain without being the bargaining representative for Midwest Drywall's foreign jurisdiction employees would produce the unconstitutional result that

it owes no duty of fair representation to Midwest Drywall's employees working outside the jurisdiction of Painters Local 159.

The No. 159 CBA 50-50 Clause is not a naked promise to simply pay monies to the Pension Fund. The 50-50 Clause imposes an obligation to pay monies to the Pension Fund if a collective bargaining agreement in effect in an outside jurisdiction, executed by employers in the industry and the foreign local union, includes within its provisions the payment of contributions to the Pension Fund. To require Midwest Drywall to make contributions to the Pension Fund based on the No. 159 CBA 50-50 Clause would command conduct that renders the promise an illegal undertaking under the NLRA. Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA prohibit enforcing on employees the terms and conditions of a labor agreement without the existence of a collective bargaining relationship between an employer and the collective bargaining representative of the employer's employees with protection of the employee's Section 7 rights. Enforcement of the Pension Fund claims based on hours worked by employees outside the jurisdiction of Painters Local 159, violates the NLRA because such enforcement voids the Section 7 rights of employees.

To avoid unlawful application of the No. 159 CBA 50-50 Clause, it should be construed to apply to foreign collective bargaining agreements entered into through collective bargaining relations between Midwest Drywall and a foreign Painters District Council or a foreign Painters Local Union. The No. 159's CBA 50-50 Clause cannot lawfully be interpreted to apply to all of Midwest Drywall's employees working outside the jurisdiction of Painters Local 159 and to local unions with whom Midwest Drywall does not have a statutory 8(f) or 9(a) collective bargaining relationship as required under the NLRA. The construction claimed by the Pension Fund would require the Court to adopt a construction that violates the NLRA and LMRA. Therefore, the Pension Fund's interpretation of the 50-50 Clause violates the law and cannot be enforced. [See, *Kaiser Steel Corporation v. Mullins, supra* (holding that a court may not enforce a contract, including contributions to a multiemployer pension fund, that violates the NLRA)].

**B.**    **Painters Local 159 Cannot Bind Foreign Local Unions to a Collective Bargaining Agreement With Midwest Drywall Without the Foreign Local Union's Express Authority or Consent.**

Courts have long recognized that a union and an employer can be bound by a collective bargaining agreement only by their "mutual agreement". *H. K. Porter Co. supra*. Without that mutual consent, neither party can be compelled to accept a collective bargaining agreement's terms. *Id*. at 108. Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the authorized agent for foreign Painters District Councils and/or Painters Local Unions. (SOMF ¶11.) Painters District Council 3, Painters District Council 80, and Painters Local Union 76 have not represented to Midwest Drywall that Painters Local 159 was or is the collective bargaining agent for Midwest Drywall's employees working in their jurisdictional areas or was or is their authorized agent for collective bargaining. (SOMF ¶12.) Even if Midwest Drywall could be said to have consented to being bound to a foreign collective bargaining agreement by entering into the collective bargaining agreement with Painters Local 159, there is no agreement by any other foreign Painters District Council and/or foreign Painters Local Union to be bound to a foreign collective bargaining agreement with Midwest Drywall.

Because the No. 159 CBA 50-50 Clause is not a naked promise to pay monies to the Pension Fund, the Pension Fund's interpretation of No. 159 CBA's 50-50 Clause would require Midwest Drywall to enforce as to its employees all terms and conditions of employment in foreign collective bargaining agreements. Such foreign collective bargaining agreements would almost certainly contain terms and conditions of employment that would impose obligations that Midwest Drywall could not implement on its own and would require the consent and cooperation of the foreign local union. Using terms and conditions found in the No. 159 CBA as the type of terms that could be found in a foreign collective bargaining agreement requiring the consent and cooperation of a foreign local union, such terms could include the foreign local union being the exclusive source of  referrals of applicants for employment ( Exhibit 3, Article V, Section 1); the foreign local union controlling the

work time of employees (Exhibit 3, Article VI, Sections 7 and 11); and the foreign local union notifying the signatory employer of the amount of administrative dues to be paid per employee (Exhibit 3, Article XII, Section 1), requiring the signatory employer to provide a surety bond and monthly remittance reports to the local union (Exhibit 3, Article XVI, Sections 1 and 2), restricting subcontracting (Exhibit 3, Article XVI, Sections 3, 4, and 5), issuing work and safety cards to employees before employees can work (Exhibit 3, Article XVIII), appointing job stewards (Exhibit 3, Article XXI, Section 1), and adjusting all disputes through a Joint Committee (Exhibit 3, Article XXV, Section 6).

Midwest Drywall could not unilaterally enforce the terms and conditions of foreign collective bargaining agreements that require the active participation of foreign local unions without the foreign local unions' active participation and consent. In the absence of a local union's active participation and consent, there is no collective bargaining relationship.

The Second Circuit Court of Appeals in *Fairfield, supra*, expressed "considerable doubts as to the merits of the trustees' novel theory" that the trustees should even be permitted to sue under ERISA's § 515 by virtue of an outside jurisdiction clause, since the employer "was not a party to the [foreign collective bargaining agreement]." *Id*. at 116. It ultimately did not reach that issue, since it found an outside jurisdiction clause illegal as applied to contributions in a jurisdiction in which the employer had not signed a collective bargaining agreement. The Circuit Court cited *Moglia v. Geoghegan*, 403 F.2d 110, 117 (2d Cir. 1968), which stated that, to satisfy the requirements for the LMRA, an agreement must be "signed" by an employer, not merely by a written agreement which the employer arguably has agreed to be "bound." In the present case, it is undisputed that Midwest Drywall during the time period at issue has not entered into a collective bargaining agreement with any foreign Painters Local Union other than the Painters Local Unions as admitted by Midwest Drywall in its Answer and under which Midwest Drywall has made all contributions as specified in a detailed basis in each of the signed collective bargaining agreements. (SOMF ¶¶3, 4 and 5.)

To avoid unlawful application of the No. 159 CBA, the 50-50 Clause should be construed to apply to foreign collective bargaining agreements entered into through collective bargaining relations between Midwest Drywall and a foreign Painters District Council or a foreign Painters Local Union. The Pension Fund in response to Midwest Drywall's Request for Production of Documents has not produced and no document exists for production to show that any foreign Painters District Council and/or Painters Local Union, other than Painters District Councils 3 and 80 and Painters Local 76 as admitted by Midwest Drywall, agreed to the terms of a collective bargaining agreement with Midwest Drywall, much less signed one. In the absence of that showing, there can be no other foreign collective bargaining agreements to enforce through the No. 159 CBA 50-50 Clause.

### C.    The No. 159 CBA 50-50 Clause Is Susceptible to More Than One Reasonable Interpretation and Is Therefore Ambiguous.

A contract is ambiguous if it is "reasonably susceptible of different constructions or interpretations", *Consolidated Gas Transmission Corp. v. F.E.R.C.*, 771 F.2d 1536, 1544 (D.C. Cir. 1985); and *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46 (D.D.C. 2006). The language in the No. 159 CBA entered into by and between Midwest Drywall and Painters Local 159 contains ambiguities in Article IV, Section 1(b) in relationship to language in other provisions in the No. 159 CBA.

What "work" is covered by Article IV, Section 1(b)? The opening paragraph of the Article limits Article IV to "painting work." Article II, Section 1(a) describes "painting work", which is separate from taping or drywall finishing work. Further, the work described in Article II may not be the same as the work covered by an agreement between a foreign local union and another employer. Also, what if the work performed by Midwest Drywall's employees in a foreign jurisdiction, such as drywall finishing and taping, is covered by a collective bargaining agreement between Midwest Drywall and another craft union, such as a Carpenter Local Union? What if Midwest Drywall's employees performing the "work" in a foreign jurisdiction have voted in an NLRB conducted election not to be represented by a union?

27

What is meant in Article IV, Section 1(b) by "lawful clauses of the collective bargaining agreement"? That phrase by use of the words "lawful clauses" incorporates, among other issues of law, the NLRA requirement that there be a mutual collective bargaining relationship between Midwest Drywall and a foreign local union sufficient to establish an 8(f) agreement enforceable as to employees who performed the "work." Also, those words are relevant to potential contractual restrictions on subcontracting. The No. 159 CBA contains restrictions on subcontracting (Exhibit 3, Article XVI and Article XIX, Section 3). Similar restrictions may be a part of a foreign jurisdiction agreement with another employer. To impose a lawful restriction on subcontracting by Midwest Drywall, pursuant to the NLRA, a foreign union must have a collective bargaining relationship with Midwest Drywall. *Connell Construction Company Inc. v. Plumbers and Steamfitters Local Union No. 100, supra,* at 633.

Requiring Midwest Drywall to abide by all collective bargaining agreements in effect in any foreign jurisdiction and executed by the employers of the industry and local unions in that foreign jurisdiction also creates ambiguity as to what foreign agreement would bind Midwest Drywall. In many if not most geographic jurisdictions, a local union will have collective bargaining relationships with more than one employer. Although the No. 159 CBA 50-50 Clause provides in part "all of the lawful clauses of the collective bargaining agreement in effect in said other geographical jurisdiction and executed by the employers in the industry and the local unions in that jurisdiction", some employers may be parties to the same collective bargaining agreement, others may not. If that language were to bind Midwest Drywall to "the collective bargaining agreement" that a foreign local union has signed with any employer in its jurisdiction where a foreign local union has signed multiple agreements, which agreement applies? The Pension Fund's claim creates that ambiguity but provides no way to resolve it.

As the Court of Appeals for the Sixth Circuit noted in construing an outside jurisdiction clause, "the first sentence of the BAC Traveling Contractor clause is susceptible to more than one

interpretation" because the "phrase 'within the area covered by an agreement with another affiliate of the [BAC]' could refer to an agreement between [the employer] and the BAC affiliate, or it could refer to an agreement between any employer and the BAC affiliate." *The Trustees of the B.A.C. Local 32 Insurance Fund v. Ohio Ceiling and Partition Co., supra.*

Given these ambiguities, the court may consider the intent of the parties to interpret the meaning of the No. 159 CBA 50-50 Clause. *Flynn v. Dick Corporation*, 481 F.3d. 824, 839 (D.C. Cir. 2007). See, e.g., *United States v. Insurance Company of North America.*, 131 F.3d 1037, 1042 (D.C. Cir. 1997).

       1. **The Intent of Painters Local 159 Is That No Contributions Are Due From Midwest Drywall in the Absence of a Signed Foreign Jurisdiction CBA.**

Representations by Painters Local 159 to Midwest Drywall provide facts that resolve the above ambiguities. Said facts establish that before a foreign agreement is enforceable as to Midwest Drywall and its employees, Midwest Drywall and the foreign local union must first establish a mutual collective bargaining relationship and then enter into a collective bargaining agreement.

In a letter dated November 3, 1999, to Midwest Drywall, Painters Local 159's representative, Leonard Wittman, stated:

> "Local 159 is in contact with Mr. Pat Stoysich of Local 109 in Omaha Nebraska who states he has spoken to your company about becoming signatory to his Local. As you can see our Article IV, clearly states that your company agrees to abide by the Agreement in place, in the 'outside the geographical area.'
>
> **Please understand it is not the position of Local 159 or that of Local 109 to 'hammer' a contractor into becoming signatory. I am confident that if you or your representative would meet with Mr. Stoysich both sides would come to an agreement."**

(SOMF ¶18.) (Emphasis added.)

When Midwest Drywall thereafter failed to enter into a collective bargaining agreement with the foreign jurisdiction union, Painters Local 159 filed a grievance and proceeded to an arbitration hearing on April 10, 2000, before the Joint Committee. Midwest Drywall through Steven Nienke

provided facts at the hearing as to its negotiations in 1999 with Painters Local 109, that it had not

reached an agreement, and that Midwest Drywall had not signed an agreement with Painters Local

109. The Joint Committee stated at the close of the hearing that it determined that Midwest Drywall

had violated the 50-50 Clause because it had not signed an agreement in Omaha with Painters Local

109, it wanted Midwest Drywall to work with Painters Local 109 to sign a collective bargaining

agreement, and directed Painters Local 159 to work with Painters Local 109 and the International

Brotherhood of Painters & Allied Trades to resolve the continuing violation. After the Hearing,

Leonard Wittman said to Steven Nienke that the Union was "not going to enforce the finding."

(SOMF ¶21.)

Since April, 2000, the Joint Committee has on numerous occasions stated in written

communication to Midwest Drywall that Midwest Drywall is current in its payment of fringe

benefits. (SOMF ¶23.) Further, on April 16, 2004, Painters Local 159 in an email to Gary Meyers,

the Pension Fund's Administrator, stated that Midwest Drywall is "living up to the terms and

conditions (including wage and benefit increases) of the new agreement". (SOMF ¶24.) Midwest

Drywall has relied on these representations concerning the application of Article IV in the No. 159

CBA as it has subsequently established collective bargaining relationships with other local unions

outside the jurisdiction of Painters Local 159 and has entered into collective bargaining agreements

with Painters Local 76 and with the UBCJA and its affiliated local unions covering taper and drywall

finishing work. (SOMF ¶¶ 25, 26, 27, 28, 29, 30, 31, 32, 34, 35 and 36.)

> **2.    The No. 159 CBA 50-50 Clause as Interpreted by the Painters and
> Decorators Joint Committee, Inc. Requires Midwest Drywall and
> Foreign Local Unions to Establish a Collective Bargaining Relationship
> and to Enter Into a Collective Bargaining Agreement Before
> Determination of Lost Wages and Benefits.**

The Pension Fund's claim that Article IV, Section 1(b) requires Midwest Drywall to comply

with a collective bargaining agreement executed by the employers of the industry and a foreign local

union, even though Midwest Drywall does not have a collective bargaining relationship with that

union and has not entered into a collective bargaining agreement with that foreign local union is also contrary to the Joint Committee's interpretation of the No. 159 CBA 50-50 Clause.

In March, 2000, Midwest Drywall was notified that charges had been brought against it by Painters Local 159 for violation of the No. 159 CBA, Article IV -50-50 Clause, Section 1 and that a hearing would be held by the Joint Committee. The No. 159 CBA in Article XXV, Section 6 vests in the Joint Committee the power to adjust all disputes and grievances that may arise out of the application or interpretation of the collective bargaining agreement and that the decision of the Joint Committee is final and binding on both parties to the agreement. (SOMF ¶20.)

On April 10, 2000, a hearing was held before the Joint Committee and Midwest Drywall was informed that Painters Local 159 asserted a violation of the No.159 CBA, Article IV, Section 1(b) by Midwest Drywall's continuing failure to enter into collective bargaining agreement with Painters Local 109 in Omaha, Nebraska. The Joint Committee stated at the close of the hearing that it determined that Midwest Drywall had violated the 50-50 Clause because it had not signed an agreement in Omaha with Painters Local 109, it wanted Midwest Drywall to work with Painters Local 109 to sign a collective bargaining agreement, and directed Painters Local 159 to work with Painters Local 109 and the International Brotherhood of Painters & Allied Trades to resolve the continuing violation. (SOMF ¶21.)

The April, 2000 Joint Committee Decision and Order is evidence that Painters Local 159 was not found to be the collective bargaining representative for Midwest Drywall's foreign jurisdiction employees and/or a bargaining agent for a foreign local union. As described in the first paragraph of the Decision, Painters Local 159 asserted as a violation of the No. 159 CBA Article IV, Section 1(b), (50-50 Clause) Midwest Drywall's "continuing failure to enter into a collective bargaining agreement and comply with its lawful clauses for painting and taping work performed by Midwest Drywall on projects located in or near Omaha Nebraska …" (Exhibit 13, p.1.) If Painters Local 159 had viewed itself or was considered by the Joint Committee as the collective bargaining

representative for Midwest Drywall employees in Omaha and/or the bargaining agent for the Omaha local union, Painters Local 159 would have asserted that Midwest Drywall had already entered into a foreign collective bargaining agreement by its agreement with Painters Local 159 and the Joint Committee would have so found. But that was not what Painters Local 159 asserted and that is not what the Joint Committee found.

In its April, 2000 Decision and Order, the Joint Committee in its finding concluded that Midwest Drywall "had not entered into nor become bound by the Other Jurisdiction Agreement of IBPAT Local Union No. 109" (Exhibit 13, p. 2) and ordered Midwest Drywall and the Union "to forthwith initiate good faith discussion" with Painters Local 109 to resolve Midwest Drywall's continuing violation of the agreement. (Exhibit 13, p. 3.) Without Midwest Drywall establishing a collective bargaining relationship and entering into and becoming bound to the outside jurisdiction agreement, the Joint Committee did not impose the cost of foreign wages and benefits on Midwest Drywall. Such an interpretation of the No. 159 CBA 50-50 Clause is consistent with the requirements for a lawful collective bargaining agreement under the NLRA.

The Constitution of the International Union of Painters and Allied Trades in Section 236(a) provides that a Painters District Council or Painters Local Union "shall enter into Collective Bargaining Agreements only with contractors or employers, whose principal place of business is located within the geographical jurisdiction of such District Council or Local Union" and may enter into agreements with an out-of-jurisdiction employer only under prescribed conditions including sending "to the District Council or Local Union in whose jurisdiction the employer's principal place of business is located notification that the agreement has been signed and a complete, signed copy of that agreement." (Exhibit 7, p. 150.)

The No. 159 CBA in Article IV, Section 1, provides in part:

"It being understood that the principle place of business and the employment of the employer is in the area jurisdiction as stated, . . ."

The area jurisdiction as stated in the No. 159 CBA in Article III, Section 1, includes "Clark County, Lincoln County, Nye County, Esmeralda County, in the State of Nevada and any other area jurisdiction awarded to Painters Local Union #159, by the International Brotherhood of Painters and Allied Trades." (Exhibit 3, pp. 4-5.)  Thus, pursuant to the Constitution of the International Union of Painters and Allied Trades, Midwest Drywall was an out-of-jurisdiction employer to any Painters District Council or Painters Local Union other than Painters Local 159. Any foreign Painters District Council or Painters Local Union could not have an agreement with Midwest Drywall unless it had a signed agreement with Midwest Drywall and sent a completed and signed copy of the agreement to Painters Local 159. Therefore, the Constitution of the International Union of Painters and Allied Trades recognizes the necessity of establishing a collective bargaining relationship and entering into an agreement before an employer becomes bound to an outside jurisdiction agreement. Thus, the Decision and Order of the Joint Committee is consistent with the International Union's Constitution.

### 3.    The Pension Fund's Claim Conflicts With Other Provisions of the No. 159 CBA.

When the No. 159 CBA is read as a whole, it is apparent that the 50-50 Clause is intended to cover when Midwest Drywall has signed a collective bargaining agreement with a foreign local union or when Painters Local 159's members travel and work as employees of Midwest Drywall outside Painters Local 159's jurisdiction.

In interpreting contracts generally and collective bargaining agreements specifically, "sections or portions cannot be isolated from the rest of the agreement and given construction independently of the purpose and agreement of the parties as evidenced by the entire document. … The meaning of each paragraph and each sentence must be determined in relation to the contract as a whole." *Service Employees International Union, Local 722 v. Washington Hospital Center*, 1983 U.S. Dist. LEXIS 16895 (D.C.D.C. 1983).

This does not mean that every provision of a collective bargaining agreement will always be given as broad as possible interpretation or have independent "legal consequences". Restatement (Second) of Contracts § 203(a), comment b. "Even agreements tailored to particular transactions sometimes include overlapping or redundant or meaningless terms." *Id*.

The Pension Fund's claim would bring the No. 159 CBA 50-50 Clause into express conflict with other provisions of the No. 159 CBA that limit the recognition of Painters Local 159 to employees working in its specified geographic area and work jurisdiction. More specifically, the No. 159 CBA 50-50 Clause must be read in conjunction with Article I, Article II, and Article III. This language when read together establishes that Painters Local 159 is the duly authorized representative of employees of the employer performing work in the craft/trade jurisdiction specified in Article II and within the geographical area described in Article III. Further, the No. 159 CBA is made by the Painters Local 159 specifically "for and on behalf of its present and future signatory members" (Article I, Section 1), with Painters Local 159 being recognized within the meaning of Section 9(a) of the NLRA, as the "exclusive representative for the purpose of collective bargaining of all the Employer's employees" employed "in all of the wage classifications and/or the work jurisdiction described" in the agreement (Article I, Section 3, pp. 2-3), and "the employer recognizes the Union as the sole collective bargaining agency between itself and the employees covered under the scope of the Agreement." (Article III, Section 2(a).) (Exhibit 3, p. 4.)

The No. 159 CBA also distinguishes between "each employer signatory to this Agreement" and "non-signatory employers." Signatory employers are bound by the provisions of the No. 159 CBA and non-signatory employers are not subject to the No. 159 CBA. (Exhibit 3, the Preamble; Article I, Section 4; Article X, Section 1; Article XII, Sections 1 and 2; Article XIII, Section 1; Article XV, Section 4; Article XVI, Sections 1 and 6; Article XIX, Sections 2 and 5; Article XXIII, Section 1(b); and Article XXVI, Section 2.)

Therefore, when the No. 159 CBA is read as a whole agreement, it is clear that Painters Local 159 is not the bargaining representative for Midwest Drywall's employees who are nonmembers of Painters Local 159 and who work outside the jurisdiction of Painters Local 159. Also, Painters Local 159 is not authorized or empowered to negotiate agreements for foreign Painters District Councils and Painters Local Unions as an International Agreement or otherwise. The Pension Fund's claim conflicts with the language of the No. 159 CBA. The Pension Fund's claim would be an assertion that Painters Local 159 was bargaining terms and conditions of employment for foreign employees whom it does not represent. The only way to construe the No. 159 CBA 50-50 Clause to cover all of Midwest Drywall's employees working in locations outside the jurisdiction of Painters Local 159 is to ignore the language in the No. 159 CBA and in the Bylaws and Working Rules limiting Painters Local 159's authority.

**D.    The Pension Fund's Claim That Midwest Drywall Is Liable for Contributions for Employees of Subcontractors Who Perform Work Outside the Jurisdiction of Painters Local 159 Is Inconsistent with the Law.**

The Pension Fund's claim that Midwest Drywall is liable for contributions for employees of subcontractors who perform work outside the jurisdiction of Painters Local 159 is contrary to 29 U.S.C. § 186 (which in relevant part provides that it is unlawful for an employer to pay moneys to funds, including to the Pension Fund, when, among other requirements, the payments are not for the sole and exclusive benefit of the employees of such employer) and is illegal in the absence of a mutual collective bargaining relationship between Midwest Drywall and a foreign local union.

The United States Supreme Court in *Connell Construction Company Inc. v. Plumbers and Steamfitters Local Union No. 100, supra,* considered the legality of a subcontractor clause under the construction industry proviso of 29 U.S.C. § 158(e) (Section 8(e) of the LMRA). It was clear to the Court that one of the major aims of the 1959 amendments to the NLRA, including Section 8(e) was to limit "top down" organizing campaigns; this major aim would be seriously undermined if the proviso to Section 8(e) was construed to allow unions to seek subcontracting agreements from

contractors with which it had no collective bargaining relationship. *Id.* at 633. During the time at issue, Midwest Drywall did not have a collective bargaining relationship with Painters Local Unions and/or Painters District Councils other than the one Painters District Council and the two Painters Local Unions identified in Midwest Drywall's Answer. (SOMF ¶¶ 3, 4, 5, 8, 13 and 14.) The Pension Fund's claims are illegal under the NLRA and the LMRA.

> **E.    The Pension Fund Lacks Standing to Bring Suit in Its Own Name When the Alleged Injury Was to Other Funds.**

The above legal arguments are equally applicable to the claims made by the Pension Fund for Ancillary Funds. In addition, Pension Fund lacks standing to bring suit in its own name where the alleged injury was claimed to be to each of the Ancillary Funds. In response to Midwest Drywall's Request for Production of Documents, Request No. 2, the Pension Fund provided no document that established it as the authorized collection agent for any one of the Ancillary Funds named in the Complaint and provided no document evidencing that the Pension Fund owned any Ancillary Fund's cause of action against Midwest Drywall.

As recognized by the Court of Appeals for the Second Circuit in *Flynn v. Anthony Mion & Sons, Inc.*, 112 Fed. Appx. 101, 102 (2004), citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997):

> "A provision by which one person grants another the power to sue on and collect on a claim confers on the grantee a power of attorney with respect to that claim. The grant of power of attorney, however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name." (Citation omitted).

In the present case, the Pension Fund does not "own" the Ancillary Funds' causes of actions under 29 U.S.C. §§ 185 and 1145 and it may not, therefore, bring those claims in its own name. On this additional basis, said claims asserted by the Pension Fund should be also be dismissed.

IV.    **CONCLUSION**

The Pension Fund does not claim that Midwest Drywall failed to pay monies specified in a detailed basis in the collective bargaining agreements Midwest Drywall has entered through mutual collective bargaining relationships with Painters District Councils and Painters Local Unions. The Pension Fund instead asserts its claim solely through the 50-50 Clause in the collective bargaining agreement between Midwest Drywall and Painters Local 159.

The construction of the 50-50 Clause alleged by the Pension Fund not only would require the Court to ignore the full language of the No. 159 CBA, but would force the Court to adopt a construction that violates the NLRA and the LMRA and would be contrary to the Joint Trade Board of the Painters and Decorators Joint Committee, Inc.'s interpretation of the No. 159 CBA.

To require Midwest Drywall to make contributions to the Pension Fund based solely on the No. 159 CBA 50-50 Clause would command conduct that renders the promise an illegal undertaking under the NLRA. Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA prohibit enforcing on employees the terms and conditions of a labor agreement without the existence of a mutual collective bargaining relationship between an employer and the collective bargaining representative of the employer's employees with protection of the employee's Section 7 rights. Enforcement of the Pension Fund's claims based on hours worked by employees outside the jurisdiction of Painters Local 159 violates the NLRA because such enforcement voids the Section 7 rights of employees.

To avoid unlawful enforcement of the No. 159 CBA 50-50 Clause, it should be construed to apply to foreign collective bargaining agreements entered into through collective bargaining relations between Midwest Drywall and a foreign Painters District Council or a foreign Painters Local Union. Midwest Drywall has identified the collective bargaining agreements it has entered with foreign Painters District Councils or foreign Painters Local Unions through collective bargaining relationships and it is undisputed that Midwest Drywall has made all contributions as specified in a

detailed basis in said collective bargaining agreements during the period of time of the Pension

Fund's claim. For Midwest Drywall to make any other payments would be illegal.

WHEREFORE, Midwest Drywall respectively requests that the Court grant its Motion for

Summary Judgment and dismiss Plaintiff's Complaint in its entirety and with prejudice.

Respectively submitted,

By    s/Robert D. Overman
Robert D. Overman
KS Bar No. 08155
MORRIS, LAING, EVANS, BROCK &
KENNEDY, CHTD.
300 N. Mead, Suite 200
Wichita, Kansas  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226
E-mail:  roverman@morrislaing.com

Charles F. Walters
D.C. Bar No. 444529
SEYFARTH SHAW, LLP
815 Connecticut Avenue, N.W., Suite 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 828-5393
E-mail:  cwalters@seyfarth.com

January 24, 2008                    *Attorneys for Defendant Midwest*
                                    *Drywall Co., Inc.*

38

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | Civil Action No. 06-131 (GK) |
| v. | ) ) ) | Next-Scheduled Court Deadline Filing Dispositive Motions: January 30, 2008 |
| MIDWEST DRYWALL CO., INC. | ) ) | |
| Defendant. | ) ) | |

_____

### DEFENDANT MIDWEST DRYWALL CO., INC.'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Defendant, Midwest Drywall Co., Inc. (Midwest Drywall), by its undersigned attorneys and pursuant to Local Civil Rule 7(h) and all other applicable rules, hereby submits its Statement of Material Facts As To Which There Is No Genuine Issue.

1.    Midwest Drywall is a drywall specialty contractor headquartered in Wichita, Kansas with its employees engaged in construction work in and outside the State of Kansas and with local offices in other states. (S. Nienke's Dec. ¶ 2.)

2.    Plaintiff, International Painters and Allied Trades Industry Pension Fund (Pension Fund), brings this suit on behalf of said Pension Fund and also asserts claims as to funds described as Ancillary Funds. (Compl. ¶¶ 4 and 10.)

3.    In 1986, Midwest Drywall pursuant to 29 U.S.C. § 158(f) established a collective bargaining relationship and entered into a collective bargaining agreement with Painters District Council No. 3, International Brotherhood of Painters & Allied Trades, AFL-CIO, CLC (Painters

District Council No. 3) with successor negotiated agreements and after November 24, 1993, Midwest Drywall pursuant to 29 U.S.C.§ 159(a) established a collective bargaining relationship and entered into collective bargaining agreements with Painters District Council No. 3 with the agreements' jurisdiction extending to specified counties in Missouri and Kansas including cities of Kansas City, Kansas and Kansas City, Missouri. The collective bargaining agreement entered into by Midwest Drywall (through the Builders' Association) and Painters District Council No. 3 did not contain any basis upon which payments were to be made to the Pension Fund, but did provide that Midwest Drywall was required to make contributions for its employees working within the jurisdiction of the agreement to the Labor Management Cooperative Fund (LMCF) and Midwest Drywall made contributions as specified in said collective bargaining agreement. (S. Nienke's Dec. ¶ 3 and Exhibit 1, document Bates numbered MWD0194 and MWD0196 to MWD0212.)

4.      In 1984, Midwest Drywall pursuant to 29 U.S.C. § 158(f) established a collective bargaining relationship and entered into a collective bargaining agreement with International Union of Painters and Allied Trades, AFL-CIO, CLC District Council 3, Local Union 76 (Painters Local 76) with successor negotiated agreements and since May 19, 2003, Midwest Drywall pursuant to 29 U.S.C. § 159(a) has established a collective bargaining relationship and entered into collective bargaining agreements with said labor organization with the agreements' jurisdiction extending to specified counties in Kansas including the city of Wichita. The collective bargaining agreements entered into by Midwest Drywall and Painters Local 76 do not contain any basis upon which payments are to be made to the Pension Fund. In a prior written collective bargaining agreement entered into by Midwest Drywall and Painters Local 76, Midwest Drywall agreed to make, as specified in said collective bargaining agreement for employees covered by said collective bargaining agreement, contributions to the International Union of Painters and Allied Trades Joint

Apprenticeship and Training Fund (IUPAT-JATF) and to the International Union of Painters and Allied Trades LMCF and made contributions as specified in said collective bargaining agreement. In the current collective bargaining agreement entered into by Midwest Drywall and Painters Local 76, Midwest Drywall agreed to make contributions as specified in said collective bargaining agreement to the IUPAT-JATF and has made contributions as specified in said collective bargaining agreement. (S. Nienke's Dec. ¶ 4 and Exhibit 2, document Bates numbered MWD0265 to MWD0290.)

   5.  In April, 1998, Midwest Drywall pursuant to 29 U.S.C. § 158(f) established a collective bargaining relationship and entered into a collective bargaining agreement with the International Union of Painters and Allied Trades, AFL-CIO,CLC Local Union #159, affiliated with District Council 15, (Painters Local 159) covering its employees performing certain work including drywall painting, taping, and finishing in an area extending to specified counties in Nevada including the city of Las Vegas. The collective bargaining agreement entered into by Midwest Drywall and Painters Local 159 contains detailed basis, as to each employee engaged in work covered by said agreement, on which contributions are to be made to the Pension Fund. (Exhibit 3, document Bates numbered MWD0005 to MWD0044.) Midwest Drywall has complied with said provisions. In the collective bargaining agreement entered into by Midwest Drywall and Painters Local 159, Midwest Drywall also agreed to make contributions for employees covered by said agreement to the LMCF, to honor authorizations for check-off of political contributions from employees who are union members to the Political Action Together – Political Committee (PAT-PC). Midwest Drywall has complied with said provisions. In reference to the employees represented by Painters Local 159 and employed by Midwest Drywall within the geographical jurisdiction of Painters Local 159, during the time period of the Pension Fund's claims none of these employees were brought by Midwest Drywall to

work in an outside jurisdiction. (S. Nienke's Dec. ¶¶ 5 and 6 and Exhibit 4, Report by Steven D. Reiger (Certified Public Accountant), document Bates numbered MWD9367 and MWD9380.)

6.      Local Union No. 159 of the International Union of Painters and Allied Trades, AFL-CIO, adopted Bylaws and Working Rules on March 1, 2003 as approved by the International Union of Painters and Allied Trades in February, 2003. (Exhibit 5, document Bates numbered MWD9176 to MWD9230.)

7.      In 1998, Midwest Drywall pursuant to 29 U.S.C. § 158(f) established collective bargaining relationships and entered into collective bargaining agreements that included in their jurisdiction Las Vegas, Nevada with the Southern California-Nevada Regional Council of Carpenters and Affiliated Local Unions, United Brotherhood of Carpenters and Joiners of America, Labors International Union of North America, Local Union No. 872, and Operative Plasters and Cement Masons International Association, Local Union 797. (S. Nienke's Dec. ¶ 7.)

8.      In July, 1999, Midwest Drywall established a collective bargaining relationship with Painters District Council 80, International Brotherhood of Painters & Allied Trades, AFL-CIO, CLC (Painters District Council 80) and entered into a collective bargaining agreement titled "Memorandum of Understanding and Area Contract" with Painters District Council 80 effective from July 13, 1999, until the substantial completion of Midwest Drywall's work on the FDA Jefferson Laboratories, Jefferson, Arkansas job. Midwest Drywall has paid all contributions to funds as specified in the Memorandum of Understanding, including contributions to the Pension Fund. (S. Nienke's Dec. ¶ 8 and Exhibit 6, document Bates numbered MWD0877.)

9.      The International Union of Painters and Allied Trades has established a governing Constitution. (Exhibit 7, document Bates numbered MWD0416 to MWD0681.)

10. Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the collective bargaining agent for Midwest Drywall's employees who work solely in locations outside the jurisdiction of Painters Local 159. (S. Nienke's Dec. ¶ 9.)

11. Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the authorized agent for foreign Painters District Councils and/or Painters Local Unions. (S. Nienke's Dec. ¶ 10.)

12. Painters District Council 3, Painters District Council 80, and Painters Local Union 76 have not represented to Midwest Drywall that Painters Local 159 was or is the collective bargaining agent for Midwest Drywall's employees working in their jurisdictional areas or was or is their authorized agent for collective bargaining. (S. Nienke's Dec. ¶ 11.)

13. Midwest Drywall is not signatory to and has not entered into any national agreement with the International Painters and Allied Trades Union. The Pension Fund does not claim that Midwest Drywall has done so. (S. Nienke's Dec. ¶ 12 and Compl.)

14. In reference to District Councils and Local Unions affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC, Midwest Drywall has only had collective bargaining relations with and entered into collective bargaining agreements with Painters District Council 3, Painters District Council 80, Painters Local 76, and Painters Local 159/District Council 15. (S. Nienke's Dec. ¶ 13.)

15. In the summer of 1999, at Midwest Drywall's Omaha, Nebraska office, Midwest Drywall's President, Steven Nienke, met with International Union of Painters and Allied Trades, Local Union #109 (Painters Local 109) representative, Pat Stoysich, and his boss and discussed a proposed Painters Local 109 collective bargaining agreement including jurisdiction: what it would cover and what it would require. Painters Local 109 gave Steven Nienke a copy of a proposed

Agreement to cover drywall taper and/or finisher work or installing and/or finishing of exterior insulation finish systems (E.I.F.S.) in specified counties in Iowa and Nebraska, including the city of Omaha, Nebraska. (Exhibit 8, document Bates numbered MWD1182 to MWD1199.) Steven Nienke told Painters Local 109 that he didn't have a problem with the painting work part of the proposed Agreement, but he did have a problem with the EIFS-exterior insulating finish system because where Midwest Drywall did EIFS work (for example in Las Vegas) that work was under the jurisdiction of the Plasters Local Union, it was not painters' work, and to have EIFS work added to painting work in an Agreement with the Painters would cause problems for Midwest Drywall. Pat Stoysich responded that EIFS work was the way the Agreement was written and he would not negotiate it out. Steven Nienke told Painters Local 109 that he was there to negotiate an Agreement as to painting work; he had no problem signing an Agreement that day only as to painting work. Pat Stoysich said he would check with Painters Local 109's attorney and telephone Steven Nienke later that day. Later, Pat Stoysich telephoned Steven Nienke and said that there was no way Painters Local 109 would change its proposed Agreement, it had to cover EIFS work, too. No Agreement was agreed to between Midwest Drywall and Painters Local 109. (S. Nienke's Dec. ¶ 14.)

16.    In a letter dated September 28, 1999, and sent to Midwest Drywall's President, Steven Nienke, Leonard Wittman, representative of Painters Local 159, stated:  "It has been brought to my attention that your company was engaged in contracting work covered by the collective bargaining agreement between Midwest Drywall and Painters Local 159 and that Midwest Drywall Co., Inc. appears to be in violation of that agreement to wit: Article IV 50/50 Clause, Section 1 (b)", and requested Midwest Drywall to "notify this office that this oversight has been rectified by close of business October 8, 1999 to avoid further action by Local 159." (S. Nienke's Dec. ¶ 15 and Exhibit 9, document Bates numbered MWD0001.)

6

17.    In a letter dated October 4, 1999, sent to Leonard Wittman, Steven Nienke, President of Midwest Drywall, stated that "Midwest Drywall Co., Inc. denies that it has violated any lawful terms of and/or intent of the collective bargaining agreement with Painters Local No. 159" and asked Painters Local 159 what it claimed Midwest Drywall had done that was a violation of that agreement and when it claimed the violation had occurred and requested a prompt response. (S. Nienke's Dec. ¶ 16 and Exhibit 10, document Bates numbered MWD0003.)

18.    In a letter dated November 3, 1999, to Steven Nienke, Leonard Wittman, stated to Midwest Drywall that:

> "Local 159 is in contact with Mr. Pat Stoysich of Local 109 in Omaha Nebraska who states he has spoken to your company about becoming signatory to his Local. As you can see our Article IV, clearly states that your company agrees to abide by the Agreement in place, in the 'outside the geographical area.'
>
> Please understand it is not the position of Local 159 or that of Local 109 to 'hammer' a contractor into becoming signatory. I am confident that if you or your representative would meet with Mr. Stoysich both sides would come to an agreement." (S. Nienke's Dec. ¶ 17 and Exhibit 11, document Bates numbered MWD0004.)

19.    In a letter dated November 8, 1999, to Leonard Wittman, Midwest Drywall's President, Steven Nienke, stated to Painters Local 159:

> "For your information purpose, prior to your recent correspondence, Midwest Drywall met with Local 109 representatives in Omaha, Nebraska for collective bargaining. Midwest Drywall offered to sign a collective bargaining agreement with Local 109 including lawful clauses of an Agreement. Its offer is still there for Local 109 to accept." (S. Nienke's Dec. ¶ 18 and Exhibit 12, document Bates numbered MWD0045.)

20.    In March, 2000, Midwest Drywall was notified that charges had been brought against it for violation of the collective bargaining agreement between Midwest Drywall and Painters Local 159, Article IV, 50-50 Clause, Section 1, and that a hearing would be held by the Painters and Decorators Joint Committee, Inc. (Joint Committee). The collective bargaining agreement between Midwest Drywall and Painters Local 159 in Article XXV, Section 6(A), vests in the Joint Committee

the power to adjust all disputes and grievances that may arise out of the application or interpretation of the Agreement and that the decisions of the Joint Committee shall be final and binding on both parties to the Agreement. (S. Nienke's Dec. ¶ 19 and Exhibit 3, at Bates numbers MWD0038 to 0039.)

21.    On April 10, 2000, a hearing was held before the Joint Committee and Midwest Drywall was informed that Painters Local 159 asserted a violation of the collective bargaining agreement, Article IV, Section 1(b), (50-50 Clause), caused by Midwest Drywall's continuing failure to enter into a collective bargaining agreement with Painters Local 109 in Omaha, Nebraska. Midwest Drywall through its President, Steven Nienke, provided facts at the hearing as to its negotiations in the summer of 1999 with Painters Local 109, that they had not reached an agreement, and that Midwest Drywall had not signed an agreement with Painters Local 109.  The Joint Committee stated at the close of the hearing that it determined that Midwest Drywall had violated the 50-50 Clause because it had not signed an agreement in Omaha with Painters Local 109, it wanted Midwest Drywall to work with Painters Local 109 to sign a collective bargaining agreement, and directed Painters Local 159 to work with Painters Local 109 and the International Brotherhood of Painters & Allied Trades to resolve the continuing violation. After the Hearing, Leonard Wittman said to Steven Nienke that the Union was "not going to enforce the finding." (S. Nienke's Dec. ¶ 20.)

22.    The Joint Committee issued its Decision and Order on April 14, 2000, (Exhibit 13, document Bates numbered MWD0110 to MWD0113.) After receipt of the Decision and Order of the Joint Committee, Midwest Drywall was not contacted further by the Joint Committee, by a Painters Local 159 representative, by a Painters Local 109 representative, or by an IBPAT representative as to the finding of the Joint Committee.  The Joint Committee retained jurisdiction of the matter for

purpose of entering a final order and enforcement. No further action was taken by the Joint

Committee, by Painters Local 159, or by Painters Local 109. (S. Nienke's Dec. ¶ 21.)

23.    Since April, 2000, the Joint Committee has on numerous occasions stated in written

communication to Midwest Drywall that Midwest Drywall is current in its payment of fringe benefits

(S. Nienke's Dec. ¶ 22 and Exhibit 14, documents Bates numbered MWD9381 to MWD9382,

MWD9536 to MWD9542, and documents labeled "A" to "F" from CD Bates numbered MWD4121,

documents labeled "G" to "P" from CD Bates numbered MWD4123, and documents labeled "Q" to

"CC" from CD Bates numbered MWD4123A.)

24.    On April 16, 2004, Painters Local 159 in an email to Gary Meyers, the Administrator

of the Pension Fund, stated that Midwest Drywall is "living up to the terms and conditions (including

wage and benefit increases) of the new agreement." (Exhibit 15, document Bates numbered PF1079.)

25.    Midwest Drywall has relied upon Painters Local 159's promise and representations

concerning the application of Article IV, 50-50 Clause. (S. Nienke's Dec. ¶ 23.)

26.    In 1999, Midwest Drywall pursuant to 29 U.S.C. § 158(f) established a collective

bargaining relationship and entered into collective bargaining agreements with the Heartland

Regional Council of Carpenters affiliated Local 444 of the United Brotherhood of Carpenters and

Joiners of America (Carpenters Local Union No. 444) covering work performed in specified counties

in Iowa and Nebraska that included the city of Omaha, Nebraska. (Exhibit 16, document Bates

numbered MWD1315 to MWD1326, MWD0962 to MWD1000, and MWD1253 to MWD1297.)

27.    In a letter dated November 30, 2001, Carpenters Local Union No. 444 submitted

evidence to Midwest Drywall that it represented a majority of Midwest Drywall's tapers. (Exhibit 17,

document Bates numbered MWD0118 to MWD0121.) Thereafter, Midwest Drywall pursuant to 29

U.S.C. § 158(f) entered into a collective bargaining agreement with Carpenters Local Union Nos.

444 and 1055 covering certain work, including drywall taping, finishing and sanding in a defined

geographical area in Nebraska and Iowa. (S. Nienke's Dec. ¶ 23 and Exhibit 18, documents Bates

numbered MWD0122 to MWD0141.)

       28.     On May 31, 2003, the collective bargaining agreement between Midwest Drywall and

Carpenters Local Union Nos. 444 and 1055 expired. On June 2, 2003, the Carpenters Local Union

Nos. 444 and 1055 filed with the National Labor Relations Board's (NLRB) Regional Office a

Petition for an election. The NLRB held an election by secret ballot on June 27, 2003, among the

employees in the appropriate unit. A majority of the valid votes counted were not cast for the union.

Carpenters Local Union Nos. 444 and 1055 filed objections to the conduct of the election with the

NLRB's Regional Office. The NLRB directed that a hearing be held on the objections to the election

in the agreed upon appropriate unit that included carpenters and drywall finishers. (Exhibit 19,

document Bates numbered MWD7488 to MWD7490.) The NLRB's Regional Office conducted a

hearing on the objections, issued recommendations, and the NLRB on September 10, 2003, issued its

Decision finding that a majority of the valid ballots were not cast for Carpenters Local Union Nos.

444 and 1055 and it is not the exclusive representative of the bargaining unit employees. (Exhibit 20,

document Bates numbered MWD0142 to MWD0143.)

       29.     During the term of its collective bargaining agreements with Carpenters Local Union

Nos. 444 and 1055, Midwest Drywall made contributions for employees performing work covered by

the agreements including drywall finishers and tapers, to the Omaha Construction Industry Pension

Fund in accord with the negotiated and signed collective bargaining agreements. After the

termination of the collective bargaining agreement, Midwest Drywall reached an agreement with the

Omaha Construction Industry Pension Fund as to assessment of withdrawal liability and paid an

additional $490,000.00 into said Pension Fund. (S. Nienke's Dec. ¶ 24 and Exhibit 21, document

Bates numbered MWD0144 to MWD0147.)

30.    Midwest Drywall has had collective bargaining relationships with other affiliated

District/Regional Councils/or Local Unions of the United Brotherhood of Carpenters and Joiners of

America dating back to 1973. Pursuant to 29 U.S.C. § 159(a) and NLRB's certification of the unions

as the exclusive bargaining representative for employees in appropriate bargaining units including

drywall finishing, Midwest Drywall entered into collective bargaining agreements with the United

Brotherhood of Carpenters and Joiners of America, AFL-CIO, Kaw Valley & Vicinity District

Council of Carpenters, Locals #918, #1445, and #2279 covering work performed by its employees

including drywall finishing in specified counties in north central and eastern Kansas (outside of

Kansas City). (S. Nienke's Dec. ¶ 25 and Exhibit 22, document Bates numbered MWD0148,

MWD0152 to MWD0168, MWD0170, MWD0171 to MWD0187, MWD0149 to MWD0150 and

MWD3780 to MWD3800.)

31.    On January 30, 2007, the International Union of Painters and Allied Trades, District

Council 15 (Painters District Council 15) proposed language to Midwest Drywall's representative for

negotiations, Thomas G. Pfundstein (Senior Executive Director, Painting and Decorating Contractors

of America, Southern Nevada Chapter), for a Memorandum of Understanding between Painters

District Council 15 (which includes Painters Local 159) and Midwest Drywall. Painters District

Council 15 represented to Thomas Pfundstein that the proposed Memorandum of Understanding

would be re-established with the new July 1, 2007, Agreement. (S. Nienke's Dec. ¶ 26 and Exhibit

23, documents Bates numbered MWD1200 to MWD1201.)

32.    On February 8, 2007, Painters District Council 15 and Midwest Drywall entered into

a Memorandum of Understanding that provides:

11

"This Memorandum of Understanding between International Union of Painters and Allied Trades, District Council 15 (the Union) and Midwest Drywall (the Employer) constitutes a waiver of Article 4 of the current Painters and Decorators Master Agreement, to which the Employer is signatory. The parties agree that this Memorandum shall be in effect for the current Agreement, for the duration of the Agreement." (S. Nienke's Dec. ¶ 27 and Exhibit 24, document Bates numbered MWD0377.)

33.    In reliance upon the representations made by Painters District Council 15 to Midwest Drywall's collective bargaining representative, Midwest Drywall agreed to and signed an Assignment of Bargaining Rights authorizing the Negotiating Committee of the Southern Nevada Chapter of The Painting and Decorating Contractors of America to represent it in negotiations in 2007 with Painters Local 159. (S. Nienke's Dec. ¶ 28 and Exhibit 25, document Bates numbered MWD1202 to MWD1203.)

34.    On July 12, 2007, after the new July 1, 2007, Master Agreement was agreed with Painters Local 159, Thomas Pfundstein informed Midwest Drywall that Painters Local 159 and Painters District Council 15's representative, John Smirk, stated that he would re-issue a new Memorandum of Understanding for the new agreement. (S. Nienke's Dec. ¶ 29 and Exhibit 26, document Bates numbered MWD1204.)

35.    In the spring of 2007, United Brotherhood of Carpenters and Joiners of America District Councils and Local Unions engaged in informational picketing at various job sites in multiple states where Midwest Drywall employees were performing work on construction projects. Because of this and other reasons, in June, 2007, Midwest Drywall's President, Steven Nienke pursuant to 29 U.S.C. § 158(f) established a collective bargaining relationship with the United Brotherhood of Carpenters and Joiners of America (UBCJA) and the UBCJA proposed an International Agreement to Midwest Drywall. (S. Nienke's Dec. ¶ 30 and Exhibit 27, document Bates numbered MWD1426 to MWD1447.)

36.    On June 28, 2007, Midwest Drywall and the UBCJA agreed to a Memorandum of Understanding wherein, in addition to other provisions, Midwest Drywall agreed to become signatory to a No. 1 International Agreement and a Drywall Addendum with the UBCJA for the period July 1, 2007 to June 30, 2011, to cover all work within the jurisdiction of the UBCJA, "including but not limited to drywall hanging, drywall finishing and wet wall finish work (plastering)" and that said "provision regarding drywall finish and plastering will not apply in those areas where the Company (Midwest Drywall) is already signed to an agreement with another labor organization as long as such an agreement remains in effect." Midwest Drywall became signatory to No. 1 International Agreement with the UBCJA on July 1, 2007. (S. Nienke's Dec. ¶ 31 and Exhibit 28, documents Bates numbered MWD0817 to MWD0823.)

37.    The Pension Fund in response to Midwest Drywall's Request for Production of Documents to Plaintiff has not produced any document showing that a Painters District Council and/or Painters Local Union, outside the jurisdictional area of Painters Local 159, agreed to the terms of a collective bargaining agreement with Midwest Drywall, much less signed one. (Exhibit 29, International Painters and Allied Trades Pension Fund Responses and Objections to Midwest Drywall Co., Inc.'s First Request for Production of Documents to Plaintiff.)

38.    The Pension Fund does not own the causes of action for any of the Ancillary Funds named in the Complaint. (Exhibit 29, International Painters and Allied Trades Pension Fund Responses and Objections to Midwest Drywall Co., Inc.'s First Request for Production of Documents to Plaintiff, Exhibit 30, documents Bates numbered PF1022 to PF1040, Exhibit 31, documents Bates numbered PF1041 to 1058, and Exhibit 32, documents Bates numbered PF1294 to PF1310.)

Respectively submitted,

By  s/Robert D. Overman
Robert D. Overman
KS Bar No. 08155
MORRIS, LAING, EVANS, BROCK &
KENNEDY, CHTD.
300 N. Mead, Suite 200
Wichita, Kansas  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226
E-mail:  roverman@morrislaing.com

Charles F. Walters
D.C. Bar No. 444529
SEYFARTH SHAW, LLP
815 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 828-5393
E-mail:  cwalters@seyfarth.com

January 24, 2008                     *Attorneys for Defendant Midwest*
                                     *Drywall Co., Inc.*