# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) ) | Civil Action No. 06-131(GK) **Next – Scheduled Court Deadline** |
| Plaintiff, | ) | **Dispositive Motions: January 30, 2008** |
| v. | ) ) | |
| MIDWEST DRYWALL CO., INC. | ) ) | |
| Defendant. | ) | |

## DECLARATION OF GARY J. MEYERS

GARY J. MEYERS, declares:

1. I am the Administrator of the International Painters and Allied Trades Industry Pension Fund ("Pension Fund" or "Fund"). I have held that position since February 1, 1991. I have been employed by the Fund since January 1979 and have personal knowledge of the Plan and its practices relevant to this lawsuit as a result.

2. The Pension Fund is an "employee benefit pension plan" as defined in Section 3(2)(A)(I) of ERISA, as amended, 29 U.S.C. Section 1002(2)(A)(I), established jointly by the International Union of Painters and Allied Trades, AFL-CIO-CLC ("the International") and the Finishing Contractors Association which represents employers in industry, pursuant to 29 U.S.C. § 186(c)(5). The Pension Fund provides retirement and disability benefits to employees that are members of or otherwise represented by the International and its district councils and local unions.

3. The Pension Fund receives contributions from more than 7,000 employers located throughout the United States and Canada. These contributions are submitted in accordance with more than 787 collective bargaining agreements which were negotiated between and among the

various locals and district councils that are affiliated with the International and various employers and employer associations throughout the United States and Canada.

4. The Pension Fund is administered in the District of Columbia from its principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.

5. The Pension Fund is the authorized collection agent for the Finishing Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI") and Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI" and jointly with FTI, "Ancillary Funds," and together with the Pension Fund, "Funds") pursuant to an agreement by and among the Funds.

6. The FTI is a jointly administered trust fund established under 29 U.S.C. § 186(c)(6) and was created to provide, promote and advance education, instruction, materials and assistance to individuals and apprentice training funds in the industry throughout the United States and Canada. A true and correct copy of the FTI Agreement and Declaration of Trust ("FTI Trust Agreement") is attached as Exhibit 4.

7. The LMCI is a trust fund established under 29 U.S.C. § 186(c)(9) and was created to advance the interests of labor/management relationships, industry promotion, training, and other approved purposes consistent with the Labor Management Cooperation Act in industries encompassed by the jurisdiction of the International Union of Painters and Allied Trades ("IUPAT"). A true and correct copy of the LMCI Agreement and Declaration of Trust ("LMCI Trust Agreement") is attached as Exhibit 8.

8. The Pension Fund provides retirement and disability benefits to eligible participants, their spouses and families. The Pension Fund currently has over seventy-four thousand (74,000)

participants and serves over twenty-four thousand two hundred (24,200) retirees and beneficiaries who receive benefits.

9. The benefits provided by the Funds are funded by contributions paid by employers who have an obligation under collective bargaining agreements to which they are bound to make contributions to the Pension Fund based on hours worked or paid to their employees and through earnings from the investment of those contributions.

10. Midwest Drywall Co., Inc. ("Company" or "Midwest") is a Kansas corporation with its principal place of business located at 1351 S. Reca Ct., Wichita, KS 67209, although it operates in many states.

11. For all times relevant to this action, the Company has been signatory to a collective bargaining agreement with IUPAT District Council 15 ("DC 15") and IUPAT Local 159 ("Local 159"). Under the terms of the collective bargaining agreements, the Company is bound to the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan"). True and correct copies of the Pension Fund's Trust Agreement and Plan are attached as Exhibits 6 and 7, respectively. The Company is also bound to the Agreements and Declaration of Trust of the Ancillary Funds. *See* Exhibit 4 (FTI Trust Agreement); Exhibits 5(a)-(d) (labor agreements); Exhibit 8 (LMCI Trust Agreement).

12. The labor agreements require employers to pay contributions to the Funds. Under the labor agreements, contributions are due on all hours worked by or paid to employees covered by the agreement. The labor agreements also include a "50-50 Clause" or "out-of-area" clause that, in pertinent part, requires Midwest to make contributions to the Funds even when Midwest's employees are working outside the geographic jurisdiction of Local 159.

13. Failure to make the required contributions, or the submission of incorrect or late remittance reports and contributions, results in a delinquency to the Funds.

14. By letter dated March 10, 2004, the Funds informed Midwest of their intent to perform an audit in accordance with terms and provisions of the trust agreements. A true and correct copy of the March 10, 2004 letter is attached as Exhibit 12.

15. The Funds conducted an audit of Company's books and records for the period January 1, 2001 through June 30, 2004 which revealed a contribution delinquency of $619,325.96[1]. In addition, the Company owes contribution amounts to each of the Funds for the period July 1, 2004 through to the present date (except for the period February 8, 2007 through June 30, 2007) as a result of Company's continuing violations of the labor agreements. The amounts of these additional obligations have not yet been liquidated as additional audits will need to be performed.

16. The Funds were unaware that any delinquency for Midwest existed until the completion of the audit.

17. The Pension Fund maintains copies of collective bargaining agreements on file for each jurisdiction that requires contributions to be made to the Pension Fund.

18. Midwest owes interest on all delinquent contribution amounts as required by the Funds' rules and regulations.

19. Midwest owes at least $123,856.19 in liquidated damages based on known delinquent contributions in the amount of $619,325.96.

20. The Company also owes audit costs in the amount of $3,484.57. As a signatory to the labor agreements, the Company is obligated to reimburse the Funds for the cost of compliance

---

[1] The contribution delinquency is broken down as follows: Pension Fund--$603,370.43; FTI--$12,722.13; LMCI--$3,233.40. *See* Exhibit 13.

192792-1

4

audits.

21. When an employer fails to remit its contributions, the Funds lose the income that they could have earned by investing the contributions. Combining this loss of investment income with the requirement to continue to pay benefits will eventually affect the actuarial soundness of the Pension Fund as well as deplete resources available to pay current and future retirement benefits. The Ancillary Funds are also affected adversely in their operations and progress by delinquencies of this nature. Furthermore, the Funds incur additional administrative expenses as a result of an employer's failure to pay its contributions. These added costs include substantial time and expense involved in administrative efforts to collect the delinquent contributions. The Funds are not capable of precisely determining these losses and added costs.

22. I have executed this Declaration in support of Plaintiff's Motion for Summary Judgment against Defendant and request this Court to consider the same as proof of the allegations contained in the Complaint and other facts stated in this Declaration.

I declare under penalty of perjury in accordance with 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief

Executed on: 1/30/2008

_____
GARY J. MEYERS