# Exhibit 4

# RESTATED

# AGREEMENT

# AND

# DECLARATION OF TRUST

*INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES*

*JOINT APPRENTICESHIP AND TRAINING FUND*

PF1022

# TABLE OF CONTENTS

| | | |
|---|---|---|
| Page 3 | AGREEMENT AND DECLARATION OF TRUST | |
| Page 4 | ARTICLE ONE: | Definitions |
| Page 5 | ARTICLE TWO: | Establishment of the Fund and Purpose |
| Page 6 | ARTICLE THREE: | Limitation of Rights to Trust Fund |
| Page 6 | ARTICLE FOUR: | Contributions |
| Page 8 | ARTICLE FIVE: | Trustees - Appointment and Removal |
| Page 9 | ARTICLE SIX: | Trustees - Powers and Duties |
| Page 13 | ARTICLE SEVEN: | Trustees - Co-Chairs |
| Page 13 | ARTICLE EIGHT: | Trustees - Reimbursement for Expenses |
| Page 13 | ARTICLE NINE: | Trustees - Voting |
| Page 13 | ARTICLE TEN: | Amendments to the Trust |
| Page 14 | ARTICLE ELEVEN: | Trustees - Meetings and Actions |
| Page 14 | ARTICLE TWELVE: | Trustees - Liability and Responsibility |
| Page 15 | ARTICLE THIRTEEN: | Miscellaneous Provisions |
| Page 16 | ARTICLE FOURTEEN: | Merger |
| Page 16 | ARTICLE FIFTEEN: | Termination of Trust |
| Page 16 | ARTICLE SIXTEEN: | Severability and Savings Clause |
| Page 17 | SIGNATURES | |

# RESTATED AGREEMENT AND DECLARATION OF TRUST

*FOR THE ESTABLISHMENT AND MAINTENANCE OF AN INTERNATIONAL PLAN OF APPRENTICESHIP AND JOURNEYPERSON TRAINING FOR ALL CRAFTS OF THE INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES*

*THIS RESTATED AGREEMENT AND DECLARATION OF TRUST ("the Trust")* is entered into on _____, and effective as of _____, by and between the International Union of Painters and Allied Trades, (hereinafter called the "UNION" or "IUPAT"), and the Finishing Contractors Association (hereinafter called the "FCA") and Employer(s) from the various industries covered by the IUPAT General Constitution, [hereinafter collectively called "EMPLOYER(S)"] of the Crafts referred hereinafter under Article One, Sub Section 1.03 of this Agreement.

This Trust is established under Section 302(c)(6) of the Labor Management Relations Act of 1947, and is intended to be exempt from federal taxation under Section 501(c)(3) of the Internal Revenue Code.

## WITNESSETH:

*WHEREAS*, the UNION and EMPLOYERS through their various and respective local subordinate affiliates situated throughout the United States and Canada have established collective bargaining agreements; and

*WHEREAS*, those agreements have or will have provisions for contributions by the employers bound by those various respective agreements, to Apprentice and Journeyperson Training Funds and Plans; and

*WHEREAS*, the parties hereto recognize the reality of a continuing shortage of qualified and skilled craftsworkers to perform the requirements of the various industries; and

*WHEREAS*, the training of apprentices annually has fallen short of the required skilled journeyworkers in each industry; and

*WHEREAS*, innumerable journeyworker members of the UNION and those engaged in these crafts, have fallen behind in the knowledge and training necessary to keep up with modern scientific developments and progress in new products and application of those products; and

*WHEREAS*, the parties hereto recognize the necessity to train men and women in all classifications and areas who are not now prepared to skillfully carry out the duties of positions in the various industries; and

*WHEREAS*, the parties hereto recognize that the urgency in the industry is broad in scope and that it is their duty to promulgate and establish an apprenticeship and training plan to assist all local areas of the United States of America and Canada in establishing or modifying their present plans so that proper training programs and apprenticeship programs keep up with the technological progress and advancement made in the industry shall be inaugurated and maintained; and

*WHEREAS*, the parties hereto recognize and are in agreement that a International Fund such as that which is established by this Trust is desirable and essential for the benefit of all present journeyworkers, apprentices and others desiring to enter the trades of this industry; and

*WHEREAS*, the parties hereto recognize that local Collective Bargaining Agreements will provide for contributions into the fund established hereby; and

*WHEREAS*, the Trustees selected in accordance with the Trust have signified or will signify their willingness to accept their obligations and the duties of their respective positions as Trustees, upon the terms and conditions enumerated herein; and

*WHEREAS*, the Trustees duly selected in accordance with the Trust have determined, following thorough review and discussion, that modifications to the Trust are necessary and appropriate in order to conform provisions in the Trust to the realities of the marketplace and collective bargaining relationships and provide for a more comprehensive, efficient and productive administration of the Trust; and

*WHEREAS*, in accordance with the powers set forth in Article Ten of the Trust, the Trustees have determined that the amendments and modifications to the Trust set forth in this Restated Agreement and Declaration of Trust are, and shall be, adopted by the parties as of the effective date set forth above;

*NOW, THEREFORE*, in consideration of the premises and of the mutual covenants and agreements herein expressed, the parties hereto agree as follows:

ARTICLE ONE: Definitions

Unless a different meaning is plainly required by the context, the following words and phrases shall have the following meanings in this Trust Agreement:

1.01    COLLECTIVE BARGAINING AGREEMENT - "Collective Bargaining Agreement" means any written labor contract by and between the UNION or its affiliates and Signatory EMPLOYERS.

1.02    CONTRIBUTING EMPLOYER - A "Contributing Employer" means any employer whose employees are covered by any Collective Bargaining Agreement with the UNION or its affiliates and an employer working either as a party to any one of such

ARTICLE TWO:   Establishment of the Fund and Purpose

The parties hereby declare and establish an international apprenticeship and Journeyperson training trust fund to be known as the IUPAT Joint Apprenticeship and Training Fund (or IUPAT JATF), whose purposes shall include but are not limited to:

2.01   Addressing the problem of a continuing shortage of qualified and skilled craftsmen and women to perform the requirements of the various industries in the painting and allied trades;

2.02   Improving the knowledge and training among members of these trades in order to keep up with developments and progress in the technology and application of new products which are or can be utilized in these industries;

2.03   Training members of these trades to skillfully carry out the duties of positions in the various industries;

2.04   Ensuring that all training and apprenticeship programs throughout the United States of America and Canada are maintained at the highest level of quality;

2.05   Encouraging entry into these trades of all individuals desiring to enter them by guaranteeing full and equal access to the various apprenticeship programs for qualified applicants; and,

2.06   Engaging in any other lawful activities incidental or related to the accomplishment of these purposes.

ARTICLE THREE:   Limitation of Rights to Trust

3.01   Neither the parties, their affiliates, officers, employees, members, nor any contributing employer or its employees, or any person claiming by, through or under any of them, shall have any right, title or interest in or to the Fund, upon its termination or at any other time, and no part of the earnings of the Trust Funds shall insure to the benefit of any individual or entity.

3.02   No part of the principal or income of the Fund shall be used for or diverted to purposes other than those specified in this document.

3.03   Neither the Fund nor any of the contributions thereto shall be liable for or subject to any debts, contracts, or liabilities of any of the parties, their affiliates, employees, members, contributing employers or their employees, any trustees, or any person claiming by, through or under any of them.

3.04   The Fund shall not be subject in any manner, by any person whatsoever, to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, lien or charge of any kind. Any attempt to cause the same shall be null and void.

ARTICLE FOUR: Contributions

4.01    Participating Local Apprenticeship Funds. Each Contributing Employer shall contribute to the Fund in the amount required by the Collective Bargaining Agreement between the Union or its affiliates and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modifications thereto. Each Participating Local Apprenticeship Fund shall contribute to the Fund in the amount required by the participation agreement between the Participating Local Apprenticeship Fund and this Fund. The rate of contribution shall at all times be governed by the aforesaid participation agreement then in force and effect, together with any amendments, supplements or modifications thereto. On matters other than contribution rates, contributions to the Fund shall be governed by such rules and regulations as the Trustees, in their discretion, may adopt. Nothing contained in this Agreement shall prohibit acceptance by the Fund of monies or other things of value from sources other than Employers.

4.02    All contributions shall be made effective as required by the Collective Bargaining Agreement or the participation agreement, as the case may be, and shall continue to be paid as long as the Contributing Employer is so obligated pursuant to the Collective Bargaining Agreement or the Participating Local Apprenticeship Fund is obligated pursuant to the participation agreement.

4.03    Non-payment by a Contributing Employer or a Participating Local Apprenticeship Fund of any contributions when due shall not relieve any other Contributing Employer or Participating Local Apprenticeship Fund of its obligation to make payment. In addition to any other remedies to which the parties may be entitled, a Contributing Employer or a Participating Local Apprenticeship Fund in default for twenty (20) days may be required, at the discretion of the Trustees, to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection (including attorneys' fees) incurred by the Trustees and such liquidated damages or penalties as may be assessed by the Trustees.

4.04    The Contributing Employers and Participating Local Apprenticeship Funds shall make all contributions and reports on contributions in such manner and form as required by the Trustees.

4.05    The current minimum contribution rate for all participants in this Fund is five (5) cents per hour for each hour or portion of an hour paid to each employee covered be a Collective Bargaining Agreement to which the Union or any of its affiliates is a party. Nonetheless, it is recognized that contribution rates are established through negotiations and therefore may vary. However, it is the intention of the Trustees to insure the continued growth of this Fund through the promotion of regular increases in all contribution rates that do not meet the minimum contribution rate.

4.06. The Trustees may, at any time, have an audit made by certified public accountants of the payroll, wage and cash disbursement records, general ledger, and other financial records, including but not limited to tax returns, of any Contributing Employer or any Participating Local Apprenticeship Fund in connection with the said contributions and/or reports. This power to audit shall apply whether the Contributing Employer is obligated to contribute directly to this Fund or obligated to contribute indirectly to this Fund through contributions to a local fund. When a Contributing Employer receives notice that the Contributing Employer is scheduled for an audit, the Contributing Employer may write to the Fund 1) explaining why the time or date for the audit is impossible for the Employer to comply with, and 2) offering alternative times or dates for an audit within a reasonable time. If the Fund does not receive such a written response from the Contributing Employer within 48 hours before the scheduled audit, the certified public accountants responsible for the audit may proceed as scheduled. If the Contributing Employer fails to cooperate with a scheduled audit, the Trustees may require that the Contributing Employer pay to the Fund all costs incurred as a result of the Contributing Employer's failure. Any Contributing Employer found delinquent or in violation of the rules and regulations of the Fund as a result of an audit may be required by the Trustees to pay to the Fund the cost of the audit.

4.07 The Trustees shall be empowered to bring suit in any court of competent jurisdiction to collect delinquent contributions. In any action under this section in which judgment is awarded in favor of the Fund, the Contributing Employer shall pay to the Fund, in accordance with the court's award:the unpaid contributions, interest on the unpaid contributions determined at the rate prescribed under Section 6621 of the Internal Revenue Code of 1954, as amended, liquidated damages equal to the greater of the amount of interest charged on the unpaid contributions, or 20 percent (or any higher percentage permitted by Federal or State law) of the unpaid contributions, reasonable attorneys fees and costs of the action, and such other legal or equitable relief as the court deems appropriate.

4.08 The Trustees may enter into common collection agreements with other benefit funds or entities and may, in such agreements or otherwise, authorize any other person to direct and supervise audits and to take, on behalf of the Trustees, any and all collection actions authorized by this Article.

ARTICLE FIVE:  Trustees - Appointment and Removal

5.01 The Fund and its activities and functions shall be administered and operated by a Board of Trustees consisting of no more than sixteen (16) Trustees, eight (8) of whom shall be appointed by the UNION, and eight (8) of whom shall be CONTRIBUTING EMPLOYERS who shall be appointed by EMPLOYERS as provided herein.

5.02 Membership on the Board of Trustees of the Fund shall be by appointment and selection. The IUPAT General President shall appoint all labor representatives, including at least one (1) representative from each of the five (5) Craft Committees, who will constitute te eight (8) UNION Trustees. The FCA shall appoint the eight (8)

Trustees for the Employer segment, provided, however, that the Employer segment be selected as follows: Three (3) Employer Trustees shall be from the Employer segment of the Painters Craft Committee, two (2) Employer Trustees shall be from the Glaziers and Glassworkers Craft Committee, and the remaining Employer Trustees shall be selected from each of the remaining three (3) Craft Committees. In the event the Trustees, in their sole discretion, decide to dissolve, consolidate, reorganize or modify all or any of the Craft Committees identified in this Trust, so that one or more of such Committees do not exist as a source for the appointment of potential Trustees, then, in such event, the IUPAT or the FCA may appoint any individual of their choosing to serve as a Trustee, without regard to the Craft Committee selection process set forth herein.

5.03   A Trustee may resign and be relieved of all further responsibility hereunder upon giving thirty (30) days notice in writing by Registered Mail to the Co-Chairs of the Board of Trustees and the Administrator who shall immediately inform each of the other Trustees and the appointing parties of such resignation. The effective date of such resignation shall be that fixed by the remaining members of the Board of Trustees and will be in accordance with the notice given by the resigning Trustee or a shorter period if the Board so chooses.

5.04   Each Trustee shall serve until a successor shall be chosen or designated by the party hereto designating the original Trustee. In the event of death, resignation, removal or incapacity of any Trustee, then the party hereto appointing such Trustee shall designate and appoint a successor Trustee with the same authority and power, to serve at the pleasure of the designating party hereto. Written notice of the appointment of successor Trustees, shall be sent by the appointing party to the Co-Chairs and Administrator.

5.05   Any appointing party hereto shall have the right to remove a Trustee at will, and if it does so, it shall file with the Co-Chairs of the Board of Trustees as well as the Administrator, a written notice of such removal, and designate the successor.

5.06   In no event shall a vacancy in the office of any Trustee or the inability or failure of any Trustee to sit and carry out the functions of office impair the power of the remaining Trustees to act under this Trust and any rules and regulations adopted pursuant thereto, subject to Section 9.01.

ARTICLE SIX:   Trustees - Powers and Duties

6.01   The Parties to this Trust shall execute this Trust where provision is made below for their signatures.

6.02   As each Trustee is appointed, the Trustee shall sign this Trust, or a counter-part thereof, or a similar acknowledgment, thereby accepting the Trustee's appointment and acknowledging the Trustee's obligations hereunder.

6.03   The Fund shall apply to the Internal Revenue Service for a ruling granting this Trust tax exempt status and also a ruling that the contributions made by Contributing

Employers for the purposes herein prescribed are proper tax deductible items of expense permitted under the Internal Revenue Service regulations. These applications shall be made as soon as possible after the execution of this Agreement, unless the Fund's professional advisor informs the Trustees that the Trust's existing exemption is sufficient and a new application is not required.

6.04    The Trustees shall receive all contributions paid to them in trust, and shall hold same together with any and all other monies and properties to which the Trustees gain title or possession. All funds shall be deposited in the name of the Fund in such banks as they may designate for that purpose. The UNION Segment of the Board of Trustees shall nominate and designate two authorized signatures for all checks and withdrawals on the Fund depositories, and the EMPLOYER Segment shall designate two authorized signatures for the same purpose; each check, voucher or withdrawal shall be subject to at least two signatures, one from each Segment.

6.05    All Trustees and any employees who are empowered and authorized to sign checks or handle monies shall be covered by an appropriate fidelity bond. The cost of all bonds are to be paid by the Trust. The bond shall be in an appropriate amount, which shall be at least the minimum amounts required by applicable state or federal laws.

6.06    The Trustees shall keep true and accurate books of account and records of their transactions as Trustees, and regular audits of the Trustees' accounts and the Trust Funds shall be made by a Certified Public Accountant selected by the Trustees and at such periods as may be prescribed by the Trustees, but at least once each year.

6.07    The Trustees, to carry out the purposes of this Trust, shall exercise in their discretion subject to the purposes of this Trust Agreement the following powers:

(1)     To retain such accountants, counsel, specialists, investment managers and other persons as they deem necessary or desirable in connection with the administration of the Trust. The Trustees shall be entitled to rely conclusively upon any paper or document believed by them to be genuine and authorized, and to have been made, executed and delivered by such retained persons or organizations, and to be fully protected in any action taken by them in good faith relying upon the opinions or reports which shall be furnished to them by any such investment manager, accountant, counsel, or other specialist in connection with any matters pertaining to the administration or execution of this Trust.

(2)     To invest portions of the assets of the Trust in government bonds, stocks, common or preferred, bonds and mortgages or other evidences of indebtedness or ownership, and such investments shall be made in a prudent manner and shall not be restricted to securities commonly known as "legal investments for trust funds."

(3)     To purchase or rent buildings or office space, obtain equipment, and enter into any and all contractual relationships related thereto. Any income received by the Trust from the lease or sub-lease of real and/or personal property shall be insubstantial in amount.

(4) To sell, exchange, convey, transfer, or otherwise dispose of any securities or other property (real or personal) held by the Trust, by private contract or at public auction. No person dealing with the Trustees shall be bound to see to the expediency, or propriety of any such sale or other disposition.

(5) To vote upon any stocks, bonds, or other securities; to give general or special proxies or powers of attorney with or without power of substitution rights, or other options, and to make any payments incidental thereto; to oppose, or to consent to, or otherwise participate in, corporate securities, and to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities or other property held as part of the Trust.

(6) To cause any securities or other property (real or personal) held as part of the Trust to be registered in its own name or in the name of one or more of its nominees, but the books and records of the Trust shall at all times show that all such investments are part of the Trust.

(7) To borrow or raise money for the purposes of the Trust in such amount, and upon such terms and conditions, as the Trustees shall deem advisable.

(8) To keep such portion of the Trust in cash or cash balances as may seem to be in the best interest of the Trust created hereby, without liability for the interest thereon.

(9) To accept and retain for such time as may seem advisable any securities or other property (real or personal) received or acquired by the Trustees hereunder, whether or not such securities or other property would normally be purchased as investments hereunder.

(10) To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

(11) To settle, compromise, or submit to arbitration any claim, debts, or damages due or owing to or from the Trust, to commence or defend suits or legal or administrative proceedings, and to represent the Trust in all suits or legal or administrative proceedings.

(12) To pay or provide for the payment of all reasonable and necessary expenses of collecting contributions and administering the affairs of the Trust, the employment of such employees, legal, expert and clerical assistance, the leasing of such premises and the purchase or leasing of such materials, supplies and equipment as the Trustees in their discretion find necessary or appropriate in the performance of their duties.

(13) To do all such acts, undertake or initiate all such proceedings, and exercise all such rights and privileges, although not specifically mentioned herein, either alone, or in association with other Trusts, corporations or individuals, as the Trustees may deem necessary to administer the Trust and to carry out the purpose of this Trust.

(14) To authorize any one or more of the Trustees to execute any document or documents on behalf of the Trustees, to open and keep an account in a bank or banks, in the name of the Trust, to cause to be deposited in said bank or banks to the credit of the Trust any and all monies, checks, notes, drafts, acceptances or other evidences of indebtedness belonging to the Trust, to execute checks and other items for and on behalf of the Trust and to endorse or authorize endorsement of checks and other items payable to the Trust for deposit. The Trustees shall notify the bank or banks in writing of such action and the bank or banks may thereafter accept and rely on the authority of such designated Trustee or Trustees as representing action by the Trustees until the Trustees shall file with the bank or banks a written revocation of such authority.

(15) To make payments out of the Trust to such persons, in such manner, in such amounts and for such Trust purposes as the Trustees may determine, and to authorize a bonded employee of the Trust to issue checks for the Trustees, provided such payments shall be made only in accordance with the terms of this Trust.

(16) To make such expenditures as are necessary for the complete administration and operation of all functions of the Trust herein created, including but not limited to the expenditures proposed by the individual Craft Committees affiliated with this Fund who advise this Fund and who will require the assistance of this Trust.

(17) To make such expenditures, including grants and/or appropriations, as are necessary for the establishment, development and total or partial maintenance of local apprenticeship, training and Journeyperson training programs at the discretion of the Trustees.

6.08 The Trustees may designate various subcommittees to perform designated functions under this Trust.

6.09 The Trustees shall have the power and authority to promulgate, adopt, repeal, amend or change rules and regulations from time to time, for the purpose of carrying out the objectives and functions of the Board under this Trust and consistent with its provisions.

6.10 All business and activities of the Fund shall be carried out solely in the name of the Fund.

6.11  The Board of Trustees is empowered to establish and maintain communications and relations with various Federal, State and Local Agencies with respect to the subject matter of this Trust.

6.12  The Board of Trustees is empowered to delegate and assign ministerial duties to employees and members of the staff and limited executive duties to an administrator providing same shall always be subject to control and restriction by the Board of Trustees.

6.13  The Trustees are hereby authorized and empowered to act in all disputes arising under this Trust and to hear and determine all pertinent facts and render the resulting judgments. In this capacity, the Board of Trustees is acting as a Board of Arbitration and shall have full power to hear and determine all questions arising hereunder, and to interpret these provisions and any rules and regulations adopted pursuant hereto. The findings and conclusions and judgment of such Board of Trustees acting as a Board of Arbitration shall be final and binding upon all parties concerned.

ARTICLE SEVEN:   Trustees - Co-Chairs

7.01  The Trustees shall elect two (2) Co-Chairs, one (1) elected by the UNION segment from the UNION segment, and one (1) elected by the EMPLOYER segment from the EMPLOYER segment. Each of the Co-Chairs shall continue to serve as such until replaced by the Trustees.

7.02  In the absence of one (1) of the Co-Chairs, the other Co-Chair shall serve with the same power and authority.

ARTICLE EIGHT:   Trustees - Reimbursement for Expenses

8.01  Trustees shall be reimbursed from the Fund for any and all reasonable expenses incurred in the performance of their duties including but not limited to transportation, meals, lodging, temporary clerical help and other expenses while attending Trustees meetings and any and all meetings and conferences attended at the request or with the approval of the Board of Trustees, which pertain to apprentice training, Journeyperson training, trusts and their administration, and any other matters related to the objects and purposes of this Trust.

ARTICLE NINE:   Trustees - Voting

9.01  Except as hereafter expressly provided, all actions of the Trustees shall be by vote of a simple majority. At all meetings, the EMPLOYER segment and the UNION segment shall have equal voting strength regardless of the number of Trustees in attendance for the EMPLOYER or UNION segment. The vote of any absent Trustee shall be cast by the Trustees present who are of the same segment, that is, EMPLOYER or UNION.

9.02    Ten (10) Trustees shall constitute a quorum for the transaction of the business of the Trust providing that there shall always be five (5) UNION Trustees and five (5) EMPLOYER Trustees.

ARTICLE TEN:  Amendments to the Trust

10.01   The Board of Trustees shall be empowered to amend this Trust and any rules and regulations adopted pursuant thereto providing that such amendments are consistent with the purposes of this Trust. Notice of proposed amendments shall be given to all members of the Board of Trustees at least ten (10) days in advance of the meeting at which the amendments are to be considered, unless at such meeting the Trustees waive the notice requirement by unanimous vote.

ARTICLE ELEVEN:   Trustees - Meetings and Actions

11.01   Regular Meetings – The Trustees shall have at least one regular meeting annually upon fifteen (15) days written notice to each Trustee. The Trustees may determine by resolution or rule that additional regular meeting shall be held each year.

11.02   Special Meetings – Special meetings may also be held and may be invoked by either of the following methods: 1) any eight (8) Trustees – four (4) from the UNION Segment and four (4) from the EMPLOYER Segment – may petition in writing to the Co-Chairs for a special meeting which may be called on ten (10) days written notice; or, 2) the Co-Chairs may convene a special meeting on ten (10) days written notice. In either case the written notice must set forth the purpose of the meeting.

11.03   The Trustees shall keep minutes of all meetings, but such minutes need not be verbatim. Copies of the minutes shall be sent to all the Trustees and to such other persons as the Trustees may direct.

11.04   The Trustees may also take action without a meeting; they may take action by telephone, facsimile, or by other methods of written or oral communication.

11.05   In the event the Trustees deadlock with respect to any matter relating to the administration of the Trust, the issue shall be submitted to a final determination by an arbitrator who shall be jointly selected by the UNION and EMPLOYER Trustees. In the event that no agreement can be reached upon the selection of an arbitrator after an attempt has been made to do so for at least five days, either party may petition the United States District Court for the District of Columbia for the appointment of an arbitrator. The matter shall be submitted to the arbitrator within five days from the date of the arbitrator's selection. The Trustees will request that the arbitrator's decision shall be rendered within fifteen (15) days thereafter, and such decision shall be conclusive, final and binding upon all participants in the Fund, the Board of Trustees, and persons dealing herewith. Any and all expenses incurred by the Board of Trustees in the proceeding shall be paid by the Trust.

ARTICLE TWELVE:   Trustees - Liability and Responsibility

12.01   No Trustee shall be personally liable with respect to any obligation of this Trust or in behalf of this Trust or for any breach of trust unless he or she acted in bad faith or engaged in willful misconduct. All parties dealing with the Trust or Fund herein established shall look only to the Fund for any recovery or satisfaction of obligation.

12.02   Trustees shall not be liable or responsible for any act or failure to act on the part of any Co-Trustee or of any employee, agent or representative of the Fund.

12.03   Each Trustee shall be protected in relying upon any instrument or document which he or she believes to be genuine and in proper form. Each Trustee shall be expected only to act in good faith and where a Trustee does so upon the advice or opinion of legal counsel in connection with any matters relating to the administration of this Trust or Fund, he or she shall be absolved from any further responsibility.

12.04   Anyone having relations with the Trustees or the employees or representatives of the Trustees shall not be required or obliged to investigate or ascertain the manner in which the property or funds are administered or as to whether or not the terms and conditions of the Trust are complied with by the Trustees. Such parties shall have the right to rely upon the text of any instrument signed by the Officials, Trustees or Representatives of the Trust as being bona fide and correct, and to assume that those executing such instruments had the authority to do so.

12.05   In the event any Trustee or Trustees shall be involved in litigation or any other court or administrative proceedings or actions arising out of this Trust, all reasonable expenses and fees incurred in relation thereto shall be paid by the Fund to the full extent permitted by law.

ARTICLE THIRTEEN – Miscellaneous Provisions

13.01   This Agreement and Declaration of Trust may be executed in one or more counterparts. The signature of a party or Trustee on any counterpart shall be prima facie and sufficient evidence of that party's or Trustee's execution of this Agreement.

13.02   The provisions of this Agreement and Declaration of Trust shall be liberally construed in order to promote and effectuate the activities and administration of the Fund herein established and to give the widest possible latitude to the purposes and objectives herein contained with respect to apprenticeship and Journeyperson training.

13.03   In any action or proceedings involving the Trust, or any property constituting part or all thereof, or the administration thereof, the Trustees shall be the only necessary parties, and no other persons shall be entitled to any notice of process. Any final judgment which is not appealed or appeal able that may be entered in any such action or proceeding shall be binding and conclusive on the parties hereto and all persons having or claiming to have any interest in the Trust.

13.04   This Trust is created and accepted in the District of Columbia (Washington, DC), and all questions pertaining to the validity or construction of this Instrument or any part thereof, or any conduct or actions taken pursuant to its provisions, which are not governed by federal law, shall be determined in accordance with the laws of the District of Columbia, and shall be subject to any and all limitations or obligations imposed by the laws of the United States and the District of Columbia.

13.05   The address of each Trustee who has executed this Agreement as shown on the signature pages herein, or who has signed a counter-part of this Trust, or who has signed an acknowledgment, as per Section 6.02, shall be deemed to be the last known address for all purposes of notification, unless the Administrator of the Trust is informed in writing as to any change.

13.06   The Co-Chairs of the Trustees may execute any certificate or document jointly, on behalf of the Trustees, and such document shall be deemed executed by all the Trustees. All persons having dealings with the Trust, or with the Trustees, shall be fully protected in reliance placed on such duly executed document(s).

ARTICLE FOURTEEN:  Merger

14.01   The Trustees are hereby given authority to enter into agreements with Trustees of other apprenticeship and Journeyperson training fund(s) established by the International Union of Painters and Allied Trades or any of its affiliates and employers in the industry to effectuate merger of this Fund with such other fund(s), and to transfer all assets of this Fund to such other fund(s) or to receive all assets of such other fund(s) in order to accomplish such merger.

ARTICLE FIFTEEN:  Termination of Trust

15.01   This Agreement and Declaration of Trust may be terminated by an instrument in writing duly executed by the Trustees.

15.02    In the event that the Trustees shall determine to end this Trust, then written notice by Registered Mail shall be served upon each participating Local Union and/or District Council of the UNION, each Contributing Employer, and each of the Trustees then in office.

15.03    In the event of termination of this Trust, the Trustees shall continue in office and arrange for the orderly liquidation of all obligations and for the equitable application of the proceeds of all assets by carrying out the objectives of this Trust and the basis upon which it was originally founded for the best interests of apprentice and Journeyperson training.

ARTICLE SIXTEEN: Severability and Savings Clause

16.01    The provisions of this Agreement shall be interpreted and construed in a manner which is consistent with all applicable federal and state laws. Should any Article or provision of this Agreement be declared invalid, inoperative or unenforceable by any competent authority of the Executive, Legislative, Judicial or Administrative branch of the federal or any state government, the Trustees shall suspend the operation of such Article or provision during the period of its invalidity and shall substitute in its place an Article or provision which will be in accord with the objections to its validity and which will be in accord with the intent and purposes of the Article or provision in question.

If any Article or provision of this Agreement shall be held invalid, inoperative or unenforceable by operation of law or by any of the above-mentioned tribunals of competent jurisdiction, the remainder of this Agreement or the application of such Article or provisions to persons or circumstances other than those as to which it has been held invalid, inoperative or unenforceable shall not be affected thereby.

*IN WITNESS WHEREOF,* the Parties hereto have duly caused this Restated Agreement and Declaration of Trust to be executed by their respective chief executive officers who hereby represent that they were duly authorized to do so.


International Union of Painters
and Allied Trades


BY:_____  DATE:
        GENERAL PRESIDENT


Finishing Contractors Association


BY:_____  DATE:
              PRESIDENT

## UNION TRUSTEES

BY: _____  
Kenneth Rigmaiden, Co-Chairman

Address: JUPAT  
1750 New York Avenue NW  
Washington, DC 20006

BY: _____  
Michael Ball

Address: BM/ST - DC 5  
2800 1ˢᵗ Avenue Rm 324  
Seattle, WA 98121

BY: _____  
James Watroba

Address: BR - DC 6  
8257 Dow Circle  
Strongsville, OH 44136

BY: _____  
Sandy Vagelatos

Address: BM/ST - DC 9  
45 West 14ᵗʰ Street  
New York, NY 10011

BY: _____  
Charles Anderson

Address: BM/ST - DC 30  
3813 Illinois Avenue #101  
St. Charles, IL 60174

BY: _____  
Greg Smith

Address: Organizer, DC 46  
88 Central Park Blvd., North  
Oshawa, Ontario, CN L1G 5Y5

BY: _____  
Ian Stone

Address: President - Paramount Painting &  
Decorating (London) Ltd.  
44 Paddington Avenue  
London, Ontario, CN N6J 2S6

BY: _____  
Cliff Germano

Address: Director - Painters DC 78  
1300 S. Andrews Avenue  
Pompano Beach, FL 33069

BY: _____  
Timothy Davis

Address: Financial Secretary LU 1621  
2101 Almaden Road #104  
San Jose, CA 95125

Date: _____

## EMPLOYER TRUSTEES

| | | |
|---|---|---|
| BY: _____<br>Bob Swanson, Co-Chairman | Address: | Swanson & Youngdale, Inc.<br>P.O. Box 2607<br>Minneapolis, MN 55426 |
| BY: _____<br>Allan DeLange | Address: | President/Midwest Coatings<br>Kenny Manta Industrial Services<br>414 North Orleans Street – #707<br>Chicago, IL 60610 |
| BY: _____<br>Bill Holsman | Address: | CEO<br>Sign-Lite Corporation<br>12655 Coit Road<br>Cleveland, OH 44108 |
| BY: _____<br>Bud Nicoll | Address: | President<br>West Valley Carpet Service Inc.<br>1605 Watson Court<br>Milpitas, CA 95035 |
| BY: _____<br>Terry Webb | Address: | President<br>Eureka Metal & Glass Services<br>5219 Germantown Avenue<br>Philadelphia, PA 1944 |
| BY: _____<br>Alfred "Skip" Weltz | Address: | Vice President Field Operations<br>Walters & Wolf Glass<br>41450 Boscell Road<br>Fremont, CA 94538 |
| BY: _____<br>Francis Wojchowski | Address: | President<br>Gypsum Specialists Contractors<br>5500 Heege Road<br>St. Louis, MO 63123 |

Date: _____