# Exhibit 5b

06/08/2006 09:36 FAX 702 7960339    MIDWEST    → DIEKER    ☑001



PAINTERS & DECORATORS

MASTER AGREEMENT

July 1, 2001

through

June 30, 2004

—between—

Union OF PAINTERS

AND

ALLIED TRADES LOCAL #159

AND

THE PAINTING AND

DECORATING CONTRACTORS

OF AMERICA

Southern Nevada Chapter

LAS VEGAS, NEVADA

06/08/2006 09:37 FAX 702 7960339    MIDWEST    → DIEKER    ☑002

Consolidated and Amended

# MASTER AGREEMENT



Southern Nevada Chapter



Local Union No. 159
Effective July 1, 2001
LAS VEGAS, NEVADA

MWD0292

# PAINTERS AND DECORATORS
## MASTER AGREEMENT

### TABLE OF CONTENTS

WITNESSETH .................................... 1
ARTICLE I – RECOGNITION ................................ 2
ARTICLE II – WORK JURISDICTION ......................... 3
ARTICLE III – AREA JURISDICTION ....................... 4
ARTICLE IV – 50-50 CLAUSE ............................. 4
ARTICLE V – HIRING PROCEDURES .......................... 6
ARTICLE VI – HOURS OF WORK – OVERTIME ............. 10
ARTICLE VII – HOLIDAYS ................................. 13
ARTICLE VIII – PENSION ................................. 14
ARTICLE IX – APPRENTICE ............................... 16
    APPRENTICE WAGES ................................. 20
ARTICLE X –
HEALTH AND  WELFARE-DENTAL-VISION PLANS ... 20
ARTICLE XI – VACATION FUND ........................... 22
ARTICLE XII –
    CHECK-OFF OF ADMINISTRATIVE DUES ........... 23
ARTICLE XIII – INDUSTRY PROMOTION FUND ...... 24
ARTICLE XIV – FRINGE BENEFIT
    CONTRIBUTIONS ADMINISTRATION .......... 26
ARTICLE XV –
    BONDING-SHOP CARD-SUBCONTRACTING ....... 27
ARTICLE XVI – PRESERVATION OF WORK CLAUSE . 30
ARTICLE XVII – TRAINING ............................ 31
ARTICLE XVIII – WORKING RULES .................... 32
ARTICLE XIX – TRAVEL TIME SUBSISTENCE ...... 34
ARTICLE XX – STEWARDS ........................... 38
ARTICLE XXI – PAYMENT OF WAGES .................. 39
ARTICLE XXII –
    NEW COMERCIAL AND INDUSTRIAL
        WORK WAGE PACKAGE 3 YEARS .......... 41
    SPECIALTY PREMIUM PAY ..................... 43
    ALLOCATION OF WAGES ....................... 45
ARTICLE XXIII –
    FOREMAN-GENERAL FORMAN ................. 45

06/08/2006 09:38 FAX 702 7980339    MIDWEST    → DIEKER    ☑004

# PAINTERS AND DECORATORS

## MASTER AGREEMENT

### July 1, 2001 through June 30, 2004

#### Painters Local Union #159

#### Las Vegas, Nevada

## WITNESSETH

**WITNESSETH:** That for and consideration of harmonious relations between the parties referred to and the public, the maintenance and stability of the conditions of employment and other mutually beneficial relations, and for the purpose of preventing strikes and lockouts by facilitating just and peaceful adjustments of disputes and grievances that may arise from time to time, and for the purpose of protecting and safeguarding the health and safety of the parties concerned, the parties hereto have agreed that the understanding hereinafter set forth shall be binding on all signatory members of the parties thereto, individually and collectively.

—i—

## INDUSTRIAL REPAINT AGREEMENT

### TABLE OF CONTENTS

ARTICLE XXIV –
PAINTERS JOINT COMMITTEE
PURPOSE AND BUSINESS . . . . . . . . . . . 46
MEMBERSHIP AND ALTERNATE MEMBERS . . . 47
OFFICERS AND DUTIES . . . . . . . . . . . . . 48
ELECTIONS AND TERM OF OFFICE . . . . . . . 50
PROCEDURE . . . . . . . . . . . . . . . . . . . . 51
POWER AND DUTIES . . . . . . . . . . . . . . . 52
CHARGES AND TRIALS . . . . . . . . . . . . . . 54
ARTICLE XXV – SAFETY . . . . . . . . . . . . . 54
ARTICLE XXVI –
GENERAL SAVINGS CLAUSE . . . . . . . . . . 56
INDUSTRIAL REPAINT AGREEMENT . . . . . . 57
HOURS OF WORK – OVERTIME . . . . . . . . . 57
SHIFT WORK . . . . . . . . . . . . . . . . . . . . 59
WAGE SCHEDULE INDUSTRIAL REPAINT . . . 60
USE OF TOOLS . . . . . . . . . . . . . . . . . . . 61
MASTER AGREEMENT
SIGNATURE PAGE . . . . . . . . . . . . . . . . 62
DURATION CLAUSE . . . . . . . . . . . . . . . . 63
POLITICAL CONTRIBUTION DEDUCTION . . . . 65

—ii—

## ARTICLE 1
## Recognition

### Section 1

This agreement is made and entered into the 1st of July 2001, by and between the INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, LOCAL UNION #159, Las Vegas, Nevada, and the PAINTING AND DECO- RATING CONTRACTORS OF AMERICA, SOUTHERN NEVADA CHAPTER, Las Vegas, Nevada, for and on behalf of its present and future signatory members, as well as firms who have executed written authorizations for the Chapter to represent them in Labor Relation matters of which are related to this Agreement and any independent employers who may affix their signature to this agreement.

### Section 2

It is agreed that this agreement shall constitute the com- plete agreement between the parties signatory hereto, and any other agreed to revisions and/or amendments not herein included are-null and void.

### Section 3

The Parties signatory to this agreement hereby recog- nizes, acknowledges, and agrees that Painters Local Union #159, Las Vegas, Nevada, is within the meaning of Section 9(a) of the National Labor Relations Act, the exclusive repre- sentative for the purpose of collective bargaining of all the Employer's employees wherever such employees may be employed, in all of the wage classifications and/or the work jurisdiction described in this agreement.

### Section 4

It is hereby agreed to by the Independent Employer(s) signatory to this Agreement, that the Southern Nevada PDCA chapter shall appoint all employer committee mem- ber(s), to any of the committees referred to in this Agreement if needed.

## ARTICLE II
## Work Jurisdiction

### SECTION 1

This Agreement shall cover jurisdiction over:

(a) All painting of residences, buildings, structures, industri- al plants, tanks, vats, pipes, vessels, bridges, light poles, traffic and parking lines on highway, parking lots, play grounds, factories and airline strips; also all sign, pictorial, coach, car, automobile, carriage, aircraft machinery, ship and railroad equipment, rural and scenic painting, spackling of all surfaces where adhesive materials are used, and all drywall painting, taping and finishing.

(b) All decorators, paperhangers, hardwood finishers, grain- ers, varnishers, enamelers and guilders.

(c) Paperhangers work shall be all material of whatever kind or quality, including wall carpeting, applied to walls or ceilings with paste or adhesive all tacking on of muslin or other material which is used as wall or ceiling coverings or covered with mate- rials pasted on.

(d) All persons engaged in applying or removing paints, pigments, extenders, metal primers and metal pigments, clear pig- ments, binders, thinners, and dryers, primers and sealers, oil paints and enamels and other special coatings, plastics, adhesive, coat- ings and sheet rubber and other linings, oils, varnishes, water col- ors, wall paper, wall coverings, or other materials used in the var- ious branches of the trade and the cleaning and bleaching of all interior and exterior walls with liquid, steam, sandblast or any other process.

(e) Drywall Finisher/Tapers work shall include all coating of joint Compound or Taping mud. Whether to coat the joints of wallboard or to finish the entire surface of either walls or ceilings as either a undercoat for a Painted, Wallcovering or Paneled finish or as a stand alone finish as in a "Venetian" by whatever method available.

06/08/2006 09:39 FAX 702 7960339    MIDWEST    → DIEKER    ☒006

(f) Painters, Tapers and Paperhangers covered under this agreement shall be responsible for all incidental stocking and clean up of all materials pertaining to our craft.

## ARTICLE III
## Area Jurisdiction

SECTION 1

The area Jurisdiction, covered by this agreement shall include, Clark County, Lincoln County, Nye County, Esmeralda County, in the State of Nevada and any other area jurisdiction awarded to Painters Local Union #159, by the International Union of Painters and Allied Trades.

Section 2

(a) The employer recognizes the Union as the sole collective bargaining agency between itself and the employees covered under the scope of this Agreement.

(b) The Union recognizes the Southern Nevada Chapter of the P.D.C.A. as the collective bargaining agency between itself and the employers covered under the scope of this Agreement.

(c) Any and all Collective Bargaining Agreements (excluding agreements with the Nevada Test Site either directly or indirectly) entered into between Local #159 and Painting and Decorating Contractors of Southern Nevada will first be signatory to this Downtown Agreement.

## ARTICLE IV
## 50-50 Clause

SECTION 1

It being understood that the principle place of business and the employment of the employer is in the area jurisdiction

as stated, but that such employer on occasion undertakes painting work in other cities and areas, on which occasions such employer employs such additional employees, residents of such other city or area as the needs of the work require; now therefore, be it resolved:

(a) That when the above employer or contractor is engaged in work outside the geographical jurisdiction of the Union party to this Agreement, he shall employ not less than 50% of the men employed on such work from among the residents of the area where the work is performed or from among persons who are employed the greater percentage of their time in such area.

(b) And further provided that the employer or contractor, when engaged in work outside the geographical jurisdiction of the Union party to this Agreement shall comply with all of the lawful clauses of the collective bargaining agreement in effect in said other geographical jurisdiction and executed by the employers of the industry and the local unions in that jurisdiction, including but not limited to, the provisions of the wages, hours, working conditions and all fringe benefits therein provided, including grievances; provided, however, that as to employees employed by such employer from within the geographical jurisdiction to the Union party to this Agreement and who are brought into an outside jurisdiction, such employees shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction, whichever is more favorable to such employees, and fringe benefit contributions on behalf of such employees shall be made solely to their home funds in accordance with their governing documents. This provision is enforceable by the Local Union or District Council in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in its applicable Collective Bargaining Agreement and the Union party to this agreement, both through the procedure for settlement of grievances set forth in this agreement and through the courts. The Employer shall not be permitted to evade its obligations hereunder by setting up

-5-

-4-

an additional "home" or "branch" office or plant in an area outside its principal place of business.

## ARTICLE V
## Hiring Procedures

**Section 1**

In the interest of maintaining an efficient system of production and adequately qualified craftsmen within the painting industry, and to provide for an orderly procedure of referral of applicants for employment, preserving the legitimate interest of the employees discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

(a) The Union shall be the sole and exclusive source of referrals of applicants for employment.

(b) The employers retain the right to reject, for any lawful reason, any job applicant referred by the Union.

(c) All persons shall be retained on the job except for the following reasons: willful neglect of duty, incompetence, or conditions beyond the control of the employer.

(d) The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union, and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions, or any other aspect of obligations or Union membership, Policies, or requirements. All such selection and referral shall be in accordance with, the following procedure.

(e) The employer shall first call the dispatching office of the Union for workmen as they may from time to time have need for and the office shall furnish to the employer the

required number of workmen for the classification needed and requested by the employer, strictly in accordance with this Section. Work call shall be at 8 a.m. on regular workdays.

(f) The Union shall maintain a register, or list of applicants or workmen on an open and non-discriminatory basis for registrants desiring employment on all work covered by this Agreement. Such workmen shall be entitled to registration and dispatch free of charge subject to the provisions of this Section.

(g) From such registration lists for employment, said applicant shall be registered in the highest priority group for which he is qualified.

(h) Apprentices shall be hired and transferred in accordance with the Apprenticeship Standards and provisions of the Painters and Decorators Joint Apprenticeship Council of Las Vegas, Nevada, and as established by the signatory parties.

(i) If the registration list is exhausted or registrants refuse referral and the Union is unable to refer applicants for employment to the employer, within forty-eight (48) hours from the time of receiving the employer's request (Saturdays, Sundays and holidays excluded), the employer may procure employees from any other available source. If employees are so hired, the employer shall immediately report to the Union the names social security number and dates of hire of such employees and shall replace such temporary employees as soon as registered applicants for employment are available under the referral procedure.

(j) In order to be entitled to registration and dispatching as a journeyman, the applicant must be able to demonstrate that he has worked at the trade for a minimum of three years. In attempting to ascertain whether the applicant qualifies with this provision, the signatory parties shall use objective tests or evidence of completion of a bona-fide Apprenticeship Training Program, or standard examinations conducted by the

MWD0297

06/08/2006 09:40 FAX 702 7960339    MIDWEST    → DIEKER    Ø008

Local Union.

# GROUP 1

Workman who have previously been employed by the Employer

# GROUP 2

All other workmen registered at the dispatching office of the Local Union.

## Section 2

The only exceptions which shall be allowed in the above order of referral are as follows:

(a) When the employer states requirements for special skills and abilities in this request for applicants, the dispatcher shall refer the first applicant on the registration list possessing such skills and abilities.

(b) When the employer states requirements for supervisory personnel, such as foreman, general foreman or superintendent, the dispatcher shall in a like manner refer such applicant regardless of his place on the registration list.

## Section 3

An Appeals Board is hereby established consisting of two members representing the signatory Union and two members representing the signatory employers of the Joint Committee mentioned above along with one neutral member selected by the Joint Committee for the sole purpose of hearing appeals relative to administration of hiring procedure or hearing appeals brought about by any prospective applicant who may believe that his rights to dispatching have been violated or infringed upon. He shall have the right to appeal his case before said Appeals Board by filing a brief statement in writing setting forth the details of his position and forwarding same to the Painters and Decorators Joint Committee, Inc.,

—8—

1701 Whitney Mesa Drive, Henderson, Nevada.

The party receiving the appeal shall notify the other party indicated above and the Board shall meet within five days after such notification. A majority decision of the Appeals Board shall be final and binding and shall be complied with by the Local Union if an adverse decision is rendered by the Board.

## Section 4

The Union and the employers shall cooperate to the end that a copy of hiring and referral procedures set forth and as contained herein shall be posted on the bulletin board in the office of the Local Union and in the offices or shops of the employers who are parties to this Agreement.

## Section 5

The Union representatives have the right at all times to interview employers, or to see, or to be advised, on any applicant or journeyman as to hours worked, rate of pay, travel time and subsistence paid, and any or all deductions covered by such payment. Further, the Business Representative shall be authorized as a matter of convenience for the Union and its members or applicants to present to a signatory employer, during the life of this Agreement, an authorization for any necessary deductions from an employee's account with the Union up to date after said employee has properly signed or endorsed such "hold-out" notice.

## Section 6

As of September 30, 2001 no craftsman covered under this collective bargaining agreement shall be dispatched to any signatory contractor without having attended an OSHA 10-hour safety course in construction.

—9—

# ARTICLE VI
## Hours of Work – Overtime

### Section 1

The regular workday shall consist of eight (8) or ten (10) hours of work depending on the work week, between 5:00 a.m. and 4:30 p.m. with one half (1/2) hour for lunch to be given no later than five (5) hours after the beginning of the shift. Following the regular midday lunch break, no employee shall be required to work more than six hours without an additional thirty-minute lunch break. If more than six hours work is required, the employer agrees to provide no less than thirty minute lunch) period without loss of time to the employee.

### Section 2

The regular workweek shall consist of five (5) eight (8) hour workdays, Monday through Friday or four (4) ten (10) hour workdays between Monday and Friday.

### Section 3

A five day eight (8) hour week – the first three (3) hours worked outside a regular five (5) day eight (8) constituted day shift, Monday through Friday, shall be paid at the rate of 1 and ½ times the straight time rate. All hours worked beyond eleven (11) hours shall be paid at two (2X) times the straight time rate. The first eight (8) hours worked on a Saturday day shift shall be paid at the rate of one and one-half (1½X) times the straight time rate all other hours worked beyond the eight (8) hours shall be paid at double (2X) the straight time rate.

### Section 4

All hours worked beyond ten hours shall be paid at double (2X) the straight time rate. The first eight (8) hours worked on the fifth (5th) or sixth (6th) day shall be paid at one and one half (1½) the straight time rate all other hours at double (2X) the straight time rate.

—10—

### Section 5

If at the discretion of the Contractor a second shift is required to maintain the scheduling by the customer or the contractor, the workweek and hours per shift shall be consistent with that of the day shift and be inclusive of a meal period and the pay shall be at the straight time rate.

### Section 6

Hours worked on Sunday and recognized holidays shall be paid at the rate of two times (2X) the straight time hourly rate.

### Section 7

The contractor must register such starting time with the Joint Committee and Local Union, setting forth the hours that he chooses to work and once such decision is made, such hours would apply on each and every job being performed by said contractor. It has never been the intention of this section to allow the employer to start the project and then transfer employees to another job site since this could be in violation of overtime as provided for in this agreement.

### Section 8

A work shift starting on Sunday night and ending on Monday shall be considered Monday work.

### Section 9

In recognition of the fact that the scope of work as defined in this agreement is increasingly more tourist oriented in the Las Vegas and Laughlin area, the parties have agreed to special work hours for Hotel Guest Room remodel type work. To cover specific job requirements such as rooms that must be ready for occupancy on Fridays, the agreement is as follows:

When the working schedule requires remodeling of guest rooms be started on Monday and be completed so they may be occupied on Friday and provided the Union is advised and agrees prior to the start of such project, the employer, may

—11—

work a shift consisting of four (4) consecutive days Monday through Thursday and may work a shift of ten (10) hours at the straight time hourly rate.

It is further understood that the employer may schedule the hours of the shift to coincide with Hotel operations. All hours outside of the special shift will be paid at the double time rate.

Section 11

No member of the Local Union shall report to any shop earlier than fifteen minutes, or to any job earlier than fifteen minutes before the starting time.

Section 12

Employees who report for work at the time they are instructed to by the employer (or employer's agent) and who are not placed to work, shall be paid two hours show-up time. No show-up time is required if employees are not put to work because of inclement weather or an act of God.

Section 13

The parties to the agreement recognize that in the course of doing work in the construction industry certain unpredictable weather related situations can occur that can have severe economic impact on the employer and loss of income to the employee. To deal with this type of situation, the parties to this agreement agree to the following:

If work covered by this agreement is unable to be performed due to inclement weather during the regular work week, the employer may, if the employees are willing, schedule the employees to work on Saturday and/or Sunday of the same week at the straight time rate of pay during the regular hours.

It is understood the situation must be the nature spelled out in the memorandum of understanding, which will by made part of this agreement and further provided the Union is notified and agrees, prior to the start of such Saturday and/or Sunday work. The employees affected by such inclement

weather will be those offered the Saturday and/or Sunday work but will be under no obligation to accept this work and no disciplinary measures will be taken against those who refuse to work such shift. If work is performed prior to the union approval, the regular overtime rates will apply.

Section 14

Workmen referred to the employers job site who arrive in an unfit condition for work, without proper: tools or referrals, or who are not ready to go to work or who are not otherwise qualified, or who are workmen that the requesting contractor has notified the Union in writing of ineligibility for rehire, shall not be entitled to show-up time, travel or subsistence, or any other form of compensation by the contractor.

## ARTICLE VII

## Holidays

Section I

The following days are recognized holidays:

| | |
|---|---|
| New Year's Day | Memorial Day |
| Thanksgiving Day | Labor Day |
| Fourth of July | Christmas Day |
| Presidents Day | Veteran's Day |
| The Day after Thanksgiving Day | |

Section 2

If any of the above holidays fall on Sunday, the Monday immediately following shall be observed.

Section 3

Work performed on any of the above Holidays or the day observed as the Holiday shall be paid for at double the regular straight-time rate of the classification involved.

06/08/2006 09:42 FAX 702 7960339    MIDWEST    → DIKKER    ☑011

**Section 4**

No work shall be performed on Labor Day.

## ARTICLE VIII
## Pension

**Section 1**

Commencing with the 1st day of July, 2001 and for the duration of the Agreement, and any renewals or extension hereof, the Employer Agrees to make payments to the IUPAT Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

(a) For each hour or portion thereof, for which an employee received pay, the employer shall make a contribution to the above named Pension Fund in accordance with the following: Effective July 1, 2001 a contribution of twenty-five cents ($0.25) per hour bringing the total Pension Contribution rate to two dollars seventy-five cents ($2.75) per hour to be paid on all hours worked as agreed upon. Effective July 1, 2002 a contribution of twenty-five cents ($0.25) per hour bringing the total Pension Contribution rate to three dollars ($3.00) per hour to be paid on all hours worked as agreed upon. Effective July 1, 2003 a contribution of twenty-five cents ($0.25) per hour bringing the total Pension Contribution rate to three dollars twenty-five cents ($3.25) per hour to be paid on all hours worked as agreed upon.

(b) For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(c) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes all

indentured apprentices and members of the International Union of Painters and Allied Trades, Local #159.

(d) The payments to the Pension Fund required above shall be made to the IUPAT Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he actually signed the same.

**Section 2**

The Employer hereby irrevocably designates as its representatives on the Board of Trustees such trustees as are now serving, or who will in the future serve, as employer trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

**Section 3**

All contributions shall be made at such time and in such manner as the trustees require; and the trustees may at any time conduct an audit in accordance with Article V Section 6 of the said Agreement and Declaration of Trust.

**Section 4**

If an Employer fails to make contributions to the Pension Fund within five days after the date required by the trustees, the Joint Committee shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney's fees, and such penalties as may be assessed by the trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure of any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

—14—

—15—

MWD0301

Section 5

The Pension and Annuity Plan adopted by the trustees shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the IUPAT Union and Industry Pension Fund as a deduction for income tax purposes.

## ARTICLE IX
## Apprentice

Section 1

Commencing with the 1st day of July, 2001 and for the duration of this Agreement, and any renewals or extensions thereof, the Employer, as defined in the National Trust Indenture executed by and between the International Union of Painters and Allied Trades and employer associations in the industry, agrees to make payment to the Painters Joint Apprenticeship Committee for each employee covered by this Agreement as follows:

(a) For each hour, for which an employee receives pay, the Employer shall make a contribution of twenty-two cents ($0.22).

(b) For the purpose of this Article, each hour paid for, including hours attributable to show-up time and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

(c) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes all indentured apprentices and journeymen of Painters Local Union #159.

(d) The payments to the Apprenticeship Fund required above shall be made to the Painters Joint Apprenticeship

—16—

Committee which was established under an Agreement and Declaration of Trust, dated May 1, 1966. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

(e) From the funds collected in the above manner, the trustees of the Painters Joint Apprenticeship shall hold in trust the sum of five cents ($.05) per hour, for each hour or portion thereof for which an employee receives pay, and remit said sum to the National Painting and Decorating and Dry Wall Apprenticeship and Manpower Training Fund at such regular periods of time and in the manner and form as shall be determined by the trustees of the National Fund from time to time.

(f) The payments to the Apprenticeship Fund required in paragraph (e) above shall be made to the National Painting and Decorating and Dry Wall Apprenticeship and Manpower Training Fund which was established under an Agreement and Declaration of Trust dated February 1, 1971. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust as though he had actually signed the same.

Section 2

The employer hereby irrevocably designates as its representatives on the Board of Trustees of the National Painting and Decorating and Dry Wall Apprenticeship and Manpower Training Fund, such trustees as are now serving or who will in the future serve, as employer Trustees, together with their successors, as provided for in the aforesaid Trust Indenture.

Section 3

The Union hereby irrevocably designates as its representatives on the Board of Trustees of the National Painting and Decorating and Dry Wall Apprenticeship and Manpower Training Fund, such trustees as are now serving, or who will in the future serve, as Union trustees, together with their successors, as provided for in the aforesaid Trust Indenture. The parties hereto further agree to be bound by all actions taken by

—17—

06/08/2006 09:44 FAX 702 7960339    MIDWEST    → DIEKER    ☒013

the trustees of the National Fund pursuant to the said Agreement and Declaration of Trust.

## Section 4

All contributions shall be made at such time and in such manner as the trustees require and the trustees shall have the authority to have an independent certified public accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Apprenticeship Fund.

## Section 5

If an Employer fails to make contributions to the Painters Joint Apprenticeship Committee within five (5) days after the date required by the trustees, such failure shall be deemed a violation of this Agreement, and the Joint Committee shall have the right to take whatever steps are necessary to secure compliance with this Agreement, and other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with attorneys' fees and such penalties as may be assessed by the trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

## Section 6

The Apprenticeship Plan adopted by the trustees of said Apprenticeship Funds shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Apprenticeship Funds as a deduction for income tax purposes.

## Section 7

When an employer has hired three (3) Journeymen he shall employ one (1) Apprentice, and may employ Apprentices on a three (3) Journeymen to one (1) Apprentice ratio after the first Apprentice has been hired.

## Section 8

Shops with less than three journeymen may be granted an apprentice if, in the opinion of the Joint Committee, it would be beneficial to all parties concerned.

## Section 9

All apprentices may change shops at least every six months in order to provide them with more rounded education of the trade. However, if an employer and his apprentice petition the I.A.C. With proof that said apprentice is receiving a proper training program, the I.A.C. may allow the apprentice to stay with the shop an additional six months. At the end of each six-month period an additional six months may be applied for. No apprentice will be engaged as a foreman or in any supervisory position.

## Section 10

The Joint Apprenticeship Committee shall have the right to take an apprentice from his employer if it is proven to the Committee that said apprentice is not benefiting from his job or is being misused.

## Section 10(b)

All Apprentices shall be required to fill out and maintain in their possession an Employment activity book. A representative of the company shall sign this weekly. This is to insure that the education and training of the Apprentice continues. Upon evaluation of this record by the Apprenticeship Committee he may be removed from the employment with the contractor. It is the intention of this section not to cause loss of work but to insure that the apprentice is being trained in the craft.

## Section 11

The Joint Apprenticeship Committee shall be notified by the employer and the apprentice in writing, of all hiring, releasing, and termination of apprentices.

MWD0303

**Section 12**

The Joint Apprenticeship Committee, in coordination with the Painters and Decorators Joint Committee, shall be the governing body in all apprentice matters.

## APPRENTICE WAGES

**Section 13**

Apprentice wages shall be as follows:

Percentage of Journeymen wage rate
40% - 45% =  500 Hours Worked
45% - 50% = 1000 Hours Worked
50% - 55% = 1500 Hours Worked
55% - 65% = 2000 Hours Worked
65% - 75% = 3000 Hours Worked
75% - 85% = 4000 Hours Worked
85% - 95% = 5000 Hours Worked
95% -100% = 6000 Hours Worked

**Section 14**

No Vacation money will be withheld from wages of an apprentice until the 75% level has been reached.

## ARTICLE X
## Health and Welfare-Dental-Vision Plans

**Section 1**

Each employer signatory to this Agreement shall pay to the Employees Painters Trust the sum of two dollars and eighty-seven cents ($2.87) or the sum in effect per hour worked by each employee from July 1, 2001 for Health & Welfare, Dental and Vision Plans.

—20—

**Section 2**

Effective July 1, 2001 and for the duration of this Agreement, the contractor agrees to contribute one half (1/2) of any monies, if needed to maintain the present benefits in the Employee Painters Trust for health and welfare, dental or vision plans, with a maximum contractor contribution of twenty-five cents ($0.25).

**Section 3**

The Plans in effect are hereby made a part hereof and all signatories to this Agreement are bound by the terms of said Trust Agreement, which are incorporated herein by reference as though fully set forth herein.

**Section 4**

If an employer fails to make contributions to the employee's Painters Trust Fund within five (5) days after the date required by the Trustees, the Joint Committee shall have the right to take whatever action or steps necessary to secure compliance with the Agreement and other provisions hereof to the contrary notwithstanding. The employer is liable for payment under this Article and if the Union so desires, it shall not be subject to, or covered by any grievance or arbitration procedure, or any "no strike" clauses which may be provided or set forth elsewhere in this Agreement. All legal fees will be paid by the employer.

**Section 5**

The Union reserves the right to refuse employees to any contractor or employer not keeping their welfare contributions current.

**Section 6**

In order that workmen who are otherwise eligible for welfare benefits shall be fully protected, it is mutually agreed that any employer who fails to make payment for the welfare benefits as provided herein shall personally be responsible to the employees herein covered for the benefits which would have occurred by such welfare coverage.

—21—

remove any employees as covered by this agreement.

# ARTICLE XI
## Vacation Fund

### Section 1

Effective July 1, 2001 the employer will forward one dollar and fifty cents ($1.50) per hour, on behalf of each employee who earns seventy-five percent (75%) or more of the journeyman straight time rate of pay, to the IBEW Plus Credit Union (1900 South Jones Blvd. Las Vegas, Nevada 89146).

### Section 2

This contribution to the Vacation Fund by the contributing employer will be paid at the same time and on the same forms as the welfare contributions. All rules pertaining to the payment of welfare monies will apply to the payment of vacation contributions.

### Section 3

The Vacation Fund contribution is a part of the hourly wage rate and is not to be construed as a fringe benefit. It shall be treated as such in the computation of payroll deductions.

### Section 4

Contributions shall be paid monthly and shall be recorded on forms supplied by the International Union of Painters and Allied Trades Union and Industry National Pension Fund Office.

Contributions covering hours worked during any month are due and payable on the first of the following month and will be considered delinquent if not paid by the thirtieth of the month. Employers failing to submit monthly reports as provided for above shall be assessed liquidated damages equal to five percent (5%) of the amount due on a monthly basis. Damages assessed shall be applied to the respective funds.

If contribution reports and payment are not received by the 30th of the month, the Joint Committee will suspend or revoke the employer's Shop Card for violation of this agreement, and reserves the right to request the Local Union to

# ARTICLE XII
## Check-Off of Administrative Dues

### Section 1

Every Employer signatory to this Agreement hereby agrees to check-off from the wages of any employee employed by such Employer during the term of this Agreement, administrative dues in the amount specified in the Union's bylaws and to remit said amount to the Union in the following manner.

(a) The Union will notify the Employer in writing of the amount of administrative dues specified in the bylaws, and will submit to the Employer a copy of the bylaws or the applicable bylaw provisions.

(b) For each payroll period, the Employer will deduct from the wages of each employee the amount specified in the bylaws based on the number of hours worked during said payroll period, and will accumulate said deductions to the end of the month.

(c) On or before the 30th day of each month, the Employer will remit to the Union the entire amount of administrative dues due and owing as to each employee for the month previous, together with a list of employees covered hereby and the number of hours worked by each during the applicable period.

### Section 2

When a signatory Employer performs a job within the jurisdiction of a union affiliated with the IUPAT other than the Union signatory hereto and the bylaws of that other union contain a provision for administrative dues or business representatives "assessment", the

MWD0305

Employer shall check off from the wages of employees covered by this Agreement and employed on that job-administrative dues or business representative "assessment" in the amount stated in that other union's bylaws, and shall remit said amount to that other union. In that event, that other union, shall be acting as agent of the signatory union for the purpose of policing and administering this Agreement. In performing this check-off, the procedure specified in Section 1(a-c) will be followed, except that it shall be the responsibility of said other Union to notify the Employer in writing of the amount of administrative dues or business representative "assessment" specified in its bylaws, and to submit to the Employer a copy of the bylaws or the applicable bylaw provision. When the signatory Employer performs a job within the jurisdiction of a Union affiliated with the IUPAT other than the Union signatory hereto, and the bylaws of that other Union contain no provision for administrative dues or business representative "assessment", the Employer shall continue to be bound by Section 1.

Section 3

The obligations of the Employer under Sections 1 and 2 shall apply only as to employees who have voluntarily signed a valid dues deduction authorization card.

## ARTICLE XIII
## Industry Promotion Fund

Section 1

The effective date of the Industry Promotion Fund contributions was July 1, 1973, and it is agreed between the Painting and Decorating Contractors of America, Southern Nevada Chapter, and the International Union of Painters and Allied Trades, Local Union #159, that all Chapter Signatory members shall contribute, as provided for in Section 2 of this Section, to the Painting and Decorating Contractors of America, Southern Nevada Chapter.

It is further agreed, that this fund is not to be used for any

anti-labor activities.

Section 2

Effective July 1, 1985, all signatory employers shall contribute eight cents ($.08) per hour, but not less than twenty dollars ($20.00) per month. These contributions are to be paid monthly in the same manner as all other benefits.

Section 3

(a) It is mutually agreed and understood that in the event a majority of the members of the Union covered by this Agreement elect, through means of a special called meeting and secret ballot, to enter into Union Administrative Dues Check-Off the employer shall within 30 days after written notice from the Union, deduct from the employee wages, the amount voted on. Prior to making this deduction the Union shall forward signed authorization from the employee as provided for under Nevada Revised Statute 608.110.

06/08/2006 09:46 FAX 702 7960339    MIDWEST    → DIEKER    ☐017

## ARTICLE XIV
### Fringe Benefit Contributions Administration

**Section 1**

Contributions shall be made monthly and shall be recorded on forms supplied by the International Union of Painters and Allied Trades Union and Industry National Pension Fund office (computer attachments accepted) and mail in one envelope with separate checks for each fund to the Joint Committee office for disbursement.

**Section 2**

Contributions covering hours worked during any month are due and payable on the first of the following month and will be considered delinquent if not paid by the 30th of the month. Employers failing to submit monthly reports as provided for above shall be assessed liquidated damages equal to five percent (5%) of the amount due on a monthly basis. Damages assessed shall be applied to the respective funds.

**Section 3**

If contribution reports and payment are not received by the 30th of the month for the preceding month, the Local Union may suspend or revoke the employees Shop Card for violation of this agreement and reserves the right to request the Local Union to remove all employees as covered by this agreement.

**Section 4**

In the event an employer fails to make timely remittance of reports and monies due to the various fringe benefit funds or for administrative dues, each employer signatory to this agreement recognizes the right of the Joint Committee to remove any working members from said employers employment.

—26—

## ARTICLE XV
### Bonding-Shop Card-Subcontracting

**Section 1**

On or after July 1, 2001 all employers signatory to this agreement shall provide and be covered by a surety bond for no less than thirty thousand dollars ($30,000) for the purpose of protecting the Trust Funds as provided for in this agreement. The Joint Committee will review all applications and issue Shop Cards. The Committee shall have the authority, based upon past work and financial responsibilities, to require higher bond limits.

**Section 2**

Further, should an employer fail to comply with the monthly remittance reporting provision of this agreement, then such employer may be required to submit the fringe benefit report to the Local Union on a weekly basis, including his check to cover such report. This weekly report shall be due no later than the following Wednesday after the regular Friday payday.

**Section 3**

The employer agrees that should work, as herein defined be contracted or assigned to a subcontractor, provisions shall be made to require compliance by the subcontractor with all the terms of this agreement.

**Section 4**

A subcontractor shall be defined as any person, firm, partnership, corporation, or other entity that is properly licensed in accordance with State Law, or the appropriate State Agency, to perform work covered under the scope of this Agreement.

—27—

06/08/2006 09:47 FAX 702 7960339        MIDWEST        → DIEKER        ᵭ018

## Section 5

The Union agrees that the provisions, conditions, and benefits hereof shall be extended to all sub-contractors of the employer insofar as work covered under this agreement is concerned, provided only, that such subcontractor subscribes and agrees in writing to be bound by the full terms of this agreement and complies with all the terms and conditions of this agreement.

## Section 6

Therefore, any employer becoming signatory to the Agreement by taking out a Shop Card hereby agrees to be bound by all provisions and amendments of the said Trust Agreements, decision of the Board of Directors of the Joint Committee, and decisions of the Board of Trustees of the various trust funds.

## Section 7

The signing of the short form Shop Card application refers to this Agreement and is binding for all parties involved.

## Section 8

On and after the date of signing of this Agreement, every employer, although a party hereto, must be registered through an authorized representative of Painters Local Union #159. The following information shall be required when registering.

(a) Firm name, address and telephone number.

(b) Name of owner or owners.

(c) Average number of workmen employed.

(d) A State Contractor's license number.

(e) Federal Withholding and Social Security account number.

(f) Nevada unemployment Insurance account number.

—28—

(g) City and/or County license number.

## Section 9

Such registration shall call for issuance of serially numbered Shop Cards. Said Cards shall be issued for the terms of the Agreement.

## Section 10

The Joint Committee shall be vested with the authority to issue Shop Cards; however, a Shop Card will not be issued to any employer until after the employer has met the qualifications as set forth in this Agreement.

## Section 11

The Shop Card is issued by the Joint Committee to indicate that the person to whom it is issued is a party to this Agreement and that he has signed a copy thereof. The holder of a Shop Card shall notify Painters Local Union #159 within ten (10) business days of any changes in ownership and/or officers of the corporation of license holder.

## Section 12

It is agreed that it is unfair for any person to be bound by the terms of this Agreement unless other parties thereto observe it likewise. It is recognized that it would constitute unfair competition for one employer to observe reasonable working conditions agreed upon while his competitors ignore such conditions. Therefore, no Shop Card will be issued to any license holder unless he employs one or more Journeymen.

## Section 13

The official Shop Card and all identification cards issued by the Joint Committee are the property of the Joint Committee. They are not transferable and must be returned upon demand to the Joint Committee or an authorized representative of the Joint Committee.

—29—

## ARTICLE XVI
## Preservation of Work Clause

### Section 1

To protect and preserve, for the employees covered by this Agreement, all work they have performed and all work covered by this Agreement, and to prevent any devise or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the Employer performs on-site construction work of the type covered by this agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise), management, control, or majority ownership, the terms and conditions of this agreement shall be applicable to all such work.

### Section 2

All charges of violation of Section I of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this agreement on the handling of grievances and the final and binding resolution of disputes. As a remedy for violations of this Article, the Joint Trade Board or Arbitrator shall be able, at the request of the Union, to require an Employer to pay (1) to effected employees covered by this agreement, including registered applicants for employment, the equivalent of wages those employees have lost because of the violations, and (2) into the affected Joint Trust Funds to which this agreement requires contributions, any delinquent contributions that resulted from other violations. The Joint Trade Board or Arbitrator under governmental channels (for example, the National Labor Relations Board).

### Section 3

If, after an employer has violated this Article, the Union and/or the Trustees of one or more Joint Trust Funds to which

—30—

this agreement requires contributions institute legal action to enforce and award by an Arbitrator or the Joint Trade Board remedying such violation, or defend an action that seeks to vacate such award, the Employer shall pay any accountants' and/or attorneys' fees incurred by the Union and/or the Joint Trust Funds, plus costs of the litigation, that have resulted from such legal action. This section does not affect other remedies, whether provided by law or this agreement, that may be available to the Union and/or the Joint Trust Funds.

## ARTICLE XVII
## Training

The Joint Committee shall be responsible for the management and disbursement of all Safety and Training Funds (at present this amount is five cents ($0.05) per hour worked) remitted to them under the J.C.I.P. Fund. This fund is to offset the costs of any and all Safety classes or courses and for Journeyman craft training along with materials and equipment. This fund will also be used for the purpose of training trainers.

(a) The Local Unions Safety and Training Committee along with the Apprenticeship Committee will be responsible for the formulation and scheduling of such classes along with the selection of Instructors. These funds at the discretion of the Joint Committee may be used for the Testing, Evaluating, Certifying, Tracking or Indexing members of Local 159.

(b) The Joint Committee at their discretion may combine the J.C.I.P. Safety and Training Fund with any other Training funds that the Union and Contractors may be involved with if at their discretion it would benefit the members of Local 159.

—31—

06/08/2006 09:48 FAX 702 7960339    MIDWEST    → DIEKER    ☒020

# ARTICLE XVIII
## Working Rules

### Section 1

Workmen shall report to work with the usual tools of the trade, consisting of a duster, putty-knife, broad knife, hammer, screwdriver and 5 in 1 tool.

### Section 2

Paperhangers shall supply a straight edge, 2' level and usual paperhanger's hand tools, with the contractor supplying all other tools and equipment. It is agreed by the signatory employers that they will furnish the necessary tables or boards, including such tools as rollers for pastes and adhesives, razor blades, towels, sponges, wallpaper and wall coverings for a finished job.

Drywall Finishers (Tapers) shall be required to furnish mud pans, various size knives, stomper, sanding pole, screwdriver, hammer and tin snips. The employer shall furnish all other tools of the craft.

### Section 3

Piecework, contracting or subcontracting to journeymen shall not be permitted.

### Section 4

The employer shall furnish drinking water on all jobs.

### Section 5

No employer signatory to this agreement shall require or utilize any employees car, truck or any other vehicle to transport materials, tools or equipment of any type in excess of twenty five pounds in the performance of work while said employee is employed by him unless by mutual agreement a rental agreement is entered into with a payment to be no less than ten dollars ($10.00) Per day per vehicle and/or trailer.

### Section 6

Employees shall not be permitted to rent, lease, or allow use of his own tools or spray equipment.

### Section 7

The preparation of material and equipment and the cleaning up and removal of same is to be performed within the eight hours. Employees will be allowed sufficient time for the cleaning of tools so as not to run past quitting time.

### Section 8

Workmen referred to the employes job site who arrive in an unfit condition for work, without proper tools or referrals, or who are not ready to go to work or who are not otherwise qualified, or who are workmen that the requesting contractor has notified the Union in writing of ineligibility for rehire, shall-not be entitled to show-up time, travel or subsistence, or any other form of compensation by the contractor.

### Section 9

Employees covered by this agreement shall have the right to respect any primary picket line that has been sanctioned by the Southern Nevada Central Labor Council or the Southern Nevada Building and Construction Trades.

### Section 10

Employers shall furnish all paste machines and no employee shall be required to agree to furnish said equipment.

### Section 11

It is required that all journeymen and apprentices shall furnish and wear clean white overalls, or clean white pants and shirts; such uniforms to be changed at least once-a week.

### Section 12

The Working Card is supplied by the Building and Construction Trades Council of Clark, Lincoln, Nye and

MWD0310

Esmeralda Counties, Nevada, or by Painters Local Union #159 and issued to members in good standing with Painters Local Union #159.

Section 13

It is agreed that any and all work not covered by this Agreement contracted for by an employer be performed by an employee affiliated with and in good standing with the Building and Construction Trades Council of Clark, Lincoln, Nye, and Esmeralda Counties, Nevada, or any other jurisdiction that is awarded to Painters Local Union #159.

Section 14

(a) Disabled members shall be permitted to solicit work on an hourly basis. A worker that is injured and is injured to such a degree that he is unable, because of physical disability, or other infirmity, may be employed at below the established minimum wage rate, by mutual agreement between both parties to this agreement. The worker may be asked to work for the hourly wage, less the percentage of disability, he/she sustained.

(b) No employer shall employ more than one disabled worker to each five employees.

(c) The Joint Committee shall by medical documentation, determine the basis of a workers disability status.

## ARTICLE XIX
## Travel Time and Subsistence

Section 1

Travel Time - the established city limits of Henderson and Boulder City shall be travel "free zone". Laughlin (Remodel) - travel time down first day of work, back last day of work. No subsistence.

—34—

Laughlin (New Work) - travel time down, first day of work, back last day of work. Subsistence $35 per day.
Mesquite - no travel, no subsistence.
State Line - no travel, no subsistence.

(a) On all other job sites, travel time shall commence fifteen (15) miles from Las Vegas Boulevard and Fremont Streets and shall be paid as follows:

0 to 15 miles = "free-zone"
0 to 5 miles beyond "free-zone" 15 minutes per day.
5 to 10 miles beyond "free-zone" 30 minutes per day.
10 to 15 miles beyond "free-zone" = 45 minutes per day.
15 to 25 miles beyond "free-zone" = 1 hour per day.

(b) Any job beyond the twenty-five (25) mile radius will pay at the hourly rate or fraction thereof.

(c) All employees residing within 25 perimeter miles of Laughlin, Nevada while employed at said site will not be eligible to receive any travel or subsistence pay.

Section 2

Travel time is not to be construed as working time.

Section 3

When an employee is hired or is currently working on a job site where travel time is paid and the employer, or a representative of the employer, fails to properly notify said employee not to report to the job site, then travel time shall be paid even though no work is performed by the employee.

Section 4

If the construction job is classified as a subsistence job, the employee shall receive travel time to the job site on the first day of hire and travel time at the end of the job or termination. Power

—35—

plant or industrial plant projects are excluded from this provision and shall be paid pursuant to paragraph (a) of this Section.

### Section 5

On jobs where subsistence is paid, the employer shall furnish a suitable change room and lunch area which shall be adequately heated in the winter and cooled in the summer.

### Section 6

Travel time on subsistence jobs will be determined by the amount of time actually spent driving from Las Vegas Boulevard and Fremont Streets, to the job site at the legal rate of speed.

### Section 7

Any dispute involving travel pay shall be resolved by the Joint Committee.

### Section 8

Subsistence - All jobs located 45 miles or more beyond the established "free-zone" shall pay subsistence. If food and lodging are not available at the job site, in addition to subsistence, the employee shall receive travel time as provided (or in this agreement to the nearest location that food and lodging are available beyond a "free-zone" of fifteen (15) miles from the job site.

### Section 9

Subsistence shall be paid at the rate of thirty-five ($35.00) per day for days worked, however, if an employee "shows-up" on the job site on a scheduled workday and no work is provided, the employee shall receive full subsistence pay.

### Section 10

If, for personal reasons, an employee voluntarily leaves the job site and fails to complete the shift, the amount of sub-

—36—

sistence shall be prorated on an eight hour basis.

### Section 11

If a journeyman is required to furnish his own transportation to any job site that is off the pavement or any first class country road (a maintained bladed road) the employer shall furnish transportation from pavement or first class county road to the job site and back.

### Section 12

Employees shall not accept transportation to or from job site in the employers' vehicle unless it is satisfactorily enclosed against the elements. Vehicles shall be provided with seats or benches. Employees are expressly forbidden to ride in the beds of trucks that contain gasoline, solvents, or an excessive amount of materials.

### Section 13

Any employee reporting to the job site in transportation furnished by the employer and who is arrested or detained by an authorized agent, State, County, City or Federal, for reasons of faulty equipment improperly registered vehicle, etc., shall be paid his prevailing wage while detained. This paragraph does not apply if such arrest or detainment is caused by negligence of said employee.

### Section 14

Any time lost by an employee in a legal court or hearing, if requested to appear by his employer, or employer's agent, shall be reimbursed at the prevailing basic wage rate. This paragraph shall not apply if negligence is on the part of the employee.

### Section 15

When an employee is requested to report to a job site in an area where free parking is not available on the job site or within two blocks of the site, the employer shall reimburse the employee for the cost of parking while working at said job site.

—37—

06/08/2006 09:50 FAX 702 7960339          MIDWEST          → DIEKER          Ⓓ023

# ARTICLE XX
## Stewards

### Section 1

The Business Manager shall appoint all Job/Shop Stewards. No Foreman shall be appointed as a shop or job steward. The Union shall notify the employer or his representative, in writing, of the appointment.

### Section 2

The steward shall be a working employee in addition to his regularly assigned work, be permitted to perform during working hours such of his steward's duties as cannot be performed otherwise. The Union agrees that such duties shall be performed as expeditiously as possible.

### Section 3

The Employer agrees to allow the steward a reasonable amount of time for the performance of his duties, including in addition to his normal duties, obtaining information on safety and sanitation.

### Section 4

The Employer or his representative can lay off or discharge the Steward for cause only, and the employer shall notify the Union of his intention to do so one (1) full working day prior to such layoff or discharge.

# ARTICLE XXI
## Payment of Wages

### Section 1

All wages shall be due and payable either in lawful currency enclosed in an envelope showing the employer's and employee's names, hours worked, deductions made, and the amount due, or by negotiable check payable on demand at par, together with a receipt showing the employer's and employee's names, hours worked, deductions made and amount due. The said check and said envelope shall conform with all provisions pertaining to the payment of employees as required by Federal and State laws.

### Section 2

Wages earned shall be due and payable Friday, on the job, no later than normal quitting time, and shall include all wages earned up to and including all hours worked on Sunday.

### Section 3

The employee shall not be required to go to any shop or office outside of the job site to pick up his Friday paycheck unless he/she is on company time.

### Section 4

Any time spent by the employee outside his regular workday shall be paid for at the appropriate rate of pay as provided in this Agreement.

### Section 5

Should any employee fail to work, quit early, or fail to be on the job site for the Friday pay, said employee shall not be entitled to any waiting time as provided for under this Agreement. Paychecks that are due and payable on Friday, in violation of Section 7 shall be submitted to the Local Union office the following Monday morning prior to 8:00 a.m. If the employer fails to present the weekly pay as provided for in

06/08/2006 09:51 FAX 702 7980339      MIDWEST              → DIEKER           ☎024

this Section, the employer shall pay all waiting time as per Section 7.

## Section 6

Employees laid off or discharged must be paid in full on the job at the time of dismissal.

## Section 7

Upon failure of the employer to pay the employees at the stipulated quitting time, all waiting time shall accrue at the rate of straight time of the employees current wage classification rate, not to exceed eight (8) hours in a twenty-four (24) hour period on a seven-day (7) basis. Members must report to the Union Representative all claims for waiting time not later than 4:30 p.m. of the following working day after said wages are due and payable.

## Section 8

Delay occasioned by accidents beyond the control of the employer shall not be construed as a violation of Section 2.

## Section 9

In the event of controversy regarding the merits of the period of waiting time, the employer shall place the said compensation involved in escrow with the local Joint Committee and said compensation shall be held by the Joint Committee pending decision of the Joint Committee empowered to rule on said matter.

## Section 10

The refunding of wages earned (commonly referred to as a "kickback") by a member of the Local Union, or the acceptance of said refund by the employer as defined herein, shall constitute a distinct and separate violation of this agreement and shall necessitate such action as is hereinafter stipulated under the section covering violations.

## Section 11

This agreement shall be in addition to any right accruing under the Nevada Revised Statutes pertaining to Labor Law which makes "kickback" punishable by fine and/or imprisonment.

## Section 12

All employees, either discharged or terminated for normal cause, shall be given a termination slip with their final check. The termination slip shall state the reason, such as normal reduction in force, job ending, work unsatisfactory, etc. The termination slip shall also state whether or not the employee is eligible for rehire. One copy shall be retained by the employer, one copy shall be given to the employee, and one copy shall be sent to the Union.

# ARTICLE XXII
# New Commercial and Industrial Work

3 Year Contract

Negotiated Contract - Downtown Construction

Wage Package 3 Years

| | July 1, 2001 | July 1, 2002 | July 1, 2003 |
|---|---|---|---|
| Wage | $.95 | $.95 | $.95 |
| Pension | $.25 | $.25 | $.25 |
| Organizing | $.10 | $.10 | $.10 |
| Apprenticeship | $.09 | $.09 | $.09 |
| L.M.C.I. | $.01 | $.01 | $.01 |
| Total Package | $1.40 | $1.40 | $1.40 |

MWD0314

06/08/2006 09:51 FAX 702 7960339      MIDWEST      → DIEKER      ☒025

## Section 1

Journeyman wages shall be as follows:

| | 7/1/01 | 7/1/02 | 7/1/03 |
|---|---|---|---|
| Brush & Roller | 25.62 | 26.57 | 27.52 |
| Spray Painter | 25.62 | 26.57 | 27.52 |
| Structural Steel Painter | 26.02 | 26.97 | 27.92 |
| Paperhanger | 25.62 | 26.57 | 27.52 |
| Sandblaster | 25.62 | 26.57 | 27.52 |
| Structural Steel Sandblaster | 26.02 | 26.97 | 27.92 |
| Pot Tender | 25.62 | 26.57 | 27.52 |
| Nozzleman | 25.62 | 26.57 | 27.52 |
| Tapers | 25.62 | 26.57 | 27.52 |
| Marbleizing | 25.62 | 26.57 | 27.52 |
| Metal Leafing | 25.62 | 26.57 | 27.52 |
| Sign Painter | 25.62 | 26.57 | 27.52 |
| Steeplejack | 27.42 | 27.77 | 29.32 |
| Acid Staining | 25.62 | 26.57 | 27.52 |
| Graining | 25.62 | 26.57 | 27.52 |
| Buffing | 25.62 | 26.57 | 27.52 |
| Buffing Steel | 26.02 | 26.97 | 27.92 |
| Special Coating | 26.62 | 27.57 | 28.52 |

(a) When a contractor contracts directly with a hotel that has a collective bargaining agreement with Local #159 and that hotel has in the past done its own in-house remodel of guest rooms and hallways in phases of over 50 rooms or 2 hallways at a time. At that point the downtown construction contractor may submit bids to that hotel for painting, wallcovering and incidental taping and patching at the then current wage and fringe package with a minimum package of:

$20.28 Wage - will increase 3% per year
1.50 Vacation
2.87 Health & welfare - or the current rate
2.75 Pension
.12 Apprenticeship - will increase $0.01 Per year

-42-

plus a paid 1/2 hour lunch. All holidays and days observed as holidays shall be observed as if the employees were working for the hotel.

This section is only good for hotel room remodel of over 50 rooms at a time and/or 2 hallways and public elevator lobbies only.

(b) When a non-signatory contractor is involved in a hotel in question and the hotel does not have a collective bargaining agreement with local 159, the union may target that project in such a way to level the bid by either/or reduction in wage, fringe benefits, journeymen/apprentice ratio, hours of work or by means permissible to the local.

(c) Prevailing wage jobs will be paid at the published prevailing wage requirements. The published rate will apply as per Department of Labor or State of Nevada.

## Section 2

## SPECIALTY PREMIUM PAY

(a) HIGH PAY - work over forty (40) feet, up to and including one hundred (100) feet in height shall be paid at the rate of fifty cents ($.50) per hour above the base classification. All work over one hundred (100) feet shall be paid at the rate of one dollar and seventy-five cents ($1.75) per hour above the base classification.

(b) High time shall be paid in addition to all other premiums involved.

(c) SWING STAGE - BOATSWAIN CHAIR. All work from suspended scaffolds, swing stage, boatswain chair, rigging suspended from a mechanical device shall be paid at the rate of thirty-five cents ($.35) per hour above the base rate and in addition to all other premiums involved.

(d) DOWN HOLE - Down hole time shall pay in the same

-43-

06/08/2006 09:52 FAX 702 7960339    MIDWEST    → DIEKER    026

will not be considered to be structural steel.

(f) All tanks mounted on structural steel supports, such as typical water towers of all designs, shall be considered structural steel and the steel premium rate shall apply.

### Section 4
### ALLOCATION OF WAGES

(a) The Union reserves the right to allocate any or all of the negotiated wage increases to Welfare, Vacation, Pension, Dues Check Off, Apprenticeship or Organizing.

(b) In the event the Union wants to increase the amount of contribution to any of the above mentioned Funds, the employer shall, within thirty days following written notice from the Union, divert the amount of such increase from the hourly wage rate then being paid and add the amount so diverted to the Fund as per instruction in the Union letter.

(c) Any negotiated increase for Vacation and/or Dues Check Off must be included in wages for tax purposes (vacation to be deducted after taxes).

### ARTICLE XXIII
### Foreman - General Foreman

### Section 1

A foreman will be chosen at the discretion of the employer, however, there will be at least one foreman on each job that has five or more journeymen.

(a) A foreman shall not be required to supervise more than ten journeymen at any time. Foremen shall receive a minimum of $2.00 per hour differential above the highest paid journeyman under his supervision.

—45—

increments as high pay.

(e) HAZARD PAY - Employees required to work inside tunnels, tubes or piping not covered by paragraph (D) such as work involved at water treatment plants and mining operations shall receive a premium of thirty-five cents ($.35) per hour above the base classification. Hazard pay shall be paid in addition to all other premiums involved.

(f) Employees working with or applying creosote, coal or hot tar epoxies shall be furnished uniforms or clothing described by trade practice.

(g) If a worker is entitled to receive premium pay at any time during his shift he shall receive the premium for the entire shift.

### Section 3
### STRUCTURAL STEEL

(a) For a definition of structural steel, see Exhibit A, Steel Construction Manual of the American Institute of Steel Construction; page 307, Section 2 classification.

(b) On erected structural steel, a premium of thirty-five cents ($.35) per hour over brush painters rate will be paid from the ground up.

If painted on the ground (not erected), brush painter's rate will be paid. If steel is sprayable, the spray rate premium will be paid.

(c) All painting on structural steel shall be by brush, roller or spray. Where "special coatings" are used, the provision of Section 32 dealing with Special Coatings will prevail.

(d) Service Station, as such, are not classified as structural steel.

(e) Upright or horizontal storage tanks set in concrete or similar bases, such as tanks used by oil company bulk plants,

—44—

MWD0316

06/08/2006 09:52 FAX 702 7960339     MIDWEST     → DIEKER     @027

(b) General Foreman: A foreman designated to supervise other foremen shall be classified as a general foreman. When a general foreman is required under paragraph A of this Article, he shall receive a minimum $3.00.

## ARTICLE XXIV
## Painters Joint Committee

### PURPOSE AND BUSINESS

Section 1

(a) To promote, protect, foster and advance the rights and interests of those engaged in the business and profession of painting, paperhanging and decorating in the community, whether as a journeyman, apprentice, or contractor; to improve the conditions under which the industry is carried on; to develop fair and just competitive methods, to perfect methods and rules for the peaceful and just settlement of disputes and misunderstandings in the profession and in the industry; and the profession as against unfair actions and discriminations; to collect and disseminate pertinent and constructive data and information relating to the industry and useful in the profession.

(b) To promote greater harmony and unity of purpose in the industry as between employer and employee, and as between both and the public; to establish equitable standards of business relations between the painting and decorating craft and the community served; to advocate and encourage trade education and improvement, to establish and enforce rules and principles of conduct and codes of ethics for the government of its members and associates in the industry; to investigate, arbitrate, compromise, adjust and determine all organizations and local contractor associations in the industry, as shall be authorized from time to time by contracts or other existing agreements as between the Union and the Association; to sit as a board of arbitration under the terms and conditions of any such contracts or agreement; to receive

—46—

complaints, hear evidence, make findings, and order and render and enforce decisions hereon; to make and enforce rulings thereunder and in accordance therewith, and with the findings of said board; and otherwise to perform and carry out all terms and conditions, intents and purposes of any such contract or agreement.

(c) The foregoing clauses shall be construed both as objects and powers, but no recital expression or declaration of specific or special powers or purposes herein enumerated shall be deemed to be exclusive; but it is hereby expressly declared that all other lawful purposes and powers not inconsistent with the Area Painters Agreement.

### MEMBERSHIP AND ALTERNATE MEMBERS

Section 2

(a) The affairs and management of the Joint Committee shall be under the control of six (6) members and six (6) alternate members. Three (3) of the regular and three (3) of the alternate members shall be journeymen members of, and selected by Painters Local Union #159, of the International Union of Painters and Allied Trades, and the remaining three (3) regular and three (3) alternate members shall be as follows: Three (3) of the regular and three (3) of the alternate members shall be contractors who are members selected by the P.D.C.A., this shall constitute the Employer's side of the committee. Alternate members of the committee shall be entitled to vote only in the event the regular member for whom he is an alternate is absent. The Joint Committee shall elect from among their members, a president and a secretary. The president and secretary will have one vote each. The committee shall not vote upon any subject unless at least two (2) journeymen members and at least two (2) contractor members are present and voting, and shall not vote upon matters of importance unless all six (6) members, or their respective alternates are present. Voting and meeting shall be subject to such fur-

—47—

ther restrictions as shall be fixed from time to time by the Bylaws, or by agreement between Local #159 and contractors.

## OFFICERS AND DUTIES

Section 3

(a) The President shall be the executive officer of the Joint Committee and shall preside at all meetings of the Joint Committee and shall be a member exofficio of all committees. He shall, at such times as he shall deem proper, communicate to the Joint Committee such subject, and make such suggestions as may, in his opinion, tend to promote the welfare and increase the usefulness of the Joint Committee and shall perform such other duties as are necessarily incidental to the office, or as may be prescribed by the Joint Committee. He shall appoint a Committee. He shall sign all instruments which have first been approved by the Joint Committee.

(b) The secretary shall perform the duties of the President in the event of his death or absence, and in the event of permanent termination of the services of the President from any cause, for the balance of his term of office, the Secretary shall be automatically designated as "Acting President". He shall act as assistant to the President with such duties as the Chairman may designate or assign.

(c) The Secretary shall give notice of and attend all meetings and keep a record of the proceedings. He shall conduct all correspondence and carry into execution all orders, votes and resolutions requiring communications. He shall have charge of all documents, records and papers, and shall keep them safely. At the discretion of the Joint Committee, he shall prepare an annual report of the transactions and conditions of the Joint Committee.

(d) A treasurer may be elected or appointed by the Joint Committee who shall keep an accurate record of all monies

received and expended for the Joint Committee, and shall make all disbursements authorized and approved by the Joint Committee. Funds shall be drawn only on the signature of the Treasurer and President and all bills must be approved by the endorsement thereon of the President. He shall have charge of the property and other cash funds set up by the Joint Committee for the transaction of current business and regularly occurring expenses. The funds, books, and vouchers in his hands shall at all times be subject to verification by the Joint Committee. At the expiration of his term of office, the Treasurer shall deliver to his successor, all books, monies and other property of the Committee, or in the absence of a treasurer-elect, shall make delivery to the Chairman.

(e) The said officers hall perform such other duties as shall from time to time be imposed or required by the Joint Committee, or as may be prescribed by the Bylaws or within the jurisdictions the specific office.

(f) The officers shall be empowered to employ such additional persons as may be necessary to the functioning of the Joint Committee subject to the approval of the expenditure by the Joint Committee.

(g) The President of the Joint committee shall preside at all meetings. In the absence of the President, the Secretary shall act; otherwise the Joint Committee may elect a President from their own number.

(h) The Joint Committee shall hold regular monthly meetings at a place as designated at 4:00 p.m. on the second Thursday of each month, for the transaction of such business and reports as may properly come before the committee. The Committee shall meet at such other times as may be necessary at the call of the President, or by any three (3) Committee members.

(i) Failure of any member of the Committee to attend a meeting hereof shall be explained in writing by such absentee,

—48—

—49—

MWD0318

06/06/2006 09:54 FAX 702 7960339    MIDWEST    → DIEKER    @029

said communication to be delivered to the Secretary prior to the convening of the meeting. Also when a member of the Committee is unable to attend a meeting, he shall, as soon as possible, and prior to the holding of said meeting, advise his Alternate of the matter. Those members present shall determine in each instance the excuse for such absence and three consecutive inexcusable absences shall automatically vacate said membership.

(j) The Painters Local Union #159 of Las Vegas, Nevada of the International Union of Painters and Allied Trades, and the Chapter of Painting and Decorating Contractors of Southern Nevada, shall fill all vacancies of officers from their respective representatives on the Committee for the unexpired term thereof that may occur by reason of death, resignation or otherwise.

(k) The Joint Committee shall elect from its membership an auditing committee each year to audit the books of the Joint Committee.

(l) It shall be the duty of the Joint Committee to keep a complete record of all its meetings and acts; to supervise all acts of the officers, committees and employees of the Joint Committee; to act as a board of investigation and/or discipline, or to appoint a committee for such a purpose and impose fines or other penalties.

(m) Notice of special meetings shall be mailed to each Joint Committee member not less than two (2) days prior to the meeting date and shall state the purpose, time and place of the meeting.

## ELECTION AND TERM OF OFFICE

Section 4
(a) In the election of officers, if the President should be an Employer, then the secretary must be a journeyman or vice versa. At each annual election, the office of President and Secretary must alternate, (i.e., if the President is an employer

—50—

during the term of office then at the succeeding annual election, the President must be a journeyman and the Secretary must be an Employer or vice versa.)

(b) All officers of the Joint Committee shall be elected from official delegates to the Joint Committee.

(c) Elections shall take place at the first regular Joint Committee in July of each year and such officers shall serve for a term of one year, except as otherwise provided for under the terms of this Agreement.

## PROCEDURE

Section 5
(a) Robert's Rules of Order shall be the mode of procedure in the conducting of the meetings of the Joint Committee, governing all parliamentary action.

(b) The order of business at all meetings of the Board of Directors or Committee, shall be as follows:

(1) Call to order,

(2) Roll Call,

(3) Reading of minutes,

(4) Reports of Officers, Chairman, Secretary, Treasurer (if elected or appointed)

(5) Correspondence,

(6) Reports of committees,

(7) Unfinished business from previous minutes, from officers reports, from committee reports, from floor,

—51—

MWD0319

(8) New business proposed by correspondence, proposed by committee, proposed by officers,

(9) Elections and Appointments, and

(10) Adjournment.

(c) The order of business may be altered by the Chairman or by vote of the members of the committee for any current meeting only.

## POWER AND DUTIES

Section 6

(a) The Committee is hereby vested with power to adjust all disputes and grievance that may arise out of the application or interpretation of this agreement and shall be empowered to interpret and make such rules and regulations as may be necessary to give force and effect the intent, purpose and meaning of this Agreement. The Committee is empowered to have access to all records pertaining to any case where violations of this Agreement are involved. The Committee shall have the power to require all parties to testify under oath, and such parties may be required to subscribe to a written statement of their testimony under oath. All decisions of the Joint Committee shall be final and binding upon both parties to this Agreement.

(b) The parties hereto and any party executing a counter part hereof hereby agrees that any disputes and grievances that may arise under this Agreement or any question of interpretation of any clause of this Agreement shall establish such rules for procedure hereunder as it shall from time to time determine. The Joint Committee is not authorized to arbitrate disputes arising out of negotiations for a new contract of any changes in wage scales, hours of work or working conditions.

(c) Contractors who are accused of violation of this agreement are subject to trails by the Joint Committee, with such Joint Committee having power to levy penalties in the

—52—

way of monetary fines or recommending cancellation of said employer's agreement to Local Union #159. In the event the Joint Committee is required to use court action, to secure compliance with this agreement or to collect fines due, such Employer being sued shall pay, in addition to a court award, court costs and attorney fees incurred by the Joint Committee.

(d) The Committee shall not have any authority in questions pertaining to renewal or negotiations of a new contract.

(e) If a decision cannot be reached by the Joint Committee, either because of a tie vote with the committee, or if the Joint Committee fails to make a decision the grievance or the interpretation of the Contract shall be submitted to arbitration in the following manner:

1. Within five days the Joint Committee shall meet and decide upon an arbitrator. The arbitrator shall be selected from seven (7) names which have been submitted to the Joint Committee by the Board of Appeals in the State of Nevada.

2. The arbitrator that is selected shall be notified and shall hear the case within twenty (20) days and make a decision in writing within twenty (20) days to all three (3) parties concerned.

3. The decision of the arbitrator shall be final and binding.

4. The costs of the arbitrator shall be borne by the Joint Committee totally.

5. If any of the above procedures are not complied with within the time limits, the Joint Committee shall be free to take whatever economic action they deem necessary in order to resolve this dispute.

—53—

06/08/2006 09:55 FAX 702 7960339     MIDWEST     → DIEKER     ☒031



# CHARGES AND TRIALS

## Section 7

(a) All charges of contract violation shall be filed with the Secretary of the Joint Committee in triplicate. Such charges shall set forth the section of the agreement which was violated. The time and place of such violation shall be set forth in addition to a description of the violation.

(b) Upon receipt of such charges, the Secretary of the Joint Committee shall notify the party being charged, of such charge, with a copy of such original charge enclosed. The Secretary shall advise the accused of a time and place of a Joint Committee hearing. Such hearing shall be not less than five (5) days nor more than ten (10) days after notification. The Secretary shall at the time notify all Joint Committee members of the date of such hearing.

(c) The Joint Committee shall conduct a hearing on the charges, and if the accused is an employee, the Joint Committee shall refer the charges, along with the Joint Committee findings to Local Union #159. Local #159 shall process the charges and reach a conclusion within thirty (30) days after receipt of such charges. Local Union #159 shall within five days after concluding the matter, notify the Joint Committee of the action taken by the Local Union.

(d) All fines collected by the Joint Committee shall go into the general fund of such committee.

# ARTICLE XXV
## Safety

### Section 1

All approved safety rules and regulations as set down and adopted by the State Industrial Insurance System, Public Service Commission, State Public Health Service and other agencies of

the Federal, County or City governments having jurisdiction over the parties with respect to safety and sanitation matters shall be observed by the employer and his employees.

### Section 2

Each employer signatory to this agreement shall designate an employee or an authorized representative to be in charge of Safety and shall be answerable to the State Industrial Insurance System and OSHA. When said person has been appointed, his name shall be reported to the Union office and the Union office shall be notified of any change.

There shall be at least one safety meeting held per week at either the job site, or by the way of a "tailgate" meeting or at employers primary place of business. Safety meetings shall be mandatory to all Union employees and shall be held on company time.

### Section 3

The Local Union shall be notified concerning all reported accidents by being sent a copy of the S.I.I.S. report when it is filed. In the case of a fatality, the Union shall be notified immediately by telephone. The employer further agrees that the Union Representative shall have full access to all areas where such accident occurred.

### Section 4

Labor and Management are aware of the problem of alcohol and substance abuse in our industry today, therefore the employer may institute a fair and consistent drug policy.

In case of accident on the job that requires medical treatment, a drug test shall be given, this testing shall not be selective but given to all workers requiring medical aid.

### Section 5

All Personnel Protection Equipment shall be furnished without cost or deposit to the employee.

06/08/2006 09:56 FAX 702 7960339   MIDWEST   → DIEKER   @032

# INDUSTRIAL REPAINT AGREEMENT

## Section 1-B

(a) Work covered under this Section shall include industrial projects such as wastewater treatment, power sub-stations, water reservoirs, water/fuel/chemical tanks, water/power/gas pipe lines/vaults.

(b) Work covered by state or federal prevailing wage laws are not covered by this Section.

## HOURS OF WORK--OVERTIME

### SECTION 2-B

(a) WORKDAY - The regular workday shall consist of eight (8) or ten (10) hours of work depending on the work week, between 5:00 a.m. and 4:30 p.m.

(b) WORKWEEK - The regular workweek shall consist of five (5) eight (8) hour workdays, or four (4) ten (10) hour workdays between Monday through Friday.

(c) A Five day eight (8) hour week -- the first three (3) hours worked outside a regular five (5) day eight (8) constituted day shift, Monday through Friday, shall be paid at the rate of 1 and ¼ times the straight time rate. All hours worked beyond eleven (11) hours shall be paid at two (2X) times the straight time rate. The first eight (8) hours worked on a Saturday day shift shall be paid at the rate of one and one-half (1½X) times the straight time rate all other hours worked beyond the eight (8) hours shall be paid at double (2X) the straight time rate.

All hours worked beyond ten hours shall be paid at double (2X) the straight time rate. The first eight (8) hours worked on the fifth (5th) or (6th) day shall be paid at one and

# ARTICLE XXVI
## General Savings Clause

### Section 1

If any Article or Section of this Agreement should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any Article or Section should be restrained by such tribunal pending a final determination as to its validity, the remainder of the Agreement or the application of such Article or Section to persons or circumstances other than those as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

### Section 2

In the event that any Article or Section is held invalid or enforcement of or compliance with any Article or Section has been restrained, as above set forth, the affected parties shall meet at the request of the Union, for the purpose of arriving at a mutually satisfactory replacement for such Article or Section during the period of invalidity or restraint. If the parties do not agree on a mutually satisfactory replacement within sixty (60) days after beginning of other period of invalidity or restraint, either party shall be permitted all legal or economic recourse in support of its demands notwithstanding any provision in this Agreement to the contrary.

MWD0322

## SHIFT WORK

### Section 3-B

(a) On Industrial repaint work as defined herein, where the contractor is unable to perform the work involved during the day shift, a swing shift and/or graveyard shift may be established as follows:

Swing Shift - shall include the hours worked between 3:30 p.m. and 12:00 midnight, Monday through Friday. The employee shall receive the straight time hourly rate of pay plus twenty percent (20%).

Graveyard Shift - shall include the hours worked between 12:00 midnight and 8:30 a.m. Monday through Friday. The employee shall receive the straight time hourly rate of pay, plus thirty percent (30%).

— 59 —

---

one half (1½) the straight time rate, all other hours at double (2X) the straight time rate.

A work shift starting on Sunday night and ending on Monday shall be considered Monday work.

(d) In those instances where an employee fails to work forty (40) hours during the regular work week (Monday through Friday) due to inclement weather, or circumstances beyond the control of the employer, the employer may, if the employee is willing, schedule the employee to work on Saturday of the same week and in such event, the pay for such work, not exceeding eight hours, shall be computed at the straight time rate of pay.

The contractor must register such starting time with the Joint Committee and Local Union, setting forth the hours that he chooses to work and once such decision is made, such hours would apply on each and every job being performed by said contractor. It has never been the intention of this section to allow the employer to start the project and then transfer employees to another job site since this could be in violation of overtime as provided for in this agreement.

— 58 —

06/08/2006 09:57 FAX 702 7960339   MIDWEST   → DIEKER   ☒034

## WAGE SCHEDULE
## INDUSTRIAL REPAINT

### Section 4-B

(a) Effective July 1, 2001 the following basic wage rates shall be in force.

| | July 1, 2001 | July 1, 2002 | July 1, 2003 |
|---|---|---|---|
| Wage | $.95 | $.95 | $.95 |
| Pension | $.25 | $.25 | $.25 |
| Organizing | $.10 | $.10 | $.10 |
| Apprenticeship | $.09 | $.09 | $.09 |
| L.M.C.I. | $.01 | $.01 | $.01 |
| Total Package | $1.40 | $1.40 | $1.40 |

(b) FOREMAN - A foreman shall receive $2.00 per hour differential above the highest paid journeyman under this supervision.

(c) Any special premiums such as high pay, swing stage, etc. as outlined in Section 24 shall be in addition to the hourly wage rates as prescribed in this section.

(d) There shall be no deduction for Vacation Pay under the Industrial Repaint Addendum.

(e) TRAVEL TIME - Boulder City and Henderson shall be included as a "free zone" area for work covered under the Industrial Repaint addendum.

—60—

## USE OF TOOLS

### Section 5-B

(a) There shall be no restrictions placed on the use of the tools to perform work covered under the Industrial Repaint addendum.

—61—

MWD0324

## DURATION CLAUSE

1. This Agreement shall be in full force and effect from 7/1/01 to and including 6/30/2004 and shall continue from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other not less than sixty (60) and not more than ninety (90) days prior to 6/30/2004 or June 30 of any subsequent contract year.

2. Where no such cancellation or termination notice is served and parties desire to continue said Agreement, but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a written notice not less than sixty (60) and not more than ninety (90) days prior to 6/30/2004 or June 30 of any subsequent contract year, advising terms or conditions of such Agreement. The respective parties shall be permitted all legal or economic recourse to support their requests for revisions if the parties fail to agree thereon. Nothing herein shall preclude the parties from making revisions or changes in this Agreement, by mutual consent, at any time during its term.

— 63 —

## MASTER AGREEMENT

### Section 7-B

(a) All language contained in the Master Agreement that pertains to payment of wages, fringe benefits, rules or regulations that govern the Master Agreement that is not contained herein shall also govern this addendum.

FOR THE P.D.C.A.

Thomas Pfundstein

Bill B. Stopling

John Gretch

FOR THE UNION

Bill E. Stutsell

Gerald J. Knetz

Leonard Wittman

Daniel Saxton

— 62 —

MWD0325

06/08/2006 09:58 FAX 702 7960339     MIDWEST     → DIEKER     @036

## POLITICAL CONTRIBUTION DEDUCTION

It is agreed by the parties hereto that Attachment "3" is a Memorandum of Understanding to the Master Agreement for the Painting Industry dated July 1, 2001 – June 30, 2004.

**Voluntary Payroll Deduction of Political Contributions** - Employers signatory to this Agreement hereby agree to honor authorizations for check-off of political contributions from employees who are union members in the following form, and to forward all contributions and reports on contributions on or before the 20th day of each month for the previous work month to Combined National Fund, P.O. Box 79128, Baltimore, MD 21279-0128.

**Authorization Form for Check-off of Political Contributions** - I hereby authorize my employer to deduct from my pay the sum of five cents ($.05) for each hour worked (or from each regular paycheck _____ dollars weekly), as a contribution to the Political Action Together - Political Committee (PAT-PC) of the International Union of Painters and Allied Trades. I further authorize and direct the Employer to send the "Combined National Fund", on or before the 20th day of each month, the contributions and report on contributions due for the previous work month. Checks shall be made payable to "Combined National Fund" and mailed monthly together with the applicable remittance report to Combined National Fund, P.O. box 79128, Baltimore, MD 21279-0128. This authorization is signed freely and voluntarily and on the understanding the PAT Political Committee is engaged in a joint fund raising effort with the AFL-CIO, will use the money contributed in connection with Federal, State and Local elections, and that this voluntary authorization may be revoked at any time by notifying my employer, PAT Political Committee, and Local Union #159 in writing of a desire to do so.

—65—

IN WITNESS WHEREOF the parties hereto have set their hands and seals, this 1st day of July, 2001 to be effective as of 7/1/01 except as to those provisions where it has been otherwise agreed between the parties.

**UNION:**

Painter Local Union #159

DATE

SIGNATURE

TITLE

**EMPLOYER(S):**

COMPANY NAME

DATE

SIGNATURE

TITLE

—64—

MWD0326

Notes

Employee Signature

Contributions to PAT-PC are not deductible as chari-
table contributions for Federal income tax purposes.

-66-