# Exhibit 5d

# PAINTERS & DECORATORS

# MASTER AGREEMENT

## JULY 1, 2007

### through

## JUNE 30, 2011



### --between--

## INTERNATIONAL UNION OF PAINTERS

### AND

## ALLIED TRADES DISTRICT COUNCIL #15
## LOCAL UNION #159

### AND

## THE PAINTING AND

## DECORATING CONTRACTORS

## OF AMERICA

## SOUTHERN NEVADA CHAPTER

## LAS VEGAS, NEVADA

PAINTERS AND DECORATORS
MASTER AGREEMENT

TABLE OF CONTENTS

| | |
|---|---|
| WITNESSETH | 3 |
| ARTICLE 1 – RECOGNITION | 3 |
| ARTICLE 2 – WORK JURISDICTION | 4 |
| ARTICLE 3 – AREA JURISDICTION | 7 |
| ARTICLE 4 – 50-50 CLAUSE | 7 |
| ARTICLE 5 – HIRING PROCEDURES | 8 |
| ARTICLE 6 – HOURS OF WORK – OVERTIME | 10 |
| ARTICLE 7 – HOLIDAYS | 13 |
| ARTICLE 8 – PENSION | 13 |
| ARTICLE 9 – APPRENTICE AND JOURNEYMAN TRAINING | 15 |
| APPRENTICE WAGES | 17 |
| ARTICLE 10 – HEALTH AND WELFARE-DENTAL-VISION PLANS | 19 |
| ARTICLE 11 – VACATION FUND | 20 |
| ARTICLE 12 – CHECK-OFF OF ADMINISTRATIVE DUES | 21 |
| ARTICLE 13 – INDUSTRY PROMOTION FUND | 22 |
| ARTICLE 14 – FRINGE BENEFIT CONTRIBTUTIONS ADMINISTRATION | 23 |
| ARTICLE 15 – BONDING-SHOP CARD-SUBCONTRACTING | 24 |
| ARTICLE 16 – PRESERVATION OF WORK CLAUSE | 26 |
| ARTICLE 17 – WORKING RULES | 27 |
| ARTICLE 18 – TRAVEL TIME SUBSISTENCE | 29 |
| ARTICLE 19 – STEWARDS | 31 |
| ARTICLE 20 – PAYMENT OF WAGES | 32 |
| ARTICLE 21 – NEW COMERCIAL AND INDUSTRIAL WORK | |
| WAGE PACKAGE 3 YEARS | 34 |
| SPECIALTY PREMIUM PAY | 35 |
| ALLOCATION OF WAGES | 36 |
| ARTICLE 22 – FOREMAN-GENERAL FORMAN | 36 |
| ARTICLE 23 – PAINTERS JOINT COMMITTEE | |
| PURPOSE AND BUSINESS | 37 |
| MEMBERSHIP AND ALTERNATE MEMBERS | 38 |
| OFFICERS AND DUTIES | 38 |
| ELECTIONS AND TERM OF OFFICE | 40 |
| PROCEDURE | 40 |
| POWER AND DUTIES | 41 |
| CHARGES AND TRIALS | 42 |
| PREVAILING WAGE | 42 |
| ARTICLE 24 – SAFETY | 44 |
| ARTICLE 25 – GENERAL SAVINGS CLAUSE | 45 |
| | |
| DURATION CLAUSE | 45 |
| MASTER AGREEMENT SIGNATURE PAGE | 46 |
| POLITICAL CONTRIBUTION DEDUCTION | 47 |

2

**PAINTERS AND DECORATORS
MASTER AGREEMENT
July 1, 2007 through June 30, 2011
IUPAT District Council 15
Las Vegas, Nevada**

**WITNESSETH**

**WITNESSETH:**     That for and consideration of harmonious relations between the parties referred to and the public, the maintenance and stability of the conditions of employment and other mutually beneficial relations, and for the purpose of preventing strikes and lockouts by facilitating just and peaceful adjustments of disputes and grievances that may arise from time to time, and for the purpose of protecting and safeguarding the health and safety of the parties concerned, the parties hereto have agreed that the understanding hereinafter set forth shall be binding on all signatory members of the parties thereto, individually and collectively.

**ARTICLE 1
RECOGNITION**

**Section 1**     This agreement is made and entered into the 1st of July 2007, by and between the INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, LOCAL UNION #159 which is affiliated with IUPAT DISTRICT COUNCIL 15, Las Vegas, Nevada, and SIGNATORY CONTRACTORS ASSOCIATIONS Listed in Section 2 (b) below, as well as any independent contractors not represented by an Association, Las Vegas, Nevada, for and on behalf of its present and future signatory members, as well as firms who have executed written authorizations for the Chapter to represent them in Labor Relation matters of which are related to this Agreement and any independent employers who may affix their signature to this agreement.

**Section 2**     It is agreed that this agreement shall constitute the complete agreement between the parties signatory hereto, and any other agreed to revisions and/or amendments not herein included are null and void.

(a)     The employer recognizes the Union as the sole collective bargaining agency between itself and the employees covered under the scope of this Agreement.
(b)     The Union recognizes the Associations  as the collective bargaining agencies  between themselves and employers covered under the scope of this Agreement who have executed "proxies" with a specific Association. Associations who are signatory to this agreement are as follows:  Southern Nevada Chapter of the P.D.C.A. and the W.W.C.C.A.
(c)     Any and all Collective Bargaining Agreements (excluding agreements with the Nevada Test Site either directly or indirectly) entered into between District Council 15, Local #159 and the signatory associations and independent contractors, will first be signatory to this Agreement.

3

**Section 3**    The Employer agrees that the Union is the sole and exclusive bargaining representative of its employees which are covered by this Agreement. Furthermore, any Employer who is signatory to this Agreement, hereby agrees that upon demand by the Union, the Employer will submit to an Authorization Card Check to determine the majority status of the Union. The Employer hereby agrees that if the Union has presented proof, or the Union has offered to show proof, in the form of signed Authorization for Representation Cards in sufficient numbers to show that the Union represents a majority of its employees in an appropriate bargaining unit as compared to the most recent remittance reports submitted to the trust fund administrator, that the Employer recognizes the Union as the sole and exclusive bargaining representative of the employees included in that appropriate bargaining unit as provided for in Section 9(a) of the National Labor Relations Act. This recognition extends to all present and future job sites of the Employer.

**Section 4**    It is hereby agreed that the Associations shall appoint all employer committee member(s), to any of the committees referred to in this Agreement if needed at the ratios listed below.

**(a)**    Painters and Decorators Joint Committee: PDCA 3 trustees; WWCCA, 1 trustee.
**(b)**    Painters Joint Apprenticeship and Training Committee: PDCA 3 trustees; WWCCA 1 trustee.
**(c)**    Health and Safety Training Upgrade Award Program: PDCA 3 trustees; WWCCA 1 trustee.
**(d)**    (Future) Vacation Trust Fund: PDCA 3 trustees; WWCCA 1 trustee.
**(e)**    (Future) LMCC Trust Fund: Determination of who seats Trustees is TBD.

### ARTICLE 2
### Work Jurisdiction

**Section 1**    This Agreement shall cover jurisdiction over

**a)**    Painters: Work will include, but not be limited to: (1) preparation of any surface that is to receive any coating. This Is to Include, but not be limited to caulking, puttying, spackling, bondo, fiberglass applications and repairs, sealers and primers. The application and removal of all types of coatings and coating systems in relation to all painting, decorating, protective coatings, coating and staining of concrete floors and toppings, waterproofing, masonry restoration, fireproofing, fire retarding, metal polishing, refinishing, sealing, lining, fiberglassing, E-Glass fiberglass, GRG, GFRC, plaster cast, carbon fiber, encapsulating, insulating, metalizing, flame spray, Exterior Insulating Finishing Systems, the application of Venetian Plasters and/or Polymers; (2)each and all such applications, and similar or substitute applications, on all surfaces, interior and exterior, to include, but not be limited to: residences; buildings; structures; industrial, power, chemical and

4

manufacturing plants; bridges; tanks; vats; pipes; stacks; light and high tension poles; parking, traffic and air strip lines; trucks; automobile and railroad cars; ships; aircraft; and all machinery and equipment; (3) any and all material used in preparation, application or removal of any paint, coatings or applications, including, but not limited to: the handling and use of thinners, dryers, sealers, binders, pigments, primers, extenders, air and vapor barriers, emulsions, waxes, stains, mastics, plastics, enamels, acrylics, epoxies, epoxy injection and T-Lock welding, alcalyeds, sheet rubber, foams, seamless and tile-like coatings, etc.; (4) all preparation for and removal of any and all materials for finishes, such as deep cleaning, patching, all levels of finishing, taping/finishing, skim coating, pointing, caulking, high pressure water, chemical and abrasive blasting, environmental blasting, wet/dry vacuum work, chemical stripping, scraping, air tooling, bleaching, steam cleaning, asbestos and lead abatement/removal; (5) the inspection of all coatings and/or coating systems during their applications will be performed by members of this International Union.

(b)  Wall Covering work will include, but not limited to: (1) all material applied to walls or ceilings with adhesive, staples, tacks, by stretching or adhered by any other method, including all papers, vinyls, flexible woods, fabrics, borders, metals, upholstered wall systems, the fabric covered panels made of plastic/wood or prefinished products of micor fiberglass, etc., acrovin and various plastic wall coverings such as wainscoat, caps, corner moldings and accessories; (2) any and all preparation of walls and ceilings such as scraping or any methodology for removal of existing materials, including patching, leveling, skim coating and priming.

(c)  Drywall Finishing work will include, but not be limited to: (1) the preparation or leveling of any surface or substrate which is to receive a coating, finish and/or wall covering; this will include, but not be limited to, all levels of finishing and/or spackling of all surfaces, including gypsum wallboard taping and finishing, fire taping and all firestopping systems, glaze coatings, skim coating or any other finishing system, spotting of nails, finishing of corner beads/flex beads. Patching and sanding is within the system of preparing surfaces for finishes. (2) all stucco and dryvit systems will be performed by members of this International Union.

(d)  Paint Makers will include, but not be limited to all workers engaged in the mixing, testing, preparing and/or manufacturing of paint, coating, caulking, putty, sealants, etc. and handling of lead, color, oil, lacquer, varnish, synthetic resin, acrylic paints and coatings, etc., including any and all materials for the same.

(e)  Sign and Display: Sign and Display Painters' work shall include, but not be limited to: (1) the making and installation of all signs and servicing of same, designing, lettering and pictorial work of any kind, including vinyl signs and vinyl substrates and the preparing for the finishing of same, be it by hand brush, roller, spray, mechanical or computer-aided and by any other method or process pertaining to same; (2) they shall have control of all branches, methods and

5

processes of screen process work; tube bending and display work such as creating, designing, building and finishing of all display matter and its related operations used for advertising purposes, including all art work and lettering whether it is done by hand, mechanical or computer aided or by any other method or process pertaining to same; (3) the construction, erection and maintenance of all billboards and all communication advertising will be done by members of this International Union.

(f)     Scenic Artists and Designers: Scenic Artists' and Designers' work will include, but not be limited to: models, sketches, carpenter drawings, painting for theatrical productions, motion picture settings and all the various effects; the painting of properties and decorations which may be used to decorate stage, motion picture and TV settings, mural paintings, display creations, costumes and the art of make-up and all its various effects.

(g)     Metal Polishers: Metal Polishers' work will include, but not be limited to: new construction and existing sites consisting of metal polishing, both the initial and continuing maintenance which shall include, but not be limited to, coloring, lacquering, spraying, application of vinyl coatings, cleaning, polishing and finishing of ornamental and architectural iron, bronze, brass, nickel, aluminum, stainless steel and all metal specialty work.

(h)     All Tools, Equipment and Material: (1) the handling, assembling, disassembling, operation, maintenance, storage and transporting of all tools, equipment and material used or that may be used by members of this International Union in performing their trade or work; (2) the loading and unloading of any and all materials, tools and equipment will be done by any members and units coming under the International Union's jurisdiction; (3) tools, material and equipment, as used herein, shall include, but not be limited to, brushes, rollers, spray painting equipment, coating applicators, all miscellaneous hand and power driven tools, all robotic, computerized mechanical and manually operated abrasive, shot, bead, water     and     related     blasting     equipment,     containment     systems, ventilation/dehumidification systems, vacuum recovery units, wet and dry vacuum systems and any and all related safety equipment, ladders, scaffolding, lifts and all other dedicated rigging, including the handling, erection and dismantling of same, the operation and maintenance of all types of compressors.

(i)      Related Work: Members of this International Union shall also have jurisdiction of: (1) all processes and procedures for decontamination of all contaminated areas; (2) all clean-up of any type debris caused by or during the preparation and/or application of any work described in this Section.

(j)      Technological Improvements, Advancements, New or Substitute Systems or Processes and/or New or Substitute Materials: The jurisdiction of this International Union shall include and extend to any and all new or substitute systems or processes, new or substitute materials and technological improvements

6

or advancements in any existing or new system, process or material that is referred to or incorporated in any of the provisions in the General Constitution or any collective bargaining agreement to which the International or any of its subordinate bodies is a party.

(k)    Jurisdictional Disputes

    (1)    The parties hereto agree that, where a jurisdictional problem develops involving Unions not signatory to this agreement, the representatives of the Unions involved will meet with the representatives of the Contractor to resolve the particular problem. Any resolution resulting from such aforementioned meeting between the Unions and the Contractor shall be put into effect immediately.

    (2)    Jurisdictional disputes that cannot be resolved at the local level shall be referred to the International Unions for the purpose of settling the said dispute under the dispute resolution process adopted by the General Presidents of the National Building trades known commonly as "The Plan"

## ARTICLE 3
### Area Jurisdiction

**Section 1**    The area Jurisdiction, covered by this agreement shall include, Clark County, Lincoln County, Nye County, Esmeralda County, in the State of Nevada and any other area jurisdiction awarded to Painters Local Union #159, by the International Union of Painters and Allied Trades.

## ARTICLE 4
### 50-50 Clause

**Section 1**    It being understood that the principle place of business and the employment of the employer is in the area jurisdiction as stated, but that such employer on occasion undertakes painting work in other cities and areas, on which occasions such employer employs such additional employees, residents of such other city or area as the needs of the work require; now therefore, be it resolved:

a)    The contractor or the employer party to this agreement, when engaged in work outside the geographical jurisdiction of the Union party to this agreement, shall employ not less than fifty percent (50%) of the workers employed on such work from the residents of the area where the work is performed or from among persons who are employed the greater percentage of their time in such area.

b)    The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to the agreement, comply with all of the lawful clauses of the collective bargaining agreement in effect in said other

7

geographic jurisdiction and executed by the employers of the industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for settlement of grievances set forth therein; provided however, that as to employees employed by such employer from within the geographic jurisdiction of the Union party to this agreement and who are brought into an outside jurisdiction, such employee shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction whichever are more favorable to such employees, it is understood that fringe benefit contributions that directly benefit the worker (s) follow the worker(s) home, however all fringe benefit contributions made on behalf of workers who have been brought in from another jurisdiction by an employer shall be remitted to the Painters and Decorators Joint Committee, or designated third party administrator, who will then immediately remit the Pension and Health and Welfare contributions made on behalf of those workers to their home jurisdiction's trust funds. All other contributions or deductions covered in this Agreement shall stay in the jurisdiction of District Council 15. This provision is enforceable by the District Council or Local Union in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in its applicable collective bargaining agreement and through the courts, and is also enforceable by the Union party to this agreement, both through the procedure for settlement of grievances set forth in this agreement and through the courts.

## ARTICLE 5
### Hiring Procedures

**Section 1**  The Union shall be the sole and exclusive source of referrals of applicants for employment. All employees covered by this Agreement shall be dispatched by the Union.

**a)**  The employers retain the right to reject, for any lawful reason, any job applicant referred by the Union.

**b)**  All persons shall be retained on the job except for the following reasons: willful neglect of duty, incompetence, or conditions beyond the control of the employer.

**c)**  The Employer hereby agrees that when a worker is laid-off or terminated, that the employer shall fax a termination slip to the Union dispatch office and shall furnish the Union with information relative to reason for lay-off or termination and elegibility for rehire.

**Section 2**  The Union shall establish and maintain seperate, open and non-discriminatory employment lists for workmen desiring employment on work covered by this agreement, and such workmen shall be entitled to registration and dispatch free of charge, subject to the provisions of this section.

**Section 3**  The Employer shall first fax the dispatch office of the Union for the workmen they may from time to time need, and the Union shall furnish to the employer the required number of workmen of the classification needed and requested by the employer strictly in accordance with the procedure established. The Employer shall state on the faxed request any special requirements that workers need to satisfy to obtain employment from the Employer.

**Section 4**  The dispatching office will fill the Employer's request for workmen of the type specified from among those entered on said lists by use of a written referral. The following order of preference and the selection of workmen for referral for jobs shall be on a non-discriminatory basis. The Employer will be able to select workman on the list by name at a ratio of 3 to 1. Work call shall be at 8 a.m. on regular workdays.

**Section 5**  Apprentices shall be hired and transferred in accordance with the Apprenticeship Standards and provisions of the Painters and Decorators Joint Apprenticeship Council of Las Vegas, Nevada, and as established by the signatory parties.

**Section 6**  When the Employer has notified the Union in writing that a worker is not eligible for rehire, the Employer shall not be forced into hiring, but may do so should the Employer elect to at a future date. Applicants who are not elegible for rehire shall not be entitled to show-up time or any other form of compensation.

**Section 7**  If the registration list is exhausted or registrants refuse referral and the Union is unable to refer applicants for employment to the employer, within forty-eight (48) hours from the time of receiving the employer's request (Saturdays, Sundays and holidays excluded), the employer may procure employees from any other available source. If employees are so hired, the employer shall immediately refer to the Union those employees for dispatch, and shall replace such temporary employees as soon as registered applicants for employment are available under the referral procedure.

In order to be entitled to registration and dispatching as a journeyman, the applicant must be able to demonstrate that he has worked at the trade for a minimum of three years, and must have successfully completed standard examinations conducted by the Local Union.

**Section 8**  Should an Employee be hired contrary to the provisions of the Hiring Procedure, The Union Representative shall request that the Employer dismiss the employee so hired. If the Employer refuses to dismiss the employee, the matter shall be referred to the Joint Committee.

**Section 9**  The Union and the employers shall cooperate to the end that a copy of hiring and referral procedures set forth and as contained herein shall be posted on the bulletin board in the office of the Local Union and in the offices or shops of the employers who are parties to this Agreement.

**Section 10**    The Union representatives have the right at all times to interview employers, or to see, or to be advised, on any applicant or journeyman as to hours worked, time cards, sign in sheets and or charts, rate of pay, travel time and subsistence paid, and any or all deductions covered by such payment. Further, the Business Representative shall be authorized as a matter of convenience for the Union and its members or applicants to present to a signatory employer, during the life of this Agreement, an authorization for any necessary deductions from an employee's earnings for the purpose of bringing an employee's account with the Union up to date after said employee has properly signed or endorsed such "hold-out" notice.

## ARTICLE 6
### Hours of Work – Overtime

**Section 1**    The regular workday shall consist of eight (8) or ten (10) hours of work depending on the work week, between 5:00 a.m. and 4:30 p.m. with one half (1/2) hour for lunch to be given no later than five (5) hours after the beginning of the shift. Following the regular midday lunch break, no employee shall be required to work more than six hours without an additional thirty-minute lunch break. If more than six hours work is required, the employer agrees to provide no less than thirty minute lunch period without loss of time to the employee.

The Employer shall allow one paid fifteen (15) minute break which shall fall between starting time and the designated lunch period. If employees are required to work more than eight (8) hours but less than twelve (12) hours, the Employer shall allow an additional paid fifteen (15) minute break which will fall as close to the eighth (8th) hour as is reasonably possible.

**Section 2**    The regular workweek shall consist of five (5) eight (8) hour workdays, Monday through Friday or four (4) consecutive ten (10) hour workdays between Monday and Friday.

**Section 3**    A five day eight (8) hour week – the first three (3) hours worked outside a regular five (5) day eight (8) hours constituted day shift, Monday through Friday, shall be paid at the rate of 1 and ½ times the straight time rate. All hours worked beyond eleven (11) hours shall be paid at two (2X) times the straight time rate. The first eight (8) hours worked on a Saturday day shift shall be paid at the rate of one and one-half (1 ½X) times the straight time rate all other hours worked beyond the eight (8) hours shall be paid at double (2X) the straight time rate.

**Section 4**    When working a four-ten (4-10) hour shift; All hours worked beyond ten hours shall be paid at double (2X) the straight time rate. The first eight (8) hours worked on the fifth (5th) or sixth (6th) day shall be paid at one and one half (1 ½) the straight time rate all other hours at double (2X) the straight time rate.

**Section 5**      In the event that a majority of a shift is worked outside of the established day shift hours for any reason, the workweek and hours per shift shall be consistent with that of a normal day shift and shall be inclusive of a meal period (employee is paid 8 hours for 7 ½ hours worked) and the pay shall be at the straight time rate. This applies to shifts worked Monday through Friday only. Hours worked on Saturday and Sunday shall be paid at the applicable overtime rate.

**Section 6**      Employees shall be entitled to no less than an eight (8) hour rest period between shifts. Should the Employer fail to allow an eight hour rest period, the employee shall be treated as if they wee working on a continuation of the previous shift and shall be paid at the appropriate overtime rate.

**Section 7**      Hours worked on Sunday and recognized holidays shall be paid at the rate of two times (2X) the straight time hourly rate.

**Section 8**      The contractor must register such starting time with the Joint Committee and Local Union, setting forth the hours that he chooses to work and once such decision is made, such hours would apply on each and every job being performed by said contractor. It has never been the intention of this section to allow the employer to start the project and then transfer employees to another job site since this could be in violation of overtime as provided for in this agreement.

**Section 9**      Any work beginning after 9:00 pm Sunday that ends on Monday shall be considered Monday work. This shall apply only if the shift hours worked for the week are consistant with the hours worked on Sunday. Any hours worked prior to 9:00 pm Sunday would be considered Sunday work and shall be paid at two times (2x) the regular straight time rate of pay.

**Section 10**     In recognition of the fact that the scope of work as defined in this agreement is increasingly more tourist oriented in the Las Vegas and Laughlin area, the parties have agreed to special work hours for Hotel Guest Room remodel type work. To cover specific job requirements such as rooms that must be ready for occupancy on Fridays, the agreement is as follows:

When the working schedule requires remodeling of guest rooms be started on Monday and be completed so they may be occupied on Friday and provided the Union is advised and agrees prior to the start of such project, the employer, may work a shift consisting of four (4) consecutive days Monday through Thursday and may work a shift of ten (10) hours at the straight time hourly rate.

It is further understood that the employer may schedule the hours of the shift to coincide with Hotel operations. All hours outside of the special shift will be paid at the double time rate.

**Section 11**     No member of the Local Union shall report to any shop earlier than fifteen minutes, or to any job earlier than fifteen minutes before the starting time.

**Section 12**     Employees who report for work at the time they are instructed to by the employer (or employer's agent) and who are not placed to work, shall be paid two hours show-up time. No show-up time is required if employees are not put to work because of inclement weather or an act of God.

**Section 13**     The parties to the agreement recognize that in the course of doing work in the construction industry certain unpredictable weather related situations can occur that can have severe economic impact on the employer and loss of income to the employee. To deal with this type of situation, the parties to this agreement agree to the following:

If work covered by this agreement is unable to be performed due to inclement weather during the regular work week, the employer may, if the employees are willing, schedule the employees to work on Saturday and/or Sunday of the same week at the straight time rate of pay during the regular hours.

It is understood the situation must be the nature spelled out in the memorandum of understanding, which will by made part of this agreement and further provided the Union is notified and agrees, prior to the start of such Saturday and/or Sunday work. The employees affected by such inclement weather will be those offered the Saturday and/or Sunday work but will be under no obligation to accept this work and no disciplinary measures will be taken against those who refuse to work such shift. If work is performed prior to the union approval, the regular overtime rates will apply.

**Section 14**     Workmen referred to the employers job site who arrive in an unfit condition for work, without proper tools or referrals, or who are not ready to go to work or who are not otherwise qualified, or who are workmen that the requesting contractor has notified the Union in writing of ineligibility for rehire, shall not be entitled to show-up time, travel or subsistence, or any other form of compensation by the contractor.

## ARTICLE 7
### Holidays

**Section 1**     The following days are recognized holidays:

| | |
|---|---|
| New Year's Day | Memorial Day |
| Thanksgiving Day | Labor Day |
| The Day after Thanksgiving Day | Fourth of July |
| Christmas Day | Presidents Day |
| Veteran's Day | |

**Section 2**    If any of the above holidays fall on Sunday, the Monday immediately following shall be observed.

**Section 3**    Work performed on any of the above Holidays or the day observed as the Holiday shall be paid for at double the regular straight-time rate of the classification involved.

**Section 4**    No work shall be performed on Labor Day.

### ARTICLE 8
### Pension

If , during the life of this agreement, a majority of the members covered by this agreement elect by secret ballot to enter into a 401k) or Annuity plan, the parties signatory to this agreement shall meet for the purpose of creating a jointly trusted plan, with contributions being allocated from wages. Additionally, if the members elect to create a 401h) plan as a portion of the 401k)/ Annuity plan, the Employers Agree.

**Section 1**    Commencing with the 1st day of July, 2007 and for the duration of the Agreement, and any renewals or extension hereof, the Employer Agrees to make payments to the IUPAT Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

a)    For each hour or portion thereof, for which an employee received pay, the employer shall make a contribution to the above named Pension Fund in accordance with the following: Effective July 1, 2007 a contribution of twenty-five cents ($0.25) per hour bringing the total Pension Contribution rate to four dollars and twenty-five cents ($4.25) per hour to be paid on all hours worked as agreed upon. Effective July 1, 2008 a contribution of twenty-five cents ($0.25) per hour bringing the total Pension Contribution rate to four dollars and fifty cents ($4.50) per hour to be paid on all hours worked as agreed upon. Effective July 1, 2009 a contribution of twenty-five cents ($0.25) per hour bringing the total Pension Contribution rate to four dollars and seventy-five cents ($4.75) per hour to be paid on all hours worked as agreed upon. Effective July 1, 2010 a contribution of twenty-five cents ($0.25) per hour bringing the total Pension Contribution rate to five dollars per hour to be paid on all hours worked as agreed upon.

b)    For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

c)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this

13

Agreement. This includes all indentured apprentices and members of the International Union of Painters and Allied Trades, Local #159.

d)    The payments to the Pension Fund required above shall be made to the IUPAT Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he actually signed the same.

**Section 2**    The Employer hereby irrevocably designates as its representatives on the Board of Trustees such trustees as are now serving, or who will in the future serve, as employer trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

**Section 3**    All contributions shall be made at such time and in such manner as the trustees require; and the trustees may at any time conduct an audit in accordance with Article V Section 6 of the said Agreement and Declaration of Trust.

**Section 4**    If an Employer fails to make contributions to the Pension Fund within five days after the date required by the trustees, the Joint Committee shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney's fees, and such penalties as may be assessed by the trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure of any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

**Section 5**    The Pension and Annuity Plan adopted by the trustees shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the IUPAT Union and Industry Pension Fund as a deduction for income tax purposes.

**ARTICLE 9**
**APPRENTICESHIP AND JOURNEYMAN TRAINING**

**Section 1**    Commencing with the 1st day of July, 2007 and for the duration of this Agreement, and any renewals or extensions thereof, the Employer, as defined in the National Trust Indenture executed by and between the International Union of Painters and Allied Trades and employer associations in the industry, agrees to make payment to the Painters Joint Apprenticeship and Training Committee for each employee covered by this Agreement as follows:

(a)    For each hour, for which an employee receives pay, the Employer shall make a contribution of forty cents ($0.40) for Apprenticeship Training, and ten

14

cents ($0.10) for Journeyman Training. It is understood that the contributions and Programs are administered by a single Board of Trustees, however it is agreed that for accounting purposes, contributions and disbursements shall be processed through separate accounts. Future rates are as follows: Effective July 1, 2008: forty-two cents ($0.42) for Apprenticeship Training, eleven cents ($0.11) for Journeyman Training; Effective July 1, 2009: forty-five cents ($0.45) for Apprenticeship Training, twelve cents ($0.12) for Journeyman Training; Effective July 1, 2010: forty-nine cents ($0.49) for Apprenticeship Training, thirteen cents ($0.13) for Journeyman Training. It is understood that if it is determined that additional contributions to the training fund are not needed, those contributions will revert to wages.

**(b)**    For the purpose of this Article, each hour paid for, including hours attributable to show-up time and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

**(c)**    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes all indentured apprentices and journeymen of Painters Local Union #159.

**(d)**    The payments to the Apprenticeship and Training Fund required above shall be made to the Painters Joint Apprenticeship and Training Committee which was established under an Agreement and Declaration of Trust, dated May 1, 1966. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

**(e)**    From the funds collected in the above manner, the trustees of the Painters Joint Apprenticeship shall hold in trust the sum of five cents ($.05) per hour, for each hour or portion thereof for which an employee receives pay, and remit said sum to the Finishing Trades Institute (FTI) at such regular periods of time and in the manner and form as shall be determined by the trustees of the FTI from time to time.

**(f)**    The payments to the FTI required in paragraph (e) above shall be made to the Finishing Trades Institute which was established under an Agreement and Declaration of Trust dated February 1, 1971. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust as though he had actually signed the same.

**Section 2**    The employer hereby irrevocably designates as its representatives on the Board of Trustees of the FTI, such trustees as are now serving or who will in the future serve, as employer Trustees, together with their successors, as provided for in the aforesaid Trust Indenture.

**Section 3**    The Union hereby irrevocably designates as its representatives on the Board of Trustees of the FTI, such trustees as are now serving, or who will in the future serve, as Union trustees, together with their successors, as provided for in the aforesaid Trust Indenture.  The parties hereto further agree to be bound by all actions taken by the trustees of the FTI pursuant to the said Agreement and Declaration of Trust.

**Section 4**    All contributions shall be made at such time and in such manner as the trustees require and the trustees shall have the authority to have an independent certified public accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Fund.

**Section 5**    If an Employer fails to make contributions to the Painters Joint Apprenticeship and Training Committee within five (5) days after the date required by the trustees, such failure shall be deemed a violation of this Agreement, and the J.A.T.C. shall have the right to take what ever steps are necessary to secure compliance with this Agreement, and other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with attorneys' fees and such penalties as may be assessed by the trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

**Section 6**    The Apprenticeship and Training Plan adopted by the trustees of said Funds shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Funds as a deduction for income tax purposes.

**Section 7**    When an employer has hired three (3) Journeymen he shall employ one (1) Apprentice, and may employ Apprentices on a three (3) Journeymen to one (1) Apprentice ratio after the first Apprentice has been hired.

**Section 8**    Shops with less than three journeymen may be granted an apprentice if, in the opinion of the Joint Committee, it would be beneficial to all parties concerned.

**Section 9**    All apprentices may change shops at least every six months in order to provide them with more rounded education of the trade.  However, if an employer and his apprentice petition the J.A.T.C.  With proof that said apprentice is receiving a proper training program, the J.A.T.C. May allow the apprentice to stay with the shop an additional six months.  At the end of each six-month period an additional six months may be applied for.  No apprentice will be engaged as a foreman or in any supervisory position.

**Section 10**   The Joint Apprenticeship and Training Committee shall have the right to take an apprentice from his employer if it is proven to the Committee that said apprentice is not benefiting from his job or is being misused.

All Apprentices shall be required to fill out and maintain in their possession an Employment activity book.  A representative of the company shall sign this weekly.  This is to insure that the education and training of the Apprentice continues.  Upon evaluation of this record by the Apprenticeship Committee he may be removed from the employment with the contractor.  It is the intention of this section not to cause loss of work but to insure that the apprentice is being trained in the craft.

**Section 11**   The Joint Apprenticeship and Training Committee shall be notified by the employer and the apprentice in writing of all hiring, releasing, and termination of apprentices.

**Section 12**   The Joint Apprenticeship and Training Committee, shall be the governing body in all apprentice matters, however it is understood that the Painters and Decorators Joint Committee has jurisdiction over apprentice matters that are related to the administration of this Agreement.

### APPRENTICE WAGES

**Section 13**   Apprentice wages shall be as follows:

Percentage of Journeymen wage rate

| | | |
|---|---|---|
| 40% - 45% | = | 500 Hours Worked |
| 45% - 50% | = | 1000 Hours Worked |
| 50% - 55% | = | 1500 Hours Worked |
| 55% - 65% | = | 2000 Hours Worked |
| 65% - 75% | = | 3000 Hours Worked |
| 75% - 85% | = | 4000 Hours Worked |
| 85% - 95% | = | 5000 Hours Worked |
| 95% -100% | = | 6000 Hours Worked |

**Section 14**   No Vacation money will be withheld from wages of an apprentice until the 75% level has been reached.

**Section 15**   The J.A.T.C shall be responsible for the management and disbursement of all Safety and Training Funds remitted to them under the J.C.I.P. Fund.  This fund is to offset the costs of any and all Safety classes or courses and for Journeyman craft training along with materials and equipment.  This fund will also be used for the purpose of training trainers.

a)      The J.A.T.C. will be responsible for the formulation and scheduling of such classes along with the selection of Instructors. These funds at the discretion of the J.A.T.C. may be used for the Testing, Evaluating, Certifying, Tracking or Indexing Journeyman Painter, Drywall Finisher and Paperhanger members of Local 159.

b)      The J.A.T.C. at their discretion may combine the J.C.I.P. Safety and Training Fund with any other Training funds that the Union and Contractors may be involved with if at their discretion it would benefit the members of Local 159.

c)      Journeyman members of Local 159 may petition the J.A.T.C. to enter into a modified training program to learn a different aspect of the trade (Example: a drywall finisher wants to learn how to hang wall-paper). It is understood that prior to submitting a petition, the member must have completed six (6) months in an established Enhancement Training Course of the craft he or she wishes to learn, as well as having completed the OSHA 30, Ladder and Scaffold, Fall Protection, Lift, CPR and First Aid Awareness Courses, and have worked a minimum of one thousand (1000) hours in the twelve (12) months immediately preceding submitting a petition.

Members who have met the requirements for submitting a petition shall be entitled to work for a signatory Employer at 70% of the applicable Journeyman scale. 70% Journeymen may be employed at the following ratio: 3 Journeymen, 1 apprentice, 1 70% Journeyman.

After six (6) months of full time employment as a 70% Journeyman, the J.A.T.C. will evaluate the 70% Journeyman to determine whether or not they qualify as a 100% Journeyman. If it is determined that the 70% Journeyman is not fully qualified as a 100% Journeyman, the modified program may be extended for up to six (6) months at the sole discretion of the J.A.T.C.

**Section 16**    The parties signatory to this Agreement have agreed, that in the interest of promoting the industry through increased participation in Health and Safety and Upgrade Training, to create a Health and Safety/Upgrade Training Award Program (HSUTAP) to be funded by a thirteen cent ($.13) Employer contribution effective July 1, 2004. The sole purpose of the program is to create an incentive for members covered by this Agreement to participate in Training. The parties created a jointly managed trust fund by executing an Agreement and Declaration of Trust May 1, 2007.

a)      The payments to the HSUTAP required above shall be made at the same time and in the same manner as other Trust Fund Contributions included in this Agreement. The Board of Trustees shall administer the HSUTAP in accordance with the terms of the HSUTAP Agreement and Declaration of Trust.

18

b)    The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

c)    The Board of Trustees of the HSUTAP shall work with the Board of Trustees of the Joint Apprenticeship and Training Committee (the entity providing training) to coordinate required training to establish eligibility for annual HSUTAP events.

## ARTICLE 10
## Health and Welfare-Dental-Vision Plans

**Section 1**    Each employer signatory to this Agreement shall pay to the Employees Painters Trust (or designated health and welfare trust) the sum of Five dollars and eight cents ($5.08) or the sum in effect per hour worked by each employee from July 1, 2004 for Health & Welfare, Dental and Vision Plans.

**Section 2**    Effective July 1, 2004 and for the duration of this Agreement, the contractor, after 30 days notice, agrees to contribute one half (1/2) of any increases required by the Employee Painters Trust (or designated health and welfare trust) to maintain the present benefits for health and welfare, dental or vision plans,with a maximum contractor contribution of twenty-five cents for each year of the agreement. (7-1-04: $0.25, 7-1-05: $0.25, 7-1-06: $0.25)

**Section 3**    The Plans in effect are hereby made a part hereof and all signatories to this Agreement are bound by the terms of said Trust Agreement, which are incorporated herein by reference as though fully set forth herein.

**Section 4**    If an employer fails to make contributions to the employee's Painters Trust Fund within five (5) days after the date required by the Trustees, the Joint Committee shall have the right to take whatever action or steps necessary to secure compliance with the Agreement and other provisions hereof to the contrary notwithstanding. The employer is liable for payment under this Article and if the Union so desires, it shall not be subject to, or covered by any grievance or arbitration procedure, or any "no strike" clauses which may be provided or set forth elsewhere in this Agreement. All legal fees will be paid by the employer.

**Section 5**    The Union reserves the right to refuse employees to any contractor or employer not keeping their welfare contributions current.

**Section 6**    In order that workmen who are otherwise eligible for welfare benefits shall be fully protected, it is mutually agreed that any employer who fails to make payment for the welfare benefits as provided herein shall personally be responsible to the employees herein covered for the benefits which would have occurred by such welfare coverage.

19

**Section 7**    In the event that there is a change in the designated health and welfare trust, the parties bound to this agreement hereby agree to take the steps necessary to jointly administer that fund.

## ARTICLE 11
### Vacation Fund

Prior to the effective date of this Agreement, the members of the Union, by secret ballot vote elected to change the function of the Vacation Fund from a monthly deposit into an individual account at the IBEW Plus Credit Union to a jointly managed Vacation Trust Fund. The parties hereby agree to create the Vacation Trust Fund by executing a declaration and agreement of trust as well as other governing documents for the trust fund.

**Section 1**    Effective July 1, 2007 the employer will forward one dollar and fifty cents ($1.50) per hour, on behalf of each employee who earns seventy-five percent (75%) or more of the journeyman straight time rate of pay, to the IBEW Plus Credit Union at 1900 South Jones Blvd. Las Vegas, Nevada 89146 (or designated financial institution).

**Section 2**    This contribution to the Vacation Fund by the contributing employer will be paid at the same time and on the same forms as the welfare contributions. All rules pertaining to the payment of welfare monies will apply to the payment of vacation contributions.

**Section 3**    The Vacation Fund contribution is a part of the hourly wage rate and is not to be construed as a fringe benefit. It shall be treated as such in the computation of payroll deductions.

**Section 4**    Contributions shall be paid monthly and shall be recorded on forms supplied by the International Union of Painters and Allied Trades Union and Industry National Pension Fund Office.

Contributions covering hours worked during any month are due and payable on the first of the following month and will be considered delinquent if not paid by the thirtieth of the month. Employers failing to submit monthly reports as provided for above shall be assessed liquidated damages equal to five percent (5%) of the amount due on a monthly basis. Damages assessed shall be applied to the respective funds.

If contribution reports and payment are not received by the 30th of the month, the Joint Committee will suspend or revoke the employer's Shop Card for violation of this agreement and reserves the right to request the Local Union to remove any employees as covered by this agreement.

## ARTICLE 12
### Check-Off of Administrative Dues

**Section 1**     Every Employer signatory to this Agreement hereby agrees to check-off from the wages of any employee employed by such Employer during the term of this Agreement, administrative dues in the amount specified in the Union's bylaws and to remit said amount to the Union in the following manner.

a)     The Union will notify the Employer in writing of the amount of administrative dues specified in the bylaws, and will submit to the Employer a copy of the bylaws or the applicable bylaw provisions.

b)     For each payroll period, the Employer will deduct from the wages of each employee the amount specified in the bylaws based on the number of hours worked during said payroll period, and will accumulate said deductions to the end of the month.

c)     On or before the 30th day of each month, the Employer will remit to the Union the entire amount of administrative dues due and owing as to each employee for the month previous, together with a list of employees covered hereby and the number of hours worked by each during the applicable period.

**Section 2**     When a signatory Employer performs a job within the jurisdiction of a union affiliated with the IUPAT other than the Union signatory hereto and the bylaws of that other union contain a provision for administrative dues or business representatives "assessment", the Employer shall check off from the wages of employees covered by this Agreement and employed on that job administrative dues or business representative "assessment" in the amount stated in that other union's bylaws, and shall remit said amount to that other union. In that event, that other union shall be acting as agent of the signatory union for the purpose of policing and administering this Agreement. In performing this check-off, the procedure specified in Section 1(a-c) will be followed, except that it shall be the responsibility of said other Union to notify the Employer in writing of the amount of administrative dues or business representative "assessment" specified in its bylaws, and to submit to the Employer a copy of the bylaws or the applicable bylaw provision. When the signatory Employer performs a job within the jurisdiction of a Union affiliated with the IUPAT other than the Union signatory hereto, and the bylaws of that other Union contain no provision for administrative dues or business representative "assessment", the Employer shall continue to be bound by Section 1.

**Section 3**     The obligations of the Employer under Sections 1 and 2 shall apply only as to employees who have voluntarily signed a valid dues deduction authorization card.

a)     It is mutually agreed and understood that in the event a majority of the members of the Union covered by this Agreement elect, through means of a special called meeting and secret ballot, to enter into Union Administrative Dues Check-Off the employer shall within 30 days after written notice from the Union,

deduct from the employee wages, the amount voted on. Prior to making this deduction the Union shall forward signed authorization from the employee as provided for under Nevada Revised Statute 608.110.

## ARTICLE 13
## Industry Promotion Fund

Section 1    The effective date of the Industry Promotion Fund contributions was July 1, 1973, and it is agreed between the Painting and Decorating Contractors of America, Southern Nevada Chapter, and the International Union of Painters and Allied Trades, Local Union #159, that all Chapter Signatory members shall contribute, as provided for in Section 2 of this Section, to the Painting and Decorating Contractors of America, Southern Nevada Chapter.

It is further agreed, that this fund is not to be used for any anti-labor activities.

Section 2    Effective July 1, 2007, all signatory employers shall contribute twenty-six cents ($.26) per hour, but not less than twenty dollars ($20.00) per month. These contributions are to be paid monthly in the same manner as all other benefits. Effective July 1, 2008, all signatory employers shall contribute twenty-seven cents ($.27) per hour. Effective July 1, 2007, all signatory employers shall contribute twenty-eight cents ($.28) per hour. Effective July 1, 2010, all signatory employers shall contribute twenty-nine cents ($0.29) per hour.

Section 3    Notwithstanding that a Chapter Signatory member is also a member or proxy to another association of Employer's (a non-Southern Nevada PDCA Chapter Association), the contributions required under this Article 13 shall be fully and exclusively paid to this Industry Promotion Fund, to be administered solely by the Southern Nevada PDCA, and not prorated with or otherwise disbursed in whole or part to any other such Association.

Southern Nevada PDCA utilizes these Industry Funds for the betterment of the Union Painting Industry. The PDCA offers Safety Classes for OSHA 10, 30, 500, 501, 502 and 503, 3M Respirator medical evaluations and personal fit tests, ladders and scaffold user classes, ladders and scaffold erector and dismantle classes, swing stage training, Ames tool certification, Aplatech Taping system certification, skills training, and Supervisory instructions for construction managers. The PDCA also conducts Project Site Safety OSHA evaluations, Industry Standard third party clarifications and certifications, and also provides project management assistance.

It is understood and agreed that WWCCA is entitled to Industry Promotion funds that are attributable to Drywall Finishing hours performed by employees of WWCCA proxied Employers as of the effective date of this Agreement. It is also understood that should WWCCA establish a proxy relationship with any Employer after the effective date of this Agreement, WWCCA will be entitled to

22

Industry Promotion Funds that are attributable to all WWCCA proxied Drywall Finishing hours.

## ARTICLE 14
## Fringe Benefit Contributions Administration

Section 1    Contributions shall be made monthly and shall be recorded on forms supplied by the International Union of Painters and Allied Trades Union and Industry National Pension Fund office (computer attachments accepted) and mail in one envelope with separate checks for each fund to the Joint Committee office for disbursement.

All remittance reports and contributions shall be equated and sent to a third party administrator utilizing  one (1) check for all contributions, who in return  will process the remittances and disburse the contributions to the Funds listed below. As of the effective date of this Agreement, a third party administrator has not been selected. Employers are to continue following the process listed below until they have been notified in writing to send contributions to a designated third party administrator.

In order to eliminate confusion relative to the processing of benefit contributions, the Employer will send a monthly remittance report and individual benefit contribution checks as follows, to the Joint Committee, who in turn will process and remit to:

1)  IUPAT - Pension Fund
2)  The Painters Trust - Health and Welfare
3)  IBEW Plus Credit Union - Vacation Funds
4)  Painters Local 159 - Dues Check Off
5)  Painters Local 159 - Organizing Fund
6)  Painters JATC – Apprenticeship
7)  Labor Management Cooperation Initiative – LMCI
8)  Industry Promotion Fund
9)  Joint Committee Fund
10) Joint Committee Industry Promotion Fund
11) Health and Safety/Upgrade Training Award Program
12) Labor Management Cooperation Committee

Section 2    Contributions covering hours worked during any month are due and payable on the first of the following month and will be considered delinquent if not paid by the 30th of the month. Employers failing to submit monthly reports as provided for above shall be assessed liquidated damages equal to five percent (5%) of the amount due on a monthly basis. Damages assessed shall be applied to the respective funds.

**Section 3**   If contribution reports and payment are not received by the 30th of the month for the preceding month, the Local Union may suspend or revoke the employers Shop Card for violation of this agreement and reserves the right to remove all employees as covered by this agreement.

**Section 4**   The individual Employer further and additionally agrees to pay all reasonable costs and attorney's fees necessary and incurred to collect any amount due hereunder in the event of the default in performance by the Employer hereunder, including collection of sums due hereunder by demand or    suit on the surety bond.

## ARTICLE 15
### Bonding-Shop Card-Subcontracting

**Section 1**   On or after July 1, 2004 all employers signatory to this agreement shall provide and be covered by a surety bond for no less than thirty thousand dollars ($30,000) for the purpose of protecting the Trust Funds as provided for in this agreement. The Joint Committee will review all applications and issue Shop Cards. The Committee shall have the authority, based upon past work and financial responsibilities, to require higher bond limits.

**Section 2**   Further, should an employer fail to comply with the monthly remittance reporting provision of this agreement, then such employer may be required to submit the fringe benefit report to the Local Union on a weekly basis, including his check to cover such report. This weekly report shall be due no later than the following Wednesday after the regular Friday payday.

**Section 3**   The employer agrees that should work, as herein defined be contracted or assigned to a subcontractor, provisions shall be made to require compliance by the subcontractor with all the terms of this agreement.

**Section 4**   A subcontractor shall be defined as any person, firm, partnership, corporation, or other entity that is properly licensed in accordance with State Law, or the appropriate State Agency, to perform work covered under the scope of this Agreement.

**Section 5**   The individual Employer will give written notice to the Union of any subcontract involving the performance of work covered by this Agreement prior to commencement of work by the subcontractor, and shall specify the name and address of the subcontractor, the name and address of the work and the start date of the work. If thereafter the subcontractor becomes delinquent in the payment of any wages, trust fund contributions, or other fringe benefit payments, the Union shall give written notice of the delinquency to the individual Employer and to the subcontractor. The notice shall specify the name(s) and amounts, if known, of the delinquency. When the notice of

delinquency is received, the individual Employer shall pay the amount of the subcontractor's delinquency which has occurred on the individual Employer's specific job.

It is expressly understood that this Article shall apply to all present and subsequently acquired operations of the Employer and to all accretions to the bargaining unit, including, but not limited to, newly established or acquired operations.

**Section 6**      Therefore, any employer becoming signatory to the Agreement by taking out a Shop Card hereby agrees to be bound by all provisions and amendments of the said Trust Agreements, decision of the Board of Directors of the Joint Committee, and decisions of the Board of Trustees of the various trust funds.

**Section 7**      The signing of the short form Shop Card application refers to this Agreement and is binding for all parties involved.

**Section 8**      On and after the date of signing of this Agreement, every employer, although a party hereto, must be registered through an authorized representative of Painters Local Union #159. The following information shall be required when registering.

     a)     Firm name, address and telephone number.

     b)     Name of owner or owners.
     c)     Average number of workmen employed.
     d)     A State Contractor's license number.
     e)     Federal Withholding and Social Security account number.
     f)     Nevada unemployment Insurance account number.
     g)     City and/or County license number.
     h)     Proof of workers Compensation insurance
     i)     Proof of Surety Bond

**Section 9**      Such registration shall call for issuance of serially numbered Shop Cards. Said Cards shall be issued for the terms of the Agreement.

**Section 10**      The Joint Committee shall be vested with the authority to issue Shop Cards; however, a Shop Card will not be issued to any employer until after the employer has met the qualifications as set forth in this Agreement.

**Section 11**      The Shop Card is issued by the Joint Committee to indicate that the person to whom it is issued is a party to this Agreement and that he has signed a copy thereof. The holder of a Shop Card shall notify Painters Local Union #159 within ten (10) business days of any changes in ownership and/or officers of the corporation of license holder.

**Section 12**   It is agreed that it is unfair for any person to be bound by the terms of this Agreement unless other parties thereto observe it likewise. It is recognized that it would constitute unfair competition for one employer to observe reasonable working conditions agreed upon while his competitors ignore such conditions. Therefore, no Shop Card will be issued to any license holder unless he employs one or more Journeymen.

**Section 13**   The official Shop Card and all identification cards issued by the Joint Committee are the property of the Joint Committee. They are not transferable and must be returned upon demand to the Joint Committee or an authorized representative of the Joint Committee.

## ARTICLE 16
### Preservation of Work Clause

**Section 1**   To protect and preserve, for the employees covered by this Agreement, all work they have performed and all work covered by this Agreement, and to prevent any devise or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the Employer performs on-site construction work of the type covered by this agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise), management, control, or majority ownership, the terms and conditions of this agreement shall be applicable to all such work.

**Section 2**   All charges of violation of Section I of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this agreement on the handling of grievances and the final and binding resolution of disputes. As a remedy for violations of this Article, the Joint Trade Board or Arbitrator shall be able, at the request of the Union, to require an Employer to pay (1) the effected employees covered by this agreement, including registered applicants for employment, the equivalent of wages those employees have lost because of the violations, and (2) into the affected Joint Trust Funds to which this agreement requires contributions, any delinquent contributions that resulted from the violations. The Joint Trade Board or Arbitrator shall be able also to provide any other appropriate remedies, whether provided by law or this agreement. The Union shall enforce a decision of the Joint Trade Board or Arbitrator under this article only through arbitral, judicial, or governmental, for example, the National Labor Relations Board channels.

**Section 3**   If, after an employer has violated this Article, the Union and/or the Trustees of one or more Joint Trust Funds to which this agreement requires contributions institute legal action to enforce and award by an Arbitrator or the Joint Trade Board remedying such violation, or defend an action that seeks to vacate such award, the Employer shall pay any accountants' and/or attorneys' fees incurred by

the Union and/or the Joint Trust Funds, plus costs of the litigation, that have resulted from such legal action. This section does not affect other remedies, whether provided by law or this Article, that may be available to the Union and/or the Joint Trust Funds.

### ARTICLE 17
### Working Rules

**Section 1**    Workmen shall report to work with the usual tools of the trade.

(a)    **Painters** shall supply a five gallon bucket, duster, putty knife, broad knife, hammer, nail set, screwdriver, 5 in 1 tool, and wrenches.

(b)    **Paperhangers** shall supply a five gallon bucket, straight edge, 2' level and usual paperhanger's hand tools, with the contractor supplying all other tools and equipment. It is agreed by the signatory employers that they will furnish the necessary tables or boards, including such tools as rollers for pastes and adhesives, razor blades, towels, sponges, adhesives, wallpaper and wall coverings for a finished job.

(c)    **Drywall Finishers (Tapers)** shall be required to furnish a five gallon bucket, mud pans, various size knives, stomper, sanding pole, screwdriver, hammer and tin snips. The employer shall furnish all other tools of the craft.

**Section 2**    It is hereby agreed that there shall be no restrictions for or restrictions on the use of any tools or equipment unless specifically addressed in this Agreement. No local practices or customs are recognized that restrict production or productivity.

**Section 3**    Piecework, contracting or subcontracting to journeymen and apprentices shall not be permitted.

**Section 4**    The employer shall furnish fresh cool drinking water on all jobs. The Employer agrees to put sufficient ice into the containers to keep water cool on a daily basis.

**Section 5**    No employer signatory to this agreement shall require or utilize any employees car, truck or any other vehicle to transport materials, tools or equipment of any type in excess of twenty five pounds in the performance of work while said employee is employed by him unless by mutual agreement a rental agreement is entered into with a payment to be no less than twenty ($20.00) dollars per day per vehicle and/or trailer.

**Section 6**    Employees shall not be permitted to rent, lease, or allow use of his own tools or spray equipment. Use of stilts is prohibited.

27

**Section 7**  The preparation of material and equipment and the cleaning up and removal of same is to be performed within the eight hours.  Employees will be allowed sufficient time for the cleaning of tools so as not to run past quitting time.

**Section 8**  Workmen referred to the employers job site who arrive in an unfit condition for work, without proper tools or referrals, or who are not ready to go to work or who are not otherwise qualified, or who are workmen that the requesting contractor has notified the Union in writing of ineligibility for rehire, shall not be entitled to show-up time, travel or subsistence, or any other form of compensation by the contractor.

**Section 9**  Employees covered by this agreement shall have the right to respect any legal primary picket line validly established by any bona fide labor organization, and the Union party to this agreement has the right to withdraw employees covered by this agreement whenever the employer party to the agreement is involved in a legitimate primary labor dispute with any bona fide labor organization.

**Section 10**  Employers shall furnish all paste machines and no employee shall be required to agree to furnish said equipment.

**Section 11**  It is required that all journeymen and apprentices shall furnish and wear clean white overalls, or clean white pants and shirts; such uniforms to be changed at least once a day.

**Section 12**  The Working Card is supplied by the Building and Construction Trades Council of Clark, Lincoln, Nye and Esmeralda Counties, Nevada, or by Painters Local Union #159 and issued to members in good standing with Painters Local Union #159.

**Section 13**  It is agreed that any and all work not covered by this Agreement contracted for by an employer be performed by an employee affiliated with and in good standing with the Building and Construction Trades Council of Clark, Lincoln, Nye, and Esmeralda Counties, Nevada, or any other jurisdiction that is awarded to Painters Local Union #159.

**Section 14**  All members, including foremen, journeymen and apprentices are encouraged to participate in continuing education.  This includes Health and Safety Training as well as craft specific training.

**Section 14**  **Disabled Workers**

a)    Disabled members shall be permitted to solicit work on an hourly basis. A worker that is injured and is injured to such a degree that he is unable, because of physical disability, or other infirmity, may be employed at below the established minimum wage rate, by mutual agreement between both parties to this agreement.

The worker may be asked to work for the hourly wage, less the percentage of disability, he/she sustained.

b)    No employer shall employ more than one disabled worker to each five employees.

c)    The Joint Committee shall by medical documentation, determine the basis of a workers disability status.

## ARTICLE 18
### Travel Time and Subsistence

Section 1    **Travel Time** - the established city limits of Henderson and Boulder City shall be travel "free zone".
**Laughlin (Remodel)** - travel time down first day of work, back last day of work. No subsistence.
**Laughlin ( New Work)** – travel time down first day of work, back last day of work. Subsistence $35 per day.
**Mesquite** – no travel, no subsistence
**State Line**- no travel, no subsistence

a)    On all other job sites, travel time shall commence fifteen (15) miles from Las Vegas Boulevard and Fremont Streets and shall be paid as follows:

    0 to 15 miles = "free-zone"
    0 to 5 miles beyond "free-zone" 15 minutes per day.
    5 to 10 miles beyond "free-zone" 30 minutes per day.
    10 to 15 miles beyond "free-zone" = 45 minutes per day.
    15 to 25 miles beyond "free-zone" = 1 hour per day

b)    Any job beyond the twenty-five (25) mile radius will pay at the hourly rate or fraction thereof.

c)    All employees residing within 25 perimeter miles of Laughlin, Nevada while employed at said site will not be eligible to receive any travel or subsistence pay.

Section 2    Travel time is not to be construed as working time.

Section 3    When a employee is hired or is currently working on a job site where travel time is paid and the employer, or a representative of the employer, fails to properly notify said employee not to report to the job site, then travel time shall be paid even though no work is performed by the employee.

Section 4    If the construction job is classified as a subsistence job, the employee shall receive travel time to the job site on the first day of hire and travel time at the end

of the job or termination. Power plant or industrial plant projects are excluded from this provision and shall be paid pursuant to paragraph (a) of this Section.

**Section 5**  On jobs where subsistence is paid, the employer shall furnish a suitable change room and lunch area which shall be adequately heated in the winter and cooled in the summer.

**Section 6**  Travel time on subsistence jobs will be determined by the amount of time actually spent driving from Las Vegas Boulevard and Fremont Streets, to the job site at the legal rate of speed.

**Section 7**  Any dispute involving travel pay shall be resolved by the Joint Committee

**Section 8**  Subsistence – All jobs located 45 miles or more beyond the established "free-zone" shall pay subsistence. If food and lodging are not available at the job site, in addition to subsistence, the employee shall receive travel time as provided for in this agreement to the nearest location that food and lodging are available beyond a "free-zone" of fifteen (15) miles from the job site.

**Section 9**  Subsistence shall be paid at the rate of sixty-five ($65.00) dollars per day for all days required to be out of town, however, if an employee "shows-up" on the job site on a scheduled workday and no work is provided, the employee shall receive full subsistence pay. If the employer provides rooms for workers subsistence shall be paid at the rate of thirty-five ($35.00) dollars per day. There shall be no more than two employees per room and no more than one employee per bed.

**Section 10**  If, for personal reasons, an employee voluntarily leaves the job site and fails to complete the shift, the amount of subsistence shall be prorated on an eight hour basis.

**Section 11**  If a worker is required to furnish his own transportation to any job site that is off the pavement or any first class country road (a maintained bladed road) the employer shall furnish transportation from pavement or first class county road to the job site and back.

**Section 12**  Employees shall not accept transportation to or from job site in the employers' vehicle unless it is satisfactorily enclosed against the elements. Vehicles shall be provided with seats or benches. Employees are expressly forbidden to ride in the beds of trucks that contain gasoline, solvents, or an excessive amount of materials.

**Section 13**  Any employee reporting to the job site in transportation furnished by the employer and who is arrested or detained by an authorized agent, State, County, City or Federal, for reasons of faulty equipment improperly registered vehicle, etc., shall be paid his prevailing wage while detained. This paragraph does not apply if such arrest or detainment is caused by negligence of said employee.

**Section 14**   Any time lost by an employee in a legal court or hearing, if requested to appear by his employer, or employer's agent, shall be reimbursed at the prevailing basic wage rate. This paragraph shall not apply if negligence is on the part of the employee.

**Section 15**   When an employee is requested to report to a job site in an area where free parking is not available on the job site or within two blocks of the site, the employer shall reimburse the employee for the cost of parking while working at said job site payable the next pay period.

## ARTICLE 19
### Stewards

**Section 1**   There are to be stewards designated on all jobs. The steward is to receive grievances or disputes from employee members of his craft and shall immediately report them to his business representative, who shall immediately attempt to adjust the grievance or dispute with the Employer or his representative.

**Section 2**   The steward shall be a working employee selected by the Union who shall in addition to his regularly assigned work, be permitted to perform during working hours such of his steward's duties as cannot be performed otherwise. The Union agrees that such duties shall be performed as expeditiously as possible, and the Employer agrees to allow the steward a reasonable amount of time for the performance of his duties, including, in addition to his normal duties, obtaining information on safety and sanitation The Employer shall make available to such designated steward the names and locations of jobs in progress and the number and names of bargaining unit employees employed on such jobs.

**Section 3**   The Union shall notify the Employer or his representative, in writing, of the appointment of the steward. The Employer or his representative can lay off or discharge the steward for cause only,  and the Employer shall notify the Union, in writing, of his intent to do so one (1) full working day prior to such layoff or discharge on projects within fifty (50) miles of the hiring hall, and give two (2) working days notice on projects located over fifty (50) miles from the hiring hall.

**Section 4**   It is recognized by the Employer that the employee selected as the steward shall remain on the job whenever overtime is worked and as long as there is work he is qualified to perform. The steward shall not be discharged or laid off for the performance of his Union duties. The Steward (who must be capable of performing the work) shall be the last employee to be laid off or terminated (other than for cause) excluding supervision.

## ARTICLE 20
### Payment of Wages

31

# LU – DC AGREEMENT CHECK LIST

Date Received:  6/29/2007

District Council Agreement

Local Unions Affiliated with Agreement

Local Union Agreement

Affiliated with a DC?:  [ ] Yes    DC Affiliated with:  DC15

Region  Western

Agreement with:  P.D.C.A. SOUTHERN NEVADA CHAPTER

Effective Date  7/1/2007    Trade Type:  Painting

Expiration Date  6/30/2011

Wage Re-opening  No    9(a) Status of the NRL Act:  L

Renegotiation Date for Agreement:  12/30/2010

Date of Re-openings:  (2):_____  (3):_____  (4):_____

Renegotiation Date for Wage Re-opening:  (5):_____

Amount of Re-opening

Geographical Jurisdiction  Yes

Geographical dispute:  No

Nature of Dispute

Note to File:

This agreement covers counties in the state of NEVADA (pg. 7)

National Pension Fund Affiliation  Yes

Davis-Bacon Applicable  Yes

Pension Code:  CO01S9 Las Vegas NV
/Southern NV Painters &

Signed  Yes

File Only (Shop):  No

CBA Status  Active

Recommendation for Approval  Yes

Date Reviewed:  8/6/2007    Renegotiation Notice Date:  6/30/2010

## Mandatory Language

50/50 Clause - Sect 241:  Yes
Out of Area Clause - Sect 242:  Yes
Work Preservation clause - Sect 243:  Yes
Right to honor picket clause - Sect 244:  Yes
National JATF clause - Sect 245:  Yes
LMCI clause - Sect 246:  Yes
Roll Over Clause:

JATF:  Amount $0.05  Yea 2008  Amount $0.05  Yea 2009  Amount $0.05  Year 2010  Amount $0.05

LMCI  $0.05  Yea 2008  Amount $0.05  Yea 2009  Amount $0.05  Year 2010  Amount $0.05

PATF  $0.05  Yea 2008  Amount $0.05  Yea 2009  Amount $0.05  Yea 2010  Amount $0.05

Dues Check off clause  Yes

% of check off  3% (pg. 32)

Comments:

Source of Contributions    FTI - Employer (pg. 4)
                           LMCI - Employer (pg. 9)

[ ] Sent to DOL

Approval Date:

Date Sent to DOL:



IUPAT District Council 15, Local Union No. 159
**PDCA Wage Package**
1701 Whitney Mesa Drive, Suite 105
Henderson, NV 89014
Ph: (702) 452-2140  • Fax: (702) 452-3062



## Painters, Drywall Finishers and Paperhangers' Wage Rates

Effective July 1, 2007 through June 30, 2008

| | Wage | Pension | H&W | Appr. | IP | JC | JCIP | LMCI | HSTUAP | LMCC | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 40% Apprentice | $12.99 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $23.57 |
| 45% Apprentice | $14.62 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $25.20 |
| 50% Apprentice | $16.24 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $26.82 |
| 55% Apprentice | $17.86 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $28.44 |
| 65% Apprentice | $21.11 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $31.69 |
| 75% Apprentice | $24.36 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $34.94 |
| 85% Apprentice | $27.61 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $38.19 |
| 95% Apprentice | $30.86 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $41.44 |
| Journeyman | $32.48 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $43.06 |
| Foreman | $35.40 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $45.98 |
| General Foreman | $38.59 | $4.25 | $5.30 | $0.40 | $0.26 | $0.08 | $0.10 | $0.06 | $0.13 | $0.00 | $49.17 |

## Deductions from Wages

Administrative Dues Check-Off is deducted from All workers – 3% of gross wages

Organizing Fund is deducted from ALL workers - $0.40 per hour

Vacation Fund is deducted from ALL workers over 75% Apprentice - $1.50 per hour