# Exhibit 8

AUG 1 9 2003

# RESTATED AGREEMENT AND

# DECLARATION OF TRUST OF

# THE PAINTERS AND ALLIED TRADES

# LABOR MANAGEMENT COOPERATION INITIATIVE

**Restated and Reprinted, effective February 8, 2003**

PF1041

# AGREEMENT AND DECLARATION OF TRUST

## OF

## THE PAINTERS AND ALLIED TRADES

## LABOR-MANAGEMENT COOPERATION INITIATIVE

### PREAMBLE

This Agreement and Declaration of Trust ("Trust") is by and between the International Union of Painters and Allied Trades, AFL-CIO, CLC ("Union"), the Finishing Contractors Association ("FCA"), and other employer associations and individual employers that agree to become parties to the Trust.

This Trust is established under Section 302(c)(9) of the National Labor Relations Act, and under the Labor-Management Cooperation Act of 1978, and is intended to be exempt from federal taxation under Section 501(c)(5) of the Internal Revenue Code.

This Trust, and the Labor Management Cooperation Initiative created hereby, is intended to advance the interests and prosperity of the Union, its members, signatory employers and associations and customers and users of Union services in industries encompassed by the jurisdiction of the International Union of Painters and Allied Trades, including, but not limited to, the Painting & Coatings, Sign & Display, Floorcovering, Drywall Finishing, Glazing & Glassworks, Metal Polishing, Paint Making, Scenic Arts & Design, Paperhanging & Wallcovering, and all other allied industries.

### ARTICLE I

### Name and Purpose

1.      This Trust shall be called The Painters and Allied Trades Labor-Management Cooperation Initiative (or, otherwise, the "Initiative" or "LMCI").

2.      The Initiative is established for any and all of the purposes set forth in the Labor-Management Cooperation Act of 1978. More specifically, the Fund's purposes include, but are not limited to, the following:

(a)      To improve communication between representatives of labor and

- 1 -

PF1042

management, and engender cooperative and harmonious relations between labor and management in the Painting & Coatings, Sign & Display, Floorcovering, Drywall Finishing, Glazing & Glassworks, Metal Polishing, Paint Making, Scenic Arts & Design, Paperhanging & Wallcovering, and all other allied industries encompassed by jurisdiction of the Union;

(b)    To provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

(c)    To provide a forum for open and honest discussion of problems confronting employees and employers in the Painting & Coatings, Sign & Display, Floorcovering, Drywall Finishing, Glazing & Glassworks, Metal Polishing, Paint Making, Scenic Arts & Design, Paperhanging & Wallcovering, and all other allied industries encompassed by the jurisdiction of the Union;

(d)    To study and explore ways of increasing productivity of both labor and management, and of eliminating potential problems which reduce the competitiveness and inhibit economic development in the Painting & Coatings, Sign & Display, Floorcovering, Drywall Finishing, Glazing & Glassworks, Metal Polishing, Paint Making, Scenic Arts & Design, Paperhanging & Wallcovering, and all other allied industries encompassed by the jurisdiction of the Union;

(e)    To enhance the involvement of workers in making decisions that affect their working lives, and to improve the quality of work life for employees in the Painting & Coatings, Sign & Display, Floorcovering, Drywall Finishing, Glazing & Glassworks, Metal Polishing, Paint Making, Scenic Arts & Design, Paperhanging & Wallcovering, and all other allied industries encompassed by the jurisdiction of the Union;

- 2 -

(f)     To expand and improve working relationships between workers and managers;

(g)     To avoid disputes between labor and management before they arise, and to assist in promptly and fairly resolving disputes when they do arise;

(h)     To promote the use of safe, efficient, high quality construction services in development, maintenance and rehabilitation of industrial and commercial facilities;

(i)     To seek and maintain a productive dialogue with users of Painting & Coatings, Sign & Display, Floorcovering, Drywall Finishing, Glazing & Glassworks, Metal Polishing, Paint Making, Scenic Arts & Design, Paperhanging & Wallcovering, and users in all other allied industries encompassed by the jurisdiction of the Union;

(j)     To foster the development of craft skills and high quality training in the Painting & Coatings, Sign & Display, Floorcovering, Drywall Finishing, Glazing & Glassworks, Metal Polishing, Paint Making, Scenic Arts & Design, Paperhanging & Wallcovering, and all other allied industries encompassed by the jurisdiction of the Union;

(k)     To foster improvements in occupational safety and health and other working conditions in the Painting & Coatings, Sign & Display, Floorcovering, Drywall Finishing, Glazing & Glassworks, Metal Polishing, Paint Making, Scenic Arts & Design, Paperhanging & Wallcovering, and all other allied industries encompassed by the jurisdiction of the Union; and

(l)     To engage in any other lawful activities incidental or related to the accomplishment of these purposes.

- 3 -

PF1044

## ARTICLE II

### Definitions

Unless a different meaning is plainly required by the context, the following words and phrases shall have the following meanings in this Trust Agreement:

1.    "Union" means the International Union of Painters and Allied Trades, AFL-CIO, CLC ("IUPAT") and its affiliated District Councils and Local Unions.

2.    "Association" means Finishing Contractors Association ("FCA").

3.    "Employer" means any employer who makes payments to the Trust under this Trust Agreement, either as a member or nonmember of the Association.

4.    "Collective Bargaining Agreement" means the various collective bargaining agreements executed between an Employer and the Union.

4a "Participating Local Labor-Management Cooperation Initiative" shall mean any trust fund established by the Union and one or more employers to foster labor-management cooperation or industry promotion which has entered into a participation agreement with the Trust."

5.    "Trust" means this Trust, including the monies and other assets held under this Agreement and Declaration of Trust, as well as future contributions provided for under collective bargaining agreements or otherwise.

6.    "Trustees" means those Trustees administering this Trust under the provisions of the appropriate Article of this Agreement.

7.    "Union segment" means the members of the Board of Trustees appointed by the Union. "Employer segment" means the members of the Board of Trustees, appointed by the Association, and any other Associations or Employers given the power to appoint Employer Trustees pursuant to this instrument.

## ARTICLE III

### Trustees

1.    A Board of Trustees is hereby established which shall consist of up to twenty four (24) Trustees.

2.    The Union shall be and is empowered to appoint all Union Trustees.

3.    The Finishing Contractors' Association ("FCA") shall be and is empowered

- 4 -

to appoint all Employer Trustees; provided, however, that the FCA's power of appointment hereunder is expressly conditioned on its remaining an organization that admits to membership only 100% Union Signatory Employers.

4. The Trustees may by resolution provide alternative methods of appointment for Employer Trustees should FCA become unable to exercise its power of appointment under Section (3).

5. Any party that has the power to appoint a Trustee may remove said Trustee.

6. In the event any Union Trustees are appointed or removed (by way of a change on the Union's General Executive Board), a statement in writing by the Union shall be sufficient evidence of the action taken by the Union. In the event any Employer Trustees are appointed or removed, a statement in writing by the Employer or Association empowered to so appoint or remove shall be sufficient evidence of the action taken by said Employer or Association.

7. The Board of Trustees shall select from among its members two (2) Co-Chairmen and two (2) Co-Secretaries, one each from the Union segment and from the Employer segment of the Board. The Co-Chairmen shall alternate in presiding over meetings of the Board of Trustees, shall carry out any other duties assigned to them in this Agreement and Declaration of Trust, and shall perform such other functions as are assigned or delegated to them by the Board of Trustees. The Co-Secretaries shall alternate in taking minutes of meetings of the Board of Trustees, shall carry out any other duties assigned to them in this Agreement and Declaration of Trust, and shall perform such other functions as are assigned or delegated to them by the Board of Trustees.

8. Members of the Board of Trustees shall continue to serve until their death, incapacity as determined by the Board of Trustees, resignation or removal.

9. Any Trustee may resign by a written instrument executed for that purpose and delivered or mailed to the remaining Trustees.

10. Any successor Trustee shall, upon the affixing of his or her signature to the Agreement and Declaration of Trust, or signing a written acceptance in a form satisfactory to the Trustees, be vested with all rights, powers and duties of a Trustee hereunder as if originally named as Trustee. No vacancy or vacancies in the position of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust, pending the filling of such vacancy or vacancies.

- 5 -

PF1046

11.    The Trustees shall administer the Trust in accordance with its terms and may adopt such bylaws, rules of procedure and regulations, not inconsistent with the Trust, as are deemed desirable for the conduct of its affairs, and shall have all powers necessary to carry out the provisions of the Trust. The Trustees shall interpret the Trust and shall determine all questions arising in its administration and application. The Trustees shall plan programs to carry out the purposes of the Trust and direct their execution, either delegating such execution to employees or retaining direction in their own hands as the Trustees may see fit.

12.    The Trustees shall keep true and accurate books of accounts and records of their transactions as Trustees and an audit of the Trustees' accounts and the funds shall be made by certified public accountants not less than annually, and otherwise when deemed necessary by the Trustees. A copy of such audit shall be sent to the Association and the IUPAT. A statement of results of such audit shall be made available for inspection at the principal office of the Trust and at such other places as may be designated by the Trustees.

13.    The Trustees shall serve without compensation for services as such. The Trustees may authorize any reasonable amount for payment of their expenditures or the expenditures of the individual trustees in the course of their duties for the Trust. Such expenses shall include any expenses incident to the functioning of the Trustees, including, when necessary, travel and subsistence expenses.

14.    No Trustee shall incur any liability for any action or failure to act. The Trust shall indemnify each Trustee against any and all claims, losses, damages, expenses and liabilities arising from any action or failure to act and shall indemnify said Trustee against the costs of defending the same except when the same is judicially determined to be done through gross negligence or willful misconduct.

15.    No party dealing with the Trustees in relation to this Trust shall be obliged to see to the application of any money or property of the Trust, or to see that the terms of this Trust have been complied with, or be obliged to inquire into the necessity or expediency of any such act of the Trustees, and every instrument executed by the Trustees shall be conclusive in favor of every person relying thereon: that at the time of the delivery of said instrument, the Trust herein created was in full force and effect; that said instrument was executed in accordance with the terms and conditions

- 6 -

contained in this Trust Agreement; and that the Trustees were duly authorized and empowered to execute such instrument.

## ARTICLE IV

### Meetings and Voting

1.      Meetings of the Trustees shall be held not less than semi-annually, at such times and at such places as may be agreed upon by the Co-Chairmen or by a majority of the Trustees then serving. Such meeting may be called upon ten (10) days written notice to the other Trustees, and may be held at any time without notice if all the Trustees consent.

2.      The Trustees shall keep minutes of all meetings, but such minutes need not be verbatim. Copies of the minutes shall be sent to all the Trustees and to such other persons as the Trustees may direct. Actions by the Trustees may also be taken by them writing, without a meeting, provided that in such case there shall be unanimous concurrence of all of the Trustees.

3.      In all meetings of the Trustees, a majority of the Trustees then serving must be present to constitute a quorum providing there are at least two Employer Trustees and at least two Union Trustees present at such meetings. On all matters requiring a vote, the Trustees shall act by majority vote. At all meetings, the Employer segment and the Union segment shall have equal voting strength, regardless of the number of Trustees in attendance for the Employer segment or the Union segment. The segment with the lesser number of Trustees will have the same total vote as the segment with the greater number of Trustees, with said total vote divided equally among the Trustees present from the segment with the lesser number (for example, if nine Union Trustees are present, and six Employer Trustees, each of the Union Trustees shall have one vote and each of the Employer Trustees shall have 1.5 votes).

4.      In the event the Trustees deadlock with respect to any matter relating to the administration of the Trust, distribution of the Trust, or any other matter relating to the Trust, including the adoption of rules and regulations, but excluding amendments to the Trust, the issue shall be submitted to a final determination by an arbitrator. The issue to be determined will be referred in writing to the arbitrator selected by the Union and Employer Trustees. In the event that no agreement can be reached upon an arbitrator after an attempt has been made to do so for at least five (5) days, either the Union segment or the Employer segment may petition the United States

-7-

PF1048

District Court for the District of Columbia for designation of an arbitrator. The matter shall be submitted to the arbitrator within five (5) days ·from the date of his selection. The arbitrator's decision shall be rendered within fifteen (15) days thereafter, and such decision shall be conclusive, final and binding upon the parties, the Board of Trustees, and all persons dealing therewith. Any and all expenses incurred by the Board of Trustees in the proceeding shall be paid by the Trust.

## ARTICLE V

### Contributions

1.      The Trust receives contributions from Employers and Participating Local Labor-Management Cooperation Funds. Each Employer shall contribute to the Trust in the amount required by the Collective Bargaining Agreement between the Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modifications thereto. Each Participating Local Labor-Management Cooperation Fund shall contribute to the Trust in the amount required by the participation agreement between the Participating Local Labor-Management Cooperation Fund and this Trust. The rate of contributions shall at all times be governed by the aforesaid participation agreement then in effect, together with any amendments, supplements or modifications thereto. On matters other than contribution rates, contributions to the Trust shall be governed by such rules and regulations as the Trustees, in their discretion, may adopt. Nothing contained in this Agreement shall prohibit acceptance by the Trust of monies or other things of value from sources other than Employers.

2.      The Trustees shall receive such funds paid to them in trust, and any other money or property which may come into their hands, as Trustees, and shall deposit, in the name of the Trust, all monies received by them in such bank or banks as they may designate for that purpose.

3.      All contributions shall be made effective as required by the Collective Bargaining Agreement or the participation agreement, as the case may be, and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement or the Participating Local Labor-Management Cooperation Fund is obligated pursuant to the participation agreement.

- 8 -

4.    Non-payment by an Employer or a Participating Local Labor-Management Cooperation Fund of any contributions when due shall not relieve any other Employer or Participating Local Labor-Management Cooperation Fund of its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer or a Participating Local Labor-Management Cooperation Fund in default for twenty (20) days may be required, at the discretion of the Trustees, to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection (including attorneys' fees) incurred by the Trustees and such liquidated damages or penalties as may be assessed by the Trustees.

5.    The Employers and Participating Local Labor-Management Cooperation Funds shall make all contributions and reports on contributions in such manner and form as required by the Trustees.

6.    The Trustees may, at any time, have an audit made by certified public accountants of the payroll, wage and cash disbursement records, general ledger, and other financial records, including but not limited to tax returns, of any Employer or any Participating Local Labor-Management Cooperation Fund in connection with the said contributions and/or reports. This power to audit shall apply whether the Employer is obligated to contribute directly to this Trust or to contribute indirectly to this Trust through contributions to a local fund. When an Employer receives notice that the Employer is scheduled for an audit, the Employer may write to the Fund 1) explaining why the time or date for the audit is impossible for the Employer to comply with and 2) offering alternative times or dates for an audit within a reasonable time. If the Trust does not receive such a written response from the Employer within 48 hours before the scheduled audit, the certified public accountants responsible for the audit may proceed as scheduled. If the employer fails to cooperate with a scheduled audit, the Trustees may require that the Employer pay to the Trust all costs incurred as a result of the Employer's failure. Any Employer found delinquent, or in violation of the rules and regulations of the Trust, as a result of an audit may be required by the Trustees to pay to the Trust the cost of the audit.

- 9 -

PF1050

7.    The Trustees shall be empowered to bring suit in any court of competent jurisdiction to collect delinquent contributions. In any action under this section in which judgment is awarded in favor of the Trust, the Employer shall pay to the Trust, in accordance with the court's award: the unpaid contributions, interest on the unpaid contributions determined at the rate prescribed under Section 6621 of the Internal Revenue Code of 1954, as amended, liquidated damages equal to the greater of the amount of interest charged on the unpaid contributions, or 20 percent (or any higher percentage permitted by Federal or State law) of the unpaid contributions, reasonable attorneys fees and costs of the action, and such other legal or equitable relief as the court deems appropriate.

8.    The Trustees may enter into common collection agreements with other benefit funds or entities and may, in such agreements or otherwise, authorize any other person to direct and supervise audits and to take, on behalf of the Trustees, any and all collection actions authorized by this Article.

## ARTICLE VI

### Duties and Powers

1.    The Trustees shall select a depository and shall deposit therein such portion of the funds in interest-bearing savings accounts as they may deem wise and create such checking accounts as are convenient.

2.    All taxes of any and all kinds whatsoever that may be levied or assessed under existing or future laws upon, or in respect of, the Trust or the income thereof shall be paid from the Trust.

3.    The Trustees shall keep accurate and detailed accounts of all investments, receipts, disbursements and other transactions hereunder.

4.    Within ninety (90) days following the close of each fiscal year of the Trust, the Trustees shall file with the Association and the IUPAT a written account setting forth all investments, receipts, disbursements, and other transactions affected by it during such fiscal year and setting forth the current value of the Trust. Upon the expiration of ninety (90) days from the date of filing such annual or other account, the Trustees shall be forever released and discharged from all

- 10 -

PF1051

liability and accountability to anyone with respect to the propriety of their acts and transactions shown in such account, except with respect to any such acts or transactions as to which the Association or the IUPAT shall file with the Trustees written objections within such ninety (90) day period.

5.      The Trustees, to carry out the purposes of this Trust, shall exercise in their discretion subject to the purposes of this Trust Agreement the following powers:

(a)     To retain such accountants, counsel, specialists, investment managers and other persons as they deem necessary or desirable in connection with the administration of the Trust. The Trustees shall be entitled to rely conclusively upon any paper or document believed by them to be genuine and authorized, and to have been made, executed and delivered the same, and to be fully protected in any action taken by them in good faith relying upon any opinions or reports which shall be furnished to them by any such investment manager, accountant, counsel or other specialist in connection with any matters pertaining to the administration or execution of this Trust.

(b)     To invest portions of the assets of the Trust in government bonds, stocks, common or preferred, bonds and mortgages or other evidences of indebtedness or ownership, and such investments shall be made in a prudent manner and shall not be restricted to securities commonly known as "legal investments for trust funds."

(c)     To purchase or rent buildings or office space, obtain equipment and enter into any and all contractual relationships related thereto. Any income received by the Trust from the lease or sub-lease of real and/or personal property shall be insubstantial in amount.

(d)     To sell, exchange, convey, transfer or otherwise dispose of any securities or other property (real or personal) held by it, by private contract or at public auction. No person dealing with the Trustees shall be bound to see to the expediency or propriety of any such sale

- 11 -

or other disposition.

(e)    To vote upon any stocks, bonds or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights or other options and to make any payments incidental thereto; to oppose, or to consent to, or otherwise participate in, corporate securities, and to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities or other property held as part of the Trust.

(f)    To cause any securities or other property (real or personal) held as part of the Trust to be registered in its own name or in the name of one or more of its nominees, but the books and records of the Trust shall at all times show that all such investments are part of the Trust.

(g)    To borrow or raise money for the purposes of the Trust in such amount, and upon such terms and conditions, as the Trustees shall deem advisable.

(h)    To keep such portion of the Trust in cash or cash balances as may seem to be in the best interest of the Trust created hereby, without liability for the interest thereon.

(i)    To accept and retain for such time as may seem advisable any securities or other property (real or personal) received or acquired by the Trustees hereunder, whether or not such securities or other property would normally be purchased as investments hereunder.

(j)    To make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

(k)    To settle, compromise or submit to arbitration any claims, debts or damages due or owing to or from the Trust, to commence or defend

- 12 -

PF1053

suits or legal or administrative proceedings, and to represent the Trust in all suits or legal or administrative proceedings.

(l) To pay or provide for the payment of all reasonable and necessary expenses of collecting contributions and administering the affairs of the Trust, the employment of such employees, legal, expert and clerical assistance, the leasing of such premises and the purchase or leasing of such materials, supplies and equipment as the Trustees in their discretion find necessary or appropriate in the performance of their duties.

(m) To do all such acts, take all such proceedings, and exercise all such rights and privileges, although not specifically mentioned herein, either alone or in association with other Trusts, corporations or individuals, as the Trustees may deem necessary to administer the Trust and to carry out the purpose of this Trust.

(n) To authorize any one or more of the Trustees to execute any document or documents on behalf of the Trustees, to open and keep an account in a bank or banks, in the name of the Trust, to cause to be deposited in said bank or banks to the credit of the Trust any and all monies, checks, notes, drafts, acceptances or other evidences of indebtedness belonging to the Trust, to execute checks and other items for and on behalf of the Trust and to endorse or authorize endorsement of checks and other items payable to this Trust for deposit. The Trustees shall notify the bank or banks of such action and the bank or banks may thereafter accept and rely upon the authority of such designated Trustee or Trustees as representing action by the Trustees until the Trustees shall file with the bank or banks a written revocation of such authority. All Trustees and any employees who are empowered and authorized to sign checks or handle monies shall be covered by an appropriate fidelity bond. The

- 13 -

PF1054

cost of all bonds are to be paid by the Trust. The bond shall be in an appropriate amount, which shall be at least the minimum amounts required by applicable state or federal laws.

(o)     To make payments out of the Trust to such persons, in such manner, in such amounts and for such Trust purposes as the Trustees may determine, and to authorize a bonded employee of the Trust to issue checks for the Trustees, provided such payments shall be made only in accordance with the terms of this Trust.

## ARTICLE VII
### Amendment and Termination

1.      The Trustees, by written resolution, shall have the right at any time, and from time to time, to amend, in whole or in part, any and all of the provisions of this Agreement. Any such amendment shall become effective upon delivery of a written copy of the amendment to the Association and the IUPAT.

2.      No benefit or money payable from this Trust shall be subject to any manner of anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt to so anticipate, alienate, sell, transfer, assign, plead, encumber or charge, on the part of any person claiming any benefit under this Trust, shall be void. The monies to be paid into this Trust shall not constitute or be deemed wages due to an individual employee, nor shall said monies in any manner be subject to the debts, contracts, liabilities or torts of such individual employees.

3.      Payments into the Trust may be discontinued by the amendment, termination or alteration of the Collective Bargaining Agreements between the Employers, the Association and the Union and the failure to substitute therefor some other agreement which contains similar provisions in respect to contributions, any such changes, terminations or alterations to be made in accordance with the provisions of the applicable Collective Bargaining Agreements; and it shall be the duty of the Employers and the Union in that event to notify the Trustees in writing of such discontinuance, alteration or termination. If the Trustees conclude that continuation of the Trust is impracticable, they shall so nearly as may be practicable, expend and use all the balances for the purpose of the Trust until such sums are exhausted or, alternatively, they shall distribute all assets remaining in the

- 14 -

PF1055

Trust, after payment of any expenses properly chargeable against the trust, to such charitable organizations as are exempt from taxation under the provisions of Section 501(c) of the Internal Revenue Code of 1954, as it may be amended, at the time of termination, and shall make such transfer without further obligation to the Employers, the Association, the Union or any other person. Under no circumstances, either directly or indirectly, should any funds revert or accrue to the benefit of any contributing Employer, the Association or the Union. ·

4.     This Agreement may be terminated by either the Association or the Union, upon thirty (30) day notice given by one to the other by registered or certified, first class, mail. In the event a successor Trust having the same or similar purposes is established within a reasonable period of time following such termination, to which Trust the Union is a party, the Trustees shall transfer all balances remaining in this Trust, to the duly designated Trustees of the successor Trust. In the event a successor Trust, as described, is not established within a reasonable period of time following such termination, the Trustees shall, as nearly as may be practicable, expend and use all the balances in the Trust for the purposes of the Trust until such sums are exhausted or, alternatively, they shall distribute all assets remaining in the Trust, after payment of any expenses properly chargeable against the Trust, to such charitable organizations as are exempt from taxation under the provisions of Section 501(c) of the Internal Revenue Code of 1954, as amended from time to time. All judgments under and interpretations of these provisions shall be made in the sound discretion of the Trustees and without obligation to the Employers, the Association, the Union or any other person. Under no circumstances, either directly or indirectly, should any funds revert or accrue to the benefit of any contributing Employer, the Association or the Union.

## ARTICLE VIII

### Miscellaneous

1.     Neither the establishment of the Trust hereby created, nor any modifications thereof, nor the creation of any fund or account, nor the payment of any sum shall be construed as giving to any person any legal or equitable right against the Employer, the Association, the Union or the Trustees, except as herein provided. No individual or entity shall have any right to the assets of the Trust upon its termination, or at any other time, and no part of the earnings of the Trust shall inure to

- 15 -

PF1056

## ARTICLE X

### Execution of Agreement and Declaration of Trust

1. This Agreement and Declaration of Trust may be executed in any number of counterparts. The signature of a party or trustee or any counterpart shall be sufficient evidence of his or her execution thereof.

2. The effective date of this Restated Agreement and Declaration of Trust is February 8, 2003.

IN WITNESS WHEREOF the Association, the Union and the Trustees have caused this Agreement to be executed this 8th day of February 2003, by their duly appointed officers and the Trustees have executed it by their individual signatures.

INTERNATIONAL UNION OF                    FINISHING CONTRACTORS
PAINTERS and ALLIED TRADES,                ASSOCIATION
AFL-CIO, CLC


By: _____        By: _____

Title: _____        Title: _____


## TRUSTEES


_____        _____


_____        _____


_____        _____


- 18 -


PF1057

- 19 -

PF1058