IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) ) | Civil Action No. 06-131 (GK) Next-Scheduled Court Deadline |
| v. | ) ) | Pretrial Conference: |
| MIDWEST DRYWALL CO., INC. | ) ) | February, 2008 |
| Defendant. | ) ) ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT INCLUDING MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION

Robert D. Overman
KS Bar No. 08155
MORRIS, LAING, EVANS, BROCK &
KENNEDY, CHTD.
300 N. Mead, Suite 200
Wichita, Kansas  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226
E-mail:  roverman@morrislaing.com

Charles F. Walters
D.C. Bar No. 444529
SEYFARTH SHAW, LLP
815 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 828-5393
E-mail:  cwalters@seyfarth.com

February 6, 2008        *Attorneys for Defendant Midwest Drywall Co., Inc.*

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................... 1

II.    ARGUMENT  ......................................................................................................... 2

       A.    Genuine Issues of Material Fact Exist Which Preclude Granting Summary
             Judgment In Favor of the Pension Fund ........................................................ 2

       B.    It Is Inconsistent With Law To Apply the No. 159 CBA 50-50 Clause To
             Require Contributions As To Hours Worked By Midwest Drywall Employees
             Outside the Jurisdiction of Painters Local 159 .............................................. 3

             1.    Absent a Statutorily Permissible Collective Bargaining Relationship
                   Between Midwest Drywall and a Foreign Union, It Is Unlawful
                   Under Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA To
                   Impose Terms and Conditions of a Foreign Local Union's Agreement
                   On Midwest Drywall's Employees ............................................................. 8

             2.    Binding Midwest Drywall To Foreign CBAs Through the 50-50
                   Clause Would Undercut Collective Bargaining In Foreign
                   Jurisdictions In Violation of the NLRA ....................................... 16

             3.    The Interpretation Advanced By the Pension Fund Violates Statutory
                   Employee Rights To Determine Whether They Wish To Be
                   Represented and By Whom  ......................................................... 17

       C.    Painters Local 159 Cannot Bind Foreign Local Unions To a Collective
             Bargaining Agreement With Midwest Drywall Without the Foreign Local
             Union's Express Authority or Consent .................................................... 23

       D.    The No. 159 CBA 50-50 Clause Is Susceptible To More Than One
             Reasonable Interpretation and Is Therefore Ambiguous ........................... 26

             1.    The Intent of Painters Local 159 Is That No Contributions Are
                   Due From Midwest Drywall In the Absence of a Signed Foreign
                   Jurisdiction CBA ........................................................................ 28

             2.    The No. 159 CBA 50-50 Clause As Interpreted By the Painters and
                   Decorators Joint Committee, Inc. Requires Midwest Drywall and
                   Foreign Local Unions To Establish a Collective Bargaining
                   Relationship and To Enter Into a Collective Bargaining Agreement
                   Before Determination of Lost Wages and Benefits ................................... 29

             3.    The Pension Fund's Claim Conflicts With Other Provisions of the
                   No. 159 CBA ............................................................................... 32

E.      The Pension Fund's Claim That Midwest Drywall Is Liable For
        Contributions For Employees of Subcontractors Who Perform Work
        Outside the Jurisdiction of Painters Local 159 Is Inconsistent With
        the Law.................................................................................................................... 34

F.      The Memorandum of Understanding Between Painters District Council
        15 and Midwest Drywall Waivers Article 4 (IV) In the No. 159 CBA
        Between Midwest Drywall and Painters Local 159 ................................................ 35

G.      The Pension Fund Lacks Standing To Bring Suit In Its Own Name When
        the Alleged Injury Was To Other Funds ................................................................ 37

III.    CONCLUSION ................................................................................................................ 38

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)............................................................................................................3

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,*
106 F.3d 11 (2d Cir. 1997....................................................................................................38

*Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,*
493 U.S. 67 (1989)..............................................................................................................20

*\*Connell Construction Company, Inc. v. Plumber & Steamfitters Local 100,*
421 U.S. 616, 95 S. Ct. 1030 (1975).........................................................................9, 27, 34

*Consolidated Gas Transmission Corp. v. F.E.R.C.,*
771 F.2d 1536 (D.C. Cir. 1985)..........................................................................................26

*\*Dana Corporation,*
351 NLRB No. 28 (2007) .....................................................................................................9

*Donald Schriver, Inc. v. N.L.R.B.,*
635 F.2d 859  (D.C. Cir. 1980)............................................................................................9

*Flynn v. Anthony Mion & Sons, Inc.,*
112 Fed. Appx. 101 (2004)..................................................................................................38

*Flynn v. Dick Corporation,*
384 F. Supp. 2d 189 ( D.D.C. 2005) (*rev'd and remanded on other grounds,*
481 F.3d 824 (D.C. Cir. 2007)).....................................................................14, 15, 16, 17

*Flynn v. Dick Corporation,*
481 F.3d 824  (D.C. Cir. 2007) .............................................................................14, 15, 27

*Flynn v. Tiede-Zoeller, Inc.,*
412 F. Supp. 2d 46 (D.D.C. 2006) ......................................................................................26

*\*H. K. Porter Co. v. N.L.R.B.,*
397 U.S. 99 (1970).......................................................................................................16, 23

*\*Howell Insulation Co.,*
311 NLRB 1355 (1993) ........................................................................................................9

*\*Int'l Ladies' Garment Workers Union v. N.L.R.B.,*
366 U.S. 731 (1961)............................................................................................................10

*\*John Deklewa & Sons,*
282 NLRB 1375, *enf'd* 843 F.2d 770 (3d Cir. 1988), *cert. denied*
109 S. Ct. 222 (1988)..........................................................................9, 10, 12, 13, 20

*\*Kaiser Steel Corporation v. Mullins,*
455 U.S. 72, 102 S. Ct. 851 (1982)...............................................................................10, 22

*Local 7-210, Oil, Chemical & Atomic Workers v. Union Tank Car Co.,*
475 F.2d 194 (7th Cir. 1973) ..............................................................................................10

*M & M Backhoe Service, Inc. v. NLRB,*
469 F.3d 1047 (D.C. Cir. 2006)..........................................................................................13

*Moglia v. Geoghegan,*
403 F.2d 110 (2d Cir. 1968) ...............................................................................................25

*NLRB v. Retail Clerks Local 588,*
587 F.2d 984 (9th Cir. 1978) ..............................................................................................10

*Rock Technologies Inc.,*
179 LRRM 1192 (N.L.R.B. 2006)........................................................................................13

*Service Employees International Union, Local 722 v. Washington Hosital Center,*
1983 WL 2085 (D.D.C. 1983) .............................................................................................32

*Steele v. Louisville & Nashville Railroad,*
   323 U.S. 192 (1944)................................................................................20
*Stockton Roofing Co.,*
   304 NLRB No. 88 (1991) ........................................................................20
*Trustees of the B.A.C. Local 32 Insurance Fund v. Ohio Ceiling & Partition Co., Inc.,*
   48 Fed. Appx. 188 (6th Cir. 2002)....................................................19, 27
*Trustees of the National Automatic Sprinkler Industry Pension Fund v. Fairfield*
*County Sprinkler Co. Inc.,*
   243 F.3d 112 (2d Cir. 2001) .............................................................17, 25
*United States v. Insurance Company of North America,*
   131 F.3d 1037 (D.C. Cir. 1997)..............................................................27
*Vaca v. Sipes,*
   386 U.S. 171 (1967)................................................................................20
*Walsh v. E. A. Schlecht,*
   429 U.S. 401 (1976)............................................................................9, 10

## ARBITRATION DECISION

*International Brotherhood of Painters and Allied Trades, Local
Union No. 159 v. Midwest Drywall Co., Inc.
Proceeding before the Joint Trade Board of the Painters and Decorators
Joint Committee, Inc. (April, 2000) ..............................................28, 29, 30, 31, 32, 37, 38

## STATUTES

29 U.S.C. §§ 141-187 ..........................................2, 3, 11, 12, 13, 14, 15, 16, 17, 22, 25, 34, 35, 37, 38
29 U.S.C. §§ 151-169 ......................2, 3, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 20, 21, 22, 26, 31, 33
Continued (29 U.S.C. §§ 151-169): ........................................................34, 35, 37, 38, 39
29 U.S.C. § 151......................................................................................................16, 18
29 U.S.C. § 157....................................................8, 11, 13, 15, 16, 17, 19, 20, 21, 39
29 U.S.C. § 158(a)(1) and (2) ........................................7, 8, 9, 15, 16, 18, 21, 38
29 U.S.C. § 158(b)(1)(A)..............................................7, 8, 9, 15, 16, 18, 21, 38
29 U.S.C. § 158(d) ..........................................................................16, 18, 36
29 U.S.C. § 158(e) ........................................................................................34
29 U.S.C. § 158(f)........................................2, 4, 5, 8, 9, 10, 11, 12, 13, 17, 18, 20, 22, 26
29 U.S.C. § 159(a) ......................................2, 4, 5, 8, 9, 10, 13, 22, 33
29 U.S.C. § 185..............................................................................................38
29 U.S.C. § 186..................................................................................14, 15, 34
29 U.S.C. § 1145 ..............................................................................3, 7, 24, 38

## RESTATEMENTS

Restatement (Second) of Contracts, § 203(a) ..................................................................32

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | Civil Action No. 06-131 (GK) |
| v. | ) ) | Next-Scheduled Court Deadline Pretrial Conference: |
| MIDWEST DRYWALL CO., INC. | ) | February, 2008 |
| Defendant. | ) ) ) | |

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
INCLUDING MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S  MOTION**

Defendant Midwest Drywall Co., Inc. (Midwest Drywall), by and through its undersigned

attorneys and pursuant to Local Civil Rules 7(h) and 56.1 and all other applicable rules, hereby

submits its Opposition to Plaintiff's Motion for Summary Judgment. As stated in Midwest Drywall's

Statement of Genuine Issues of Material Fact and discussed more fully below, there are genuine

issues as to material fact relied upon in Plaintiff's Motion for Summary Judgment (Pension Fund's

Motion) and to require Midwest Drywall to make contributions as claimed by the Pension Fund

would command conduct that is inconsistent with the law and would command conduct that is

contrary to the interpretation of the collective bargaining agreement and the Memorandum of

Understanding between Midwest Drywall and Painters Local 159 which preclude granting summary

judgment in favor of Plaintiff.

**I.    INTRODUCTION**

The Pension Fund does not claim that Midwest Drywall failed to pay monies specified in a

detailed basis in collective bargaining agreements Midwest Drywall has entered through mutual

collective bargaining relationships with International Union of Painters and Allied Trades, AFL-CIO, CLC District Councils and Local Unions (Painters District Councils and Painters Local Unions). The Pension Fund instead asserts its claim solely through the 50-50 Clause in the collective bargaining agreement between Midwest Drywall and Painters Local 159 (No. 159 CBA). Midwest Drywall in its Answer identified the collective bargaining agreements it has entered with Painters District Councils or Painters Local Unions through collective bargaining relationships during the period of the Pension Fund's claim and admitted that it has made all contributions as specified in a detailed basis in said collective bargaining agreements during the period of time of the Pension Fund's claim. For Midwest Drywall to make any other payments would be illegal.

The 50-50 Clause cannot lawfully be interpreted to apply to all of Midwest Drywall's employees working outside the jurisdiction of Painters Local 159 and to local unions with whom Midwest Drywall does not have a statutory 8(f) or 9(a) relationship as required under the National Labor Relations Act (NLRA). (29 U.S.C. §§ 158(f) and 159(a).) The construction alleged by the Pension Fund not only would require the Court to ignore the full language of the No. 159 CBA, but would force the Court to adopt a construction that violates the NLRA (29 U.S.C. §§ 151-169) and the Labor Management Relations Act (LMRA) (29 U.S.C. §§ 141-187) and would be contrary to the Joint Trade Board of the Painters and Decorators Joint Committee, Inc.'s interpretation of the No. 159 CBA and to the course of dealing between Painters Local 159 and Midwest Drywall. Accordingly, for all the reasons more fully set forth below, Midwest Drywall is entitled to summary judgment as a matter of law.

## II.   ARGUMENT

### A.   Genuine Issues of Material Fact Exist Which Preclude Granting Summary Judgment In Favor of the Pension Fund.

Rule 56(c) of the Federal Rules of Civil Procedure provides in part that for the Court to render Summary Judgment there must be the appropriate showing "that there is no genuine issue as

to any material fact and that the movant is entitled to a judgment as a matter of law." As recognized

by the United States Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 248 (1986), as

to materiality, ". . . disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." As to "genuine issue", the Supreme

Court found that "The inquiry performed is the threshold inquiry of determining whether there is the

need for a trial – whether, in other words, there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*Anderson v. Liberty Lobby, Inc.*, *supra*, at 250.

       In Midwest Drywall's Statement of Genuine Issues of Material Fact filed in opposition to the

Pension Fund's Motion for Summary Judgment, Midwest Drywall has presented evidence based on

appropriate references to the record and Declarations to directly dispute statements of fact asserted

by the Pension Fund that affect the outcome of the Pension Fund's claims under the governing law,

including 29 U.S.C. §1145, the NLRA, and the LMRA. In Midwest Drywall's Statement of Genuine

Issues of Material Fact filed in opposition to the Pension Fund's Motion for Summary Judgment,

Midwest Drywall has also presented sufficient evidence based on appropriate references to the record

and Declarations to directly dispute statements of fact asserted by the Pension Fund to require the

Court to resolve the parties differing versions of the truth at trial. Accordingly, the Court should deny

the Pension Fund's Motion for Summary Judgment.

       **B.**      **It Is Inconsistent With Law To Apply the No. 159 CBA 50-50 Clause To Require Contributions As To Hours Worked By Midwest Drywall Employees Outside the Jurisdiction of Painters Local 159.**

       The Pension Fund cites only language from the No. 159 CBA as to the specified detailed

basis on which contributions to various benefit funds are to be made. [Plaintiff's Statement of

Material Facts As To Which There is No Genuine Issue in Support of Plaintiff's Motion for Summary

Judgment (PSTMF) ¶¶ 10, 11, 12, and 13]. However, the language cited by the Pension Fund from

the No. 159 CBA is only applicable to Midwest Drywall employees who perform work described in

the No. 159 CBA as "work jurisdiction" in the "area jurisdiction" of Painters Local No. 159 ("Clark, Lincoln, Nye and Esmeralda Counties, State of Nevada, La Paz and Mohave Counties, State of Arizona, floorcovering to include the preceding and also to include the State of Utah . . ."). (Midwest Drywall's Exhibit 3, Article II and Article III, pp. 3-4, document Bates numbered MWD0005 to MWD0044.) The "specified detailed basis" language in the No. 159 CBA relied upon by the Pension Fund is not applicable to Midwest Drywall's employees who work in foreign jurisdictions.

The No. 159 CBAs entered into by Midwest Drywall and Painters Local 159 contain the detailed basis, as to each employee engaged in work performed in the area covered by No. 159 CBA, for contributions to be made to the Pension Fund. Midwest Drywall has complied with said provisions. In the No. 159 CBA, Midwest Drywall also agreed to make contributions for employees covered by said agreement to the Labor Management Cooperative Fund (LMCF) and to honor authorizations for check-off of political contributions from employees who are union members to the Political Action Together – Political Committee (PAT-PC). Midwest Drywall has complied with said provisions. (Midwest Drywall's Statement of Material Facts As To Which There Is No Genuine Issue filed in support of Midwest Drywall's Motion for Summary Judgment (Midwest Drywall's SOMF) ¶ 5.) On April 16, 2004, the Painters Local 159 in an email to Gary Meyers, the Administrator of the Pension Fund, stated that Midwest Drywall is "living up to the terms and conditions (including wage and benefit increases) of the new agreement". (Midwest Drywall's SOMF ¶ 24.)

The Pension Fund does not support the Pension Fund's Motion with any other collective bargaining agreements entered through mutual collective bargaining relationships by Midwest Drywall with Painters District Councils and/or Painters Local Unions.

It is undisputed that in 1986, Midwest Drywall, pursuant to 29 U.S.C. § 158(f), established a collective bargaining relationship and entered into a collective bargaining agreement with Painters District Council No. 3 with successor negotiated agreements. After November 24, 1993, Midwest Drywall, pursuant to 29 U.S.C. § 159(a), established a collective bargaining relationship and entered

4

into collective bargaining agreements with Painters District Council No. 3 with the agreements'
jurisdiction extending to specified counties in Missouri and Kansas. (No. 3 CBA.)  The No. 3 CBA
entered into by Midwest Drywall and Painters District Council No. 3 did not contain any basis upon
which payments were to be made to the Pension Fund, but did provide that Midwest Drywall was
required to make contributions for its employees working within the jurisdiction of the agreement to
the LMCF. Midwest Drywall made contributions as specified in the No. 3 CBA. (Midwest Drywall's
SOMF ¶ 3.)

It is also undisputed that in 1984, Midwest Drywall, pursuant to 29 U.S.C. § 158(f),
established a collective bargaining relationship and entered into a collective bargaining agreement
with Painters Local 76 with successor negotiated agreements. Since May 19, 2003, Midwest Drywall,
pursuant to 29 U.S.C. § 159(a), has established a collective bargaining relationship and entered into
collective bargaining agreements with said labor organization with the agreements' jurisdiction
extending to specified counties in Kansas, including the city of Wichita. (No. 76 CBA.) During the
time period of the Pension Fund's claim, the No. 76 CBAs entered into by Midwest Drywall and
Painters Local 76 do not contain any basis upon which payments are to be made to the Pension Fund.
In a prior No. 76 CBA, Midwest Drywall agreed to make, for employees covered by the agreement,
contributions to the International Union of Painters and Allied Trades Joint Apprenticeship and
Training Fund (IUPAT-JATF) and to the International Union of Painters and Allied Trades LMCF
and made contributions as specified in the No. 76 CBA. In the current No. 76 CBA, Midwest
Drywall agreed to make contributions to the IUPAT-JATF and has made contributions as specified in
said agreement. (Midwest Drywall's SOMF ¶ 4.)

It is further undisputed that in July, 1999, Midwest Drywall established a collective
bargaining relationship with Painters District Council 80, International Brotherhood of Painters &
Allied Trades, AFL-CIO, CLC (Painters District Council 80) and entered into a collective bargaining
agreement titled "Memorandum of Understanding and Area Contract" with Painters District Council

5

80 effective from July 13, 1999, until the substantial completion of Midwest Drywall's work on the

FDA Jefferson Laboratories, Jefferson, Arkansas job. (No. 80 CBA). Midwest Drywall has paid all

contributions to funds as specified in the No. 80 CBA, including contributions to the Pension Fund.

(Midwest Drywall's SOMF ¶ 8.)

      The Pension Fund does not claim that Midwest Drywall failed to pay monies to funds as

specified in collective bargaining agreements Midwest Drywall has entered through mutual collective

bargaining relationships with Painters District Councils and Painters Local Unions. Instead, the

Pension Fund asserts its claim through the 50-50 Clause in the No. 159 CBA between Midwest

Drywall and Painters Local 159 which provides in part in Article IV:

> "It being understood that the principle place of business and the employment of the
> employer is in the area jurisdiction as stated, but that such employer on occasion
> undertakes painting work in other cities and areas, on which occasions such employer
> employs such additional employees, residents of such other city or area as the needs of
> the work require; now therefore, be it resolved:
> .  .  .
> (b)  And further provided that the employer or contractor, when engaged in work outside
> the geographical jurisdiction of the Union party to this Agreement shall comply with all
> of the lawful clauses of the collective bargaining agreement in effect in said other
> geographical jurisdiction and executed by the employers of the industry and the local unions
> in that jurisdiction, including but not limited to, the provisions of the wages, hours, working
> conditions and all fringe benefits therein provided, including grievances; provided,
> however, that as to employees employed by such employer from within the geographical
> jurisdiction to the Union party to this Agreement and who are brought into an outside
> jurisdiction, such employees, and fringe benefit contributions on behalf of such
> employees shall be made solely to their home funds in accordance with their governing
> documents. . . . " (Midwest Drywall's Exhibit 3, at pp. 5-6.)

The Pension Fund's Motion does not cite to or rely upon any foreign jurisdiction language that

specifies the detailed basis on which contributions to the Pension Fund and/or to any Ancillary Fund

are to be made.

      When the Pension Fund's counsel by letter dated January 6, 2006, for the first time informed

Midwest Drywall of the Pension Fund's conclusion from a July, 2004 audit, Midwest Drywall's

counsel requested copies of all written agreements with Midwest Drywall that specify the detailed

basis on which the claimed payments were to be made (Additional Midwest Drywall Exhibit 38, document Bates numbered MWD4610, attached hereto). The Pension Fund did not support its claim by any collective bargaining agreements entered through mutual collective bargaining relationships between Midwest Drywall and a foreign Painters District Council and/or foreign Painters Local Union. On January 16, 2006, Midwest Drywall's counsel responded to the January 6, 2006, claim letter denying all claims asserted by the Pension Fund and the Ancillary Funds and stated that "The alleged contributions sought would be illegal." (Additional Midwest Drywall Exhibit 39, document Bates numbered MWD4613, attached hereto).

The Pension Fund asserts that Midwest Drywall failed to pay to the Pension Fund and to "Ancillary Funds" monies under unspecified labor contracts allegedly in violation of Section 515 of the Employee Retirement Income Security Act, 29 U.S.C. § 1145. That Section provides:

> "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, **to the extent not inconsistent with law**, make such contributions in accordance with the terms and conditions of such plan or such agreement."

29 U.S.C. § 1145. (Emphasis added).

The Pension Fund when citing to this statute in support of the Pension Fund's Motion (Pension Fund's Memorandum of Points and Authorities, p. 10), elected not to cite the full text of Section 515. The portion of the statute relevant to the present case "to the extent not inconsistent with law" was omitted by the Pension Fund.

The Pension Fund claims that Midwest Drywall is obligated to pay contributions as may be described in unidentified agreements between foreign local unions and other employers without the existence of a collective bargaining relationship and a signed agreement between Midwest Drywall and a foreign local union. To require Midwest Drywall to make contributions to the Pension Fund based solely on the 159 CBA 50-50 Clause would command conduct that renders the promise an illegal undertaking under the NLRA. 29 U.S.C. §§ 158(a)(1) and (2) and 158(b)(1)(A), Sections

7

8(a)(1) and (2) and 8(b)(1)(A) of the NLRA, prohibit enforcing on employees the terms and conditions of a labor agreement without the existence of a collective bargaining relationship between an employer and the collective bargaining representative of the employer's employees with protection of the employee's 29 U.S.C. § 157 (Section 7) rights. Enforcement of the Pension Fund's claims based on hours worked by employees outside the jurisdiction of Painters Local 159 violates the NLRA because such enforcement voids the Section 7 rights of employees. To avoid unlawful application of the No. 159 CBA 50-50 Clause, it should be construed to apply to foreign collective bargaining agreements entered into through collective bargaining relations between Midwest Drywall and a foreign Painters District Council or a foreign Painters Local Union. To require Midwest Drywall to make contributions to the Pension Fund based solely on the 159 CBA 50-50 Clause would command conduct that renders the promise an illegal undertaking under the NLRA. Therefore, the Pension Fund is not entitled to recover its claims herein.

> **1.     Absent a Statutorily Permissible Collective Bargaining Relationship Between Midwest Drywall and a Foreign Union, It Is Unlawful Under Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA To Impose Terms and Conditions of a Foreign Local Union's Agreement On Midwest Drywall's Employees.**

The NLRA permits labor organizations to bargain only for employees they represent under Section 9(a) or Section 8(f) of the NLRA. Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the collective bargaining agent for Midwest Drywall's foreign jurisdiction employees. (Midwest Drywall's SOMF ¶ 10.) Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the authorized agent for foreign Painters District Councils and/or Painters Local Unions. (Midwest Drywall's SOMF ¶ 11.) Painters District Council 3, Painters District Council 80, and Painters Local Union 76 have not represented to Midwest Drywall that Painters Local 159 was or is the collective bargaining agent for Midwest Drywall's employees working in their jurisdictional areas or was or is their authorized agent for collective bargaining. (Midwest Drywall's SOMF ¶ 12.)

Interpreting the 50-50 Clause to apply to unrepresented Midwest Drywall employees outside the jurisdiction of Painters Local 159 would render the No. 159 CBA unlawful under the NLRA. Courts should avoid constructions that would render a collective bargaining agreement unlawful. *Walsh v. E. A. Schlecht,* 429 U.S. 401, 408 (1976).

The collective bargaining relationships between employers engaged in interstate commerce and labor organizations are governed by the NLRA. The NLRA permits labor organizations to gain rights to represent employees through voluntary recognition agreements based on a union's showing of majority support or an NLRB conducted election under Section 9 of the NLRA or in the construction industry by recognition of representation with safeguards for protection of employee free choice under Section 8(f) of the NLRA. See, *Dana Corporation*, 351 NLRB No. 28 (2007) and *John Deklewa & Sons*, 282 NLRB 1375, 1380-1381, *enf'd* 843 F.2d 770 (3d Cir. 1988), *cert. denied* 109 S. Ct. 222 (1988). The United States Supreme Court, in a case challenging the enforcement of a subcontracting provision in an 8(f) agreement, held that such "authorization extends only to agreements in the context of collective-bargaining relationships" and not to agreements with "stranger" contractors, not limited to any particular job site. *Connell Construction Company, Inc. v. Plumbers & Steamfitters Local 100*, 421 U. S. 616, 633, 95 S. Ct. 1030, 1840 (1975). In *Donald Schriver, Inc. v. N.L.R.B.*, 635 F.2d 859, 870-873 (D.C. Cir. 1980), the Circuit Court held that the test set forth in *Connell* is satisfied when a union seeks a contractual relationship with an employer and seeks to secure representation of the employer's employees through an 8(f) relationship. The NLRB in *Howell Insulation Co.*, 311 NLRB 1355 (1993), held that an outside jurisdiction clause, similar to that contained in the No. 159 CBA, Article IV, 50-50 Clause, does not by itself confer statutory 8(f) or 9(a) representation of employee rights on the outside local union. Without a statutory permissible 8(f) or 9(a) relationship, an unnamed foreign local union is not the statutory bargaining representative of Midwest Drywall employees. **In the absence of a statutory collective bargaining relationship, it is unlawful under Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA to impose the terms**

**and conditions of a foreign local union's agreement with another employer on Midwest Drywall's employees.** Collective bargaining agreement obligations cannot exist independent of the union's right to represent the bargaining unit. See, *Int'l Ladies' Garment Workers Union v. N.L.R.B.*, 366 U.S. 731 (1961), *NLRB v. Retail Clerks Local 588*, 587 F.2d 984 (9th Cir. 1978), *Local 7-210, Oil, Chemical & Atomic Workers v. Union Tank Car Co.*, 475 F.2d 194,199 (7th Cir. 1973), and *John Deklewa & Sons, supra*. However that is exactly what the Pension Fund claims the 50-50 Clause should be applied to accomplish. Such a construction would be unlawful under the NLRA. The NLRA permits unions to bargain only for employees they represent under Section 9(a) or Section 8(f) of the NLRA. The Court should construe the No. 159 CBA to avoid such illegal results. *Walsh v. E. A. Schlecht, supra.* at 408.  The Court should decline to enforce the 50-50 Clause in the No. 159 CBA as urged by the Pension Fund because such enforcement is illegal. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S. Ct. 851 (1982) (holding that a court may not enforce a contract, including contributions to a multiemployer pension fund, that violates the NLRA).

The following demonstrate why the construction asserted by the Pension Fund is inconsistent with the law:

a.      Midwest Drywall is not signatory to and has not entered into any national agreement with the International Painters and Allied Trades Union, nor does the Pension Fund claim that Midwest Drywall has done so. (Midwest Drywall's SOMF ¶ 13).

b.      In the summer of 1999, Midwest Drywall established a statutory 8(f) collective bargaining relationship with Painters District Council 80 that led to Midwest Drywall entering into a Memorandum of Understanding and Area Contract with Painters District Council 80 as to Midwest Drywall's employees effective from July 13, 1999, until the substantial completion of Midwest Drywall's work on the FDA Jefferson Laboratories, Jefferson, Arkansas job. Upon substantial completion of Midwest Drywall's work on that job, the No. 80 CBA terminated. (Midwest Drywall's SOMF ¶ 8.) However, under the Pension Fund's claim, Midwest Drywall and its employees, contrary

to the statutory collective bargaining relationship between Midwest Drywall and Painters District Council 80, would nevertheless continue to be bound by the terms of a collective bargaining agreement signed by another employer. In direct violation of the NLRA and the LMRA, the Pension Fund's claim would do away with statutory collective bargaining relationships between Midwest Drywall and a Painters District Council or Local Union, because the Pension Fund claims that Midwest Drywall is, by fiat, already bound.

c.      In the summer of 1999, Midwest Drywall met with Painters Local Union 109's representative, discussed what the union proposed for a collective bargaining agreement, including scope of work, but did not reach an agreement with Painter's Local Union 109 covering specified work, including taper work, in Omaha, Nebraska. (Midwest Drywall's SOMF ¶ 15.)

In November, 2001, Carpenters Local Union No. 444 represented and submitted evidence to Midwest Drywall that it represented a majority of Midwest Drywall's tapers employed in Omaha, Nebraska. Midwest Drywall thereafter through a statutory 8(f) relationship entered into a collective bargaining agreement with Carpenters Local Union Nos. 444 and 1055 covering work, including taper work, in Omaha, Nebraska. That collective bargaining agreement terminated in May, 2003, and Carpenters Local Union Nos. 444 and 1055 filed a 9(c) representation petition with the NLRB. The NLRB conducted an election for bargaining unit employees and issued a Decision and Order that a majority of the employees' votes were not cast for the union.  (Midwest Drywall's SOMF ¶¶ 27 and 28.)

However, under the Pension Fund's claim Midwest Drywall's employees, in violation of their Section 7 rights, would be governed by the terms of a collective bargaining agreement signed by a Painters Local Union with another employer in Omaha, Nebraska even though the majority of the employees' votes were not cast for the union.

The second proviso in 29 U. S. C. § 158(f) states:

*Provided further*, That any agreement which would be invalid, but for clause (1) of this

11

subsection, shall not be a bar to a petition filed pursuant to section 9(c) or 9(e).

In establishing an overall framework for the interpretation and application of Section 8(f), the NLRB

in *John Deklewa & Sons*, *supra*, stated:

> . . . When parties enter into an 8(f) agreement, they will be required, by virtue of Section 8(a)(5) and Section 8(b)(3), to comply with that agreement unless the employees vote, in a Board-conducted election, to reject (decertify) or change their bargaining representative. Neither employers nor unions who are party to 8(f) agreements will be free unilaterally to repudiate such agreements. During its term, an 8(f) contract will not act as a bar to petitions pursuant to Section 9(c) or (e). . . .
>
> In the event of an election, a vote in favor of the signatory union, or a rival union, will result in that union's certification and the full panoply of Section 9 rights and obligations. A vote to reject the signatory union will void the 8(f) agreement and will terminate the 8(f) relationship. In that event, the Board will prohibit the parties from reestablishing the 8(f) relationship covering unit employees for a 1-year period. The purpose of this general prohibition is to preclude an employer and a union both from ignoring the electorally expressed preference of a majority of unit employees and from maintaining an 8(f) relationship during a period when the Act precludes holding another election, the availability of which is the *sine qua non* safeguard to permitting and enforcing an 8(f) contract. Failure to terminate the 8(f) relationship or its premature reestablishment after an election will subject the parties to 8(a) (2) and 8(b)(1)(A) liability.
> . . .
> Employee free choice will be enhanced most directly by the resuscitation of 8(f)'s second proviso. By giving full force and effect to the second proviso and, at the same time, precluding the contract parties from acting solely in their own interest to force continued compliance with or abandonment of the agreement, the principles will operate to assure that employees will not be deprived of their collectively bargained rights (via unilateral contract repudiation) or be forced to continue working under the regimen of a union that they would prefer to reject or change.

> 282 NLRB at 1385 to 1386. (footnotes omitted).

In footnote 47, the NLRB further stated:

> By giving full force and effect to the second proviso, our rules should reduce the dangers of "top down" organizing warned against in *Higdon*, 434 U.S. at 346-347. . . .

In violation of the NLRB and the LMRA, the Pension Fund's claim would do away with statutory

collective bargaining relationships and statutory protected employees' rights.

      d.     In 1984, Midwest Drywall, pursuant to 29 U.S.C. § 158(f), established a collective

bargaining relationship and entered into a collective bargaining agreement with Painters Local Union

76 with successor negotiated agreements. After the expiration of a collective bargaining agreement

established through an 8(f) relationship, Painters Local Union 76 petitioned the NLRB to conduct a secret ballot election. The NLRB conducted a secret ballot election and a majority of the employees' votes cast were in favor of representation by Painters Local Union 76. Since May 19, 2003, Midwest Drywall, pursuant to 29 U.S.C. § 159(a), has established a collective bargaining relationship and entered into collective bargaining agreements with Painters Local Union 76. (Midwest Drywall's SOMF ¶ 4). In violation of the NLRB and the LMRA, the Pension Fund's claim would do away with this statutory collective bargaining relationship and the statutory protected employees' rights, because the Pension Fund claims that Midwest Drywall and its employees would, by fiat, be bound to a Painters Local Union agreement with another employer. If that were the case, there would be no mechanism for Midwest Drywall employees employed in foreign jurisdictions to exercise their Section 7 right of free choice. Such a result would illegally void one of the major tenets of the NLRA.

   e. Further, under the Pension Fund's claimed application of the 50-50 Clause, if Midwest Drywall had timely provided notice in 2003 to terminate its 8(f) collective bargaining agreement with Painters Local 76, lawfully repudiated that 8(f) relationship in accord with *John Deklewa & Sons, supra*, and no one petitioned the NLRB for a representation election, Midwest Drywall and its employees would nevertheless be bound to a Painters Local Union 76 agreement with another employer. This interpretation is contrary to the principles of an 8(f) relationship and the employee right protections described by the NLRB in *John Deklewa & Sons, supra*. (See, *Rock Technologies Inc.,* 179 LRRM 1192 (N.L.R.B. 2006), holding that when a relationship is entered into pursuant to Section 8(f), the union is the "limited 9(a) representative of the unit employees for the period covered by the contract."). In *M & M Backhoe Service Inc. v. NLRB*, 469 F.3d 1047 (D.C. Cir. 2006), in discussing 8(f) relationships, the Circuit Court recognized that in an 8(f) relationship:

> " . . . either party may repudiate the terms of a pre-hire agreement when it expires. The employer then has no obligation to bargain with the union, 'because the union enjoys no presumption that it ever had majority support.' " 469 F.3d at 1048.(Citations omitted).

Although United States Magistrate Judge Kay in *Flynn v. Dick Corporation*, 384 F. Supp. 2d 189 ( D.D.C. 2005) (*rev'd and remanded on other grounds*, 481 F.3d 824 (D.C. Cir. 2007)), did not articulate these principles in the context of the NLRA, Magistrate Judge Kay in footnote 7 stated:

> This interpretation obviates the need for local unions to negotiate with employer signatories to a foreign jurisdiction CBA containing a traveling contractor's clause because the employer is, by fiat, already bound. Stated slightly differently, there would be little or no utility in an employer entering into a CBA in any jurisdiction after it has signed a CBA in another jurisdiction, which contained the traveling contractor's clause (assuming the *Beeler* construction), because regardless of whether it signed the CBA, it would nevertheless be bound by the operation of the terms of the traveling contractor's clause in every other geographic location where the BAC had an extant CBA.

384 F. Supp. 2d at 199 n.7).

Separate from the opinion expressed in footnote 7, Magistrate Judge Kay initially found that Sections 302(c)(5)(A) and (B) of the LMRA, 29 U.S.C. §§ 186(c)(5)(A) and (B), precluded the contributions sought by the Trustees because the agreement submitted by the Trustees failed to provide the "detailed basis" required for lawful contributions from an employer to a trust fund under Section 302(c)(5)(B), and the contributions sought were not for the "sole and exclusive benefit" of Dick Corporation's employees because the at issue work was entirely performed by employees of subcontractors. The Trustees moved for reconsideration, and Magistrate Judge Kay agreed that union affidavits had been misconstrued, found that a "detailed basis" had in fact been established, and vacated the grant of summary judgment to the extent it was based on the absence of a detailed basis for benefit contributions under the LMRA, but granted summary judgment to Dick Corporation because the requested contributions were not for the "sole and exclusive benefit" of Dick Corporation's employees. The Trustees appealed the decision. The Circuit Court reversed and remanded that decision. *Flynn v. Dick Corporation*, 481 F.3d 824 (D.C. Cir. 2007).

The Pension Fund at page 15 in the Memorandum in Support of the Pension Fund's

Motion argues that "Dick applies squarely to the present case and renders the out-of-area clause valid and enforceable." To the contrary, the Circuit Court's decision in *Flynn v. Dick Corporation*, *supra,* is not controlling in the present case. The Circuit Court's decision in *Flynn v. Dick Corporation*, *supra,* is not legal precedent that contract language such as the 50-50 Clause is automatically deemed to be lawful. In its decision, the Circuit Court did not address the issues of law raised by Midwest Drywall in the present case that Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA prohibit enforcing on employees the terms and conditions of a labor agreement without the existence of a collective bargaining relationship between an employer and the collective bargaining representative of the employer's employees with protection of the employee's Section 7 rights. Instead, the Circuit Court first found that the outside jurisdiction clause was ambiguous allowing the Circuit Court to consider evidence as to the intent of the parties to interpret the meaning of the contract; second the Circuit Court found that based on an affidavit submitted by a union representative, not controverted by Dick Corporation, the clause at issue bound Dick Corporation to a collective bargaining agreement in force at a foreign jurisdiction even if not signed; and third the Circuit Court found that Section 302(c)(2) of the LMRA, 29 U.S.C. § 186(c)(2), is applicable where the Trustees alleged and Dick Corporation conceded that it breached the foreign collective bargaining by hiring nonunion subcontractors, that the subcontractor clause was a valid contractual provision, and the Trustees were entitled to damages resulting from that breach in the form of benefit contributions. 481 F.3d at 828 to 832. It is clear that the issues of law and undisputed material facts raised in the present case have not been considered by the Circuit Court.

The Pension Fund in footnote 4 at page 12 in the Memorandum in Support of the Pension Fund's Motion cites the Court to an NLRB decision, to an Eighth Circuit Court of Appeals decision, and to a Ninth Circuit Court of Appeals decision and at page 14 of the Memorandum in Support of

the Pension Fund's Motion cites an unpublished District Court for the Eastern District of California

opinion in *Harris & Ruth Painting Contracting, Inc. v. Painters & Tapers Local Union 487*.  These

decisions are not legal precedent that contract language such as the 50-50 Clause is automatically

deemed to be lawful.  These decisions did not address the issues of law raised by Midwest Drywall in

the present case that Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA prohibit enforcing on

employees the terms and conditions of a labor agreement without the existence of a collective

bargaining relationship between an employer and the collective bargaining representative of the

employer's employees with protection of the employee's Section 7 rights.

> **2.     Binding Midwest Drywall To Foreign CBAs Through the 50-50 Clause
> Would Undercut Collective Bargaining In Foreign Jurisdictions In
> Violation of the NLRA.**

One of the expressed purposes of federal labor law is "encouraging the practice and

procedure of collective bargaining" between unions and employers. *H. K. Porter*, 397 U.S. 99, 103

(1970); 29 U.S.C. § 151. For purposes of the conduct of employers and unions under the NLRA and

LMRA, Congress provided in 29 U.S.C. § 158(d) (Section 8(d)) in part that:

> . . . **to bargain collectively is the performance of the mutual obligation of the
> employer and the representative of the employees to meet at reasonable times
> and confer in good faith with respect to wages, hours, and other terms and
> conditions of employment, or the negotiation of an agreement, or any question
> arising thereunder, and the execution of a written contract incorporating any
> agreement reached if requested by either party,** but such obligation does not
> compel either party to agree to a proposal or require the making of a concession .   .   .
> (Emphasis added.)

Binding Midwest Drywall and a foreign local union to an agreement that was not established by them

through a mutual collective bargaining relationship violates the federal labor law. As noted by the

District Court in *Dick Corp.*, *supra*, at 198, n.7, if the Pension Fund's claim is adopted, once an

employer signs a 50-50 Clause there is no incentive for the employer or for any foreign local union

(or both) to bargain about the terms governing the local relationship. Under the Pension Fund's

claim, regardless of what an employer or foreign local union may wish to do, an employer will be bound by the terms of other local agreements with other employers in foreign jurisdictions.

Unions have attempted to use these abusive tactics in the past, as discussed in *Trustees of the National Automatic Sprinkler Industry Pension Fund v. Fairfield County Sprinkler Co. Inc.*, 243 F.3d 112 (2d Cir. 2001). In that case, the employer was party to two local union agreements. When one agreement expired, the employer sought to re-negotiate or cancel its relationship with that local as permitted in Section 8(f). Negotiations between the employer and that local failed to produce a new agreement. Rather than the dispute being resolved at the bargaining table or through a representation petition as the NLRA contemplates, the Trustees of the multiemployer pension fund tried to block post-expiration or cancellation of obligations under the expired collective bargaining agreement by citation to the travelers clause (an outside jurisdiction clause similar to the 50-50 Clause in the present case) found in an agreement with a different local. The Circuit Court expressed "considerable doubt" regarding this approach and ultimately found, for other reasons, that it violated the LMRA.

Expressing similar concerns, the District Court in *Flynn v. Dick Corporation*, *supra*, in footnote 7, as noted above, recognized that such an interpretation urged by trustees "obviates the need for local unions to negotiate with employer signatories to a foreign jurisdiction CBA containing a traveling contractor's clause because the employer is, by fiat, already bound." 384 F. Supp. 2d at 199, n.7.) The enforcement of a contract with that result violates federal labor law.

### 3.     The Interpretation Advanced By the Pension Fund Violates Statutory Employee Rights To Determine Whether They Wish To Be Represented and By Whom.

Painters Local 159's Bylaws and Working Rules in Article 3 require that to become a member of Painters Local 159, the individual must pass the exam given by an examination board governed by Painters Local 159. (Midwest Drywall's Exhibit 5, p. 7.) Also, the Bylaws and Working Rules in Article 6 require that the member must fully comply with the hiring hall and dispatching

provisions of Painters Local 159 (to work in the Painters Local 159's jurisdiction and to work on a job for a signatory employer). (Midwest Drywall's Exhibit 5, p. 12.) Also, the Bylaws and Working Rules in Article 21 provide that only members of Painters Local 159 have the right to vote on a working agreement negotiated by Painters Local 159. (Midwest Drywall's Exhibit 5, p. 39.) Further, the Bylaws and Working Rules in Article 7 provide that membership in Painters Local 159 is equated to authorization of Painters Local 159 to be the exclusive bargaining representative for the individual. (Midwest Drywall's Exhibit 5, p. 17.) Therefore, Painters Local 159, by its Bylaws and Working Rules, expressly limits the right to join Local 159 and to participate in its affairs to employees who work in Painters Local 159's jurisdiction.

The Pension Fund argues that the terms and conditions of employment for Midwest Drywall's employees who do not work in Painters Local 159's jurisdiction are governed by the No.159 CBA's Article IV, 50-50 Clause. However, the No. 159 CBA does not provide any mechanism for those employees to know about and enforce their rights under a foreign collective bargaining agreement.

The NLRA expressly provides that its purpose of "encouraging the practice and procedure of collective bargaining" is in conjunction with "protecting the exercise by workers of full freedom of association, self organization, and designation of representative of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C. § 151. The Act's purpose is codified in the rights of employees expressed in Section 7, in the protections provided in Sections 8(a)(1) and 8(b)(1)(A) and in the provisos in Sections 8(d) and (f), and in the selection of representative procedure in Section 9. The Pension Fund's claim, contrary to the full rights of employees under the NLRA, would assume that the foreign jurisdiction employees want to be members of and pay dues to a union, or want to join the foreign painters local union as opposed to the carpenters union or any another labor organization that seeks to represent them.

The Court of Appeals for the Sixth Circuit noted similar concerns in refusing to adopt a broad

construction of an outside jurisdiction clause in *The Trustees of the B.A.C. Local 32 Insurance Fund v. Ohio Ceiling and Partition Co., Inc.*, 48 Fed. Appx. 188 (6th Cir. 2002) (unpublished, copy of the decision is attached as Midwest Drywall's Exhibit 40). The Circuit Court found that the Bricklayers Trustees in that case were attempting to use an outside jurisdiction clause to "press a jurisdictional dispute" with the United Brotherhood of Carpenters, which asserted jurisdiction over the work in the foreign jurisdiction. The Circuit Court rejected a broad construction based in part on these concerns. (48 Fed. Appx. at 196-198.)

A similar attempt is made in the present case, as exemplified by Omaha Painters Local 109's attempt to impose a foreign agreement, not negotiated with or entered into by Midwest Drywall, on employees who later expressed a desire to be represented by an Omaha Carpenters Local Union as to terms and conditions of their employment with Midwest Drywall, and to be governed by a collective bargaining agreement entered into and signed by Midwest Drywall. Midwest Drywall employees in Omaha, Nebraska later further exercised their Section 7 rights to vote not to be represented by the Carpenters Local Union. This specific exercise of employees' Section 7 rights would be barred to Midwest Drywall's employees if the Pension Fund's claim is enforced.  It is further exemplified in the present case by the Pension Fund's claim to impose the terms and conditions of employment in unspecified foreign Painters District Councils and foreign Painters Local Unions agreements with other employers on Midwest Drywall's employees where those terms and conditions of employment are governed by collective bargaining agreements entered into between Midwest Drywall and the United Brotherhood of Carpenters and Joiners of America. (Midwest Drywall's Exhibits 16, 18, 22, and 28 and S. Nienke's Dec. ¶¶ 23, 25, 30, and 31).

The Pension Fund's claim that the terms and conditions of Midwest Drywall's employees working in foreign jurisdictions are automatically governed by unspecified collective bargaining agreements between a foreign local union and other employers so long as Midwest Drywall is signatory to the No. 159 CBA, despite the expiration dates of foreign collective bargaining

agreements, further violates the NLRA. The NLRB in *John Deklewa & Sons, supra*, in finding that in the construction industry a collective bargaining relationship is presumed to be governed by Section 8(f) of the NLRA, recognized that a Congressional objective in enacting Section 8(f) was to "lend stability to the construction industry while fully protecting employee free choice principles." *Id*. at 1388. The Pension Fund's claim in effect bars to Midwest Drywall's employees the right to exercise their Section 7 right to seek an election under the NLRA and/or to seek representation by another labor organization either during the term or upon the expiration of a foreign collective bargaining agreement. See, *John Deklewa & Sons, supra*, and *Stockton Roofing Co*., 304 NLRB No. 88 (1991).

Further, the United States Supreme Court has held that as an incident to a union's representative status the law imposes "on the bargaining representative of a craft or class of employees the duty to exercise fairly the powers conferred upon it on behalf of those for whom it acts." *Steele v. Louisville & Nashville Railroad*, 323 U.S. 192, 202-203 (1944). The United States Supreme Court has repeatedly held that "the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca v. Sipes*, 386 U.S. 171, 182 (1967). The NLRB has extended these same obligations to unions in the construction industry that gain bargaining rights under Section 8(f). *John Deklewa & Sons, supra*, at 1388. The duty of fair representation, the authority to represent employees, and membership in the bargaining unit are inherently linked and cannot be untangled. *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 88 (1989). ("Together with this authority [to negotiate the collective bargaining agreement] comes the responsibility to exercise it in a nonarbitrary, nondiscriminatory fashion, because the members of the bargaining unit have entrusted the union with the task of representing them.")

The Bylaws and Working Rules for Painters Local 159 designate its area jurisdiction as including "Clark, Lincoln, Nye and Esmeralda Counties, State of Nevada, La Paz and Mohave Counties, State of Arizona, floorcovering to include the preceding and also to include the State of

Utah . . ."  (Midwest Drywall's Exhibit 5, p. i) and prescribe that persons seeking membership into Painters Local 159 must make written application and sign out-of-work lists maintained at the headquarters of the Painters Local 159 (Midwest Drywall's Exhibit 5, pp. 8-10) and that by virtue of membership in Painters Local 159 authorize Painters Local 159 to act as the employee's exclusive bargaining representative (Midwest Drywall's Exhibit 5, p. 11). Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the collective bargaining agent for Midwest Drywall's foreign jurisdiction employees. (Midwest Drywall's SOMF ¶ 10). Permitting Painters Local 159 to bargain without being the bargaining representative for Midwest Drywall's foreign jurisdiction employees would produce the unconstitutional result that it owes no duty of fair representation to Midwest Drywall's employees working outside the jurisdiction of Painters Local 159.

The No. 159 CBA 50-50 Clause is not a naked promise to simply pay monies to the Pension Fund. The Pension Fund asserts that the 50-50 Clause imposes an obligation to pay monies to the Pension Fund if a collective bargaining agreement in effect in an outside jurisdiction, executed by employers in the industry and the foreign local union, includes within its provisions the payment of contributions to the Pension Fund. To require Midwest Drywall to make contributions to the Pension Fund based on the No. 159 CBA 50-50 Clause would command conduct that renders the promise an illegal undertaking under the NLRA. Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA prohibit enforcing on employees the terms and conditions of a labor agreement without the existence of a collective bargaining relationship between an employer and the collective bargaining representative of the employer's employees with protection of the employee's Section 7 rights. Enforcement of the Pension Fund claims based on hours worked by employees outside the jurisdiction of Painters Local 159, violates the NLRA because such enforcement voids the Section 7 rights of employees.

To avoid unlawful application of the No. 159 CBA 50-50 Clause, it should be construed to apply to foreign collective bargaining agreements entered into through collective bargaining relations

between Midwest Drywall and a foreign Painters District Council or a foreign Painters Local Union. The No. 159's CBA 50-50 Clause cannot lawfully be interpreted to apply to all of Midwest Drywall's employees working outside the jurisdiction of Painters Local 159 and to local unions with whom Midwest Drywall does not have a statutory 8(f) or 9(a) collective bargaining relationship as required under the NLRA. The construction claimed by the Pension Fund would require the Court to adopt a construction that violates the NLRA and LMRA. Therefore, the Pension Fund's interpretation of the 50-50 Clause violates the law and cannot be enforced. [See, *Kaiser Steel Corporation v. Mullins, supra* (holding that a court may not enforce a contract, including contributions to a multiemployer pension fund, that violates the NLRA).]

The Pension Fund at page 16 of the Pension Fund's Memorandum in Support of the Pension Fund's Motion, states:

> When an employer fails to submit contributions for the work performed by its employees, the result is a significant drain on the resources of the Pension Fund. The Ancillary Funds experience similar adverse affects in relation to their operations when an employer fails to make contributions.

In response, it is relevant to recognize that the Supreme Court in *Kaiser Steel Corporation v. Mullins, supra*, at 88, stated:

> We are unpersuaded the Congress intended to give pension fund trustees the benefit of illegal bargains that were not, and should not have been, relied upon in ensure the solvency of the trust funds.

(455 U.S. 72, 88.)

Midwest Drywall has complied with the lawful provisions in the successive collective bargaining agreements entered into through collective bargaining relations between Midwest Drywall and Painters Local 159, including compliance with the specified detailed basis in which lawful contributions to the Pension Fund and other benefit funds are to be made. The collective bargaining agreement entered into by Midwest Drywall and Painters Local 159 contains detailed basis, as to each employee engaged in work in the area jurisdiction covered by said agreement, on which

contributions are to be made to the Pension Fund. (Midwest Drywall's Exhibit 3, document Bates numbered MWD0005 to MWD0044.) Midwest Drywall has complied with said provisions. In the collective bargaining agreement entered into by Midwest Drywall and Painters Local 159, Midwest Drywall also agreed to make contributions for employees covered by said agreement to the LMCF, to honor authorizations for check-off of political contributions from employees who are union members to the Political Action Together – Political Committee (PAT-PC). Midwest Drywall has complied with said provisions. In reference to the employees represented by Painters Local 159 and employed by Midwest Drywall within the geographical jurisdiction of Painters Local 159, during the time period of the Pension Fund's claims none of these employees were brought by Midwest Drywall to work in an outside jurisdiction. (S. Nienke's Dec. ¶¶ 5 and 6 and Midwest Drywall's Exhibit 4, S. Regier's Dec. and Report by Steven D. Regier (Certified Public Accountant), document Bates numbered MWD9367 and MWD9380.)

C.   **Painters Local 159 Cannot Bind Foreign Local Unions To a Collective Bargaining Agreement With Midwest Drywall Without the Foreign Local Union's Express Authority or Consent.**

Courts have long recognized that a union and an employer can be bound by a collective bargaining agreement only by their "mutual agreement". *H. K. Porter Co. supra.* Without that mutual consent, neither party can be compelled to accept a collective bargaining agreement's terms. *Id.* at 108. Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the authorized agent for foreign Painters District Councils and/or Painters Local Unions. (Midwest Drywall's SOMF ¶ 11.) Painters District Council 3, Painters District Council 80, and Painters Local Union 76 have not represented to Midwest Drywall that Painters Local 159 was or is the collective bargaining agent for Midwest Drywall's employees working in their jurisdictional areas or was or is their authorized agent for collective bargaining. (Midwest Drywall's SOMF ¶ 12.) Even if Midwest Drywall could be said to have consented to being bound to a foreign collective bargaining agreement by entering into the collective bargaining agreement with Painters Local 159,

there is no agreement by any other foreign Painters District Council and/or foreign Painters Local Union to be bound to a foreign collective bargaining agreement with Midwest Drywall.

Because the No. 159 CBA 50-50 Clause is not a naked promise to pay monies to the Pension Fund, the Pension Fund's interpretation of No. 159 CBA's 50-50 Clause would require Midwest Drywall to enforce as to its employees all terms and conditions of employment in foreign collective bargaining agreements. Such foreign collective bargaining agreements would almost certainly contain terms and conditions of employment that would impose obligations that Midwest Drywall could not implement on its own and would require the consent and cooperation of the foreign local union. Using terms and conditions found in the No. 159 CBA as the type of terms that could be found in a foreign collective bargaining agreement requiring the consent and cooperation of a foreign local union, such terms could include the foreign local union being the exclusive source of referrals of applicants for employment (Midwest Drywall's Exhibit 3, Article V, Section 1); the foreign local union controlling the work time of employees (Midwest Drywall's Exhibit 3, Article VI, Sections 7 and 11); and the foreign local union notifying the signatory employer of the amount of administrative dues to be paid per employee (Midwest Drywall's Exhibit 3, Article XII, Section 1), requiring the signatory employer to provide a surety bond and monthly remittance reports to the local union (Midwest Drywall's Exhibit 3, Article XVI, Sections 1 and 2), restricting subcontracting (Midwest Drywall's Exhibit 3, Article XVI, Sections 3, 4, and 5), issuing work and safety cards to employees before employees can work (Midwest Drywall's Exhibit 3, Article XVIII), appointing job stewards (Midwest Drywall's Exhibit 3, Article XXI, Section 1), and adjusting all disputes through a Joint Committee (Midwest Drywall's Exhibit 3, Article XXV, Section 6).

Midwest Drywall could not unilaterally enforce the terms and conditions of a foreign collective bargaining agreement that requires the active participation of a foreign local union without the foreign local union's active participation and consent. In the absence of a local union's active participation and consent, there is no collective bargaining relationship.

24

The Second Circuit Court of Appeals in *Fairfield, supra*, expressed "considerable doubts as to the merits of the trustees' novel theory" that the trustees should even be permitted to sue under ERISA's § 515 by virtue of an outside jurisdiction clause, since the employer "was not a party to the [foreign collective bargaining agreement]." *Id.* at 116. It ultimately did not reach that issue, since it found an outside jurisdiction clause illegal as applied to contributions in a jurisdiction in which the employer had not signed a collective bargaining agreement. The Circuit Court cited *Moglia v. Geoghegan*, 403 F.2d 110, 117 (2d Cir. 1968), which stated that, to satisfy the requirements for the LMRA, an agreement must be "signed" by an employer, not merely by a written agreement which the employer arguably has agreed to be "bound." In the present case, it is undisputed that Midwest Drywall during the time period at issue has not entered into a collective bargaining agreement with any foreign Painters Local Union or foreign Painters District Council other than Painters Local Union 76 and foreign Painters District Council 3 as admitted by Midwest Drywall in its Answer and under which Midwest Drywall has made all contributions as specified in a detailed basis in each of the signed collective bargaining agreements. (Midwest Drywall's SOMF ¶¶ 3 and 4.)

To avoid unlawful application of the No. 159 CBA, the 50-50 Clause should be construed to apply to foreign collective bargaining agreements entered into through collective bargaining relations between Midwest Drywall and a foreign Painters District Council or a foreign Painters Local Union. The Pension Fund in response to Midwest Drywall's Request for Production of Documents has not produced and no document exists for production to show that any foreign Painters District Council and/or foreign Painters Local Union, other than Painters District Councils 3 and 80 and Painters Local 76 as admitted by Midwest Drywall, agreed to the terms of a collective bargaining agreement with Midwest Drywall, much less signed one. In the absence of that showing, there can be no other foreign collective bargaining agreements to enforce pursuant to the respective terms of those agreements through the No. 159 CBA 50-50 Clause.

**D.    The No. 159 CBA 50-50 Clause Is Susceptible To More Than One Reasonable Interpretation and Is Therefore Ambiguous.**

A contract is ambiguous if it is "reasonably susceptible of different constructions or interpretations", *Consolidated Gas Transmission Corp. v. F.E.R.C.*, 771 F.2d 1536, 1544 (D.C. Cir. 1985); and *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46 (D.D.C. 2006). The language in the No. 159 CBA entered into by and between Midwest Drywall and Painters Local 159 contains ambiguities in Article IV, Section 1(b) in relationship to language in other provisions in the No. 159 CBA.

What "work" is covered by Article IV, Section 1(b)? The opening paragraph of the Article limits Article IV to "painting work." Article II, Section 1(a) describes "painting work", which is separate from taping or drywall finishing work. Further, the work described in Article II may not be the same as the work covered by an agreement between a foreign local union and another employer. Also, what if the work performed by Midwest Drywall's employees in a foreign jurisdiction, such a drywall finishing and taping, is covered by a collective bargaining agreement between Midwest Drywall and another craft union, such as a Carpenter Local Union? What if Midwest Drywall's employees performing the "work" in a foreign jurisdiction have voted in an NLRB conducted election not to be represented by a union?

What is meant in Article IV, Section 1(b) by "lawful clauses of the collective bargaining agreement"? That phrase by use of the words "lawful clauses" incorporates, among other issues of law, the NLRA requirement that there be a mutual collective bargaining relationship between Midwest Drywall and a foreign local union sufficient to establish an 8(f) agreement enforceable as to employees who performed the "work." Also, those words are relevant to potential contractual restrictions on subcontracting. The No. 159 CBA contains restrictions on subcontracting (Midwest Drywall's Exhibit 3, Article XVI and Article XIX, Section 3). Similar restrictions may be a part of a foreign jurisdiction agreement with another employer. To impose a lawful restriction on

subcontracting by Midwest Drywall, pursuant to the NLRA, a foreign union must have a collective bargaining relationship with Midwest Drywall. *Connell Construction Company Inc. v. Plumbers and Steamfitters Local Union No. 100, supra,* at 633.

Requiring Midwest Drywall to abide by all collective bargaining agreements in effect in any foreign jurisdiction and executed by the employers of the industry and local unions in that foreign jurisdiction also creates ambiguity as to what foreign agreement would bind Midwest Drywall. In many if not most geographic jurisdictions, a local union will have collective bargaining relationships with more than one employer. Although the No. 159 CBA 50-50 Clause provides in part "all of the lawful clauses of the collective bargaining agreement in effect in said other geographical jurisdiction and executed by the employers in the industry and the local unions in that jurisdiction", some employers may be parties to the same collective bargaining agreement, others may not. If that language were to bind Midwest Drywall to "the collective bargaining agreement" that a foreign local union has signed with any employer in its jurisdiction where a foreign local union has signed multiple agreements, which agreement applies? The Pension Fund's claim creates that ambiguity but provides no way to resolve it.

 As the Court of Appeals for the Sixth Circuit noted in construing an outside jurisdiction clause, "the first sentence of the BAC Traveling Contractor clause is susceptible to more than one interpretation" because the "phrase 'within the area covered by an agreement with another affiliate of the [BAC]' could refer to an agreement between [the employer] and the BAC affiliate, or it could refer to an agreement between any employer and the BAC affiliate." *The Trustees of the B.A.C. Local 32 Insurance Fund v. Ohio Ceiling and Partition Co., supra.*

Given these ambiguities, the court may consider the intent of the parties to interpret the meaning of the No. 159 CBA 50-50 Clause. *Flynn v. Dick Corporation*, 481 F.3d. 824, 839 (D.C. Cir. 2007).  See, e.g., *United States v. Insurance Company of North America.*, 131 F.3d 1037, 1042 (D.C. Cir. 1997).

1.    **The Intent of Painters Local 159 Is That No Contributions Are Due From Midwest Drywall in the Absence of a Signed Foreign Jurisdiction CBA.**

Representations by Painters Local 159 to Midwest Drywall provide facts that resolve the above ambiguities. Said facts establish that before a foreign agreement is enforceable as to Midwest Drywall and its employees, Midwest Drywall and the foreign local union must first establish a mutual collective bargaining relationship and then enter into a collective bargaining agreement.

In a letter dated November 3, 1999, to Midwest Drywall, Painters Local 159's representative, Leonard Wittman, stated:

> Local 159 is in contact with Mr. Pat Stoysich of Local 109 in Omaha Nebraska who states he has spoken to your company about becoming signatory to his Local. As you can see our Article IV, clearly states that your company agrees to abide by the Agreement in place, in the "outside the geographical area."
>
> **Please understand it is not the position of Local 159 or that of Local 109 to "hammer" a contractor into becoming signatory. I am confident that if you or your representative would meet with Mr. Stoysich both sides would come to an agreement.**

(Midwest Drywall's SOMF ¶ 18.) (Emphasis added.)

When Midwest Drywall thereafter failed to enter into a collective bargaining agreement with the foreign jurisdiction union, Painters Local 159 filed a grievance and proceeded to a hearing on April 10, 2000, before the Joint Committee. Midwest Drywall through Steven Nienke provided facts at the hearing as to its negotiations in 1999 with Painters Local 109, that it had not reached an agreement, and that Midwest Drywall had not signed an agreement with Painters Local 109. The Joint Committee stated at the close of the hearing that it determined that Midwest Drywall had violated the 50-50 Clause because it had not signed an agreement in Omaha with Painters Local 109, it wanted Midwest Drywall to work with Painters Local 109 to sign a collective bargaining agreement, and directed Painters Local 159 to work with Painters Local 109 and the International Brotherhood of Painters & Allied Trades to resolve the continuing violation. After the Hearing,

Leonard Wittman said to Steven Nienke that the Union was "not going to enforce the finding." (Midwest Drywall's SOMF ¶ 21.)

Since April, 2000, the Joint Committee has on numerous occasions stated in written communication to Midwest Drywall that Midwest Drywall is current in its payment of fringe benefits. (Midwest Drywall's SOMF ¶ 23.) Further, on April 16, 2004, Painters Local 159 in an email to Gary Meyers, the Pension Fund's Administrator, stated that Midwest Drywall is "living up to the terms and conditions (including wage and benefit increases) of the new agreement". (Midwest Drywall's SOMF ¶ 24.) Midwest Drywall has relied on these representations concerning the application of Article IV in the No. 159 CBA as it has subsequently established collective bargaining relationships with other local unions outside the jurisdiction of Painters Local 159 and has entered into collective bargaining agreements with Painters Local 76 and with the UBCJA and its affiliated local unions covering taper and drywall finishing work. (Midwest Drywall's SOMF ¶¶ 25, 26, 27, 28, 29, 30, 31, 32, 34, 35 and 36.)

> **2.      The No. 159 CBA 50-50 Clause As Interpreted By the Painters and Decorators Joint Committee, Inc. Requires Midwest Drywall and Foreign Local Unions To Establish a Collective Bargaining Relationship and To Enter Into a Collective Bargaining Agreement Before Determination of Lost Wages and Benefits.**

The Pension Fund's claim that Article IV, Section 1(b) requires Midwest Drywall to comply with a collective bargaining agreement executed by the employers of the industry and a foreign local union, even though Midwest Drywall does not have a collective bargaining relationship with that foreign local union and has not entered into a collective bargaining agreement with that foreign local union is also contrary to the Joint Committee's interpretation of the No. 159 CBA 50-50 Clause.

In March, 2000, Midwest Drywall was notified that charges had been brought against it by Painters Local 159 for violation of the No. 159 CBA, Article IV -50-50 Clause, Section 1 and that a hearing would be held by the Joint Committee. The No. 159 CBA in Article XXV, Section 6 vests in the Joint Committee the power to adjust all disputes and grievances that may arise out of the

application or interpretation of the collective bargaining agreement and that the decision of the Joint

Committee is final and binding on both parties to the agreement. (Midwest Drywall's SOMF ¶ 20.)

On April 10, 2000, a hearing was held before the Joint Committee and Midwest Drywall was

informed that Painters Local 159 asserted a violation of the No.159 CBA, Article IV, Section 1(b) by

Midwest Drywall's continuing failure to enter into collective bargaining agreement with Painters

Local 109 in Omaha, Nebraska. (Midwest Drywall's SOMF ¶ 21.)

On April 10, 2000, the Joint Committee stated at the close of the hearing that it determined

that Midwest Drywall had violated the 50-50 Clause because it had not signed an agreement in

Omaha with Painters Local 109, it wanted Midwest Drywall to work with Painters Local 109 to sign

a collective bargaining agreement, and directed Painters Local 159 to work with Painters Local 109

and the International Brotherhood of Painters & Allied Trades to resolve the continuing violation.

(Midwest Drywall's SOMF ¶ 21.)

On April 14, 2000, the Joint Committee issued its Decision and Order. (Midwest Drywall's

Exhibit 13.) The April 14, 2000, Joint Committee Decision and Order is evidence that Painters Local

159 was not found to be the collective bargaining representative for Midwest Drywall's foreign

jurisdiction employees and/or a bargaining agent for a foreign local union. As described in the first

paragraph of the Decision, Painters Local 159 asserted as a violation of the No. 159 CBA Article IV,

Section 1(b), (50-50 Clause) Midwest Drywall's "continuing failure to enter into a collective

bargaining agreement and comply with its lawful clauses for painting and taping work performed by

Midwest Drywall on projects located in or near Omaha Nebraska …" (Midwest Drywall's Exhibit 13,

p. 1.) If Painters Local 159 had viewed itself or was considered by the Joint Committee as the

collective bargaining representative for Midwest Drywall employees in Omaha and/or the bargaining

agent for the Omaha local union, Painters Local 159 would have asserted that Midwest Drywall had

already entered into a foreign collective bargaining agreement by its agreement with Painters Local

159 and the Joint Committee would have so found. But that was not what Painters Local 159 asserted and that is not what the Joint Committee found.

In its April 14, 2000, Decision and Order, the Joint Committee in its finding concluded that Midwest Drywall "had not entered into nor become bound by the Other Jurisdiction Agreement of IBPAT Local Union No. 109" (Midwest Drywall's Exhibit 13, p. 2) and ordered Midwest Drywall and the Union to "forthwith initiate good faith discussion and efforts" with Painters Local 109 "to resolve Midwest's continuing violation of the Master Agreement". (Midwest Drywall's Exhibit 13, p. 3.) In the Pension Fund's Memorandum in Support of the Pension Fund's Motion at page 14, the Pension does not acknowledge this finding and order of the Joint Committee. Without Midwest Drywall establishing a collective bargaining relationship and entering into and becoming bound to the outside jurisdiction agreement, the Joint Committee did not impose the cost of foreign wages and benefits on Midwest Drywall. Such an interpretation of the No. 159 CBA 50-50 Clause is consistent with the requirements for a lawful collective bargaining agreement under the NLRA.

The Constitution of the International Union of Painters and Allied Trades in Section 236(a) provides that a Painters District Council or Painters Local Union "shall enter into Collective Bargaining Agreements only with contractors or employers, whose principal place of business is located within the geographical jurisdiction of such District Council or Local Union" and may enter into agreements with an out-of-jurisdiction employer only under prescribed conditions including sending "to the District Council or Local Union in whose jurisdiction the employer's principal place of business is located notification that the agreement has been signed and a complete, signed copy of that agreement." (Midwest Drywall's Exhibit 7, p. 150.)

The No. 159 CBA in Article IV, Section 1, provides in part:

It being understood that the principle place of business and the employment of the
employer is in the area jurisdiction as stated, . . .

The area jurisdiction as stated in the No. 159 CBA in Article III, Section 1, includes "Clark County, Lincoln County, Nye County, Esmeralda County, in the State of Nevada and any other area jurisdiction awarded to Painters Local Union #159, by the International Brotherhood of Painters and Allied Trades." (Midwest Drywall's Exhibit 3, pp. 4-5.)  Thus, pursuant to the Constitution of the International Union of Painters and Allied Trades, Midwest Drywall was an out-of-jurisdiction employer to any Painters District Council or Painters Local Union other than Painters Local 159. Any foreign Painters District Council or Painters Local Union could not have an agreement with Midwest Drywall unless it had a signed agreement with Midwest Drywall and sent a completed and signed copy of the agreement to Painters Local 159. Therefore, the Constitution of the International Union of Painters and Allied Trades recognizes the necessity of establishing a collective bargaining relationship and entering into an agreement before an employer becomes bound to an outside jurisdiction agreement. Thus, the Decision and Order of the Joint Committee is consistent with the International Union's Constitution.

### 3.    The Pension Fund's Claim Conflicts With Other Provisions of the No. 159 CBA.

When the No. 159 CBA is read as a whole, it is apparent that the 50-50 Clause is intended to cover when Midwest Drywall has signed a collective bargaining agreement with a foreign local union or when Painters Local 159's members travel and work as employees of Midwest Drywall outside Painters Local 159's jurisdiction.

In interpreting contracts generally and collective bargaining agreements specifically, "sections or portions cannot be isolated from the rest of the agreement and given construction independently of the purpose and agreement of the parties as evidenced by the entire document. … The meaning of each paragraph and each sentence must be determined in relation to the contract as a whole." *Service Employees International Union, Local 722 v. Washington Hospital Center*, 1983 WL 2085 (D.D.C. 1983).

This does not mean that every provision of a collective bargaining agreement will always be given as broad as possible interpretation or have independent "legal consequences". Restatement (Second) of Contracts § 203(a), comment b. "Even agreements tailored to particular transactions sometimes include overlapping or redundant or meaningless terms."  *Id*.

The Pension Fund's claim would bring the No. 159 CBA 50-50 Clause into direct conflict with other provisions of the No. 159 CBA that limit the representation of Painters Local 159 to employees working in its specified geographic area and work jurisdiction. More specifically, the No. 159 CBA 50-50 Clause must be read in conjunction with Article I, Article II, and Article III. This language when read together establishes that Painters Local 159 is the duly authorized representative of employees of the employer performing work in the jurisdiction specified in Article II and within the geographical area described in Article III. Further, the No. 159 CBA is made by the Painters Local 159 specifically "for and on behalf of its present and future signatory members" (Article I, Section 1), with Painters Local 159 being recognized within the meaning of Section 9(a) of the NLRA, as the "exclusive representative for the purpose of collective bargaining of all the Employer's employees" employed "in all of the wage classifications and/or the work jurisdiction described" in the agreement (Article I, Section 3, pp. 2-3), and "the employer recognizes the Union as the sole collective bargaining agency between itself and the employees covered under the scope of the Agreement." (Article III, Section 2(a).) (Midwest Drywall's Exhibit 3, p. 4.)

The No. 159 CBA also distinguishes between "each employer signatory to this Agreement" and "non-signatory employers." Signatory employers are bound by the provisions of the No. 159 CBA and non-signatory employers are not subject to the No. 159 CBA. (Midwest Drywall's Exhibit 3, the Preamble; Article I, Section 4; Article X, Section 1; Article XII, Sections 1 and 2; Article XIII, Section 1; Article XV, Section 4; Article XVI, Sections 1 and 6; Article XIX, Sections 2 and 5; Article XXIII, Section 1(b); and Article XXVI, Section 2.)

Therefore, when the No. 159 CBA is read as a whole agreement, it is clear that Painters Local 159 is not the bargaining representative for Midwest Drywall's employees who are nonmembers of Painters Local 159 and who work outside the jurisdiction of Painters Local 159. Also, Painters Local 159 is not authorized or empowered to negotiate agreements for foreign Painters District Councils and Painters Local Unions as an International Agreement or otherwise. The Pension Fund's claim conflicts with the language of the No. 159 CBA. The Pension Fund's claim would be an assertion that Painters Local 159 was bargaining terms and conditions of employment for foreign employees whom it does not represent. The only way to construe the No. 159 CBA 50-50 Clause to cover all of Midwest Drywall's employees working in locations outside the jurisdiction of Painters Local 159 is to ignore the language in the No. 159 CBA and to ignore the language in the Bylaws and Working Rules limiting Painters Local 159's authority.

###### E.    The Pension Fund's Claim That Midwest Drywall Is Liable for Contributions for Employees of Subcontractors Who Perform Work Outside the Jurisdiction of Painters Local 159 Is Inconsistent with the Law.

The Pension Fund's claim that Midwest Drywall is liable for contributions for employees of subcontractors who perform work outside the jurisdiction of Painters Local 159 is contrary to 29 U.S.C. § 186 (which in relevant part provides that it is unlawful for an employer to pay moneys to funds, including to the Pension Fund, when, among other requirements, the payments are not for the sole and exclusive benefit of the employees of such employer) and is illegal in the absence of a mutual collective bargaining relationship between Midwest Drywall and a foreign local union.

The United States Supreme Court in *Connell Construction Company Inc. v. Plumbers and Steamfitters Local Union No. 100, supra,* considered the legality of a subcontractor clause under the construction industry proviso of 29 U.S.C. § 158(e) (Section 8(e) of the LMRA). It was clear to the Court that one of the major aims of the 1959 amendments to the NLRA, including Section 8(e) was to limit "top down" organizing campaigns; this major aim would be seriously undermined if the proviso to Section 8(e) was construed to allow unions to seek subcontracting agreements from

contractors with which it had no collective bargaining relationship. *Id*. at 633. During the time at issue, Midwest Drywall did not have a collective bargaining relationship with Painters Local Unions and/or Painters District Councils other than the one Painters District Council and the two Painters Local Unions identified in Midwest Drywall's Answer. (Midwest Drywall's SOMF ¶¶ 3, 4, 5, 8, 13 and 14.) The Pension Fund's claims are illegal under the NLRA and the LMRA.

> **F.    The Memorandum of Understanding between Painters District Council 15 and Midwest Drywall Waivers Article 4 (IV) in the No. 159 CBA between Midwest Drywall and Painters Local 159.**

In January and February, 2007, Thomas G. Pfundstein [Senior Executive Director of the Southern Nevada Chapter of the Painting and Decorating Contractors of America (PDCA)] represented Midwest Drywall in collective bargaining negotiations with Painters District Local 15 concerning a Memorandum of Understanding. On January 30, 2007, Painters District Council proposed language to Thomas Pfundstein for a Memorandum of Understanding between Painters District Council 15 (which includes Painters Local 159) and Midwest Drywall. On January 30, 2007, Thomas Pfundstein sent a fax to Steven Nienke of Midwest Drywall with a copy of Painters District Council 15's proposed language for a Memorandum and informed Steven Nienke that the Memorandum of Understanding would be re-established with the new July 1, 2007, Master Agreement. (S. Nienke's Dec. ¶ 26 and Midwest Drywall's Exhibit 23, document Bates numbered MWD1200 to MWD1201.) The Memorandum of Understanding entered into by Painters District Council 15 and Midwest Drywall on February 8, 2007, provides:

> "This Memorandum of Understanding between International Union of Painters and Allied Trades, District Council 15 (the Union) and Midwest Drywall (the Employer) constitutes a waiver of Article 4 of the current Painters and Decorators Master Agreement, to which the Employer is signatory. The parties agree that this Memorandum shall be in effect for the current Agreement, for the duration of the Agreement."

(S. Nienke's Dec. ¶ 27 and Midwest Drywall's 24 document Bates numbered MWD0377.)

In reliance upon the representations made by Painters District Council 15 to Midwest Drywall's collective bargaining representative, Midwest Drywall agreed to and signed an Assignment of Bargaining Rights authorizing the Negotiating Committee of the PDCA to represent it in negotiations for a new Master Agreement in 2007 with Painters District Council 15 (Painters Local 159). (S. Nienke's Dec. ¶ 28 and Midwest Drywall's Exhibit 25 document Bates numbered MWD1202 to MWD1203.)

In July, 2007, after negotiations for the new Master Agreement with Painters District Council 15 had been completed, Steven Nienke sent Thomas Pfundstein an email on July 11, 2007, and asked if he had a new Memorandum of Understanding from the Painters for Midwest Drywall Co., Inc. The next day, July 12, 2007, Thomas Pfundstein talked with John Smirk (Painters District Council 15 Business Manager/Secretary-Treasurer) who said that he would re-issue a new letter for the new agreement. Thomas Pfundstein sent an email to Steven Nienke on July 12, 2007, informing Steven Nienke what John Smirk said. (Midwest Drywall's SOMF ¶ 34, S. Nienke's Dec. ¶ 29, and Midwest Drywall's Exhibit 23 document Bates numbered MWD1200 to MWD1201, and Midwest Drywall's Exhibit 26 document Bates numbered MWD 1200 and 1204.)

Pursuant to 29 U.S.C. § 158(d), Midwest Drywall, by letter dated September 25, 2007, requested Painters District Council 15 to execute a written agreement incorporating the agreement reached as to the Memorandum of Understanding. (Additional Midwest Drywall Exhibit 33 attached hereto, document Bates numbered MWD1205 to 1208.)

The prior and the renewed Memorandum of Understanding provide:

> "This Memorandum of Understanding between International Union of Painters and Allied Trades, District Council 15 (the Union) and Midwest Drywall (the Employer) constitutes a waiver of Article 4 of the current Painters and Decorators Master Agreement, to which the Employer is signatory. The parties agree that this Memorandum shall be in effect for the current Agreement, for the duration of the Agreement."

(Midwest Drywall's Exhibit 24 document Bates numbered MWD0377 and Additional Midwest

Drywall Exhibit 33 attached hereto document Bates numbered MWD1205 to 1208.)

The Pension Fund does not claim that Midwest Drywall failed to pay monies to funds as

specified in collective bargaining agreements Midwest Drywall has entered through mutual collective

bargaining relationships with Painters District Councils and Painters Local Unions. Instead, the

Pension Fund asserts its claim through the 50-50 Clause in Article IV in the No. 159 CBA between

Midwest Drywall and Painters Local 159.  The Memorandum of Understanding waives in the

entirety all language of Article 4 (IV) in the collective bargaining agreement between Painters Local

159 and Midwest Drywall. Thus, not only would the construction of the 50-50 Clause alleged by the

Pension Fund require the Court to ignore the full language of the No. 159 CBA and would force the

Court to adopt a construction that violates the NLRA and the LMRA and would be contrary to the

Joint Trade Board of the Painters and Decorators Joint Committee, Inc.'s interpretation of the No.

159 CBA, there is no basis under the collective bargaining agreement between Midwest Drywall and

Painters Local 159 for the Pension Fund's claim.

> **G.    The Pension Fund Lacks Standing To Bring Suit In Its Own Name When the Alleged Injury Was to Other Funds.**

The above legal arguments are equally applicable to the claims made by the Pension Fund for

Ancillary Funds. In addition, Pension Fund lacks standing to bring suit in its own name where the

alleged injury was claimed to be to each of the Ancillary Funds. In response to Midwest Drywall's

Request for Production of Documents, Request No. 2, the Pension Fund provided no document that

established it as the authorized collection agent for any one of the Ancillary Funds named in the

Complaint and provided no document evidencing that the Pension Fund owned any Ancillary Fund's

cause of action against Midwest Drywall.

As recognized by the Court of Appeals for the Second Circuit in *Flynn v. Anthony Mion &*

*Sons, Inc.*, 112 Fed. Appx. 101, 102 (2004), citing *Advanced Magnetics, Inc. v. Bayfront Partners,*

*Inc.*, 106 F.3d 11,17-18 (2d Cir. 1997):

> A provision by which one person grants another the power to sue on and collect on a claim confers on the grantee a power of attorney with respect to that claim. The grant of power of attorney, however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name. (Citation omitted).

In the present case, the Pension Fund does not "own" the Ancillary Funds' causes of actions under 29

U.S.C. §§ 185 and 1145 and it may not, therefore, bring those claims in its own name. On this

additional basis, said claims asserted by the Pension Fund should be also be dismissed.

## III.    CONCLUSION

The Pension Fund does not claim that Midwest Drywall failed to pay monies specified in a

detailed basis in the collective bargaining agreements Midwest Drywall has entered through mutual

collective bargaining relationships with Painters District Councils and Painters Local Unions. The

Pension Fund instead asserts its claim solely through the 50-50 Clause in the collective bargaining

agreement between Midwest Drywall and Painters Local 159.

The construction of the 50-50 Clause alleged by the Pension Fund not only would require the

Court to ignore the full language of the No. 159 CBA and the Memorandum of Understanding

between Midwest Drywall and Painters District Council 15, but would force the Court to adopt a

construction that violates the NLRA and the LMRA and would be contrary to the Joint Trade Board

of the Painters and Decorators Joint Committee, Inc.'s interpretation of the No. 159 CBA.

To require Midwest Drywall to make contributions to the Pension Fund based solely on the

No. 159 CBA 50-50 Clause would command conduct that renders the promise an illegal undertaking

under the NLRA. Sections 8(a)(1) and (2) and 8(b)(1)(A) of the NLRA prohibit enforcing on

employees the terms and conditions of a labor agreement without the existence of a mutual collective

bargaining relationship between an employer and the collective bargaining representative of the

employer's employees with protection of the employee's Section 7 rights. Enforcement of the Pension Fund's claims based on hours worked by employees outside the jurisdiction of Painters Local 159 violates the NLRA because such enforcement voids the Section 7 rights of employees.

To avoid unlawful enforcement of the No. 159 CBA 50-50 Clause, it should be construed to apply to foreign collective bargaining agreements entered into through collective bargaining relations between Midwest Drywall and a foreign Painters District Council or a foreign Painters Local Union. Midwest Drywall has identified the collective bargaining agreements it has entered with foreign Painters District Councils or foreign Painters Local Unions through collective bargaining relationships and it is undisputed that Midwest Drywall has made all contributions as specified in a detailed basis in said collective bargaining agreements during the period of time of the Pension Fund's claim. For Midwest Drywall to make any other payments would be illegal.

WHEREFORE, Midwest Drywall respectively requests that the Court deny Plaintiff's Motion for Summary Judgment, grant Midwest Drywall's Motion for Summary Judgment, and dismiss Plaintiff's Complaint in its entirety and with prejudice.

<div style="margin-left: 40%;">

Respectively submitted,
By___s/Robert D. Overman_____
Robert D. Overman, KS Bar No. 08155
MORRIS, LAING, EVANS, BROCK &
KENNEDY, CHTD.
300 N. Mead, Suite 200
Wichita, Kansas  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226
E-mail:  roverman@morrislaing.com

Charles F. Walters, D.C. Bar No. 444529
SEYFARTH SHAW, LLP
815 Connecticut Avenue, N.W., Suite 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 828-5393
E-mail:  cwalters@seyfarth.com

</div>

February 6, 2008                              *Attorneys for Defendant Midwest Drywall Co., Inc.*