EXHIBIT 34

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED          )
TRADES INDUSTRY PENSION FUND               )
                                           )
            Plaintiff                      )    Civil Action No. 06-131 (GK)
                                           )    Next-Scheduled Court Deadline
      v.                                   )    Status Conference: November 15,
                                           )    2007
MIDWEST DRYWALL CO., INC.                  )
                                           )
            Defendant.                     )
_____    )

### MIDWEST DRYWALL CO. , INC. RESPONSES AND OBJECTIONS TO THE INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND'S INTERROGATORIES TO MIDWEST DRYWALL CO., INC. (FIRST SET)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Midwest Drywall Co., Inc. responds to Plaintiff International Painters and Allied Trades Industry Pension Fund's Interrogatories to Midwest Drywall Co., Inc. (First Set) as follows:

### GENERAL OBJECTIONS AND DEFINITIONS

**No Waiver.**  To the extent that Midwest Drywall Co., Inc. (Midwest Drywall) objects to a particular Interrogatory on the basis of specific objections, Midwest Drywall hereby states that it does not thereby waive its general objections to all of the Interrogatories.  To the extent that Midwest Drywall objects herein to a particular Interrogatory, or proceeds to answer the Interrogatory in whole or in part, Midwest Drywall hereby states that it does not thereby waive any objection to the Interrogatory in question.  To the extent that any information is inadvertently provided, which information is properly the subject of the attorney/client privilege or work

product doctrine or any other privilege or immunity, such disclosure is not to be construed as a waiver of the applicable privilege, doctrine or immunity.

**Procedure.** Midwest Drywall objects to any claim that Interrogatories are continuing or require supplementation by information secured subsequent to the filing of its responses except as required by the Federal Rules of Civil Procedure. Midwest Drywall's responses to these Interrogatories are based on information known by it at this time, and such responses are set forth without prejudice to Midwest Drywall's right to assert additional objections or supplementary responses should it discover additional information or grounds for objection. Midwest Drywall reserves the right to supplement or amend these responses at any time prior to trial of this action. Midwest Drywall further objects to any instructions and/or definitions to the extent that they seek to impose on Midwest Drywall obligations that are not found in the applicable Federal Rules of Civil Procedure, applicable Local Rules, and any Orders that have been entered in this action. Finally, the word usage and sentence structure is that of the attorney and does not purport to be the exact language of the executing party.

**Cross-References.** The following terms are used to delineate objections throughout this Response.

    (a)    "Attorney/client privilege" means that the discovery sought relates to confidential communications between counsel and client, their representatives or other parties similarly situated in a matter of common interest.

    (b)    "Burdensome" means that the discovery sought is unreasonably cumulative or duplicative or is unreasonable as to time frame or is obtainable from some other source that is more convenient, less burdensome, or less expensive; or the party

seeking discovery has had ample opportunity by discovery in the action to obtain the information sought.

(c)    "Not Relevant" means that the discovery sought is not relevant to the subject matter involved in the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

(d)    "Attorney work product privilege" means that discovery of documents and things otherwise discoverable prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) is sought without a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means or that the discovery seeks disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

3

## INTERROGATORIES

**INTERROGATORY NO. 3.01:**    Identify all natural Persons likely to have

discoverable information that You may use to support Your defenses to the Pension Fund's claim

that You owe contributions pursuant to Article IV, Section 1(b) of the Master Agreement on

covered work performed in geographic jurisdictions outside that of Painters Local 159 where

there is a Painter's collective bargaining agreement in effect that requires contributions to the

Pension Fund and identify the subjects of the information.

**ANSWER:**

1.      Patrick J. Stoysich
        Business Manager
        Brotherhood of Painters and Allied Trades Local No. 109
        402-556-9373
        4523 Military Avenue
        Omaha, Nebraska  68104

        Mr. Stoysich was Painters Local 109's Business Manager who represented

        individuals engaged in some types of construction work in the Omaha, Nebraska

        area and has information and knowledge concerning his conversations with

        representatives of Midwest Drywall about Midwest Drywall becoming signatory

        to a Local Agreement and his communications with Local 159 about his

        conversations with Midwest Drywall in 1999.

2.      Leonard Wittman
        Painters and Allied Trades
        Local Union No. 159
        702-452-2140
        1701 Whitney Mesa #10
        Henderson, Nevada  89014

4

Mr. Wittman was Painters Local 159's representative and has information and

knowledge concerning his communications with Painters Local 109's Business

Manager Stoysich as to his speaking to Midwest Drywall about becoming

signatory to a Local 109 Agreement and his subsequent communications with

Midwest Drywall that it was not the position of Painters Local 159 or that of

Painters Local 109 to "hammer" a contractor into becoming signatory, but was

confident that if representatives would meet, both sides would come to an

agreement; and about Painters Local 159 proceeding to arbitration before the Joint

Trade Board of the Painters and Decorators Joint Committee, Inc. asserting a

violation of the Master Agreement through continuing failure to enter into a

collective bargaining agreement, his representations to Midwest Drywall and the

Joint Committee's findings and Decision and Order issued in April, 2000.


3.   Steven A. Nienke
     President
     Midwest Drywall Co., Inc.
     316-722-9559
     1351 S. Reca Court
     Wichita, Kansas  67277-1170
     1374 N. Ridge RD
     Peck, Kansas 67120
     316-524-1404
     steve.nienke@mwdw.com


Mr. Nienke has information and knowledge concerning the nature of work

performed by Midwest Drywall's employees, Midwest Drywall's

communications with Painters Local 109 Business Manager Stoysich and

Midwest Drywall's offer to sign a collective bargaining agreement with Painters
Local 109 covering certain types of work in the Omaha, Nebraska area and
Midwest Drywall's offer not accepted by Local 109; Midwest Drywall's
communications with Painters District Council 80 and negotiations that lead to
Midwest Drywall entering into a Memorandum of Understanding and Area
Contract with Painters District Council 80 effective from July 13, 1999, until the
substantial completion of Midwest Drywall's work on the FDA Jefferson
Laboratories, Jefferson, Arkansas job; Painters Local 159's representatives'
representations to Midwest Drywall including that it was not the position of
Painters Local 159 or that of Painters Local 109 to "hammer" a contractor into
becoming signatory to a Local Agreement and other representations made to
Midwest Drywall since 1998 concerning Article 4 in the Master Agreement;
about Painters Local 159 proceeding to arbitration before the Joint Trade Board of
the Painters and Decorators Joint Committee, Inc. asserting a violation of the
Master Agreement through continuing failure to enter into a collective bargaining
agreement, the representations made to Midwest Drywall during and after the
arbitration hearing and Midwest Drywall's actions in reliance upon Painters Local
159's representations and the Joint Committee's findings and Decision and Order
issued in April, 2000; Midwest Drywall's communications with Painters Local
159 and negotiations that lead to entering into Memoranda of Understanding in
2007, communications with Carpenters Local Union No. 444 about its
representation of a majority of persons employed by Midwest Drywall Co., Inc. as
tapers, subsequent negotiations with Carpenters Local Union No. 444 resulting in

6

Midwest Drywall entering into a collective bargaining agreement covering certain types of work, including work of tapers, with Carpenters Local Union No. 444 and Local Union No.1055; Midwest Drywall negotiating and entering into a collective bargaining agreement with Kaw Valley and Vicinity District Council of Carpenters and Local 918 in 2002, including the work of drywall finishers and tapers; Midwest Drywall's negotiations with the United Brotherhood of Carpenters and Joiners of America and entering into a No. 1 International Agreement, Memorandum of Understanding, and a Drywall Addendum; Midwest Drywall as party to National Labor Relations Board representation proceedings including Carpenters Local Union No. 444 and Local Union No. 1055; Midwest Drywall as party to National Labor Relations Board representation proceedings including Kaw Valley & Vicinity District Council of the United Brotherhood of Carpenters and Joiners of America, United Brotherhood of Carpenters and Joiners of America District Council of Kansas City & Vicinity and Local 918,  Painters District Council 3, International Brotherhood of Painters & Allied Trades, AFL-CIO, and International Union of Painters and Allied Trades, AFL-CIO District Council 3, Local Union 76 and subsequent negotiations with these Local Unions and entering into collective bargaining agreements covering the work of drywall finishers and tapers.

4.      Denis H. Dieker
        Treasurer
        Midwest Drywall Co., Inc.
        316-722-9559
        1351 S. Reca Court
        Wichita, Kansas  67277-1170
        12211 W. Texas St.
        Wichita, Kansas 67235
        316-773-2940
        denis.dieker@amsict.com

Mr. Dieker has information and knowledge concerning Midwest Drywall pursuant

to 29 U.S.C. §159(a) entering into a collective bargaining agreement with Painters

District Council No. 3; for a period of time prior to May 19, 2003, Midwest

Drywall pursuant to 29 U.S.C. §158(f) entering into a Memorandum of

Understanding and Area Contract with Painters District Council 80 effective from

July 13, 1999, until the substantial completion of Midwest Drywall's work on the

FDA Jefferson Laboratories, Jefferson, Arkansas job and entering into a collective

bargaining agreement with Painters District Council 3, Local Union 76; after May

19, 2003, Midwest Drywall pursuant to 29 U.S.C. §159(a), entering into

collective bargaining agreements with Painters Local 76; Midwest Drywall

pursuant to 29 U.S.C. §158(f) entering into collective bargaining agreements with

the Painters Local 159; that Midwest Drywall has paid all contributions to funds

as specified in the collective bargaining agreements and Memoranda of

Understanding it has entered into with Painter District Councils and/or Local

Unions and pursuant to the parties' course of dealing and the interpretations of the

collective bargaining agreements; that the written collective bargaining

agreements entered into between Painters District Council 3 and Midwest Drywall

8

and between Painters Local 76 and Midwest Drywall do not contain any basis upon which payments are to be made to the Pension Fund; that in a prior written collective bargaining agreement entered into between Painters Local 76 and Midwest Drywall, Midwest Drywall agreed to make, as specified in said collective bargaining agreement for employees covered by said collective bargaining agreement, contributions to the International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund (IUPAT-JATF) and to the International Union of Painters and Allied Trades Labor Management Cooperative Fund (LMCF) and Midwest Drywall has made contributions as specified in said collective bargaining agreement; that in the current written collective bargaining agreement entered into between Painters Local 76 and Midwest Drywall, Midwest Drywall agreed to make contributions as specified in said collective bargaining agreement to the IUPAT-JATF and has made contributions as specified in said collective bargaining agreement; and that in the written collective bargaining agreement entered into between Painters District Council 3 and  Midwest Drywall,  Midwest Drywall agreed to make contributions for employees covered by said agreement to the Labor Management Cooperative Fund and has made contributions as specified in said collective bargaining agreement.

5.    Megan D. Tolle
      Human Resources Manager
      Midwest Drywall Co., Inc.
      316-722-9559
      1351 S. Reca Court
      Wichita, Kansas  67277-1170
      1450 E. 117th Ct. N.
      Sedgwick, Kansas 67135
      316-772-0260
      megan.tolle@amsict.com

Ms. Tolle has information and knowledge concerning Midwest Drywall's

monthly remittance reports to Painters Local 159 including copies of checks

issued for payment to the respective funds identified in the monthly remittance

reports, Painters Local 159 remittance advice, accounts payable vendor history

related to the monthly remittance reports, monthly COINS reports per employee

including hours worked per week relating to the monthly remittance reports,

EXCEL reports related to the monthly remittance reports, monthly remittance

reports to Painters Local 76 including copies of checks issued for payment to the

respective funds identified in the monthly remittance reports, Painters Local 76

remittance advice, accounts payable vendor history related to the monthly

remittance reports, monthly COINS reports per employee including hours worked

per week relating to the monthly remittance reports, EXCEL reports related to the

monthly remittance reports; accounts payable vendor history related to the

monthly remittance reports submitted to Painters District Council 3; COINS

payroll module union calculation listing and accounts payable vendor history

related to the monthly remittance reports submitted to Painters District Council

80; and EXCEL audit reports.

10

6.      Thomas Pfundstein
        Senior Executive Director
        Southern Nevada PDCA
        1701 Whitney Mesa Drive #104
        Henderson, Nevada 89014
        702-650-5705

Thomas Pfundstein has information and knowledge concerning 2001 and 2004

negotiations on behalf of Midwest Drywall with Painters Local 159 as to Master

Agreement and 2007 negotiations on behalf of Midwest Drywall with Painters

Local 159 as to Master Agreement and Memoranda of Understanding.

Midwest Drywall also identifies Gary Poore and Steven Regier, Certified Pubic

Accountants with CBIZ Accounting, Tax and Advisory Services, as its expert

witnesses.

**INTERROGATORY NO. 3.02:**    Identify all collective bargaining agreements

between Midwest Drywall and any District Council and/or Local Union affiliated with the

International Union of Painters and Allied Trades, AFL-CIO in effect at anytime between April

15, 1998 and the present.

**ANSWER:**  Midwest Drywall objects to the scope of this Interrogatory as being overly

broad, covering period of time beyond June 30, 2004, as to which Midwest Drywall and Painters

Local 159 entered into Memorandum of Understanding waiving Article 4 of the Painters and

Decorators Master Agreement in effect for the duration of the Agreement. Without waiving its

objection, Midwest Drywall states as its answer that it provides documents Bates numbered

MWD005 to MWD0044, MWD0196 to MWD0212, MWD0213 to MWD0237, MWD0239 to

MWD0264, MWD0265 to MWD0290, MWD0291 to MWD0327, MWD0328 to MWD0376, and MWD0377 provided to the Pension Fund in Midwest Drywall's Initial Disclosure of Documents and further provides documents Bates numbered MWD0877 to MWD0922 and MWD1205 to MWD1208.

**INTERROGATORY NO. 3.03:**    Identify all collective bargaining agreements between Midwest Drywall and the United Brotherhood of Carpenters and Joiners of America or any of its affiliated District/Regional Councils or Local Unions.

**ANSWER:**    Midwest Drywall objects to the scope of this Interrogatory as being overly broad, covering period of time beyond June 30, 2004, as to which Midwest Drywall and Painters Local 159 entered into Memorandum of Understanding waiving Article 4 of the Painters and Decorators Master Agreement in effect for the duration of the Agreement and is overly broad in nature of time frame as Midwest Drywall has had collective bargaining relationships with affiliated District/Regional Councils/or Local Unions of the United Brotherhood of Carpenters and Joiners of America dating back to 1973. Without waiving its objection, Midwest Drywall states as part of its answer that it provides documents Bates numbered MWD0122 to MWD0141, MWD0149 to MWD0150, MWD0152 to MWD0169, MWD0171 to MWD0193, and MWD0817 to MWD0823 provided to the Pension Fund in Midwest Drywall's Initial Disclosure of Documents. Midwest Drywall further states as its answer that it provides documents Bates numbered MWD0923 to MWD1181 and documents produced by Midwest Drywall in response to the Pension Fund's Request for Production of Documents, Request No. 3.02.

**INTERROGATORY NO. 3.04:**    Identify all Communications between Patrick J. Stoysich and representatives of Midwest Drywall about Midwest Drywall becoming signatory to a collective bargaining agreement with either Painters Local 109 or Local 159.

**ANSWER:** In the summer 1999, at Midwest Drywall offices, 2229 S. 28th, Omaha, Nebraska, Steven Nienke and Chris Hill for Midwest Drywall met with Painters Local 109 representative, Pat Stoysich, and his boss for about an hour. They talked about a proposed Painters Local 109 collective bargaining agreement, jurisdiction; what it would cover and what it would require. Painters Local 109 gave Steven Nienke a copy of a proposed Agreement (Midwest Drywall produces copy of the proposed Agreement as document Bates numbered MWD1182 to MWD1199). Steven Nienke told Painters Local 109 that he didn't have a problem with the painting work part of the proposed Agreement, but he did have a problem with the EIFS-exterior insulating finish system; where Midwest Drywall did EIFS work, that work was under the jurisdiction of plasters; it was not painters' work; and to have EIFS work added to painting work in an Agreement with the Painters would cause problems for Midwest Drywall. Pat Stoysich said EIFS work was the way the Agreement was written and he would not negotiate it out. Steven Nienke told Painters Local 109 that he was there to negotiate an Agreement as to painting work; he had no problem signing an Agreement that day only as to painting work. Pat Stoysich said he would check with Painters Local 109's attorney and telephone Steven Nienke later that day. Later, Pat Stoysich telephoned Steven Nienke and said that there was no way Painters Local 109 would change its proposed Agreement, it had to cover EIFS work too. No Agreement was agreed to between Midwest Drywall and Painters Local 109.

No communication occurred between Patrick J. Stoysich and representatives of Midwest Drywall about Midwest Drywall becoming signatory to a collective bargaining agreement with Painters Local 159.

**INTERROGATORY NO. 3.05:**    Identify all Communications between representatives of Midwest Drywall and Leonard Wittman.

**ANSWER:** Midwest Drywall objects to this Interrogatory as being overly broad, unreasonable, and burdensome by its indefinite time frame. Without waiving its objection, Midwest Drywall states as part of its answer that it provides documents Bates numbered MWD0001 to MWD0002, MWD0003, MWD0004, MWD0045, MWD0116 to MWD0117 provided to the Pension Fund in Midwest Drywall's Initial Disclosure of Documents. Midwest Drywall further states that by letter dated September 28, 1999, Leonard Wittman, representative of Painters Local 159, stated to Midwest Drywall that the company was engaged in contracting work covered by the collective bargaining agreement between Midwest Drywall and Painters Local 159, "that Midwest Drywall Co., Inc. appears to be in violation of that agreement to witt: Article IV 50/50 Clause, Section 1 (b)", and requested Midwest Drywall to "notify this office that this oversight has been rectified by close of business October 8, 1999 to avoid further action by Local 159." By letter dated October 4, 1999, to Leonard Wittman, Steven Nienke, President of Midwest Drywall, asked Painters Local 159 what it claimed Midwest Drywall had done that was a violation of that agreement and when it claimed the violation had occurred and requested a prompt response. By letter dated November 3, 1999, Leonard Wittman, representative of Painters Local 159, stated to Midwest Drywall that "Local 159 is in contact with Mr. Pat Stoysich of Local 109 in Omaha Nebraska who states he has spoken to your company about becoming signatory to his Local. As you can see our Article IV, clearly states that your company agrees to abide by the Agreement in place, in the 'outside the geographical area.' Please understand it is not the position of Local 159 or that of Local 109 to 'hammer' a contractor into becoming signatory. I am confident that if you or your representative would meet with Mr. Stoysich both sides would come to an agreement." By letter dated November 8, 1999, to Leonard Wittman, Midwest Drywall's President, Steven Nienke, stated to Painters Local 159, "For your

14

information purpose, prior to your recent correspondence, Midwest Drywall met with Local 109

representatives in Omaha, Nebraska for collective bargaining. Midwest Drywall offered to sign a

collective bargaining agreement with Local 109 including lawful clauses of an Agreement. Its

offer is still there for Local 109 to accept." Midwest Drywall also states that communications

between representatives of Midwest Drywall and Leonard Wittman occurred on April 10, 2000,

during Hearing before the Joint Board of the Painters and Decorators Joint Committee, Inc.,

when Midwest Drywall provided the facts as stated above in response to Interrogatory No. 3.04

that Midwest Drywall's negotiations in the summer of 1999 with Painters Local 109 had not

reached a negotiated agreement and that Midwest Drywall had not signed an agreement with

Painters Local 109. The Board stated at the close of the hearing that it determined that Midwest

Drywall had violated the 50/50 clause because it had not signed an agreement in Omaha, it

wanted Midwest Drywall to work with Painters Local 109 to sign a collective bargaining

agreement and Painters Local 159 would work with Painters Local 109 and International Painters

as to a contract. After the Hearing, Leonard Wittman said to Steven Nienke that the Union was

"not going to enforce the finding."

**INTERROGATORY NO. 3.06:**    Identify all Communications between Steven A.

Nienke and representatives of Painters Local 109 relating to Midwest Drywall signing a

collective bargaining agreement or any other form of agreement with Painters Local 109.

**ANSWER:** Midwest Drywall answers with its answer to Interrogatory No. 3.04, above.

**INTERROGATORY NO. 3.07:**    Identify and describe in detail all representations

made to Steven A. Nienke or any other representative of Midwest Drywall by representatives of

Painters Local 159 concerning Article 4 of the Master Agreement.

**ANSWER:** Midwest Drywall states as part of its answer that it provides documents Bates numbered MWD0001 to MWD0002, MWD0003, MWD0004, MWD0045, MWD0046 to MWD0047, MWD0048, MWD0049 to MWD0051, MWD0110 to MWD0113, and MWD0377 provided to the Pension Fund in Midwest Drywall's Initial Disclosure of Documents. Midwest Drywall further states that by letter dated September 28, 1999, Leonard Wittman, representative of Painters Local 159, stated to Midwest Drywall that the company was engaged in contracting work covered by the collective bargaining agreement between Midwest Drywall and Painters Local 159, "that Midwest Drywall Co., Inc. appears to be in violation of that agreement to witt: Article IV 50/50 Clause, Section 1 (b)", and requested Midwest Drywall to "notify this office that this oversight has been rectified by close of business October 8, 1999 to avoid further action by Local 159." By letter dated October 4, 1999, to Leonard Wittman, Steven Nienke, President of Midwest Drywall, asked Painters Local 159 what it claimed Midwest Drywall had done that was a violation of that agreement and when it claimed the violation had occurred and requested a prompt response. By letter dated November 3, 1999, Leonard Wittman, representative of Painters Local 159, stated to Midwest Drywall that "Local 159 is in contact with Mr. Pat Stoysich of Local 109 in Omaha Nebraska who states he has spoken to your company about becoming signatory to his Local. As you can see our Article IV, clearly states that your company agrees to abide by the Agreement in place, in the 'outside the geographical area.' Please understand it is not the position of Local 159 or that of Local 109 to 'hammer' a contractor into becoming signatory. I am confident that if you or your representative would meet with Mr. Stoysich both sides would come to an agreement." By letter dated November 8, 1999, to Leonard Wittman, Midwest Drywall's President, Steven Nienke, stated to Painters Local 159, "For your information purpose, prior to your recent correspondence, Midwest Drywall met with Local 109

16

representatives in Omaha, Nebraska for collective bargaining. Midwest Drywall offered to sign a collective bargaining agreement with Local 109 including lawful clauses of an Agreement. Its offer is still there for Local 109 to accept." Representations were made to Midwest Drywall on April 10, 2000, during a Hearing before the Joint Board of the Painters and Decorators Joint Committee, Inc., when Midwest Drywall provided the facts as stated above in response to Interrogatory No. 3.04 that Midwest Drywall's negotiations in the summer of 1999 with Painters Local 109 had not reached a negotiated agreement and Midwest Drywall had not signed an agreement with Painters Local 109. The Board stated at the close of the hearing that it determined that Midwest Drywall had violated the 50/50 clause because it had not signed an agreement in Omaha, it wanted Midwest Drywall to work with Painters Local 109 to sign a collective bargaining agreement and Painters Local 159 would work with Painters Local 109 and International Painters as to a contract. After the Hearing, Leonard Wittman said to Steven Nienke that the Union was "not going to enforce the finding."

After receipt of the Decision and Order of the Joint Trade Board on April 14, 2000, Midwest Drywall was not contacted further by the Joint Board, by a Painters Local 159 representative, or a Painters Local 109 representative as to the finding of the Joint Board. The Joint Board retained jurisdiction of the matter for purpose of entering a final order and enforcement. No further action taken by Joint Board, by Painters Local 159, or by Painters Local 109.

On January 30, 2007, Painters District Council 15 proposed language to Midwest Drywall's representative for negotiations, Thomas G. Pfundstein (Senior Executive Director, Southern Nevada PDCA), for a Memorandum of Understanding Between Painters District Council 15 (which includes Painters Local 159) and Midwest Drywall. Painters District Council

15 represented to Mr. Pfundstein that the proposed Memorandum of Understanding would be re-establish with the new July 1, 2007 Agreement. As part of its answer, Midwest Drywall provides to the Pension Fund a copy of Painter District Council 15's proposed Memorandum of Understanding and Mr. Pfundstein's facsimile communication dated January 30, 2007, in documents Bates numbered MWD1200 to MWD1201. Painters District Council and Midwest Drywall entered into a Memorandum of Understanding that "constitutes as a waiver of Article 4 of the current Painters and Decorators Master Agreement, to which the Employer is signatory. The parties agree that this Memorandum shall be in effect for the current Agreement, for the duration of the Agreement." A copy of the Memorandum of Understanding entered into between Painters District Council 15 (which includes Painters Local 159) and Midwest Drywall Bates numbered MWD0377 was provided to the Pension Fund in Midwest Drywall's Initial Disclosure of Documents.

In reliance upon the representations made by Painters District Council 15 to Midwest Drywall's representative, Thomas Pfundstein, Midwest Drywall agreed to and signed an Assignment of Bargaining Rights authorizing the Negotiating Committee of the Southern Nevada Chapter of The Painting and Decorating Contractors of America to represent it in negotiations with Painters Local 159. As part of its answer to this Interrogatory, Midwest Drywall provides to the Pension Fund a copy of its April 17, 2007, letter to the Southern Nevada Chapter of The Painting and Decorating Contractors of America and Assignment of Bargaining Rights in documents Bates numbered MWD1201 to MWD1203. On July 12, 2007, after the new July1, 2007, Master Agreement was reached, Thomas Pfundstein informed Midwest Drywall that Painters Local 159 and Painters District Council 15's representative, John Smirk, stated that he would re-issue a new Memorandum of Understanding for the new agreement. As part of its

18

answer to this Interrogatory, Midwest Drywall provides to the Pension Fund a copy of Thomas

Pfundstein's July 12, 2007, email to Steve Nienke in document Bates numbered MWD1204. By

letter dated September 25, 2007, Midwest Drywall, in accordance with District Council 15's

agreement to enter into a Memorandum of Understanding for the current collective bargaining

agreement, sent a Memorandum to Painters District Council 15 for signature. As part of its

answer to this Interrogatory, Midwest Drywall provides to the Pension Fund a copy of its

September 25, 2007, letter and enclosures in documents Bates numbered MWD1205 to

MWD1208. By letter dated October 3, 2007, Painters District Council 15 representative stated

to Midwest Drywall that he had communicated with Thomas Pfundstein and that Painters

District Council 15 was awaiting further communication from the IUPAT General President or

Regional Vice-President before signing. As part of its answer to this Interrogatory, Midwest

Drywall provides to the Pension Fund a copy the October 3, 2007, letter in document Bates

numbered MWD1209.

**INTERROGATORY NO. 3.08:**    Identify all Communications between representatives

of Midwest Drywall and bargaining agreement with Painters Local 159 and the limitation or

waiver of any provision in any existing collective bargaining agreement between Midwest

Drywall and Painters Local 159.

**ANSWER:** Midwest Drywall objects to this Interrogatory as being unclear and

confusing as to what is requested as to "communications between representatives of Midwest

Drywall and bargaining agreements with Painters Local 159". Without waiving its objection,

Midwest Drywall answers in part with its answer above to Interrogatory No. 3.02 as directed to

Painters Local 159 and states as part of its answer that it provides documents Bates numbered

MWD0001 to MWD0002, MWD0003, MWD0004, MWD0045, MWD0046 to MWD0047,

MWD0048, MWD0049 to MWD0051, MWD0110 to MWD0113, and MWD0377 provided to the Pension Fund in Midwest Drywall's Initial Disclosure of Documents. Midwest Drywall further states that by letter dated September 28, 1999, Leonard Wittman, representative of Painters Local 159, stated to Midwest Drywall that the company was engaged in contracting work covered by the collective bargaining agreement between Midwest Drywall and Painters Local 159, "that Midwest Drywall Co., Inc. appears to be in violation of that agreement to witt: Article IV 50/50 Clause, Section 1 (b)", and requested Midwest Drywall to "notify this office that this oversight has been rectified by close of business October 8, 1999 to avoid further action by Local 159." By letter dated October 4, 1999, to Leonard Wittman, Steven Nienke, President of Midwest Drywall, asked Painters Local 159 what it claimed Midwest Drywall had done that was a violation of that agreement and when it claimed the violation had occurred and requested a prompt response. By letter dated November 3, 1999, Leonard Wittman, representative of Painters Local 159, stated to Midwest Drywall that "Local 159 is in contact with Mr. Pat Stoysich of Local 109 in Omaha Nebraska who states he has spoken to your company about becoming signatory to his Local. As you can see our Article IV, clearly states that your company agrees to abide by the Agreement in place, in the 'outside the geographical area.' Please understand it is not the position of Local 159 or that of Local 109 to 'hammer' a contractor into becoming signatory. I am confident that if you or your representative would meet with Mr. Stoysich both sides would come to an agreement." By letter dated November 8, 1999, to Leonard Wittman, Midwest Drywall's President, Steven Nienke, stated to Painters Local 159, "For your information purpose, prior to your recent correspondence, Midwest Drywall met with Local 109 representatives in Omaha, Nebraska for collective bargaining. Midwest Drywall offered to sign a collective bargaining agreement with Local 109 including lawful clauses of an Agreement. Its

20

offer is still there for Local 109 to accept." Representations were made to Midwest Drywall on April 10, 2000, during Hearing before the Joint Board of the Painters and Decorators Joint Committee, Inc., when Midwest Drywall provided the facts as stated above in response to Interrogatory No. 3.04 that Midwest Drywall's negotiations in the summer of 1999 with Painters Local 109 had not reached a negotiated agreement and Midwest Drywall had not signed an agreement with Painters Local 109. The Board stated at the close of the hearing that it determined that Midwest Drywall had violated the 50/50 clause because it had not signed an agreement in Omaha, it wanted Midwest Drywall to work with Painters Local 109 to sign a collective bargaining agreement and Painters Local 159 would work with Painters Local 109 and International Painters as to a contract. After the Hearing, Leonard Wittman said to Steven Nienke that the Union was "not going to enforce the finding."

After receipt of the Decision and Order of the Joint Trade Board on April 14, 2000, Midwest Drywall was not contacted further by the Joint Board, by a Painters Local 159 representative, or a Painters Local 109 representative as to the finding of the Joint Board. The Joint Board retained jurisdiction of the matter for purpose of entering a final order and enforcement. No further action taken by Joint Board, by Painters Local 159, or by Painters Local 109.

On January 30, 2007, Painters District Council 15 proposed language to Midwest Drywall's representative for negotiations, Thomas G. Pfundstein (Senior Executive Director, Southern Nevada PDCA), for a Memorandum of Understanding Between Painters District Council 15 (which includes Painters Local 159) and Midwest Drywall. Painters District Council 15 represented to Mr. Pfundstein that the proposed Memorandum of Understanding would be re-established with the new July 1, 2007 Agreement. As part of its answer, Midwest Drywall

provides to the Pension Fund a copy of Painter District Council 15's proposed Memorandum of

Understanding and Mr. Pfundstein's facsimile communication dated January 30, 2007, in

documents Bates numbered MWD1200 to MWD1201.  Painters District Council 15 and

Midwest Drywall entered into a Memorandum of Understanding that "constitutes as a waiver of

Article 4 of the current Painters and Decorators Master Agreement, to which the Employer is

signatory. The parties agree that this Memorandum shall be in effect for the current Agreement,

for the duration of the Agreement."  A copy of the Memorandum of Understanding entered into

between Painters District Council 15 (which includes Painters Local 159) and Midwest Drywall

Bates numbered MWD0377 was provided to the Pension Fund in Midwest Drywall's Initial

Disclosure of Documents.

     In reliance upon the representations made by Painters District Council 15 to Midwest

Drywall's representative, Thomas Pfundstein, Midwest Drywall agreed to and signed an

Assignment of Bargaining Rights authorizing the Negotiating Committee of the Southern

Nevada Chapter of The Painting and Decorating Contractors of America to represent it in

negotiations with Painters Local 159. As part of its answer to this Interrogatory, Midwest

Drywall provides to the Pension Fund a copy of its April 17, 2007, letter to the Southern Nevada

Chapter of The Painting and Decorating Contractors of America and Assignment of Bargaining

Rights in documents Bates numbered MWD1202 to MWD1203.  On July 12, 2007, after the new

July1, 2007, Master Agreement was reached, Thomas Pfundstein informed Midwest Drywall that

Painters Local 159 and Painters District Council 15's representative, John Smirk, stated that he

would re-issue a new Memorandum of Understanding for the new agreement. As part of its

answer to this Interrogatory, Midwest Drywall provides to the Pension Fund a copy of Thomas

Pfundstein's July 12, 2007, email to Steve Nienke in document Bates numbered MWD1204.  By

letter dated September 25, 2007, Midwest Drywall, in accordance with District Council 15's

agreement to enter into a Memorandum of Understanding for the current collective bargaining

agreement, sent a Memorandum to Painters District Council 15 for signature. As part of its

answer to this Interrogatory, Midwest Drywall provides to the Pension Fund a copy of its

September 25, 2007, letter and enclosures in documents Bates numbered MWD1205 to

MWD1208. By letter dated October 3, 2007, Painters District Council 15 representative stated to

Midwest Drywall that he had communicated with Thomas Pfundstein and that Painters District

Council 15 was awaiting further communication from the IUPAT General President or Regional

Vice-President before signing. As part of its answer to this Interrogatory, Midwest Drywall

provides to the Pension Fund a copy the October 3, 2007, letter in document Bates numbered

MWD1209.

**INTERROGATORY NO. 3.09:**    Identify all Communications between representatives

of Midwest Drywall and representatives of Painters Local 159 concerning Painters Local 159's

charges of contract violations by Midwest Drywall that resulted in the Joint Trade Board of the

Painters and Decorators Joint Committee Inc.'s Decision and Order issued in April 2000.

**ANSWER:**    As part of its answer Midwest Drywall provides documents Bates

numbered MWD0001 to MWD0002, MWD0003, MWD0004, MWD0045, MWD0046 to

MWD047, MWD0048, MWD0049 to MWD0051, MWD0052 to MWD0092, MWD0093 to

MWD0109, MWD0110 to MWD0113, and MWD0114 to MWD0117 provided to the Pension

Fund in Midwest Drywall's Initial Disclosure of Documents. Midwest Drywall further states that

by letter dated September 28, 1999, Leonard Wittman, representative of Painters Local 159,

stated to Midwest Drywall that the company was engaged in contracting work covered by the

collective bargaining agreement between Midwest Drywall and Painters Local 159, "that

Midwest Drywall Co., Inc. appears to be in violation of that agreement to witt: Article IV 50/50 Clause, Section 1 (b)", and requested Midwest Drywall to "notify this office that this oversight has been rectified by close of business October 8, 1999 to avoid further action by Local 159." By letter dated October 4, 1999, to Leonard Wittman, Steven Nienke, President of Midwest Drywall, asked Painters Local 159 what it claimed Midwest Drywall had done that was a violation of that agreement and when it claimed the violation had occurred and requested a prompt response. By letter dated November 3, 1999, Leonard Wittman, representative of Painters Local 159, stated to Midwest Drywall that "Local 159 is in contact with Mr. Pat Stoysich of Local 109 in Omaha Nebraska who states he has spoken to your company about becoming signatory to his Local. As you can see our Article IV, clearly states that your company agrees to abide by the Agreement in place, in the 'outside the geographical area.' Please understand it is not the position of Local 159 or that of Local 109 to 'hammer' a contractor into becoming signatory. I am confident that if you or your representative would meet with Mr. Stoysich both sides would come to an agreement." By letter dated November 8, 1999, to Leonard Wittman, Midwest Drywall's President, Steven Nienke, stated to Painters Local 159, "For your information purpose, prior to your recent correspondence, Midwest Drywall met with Local 109 representatives in Omaha, Nebraska for collective bargaining. Midwest Drywall offered to sign a collective bargaining agreement with Local 109 including lawful clauses of an Agreement. Its offer is still there for Local 109 to accept." Also as part of its answer to this Interrogatory, Midwest Drywall provides documents Bates numbered MWD1210 to MWD1220.

Further, Midwest Drywall states that communications between representatives of Midwest Drywall and Leonard Wittman occurred on April 10, 2000, during a Hearing before the Joint Board of the Painters and Decorators Joint Committee, Inc., when Midwest Drywall

provided the facts as stated above in response to Interrogatory No. 3.04 that Midwest Drywall's

negotiations in the summer of 1999 with Local Union 109 had not reached a negotiated

agreement and Midwest Drywall had not signed an agreement with Painters Local 109. The

Board stated at the close of the hearing that it determined that Midwest Drywall had violated the

50/50 clause because it had not signed an agreement in Omaha, it wanted Midwest Drywall to

work with Painters Local 109 to sign a collective bargaining agreement and Painters Local 159

would work with Painters Local 109 and International Painters as to a contract. After the

Hearing, Leonard Wittman said to Steven Nienke that the Union was "not going to enforce the

finding."

After receipt of the Decision and Order of the Joint Trade Board on April 14, 2000,

Midwest Drywall was not contacted further by the Joint Board, by a Painters Local 159

representative, or a Painters Local 109 representative as to the finding of the Joint Board. The

Joint Board retained jurisdiction of the matter for purpose of entering a final order and

enforcement. No further action taken by Joint Board, by Painters Local 159, or by Painters

Local 109.

**INTERROGATORY NO. 3.10:**    Identify all Communications between representatives

of Midwest Drywall and representatives of Carpenters Local Union Nos. 444 and 1055 which, in

the end, resulted in Midwest Drywall entering into a collective bargaining agreement with said

Local Unions.

**ANSWER:**  Midwest Drywall objects to this Interrogatory as being unduly burdensome

as to communications covering more than four years of a collective bargaining relationship and

covering many topics. Without waiving its objection, Midwest Drywall states that in 1999 it

established a collective bargaining relationship with and entered into a collective bargaining

agreement with Carpenters Local Union No. 444; in November, 2001, Carpenters Local Union No. 444 represented and submitted evidence to Midwest Drywall that it represented a majority of Midwest Drywall's tapers; and Midwest Drywall entered into a collective bargaining agreement with Carpenters Local Union Nos. 444 and 1055 covering certain work, including taper work, in a defined geographical area in Nebraska. Midwest Drywall further provides as part of its answer documents Bates numbered MWD0118 to MWD0121 and MWD0122 to MWD0141 provided to the Pension Fund in Midwest Drywall's Initial Disclosure of Documents, documents Bates numbered MWD1221 to MWD1326, and documents provided to the Pension Fund as a part of Midwest Drywall's answer to Interrogatory 3.03 above as to collective bargaining agreements entered into with Carpenters Local Union Nos. 444 and 1055.

In September 10, 2003, following an NLRB conducted secret ballot election after the termination of the collective bargaining agreement, the NLRB issued a Decision and Order that a majority of the votes were not cast for the Union.  During the duration of its collective bargaining agreements with Carpenters Local Union Nos. 444 and 1055, Midwest Drywall made contributions for employees performing work covered by the agreements including drywall finishers and tapers, to the Omaha Construction Industry Pension Fund in accord with the negotiated and signed collective bargaining agreements and after the termination of the collective bargaining agreement reached an agreement with the Pension Fund as to assessment of withdrawal liability and paid an additional $490,000.00 into said Pension Fund. Midwest Drywall further provides as part of its answer documents Bates numbered MWD0142 to MWD0143 and MWD0144 to MWD0147 provided to the Pension Fund in Midwest Drywall's Initial Disclosure of Documents.

**INTERROGATORY NO. 3.11:**    Identify all Communication between Midwest Drywall representatives and representatives of the United Brotherhood of Carpenters and Joiners of America which resulted in Midwest Drywall entering into an International Agreement, Memorandum of Understanding and Drywall Addendum with the United Brotherhood of Carpenters and Joiners of America.

**ANSWER:**  Midwest Drywall objects to the scope of this Interrogatory as being overly broad, covering period of time beyond June 30, 2004, when Midwest Drywall and Painters Local 159 entered into Memorandum of Understanding waiving Article 4 of the Painters and Decorators Master Agreement in effect for the duration of the Agreement. Without waiving its objection, Midwest Drywall provides as part of its answer documents Bates numbered MWD0817 to MWD0823 provided to the Pension Fund in Midwest Drywall's Initial Disclosure of Documents. Also as part of its answer to this Interrogatory, Midwest Drywall provides documents Bates numbered MWD1327 to MWD1454.

**INTERROGATORY NO. 3.12:**    Identify all Communications between Midwest Drywall representatives and representatives of IUPAT District Council No. 3, Local Union 76 which resulted in Midwest Drywall entering into a collective bargaining agreement with District Council 3 and Local 76.

**ANSWER:**  Midwest Drywall objects to the scope of this Interrogatory as being overly broad, covering period of time beyond June 30, 2004, when Midwest Drywall and Painters Local 159 entered into Memorandum of Understanding waiving Article 4 of the Painters and Decorators Master Agreement in effect for the duration of the Agreement. Further Midwest Drywall objects to this Interrogatory to the extent the Interrogatory is directed at documents or communications protected from disclosure by the attorney work product privilege and/or the

attorney/client privilege. Further, its collective bargaining relationship with District Council 3 dates back to 1986 and its collective bargaining relationship with Local 76 dates back to 1984. To provide a recollection of all and/or a summary of all communications between Midwest Drywall and District Council 3 and Local 76 is unduly burdensome. Without waiving its objections, Midwest Drywall provides as its answer documents Bates numbered MWD0194 to MWD0195; MWD0196 to MWD0212; MWD0213 to MWD0237, MWD0238; MWD0239 to MWD0264; MWD0265 to MWD0290 provided to the Pension Fund in Midwest Drywall's Initial Disclosure of Documents and documents provided as part of its answer to Interrogatory No. 3.02 above as to collective bargaining agreements entered into between Painters & Allied Trades of America Local Union No. 76 and Midwest Drywall. Further, Midwest Drywall provides as its answer documents Bates numbered MWD1455 to 3723 and MWD4329 to MWD4340.

**INTERROGATORY NO. 3.13:**    Identify all projects and jobs on which Midwest Drywall was involved or on which Midwest Drywall was (had been) engaged to perform work during the Delinquency Period and from the end of the Delinquency Period to the date of your Response to this Interrogatory.

**ANSWER:** Midwest Drywall states that it denies that it is delinquent in any lawful payments to the Fund and responds only as the words "Delinquency Period" are defined in Section 2.17 as meaning "January 1, 2001 to June 30, 2004". Further Midwest Drywall objects to the scope of this Interrogatory directed to projects and jobs not covered by the collective bargaining agreements entered into between Midwest Drywall and an IUPAT District Council and/or Local Union. Without waiving its objection, Midwest Drywall provides as its answer

documents contained in CD Bates numbered 4124 and documents Bates numbered MWD3724 to MWD3767.

**INTERROGATORY NO. 3.14 (a):**    Assuming that under the "out-of-area" clause set out in Article IV, Sect. I(b), of Master Agreement is found to be legally obligated to make contributions to the Pension Fund when it performs work covered by collective bargaining agreements between employers and Painters District Council of Local Unions in effect in areas outside the territorial jurisdiction of Painters Local 159, do You agree that the amount of unpaid contributions reflected on the Audit Report is correct?

**(b)**    If your answer to Interrogatory No. 3.14(a) is in the negative then state the reason(s) why the amount is incorrect and state the amount of unpaid contributions, if any, that you believe are owed to the Pension Fund.

**(c)**    Describe in detail the method by which the amount stated in Your response to Interrogatory No. 3.14(b) was calculated.

**(d)**    If the amount stated in Interrogatory No. 3.14(b) was not calculated based upon the audit work sheets and summaries provided to You, then describe in detail the method by which such calculation was made.

**(e)**    If the amount stated in Interrogatory No. 3.14(b) was not calculated based upon the audit work sheets and summaries provided to You, then identify all Documents to which you referred in making said calculations.

**ANSWER:**    Without waiving its defenses based on the law and the facts, Midwest Drywall states:

(a)    It does not agree that the amount reflected in the Audit Report is correct.

(b)    Except through its collective bargaining relationships with Painters District

Council 80, Painters District Council 3, and Painters Local Union 76, Midwest

Drywall has not entered into a collective bargaining agreement with a Painters

District Counsel and/or Painters Local Union as to employees represented by a

Painters District Counsel and/or a Painters Local Union outside the jurisdiction of

Painters Local Union 159. During the relevant time period, the collective

bargaining agreements entered into between Painters District Council 3 and

Midwest Drywall and between Painters Local 76 and Midwest Drywall do not

contain any basis upon which payments are to be made to the Pension Fund. In a

prior collective bargaining agreement entered into between Painters Local 76 and

Midwest Drywall, Midwest Drywall agreed to make, as specified in said

collective bargaining agreement for employees covered by said collective

bargaining agreement, contributions to the International Union of Painters and

Allied Trades Joint Apprenticeship and Training Fund (IUPAT-JATF) and to the

International Union of Painters and Allied Trades Labor Management

Cooperative Fund (LMCF) and made contributions as specified in said collective

bargaining agreement.  In the current collective bargaining agreement entered into

between Painters Local 76 and Midwest Drywall, Midwest Drywall agreed to

make contributions as specified in said collective bargaining agreement to the

IUPAT-JATF and has made contributions as specified in said collective

bargaining agreement.  In a collective bargaining agreement entered into between

Midwest Drywall and Painters District Council 80 effective from July 13, 1999,

until the substantial completion of Midwest Drywall's work on the FDA Jefferson

Laboratories, Jefferson, Arkansas job, Midwest Drywall agreed to make

30

contributions for employees covered by said agreement to the Pension Fund and made contributions as specified in said collective bargaining agreement. In the collective bargaining agreement entered into between District Council 3 and Midwest Drywall, Midwest Drywall agreed to make contributions for employees covered by said agreement to the Labor Management Cooperative Fund and made contributions as specified in said collective bargaining agreement.

In reference to the employees represented by Painters Local 159 and employed by Midwest Drywall within the geographical jurisdiction of Painters Local 159, Midwest Drywall has checked is records during the relevant time frame and found that none of these employees were brought by Midwest Drywall to work in an outside jurisdiction.

Based on these facts, no amount is owed to the Pension Fund.

(c)    Midwest Drywall provides as its answer its response stated in parts (a) and (b) above to this Interrogatory.

(d)    Midwest Drywall provides as its answer its response stated in parts (a) and (b) above to this Interrogatory.

(e)    Midwest Drywall provides as its answer its response stated in parts (a) and (b) above to this Interrogatory.

**INTERROGATORY NO. 3.15:**    If You contend that Midwest Drywall is not liable for any amounts contained in the Audit Report for any reasons not covered by any of the preceding Interrogatories, state such reasons in detail.

**ANSWER:** In addition to Midwest Drywall's answers to Interrogatory Nos. 3.02, 3.03, 3.04, 3.05, 3.06, 3.07, 3.08, 3.09, 3.10, 3.11, 3.12, and 3.14 above, Midwest Drywall states that:

31

The Pension Fund's claim to impose on Midwest Drywall and its employees the terms of labor agreements of Painters District Councils and Painters Local Unions outside the jurisdiction of Painters Local 159 and with whom Midwest Drywall has not had and does not have a statutory 8(f) or 9(a) relationship is not consistent with the law, is unlawful under the National Labor Relations Act and the Labor Management Relations Act, is contrary to the Joint Trade Board of the Painters and Decorators Joint Committee, Inc.'s interpretation of the 50/50 Clause under the collective bargaining agreement between Painters Local 159 and Midwest Drywall, and is contrary to the course of dealing between Painters Local 159 and Midwest Drywall.

Midwest Drywall is not signatory to and has not entered into any national agreement with the International Painters and Allied Trades Union.

In the summer of 1999, at Midwest Drywall's Omaha, Nebraska office, Steven Nienke and Chris Hill for Midwest Drywall met with Painters Local 109 representative, Pat Stoysich, and his boss for about an hour. They talked about a proposed Painters Local 109 collective bargaining agreement, jurisdiction; what it would cover and what it would require. Painters Local 109 gave Steven Nienke a copy of a proposed Agreement (Midwest Drywall produces copy the proposed Agreement as document Bates numbered MWD1182 to MWD1199). Steven Nienke told Painters Local 109 that he didn't have a problem with the painting work part of the proposed Agreement, but he did have a problem with the EIFS-exterior insulating finish system; where Midwest Drywall did EIFS work, that work was under the jurisdiction of plasters; it was not painters work; and to have EIFS work added to painting work in an Agreement with the Painters would cause problems for Midwest Drywall. Pat Stoysich said EIFS work was the way the Agreement was written and he would not negotiate it out. Steven Nienke told Painters Local 109 that he was there to negotiate an Agreement as to painting work; he had no problem signing

32

an Agreement that day only as to painting work. Pat Stoysich said he would check with Painters

Local 109's attorney and telephone Steven Nienke later that day. Later, Pat Stoysich telephoned

Steven Nienke and said that there was no way Painters Local 109 would change its proposed

Agreement, it had to cover EIFS work too. No Agreement was agreed to between Midwest

Drywall and Painters Local 109.

In the summer of 1999, Midwest Drywall communicated with Painters District Council

80 and established a statutory 8(f) collective bargaining relationship with Painters District

Council 80 that lead to Midwest Drywall entering into a Memorandum of Understanding and

Area Contract with Painters District Council 80 effective from July 13, 1999, until the substantial

completion of Midwest Drywall's work on the FDA Jefferson Laboratories, Jefferson, Arkansas

job. Upon substantial completion of Midwest Drywall's work on that job, the collective

bargaining agreement between Midwest Drywall and Painters District Council 80 terminated.

Through a statutory 8(f) collective bargaining relationship, Midwest Drywall entered into

a collective bargaining agreement with Painters District Council 80 for a definitive period of

time. Upon substantial completion of Midwest Drywall's work on the FDA Jefferson

Laboratories, Jefferson, Arkansas job, the collective bargaining agreement between Midwest

Drywall and Painters District Council 80 terminated. However, under the Pension Fund's claim,

Midwest Drywall, contrary to its statutory collective bargaining relationship with Painters

District Council 80, would nevertheless continue to be bound by the terms of a collective

bargaining agreement signed by another employer. Contrary to the National Labor Relations Act

and the Labor Management Relations Act, the Pension Fund's claim would do away with

statutory collective bargaining relationships between Midwest Drywall and a local Painters

District Council or Local Union, because the Pension Fund claims that Midwest Drywall is, by

33

fiat, already bound.

Later in 1999, 17 months after Midwest Drywall established a statutory 8(f) collective bargaining relationship with and entered into a collective bargaining agreement with Painters Local 159, the application and interpretation of the 50/50 Clause in that Agreement was raised by Painters Local 159. In a letter dated November 3, 1999, Painters Local 159's representative, Leonard Wittman, stated in reference to an outside-jurisdiction local union:

> "Local 159 is in contact with Mr. Pat Stoysich of Local 109 in Omaha Nebraska who states he has spoken to your company about becoming signatory to his Local. As you can see our Article IV, clearly states that your company agrees to abide by the Agreement in place, in the 'outside the geographical area.'
>
> Please understand that it is not the position of Local 159 or that of Local 109 to 'hammer' a contractor into becoming signatory. I am confident that if you or your representative would meet with Mr. Stoysich both sides would come to agreement."

By letter dated November 8, 1999, to Leonard Wittman, Midwest Drywall's President, Steven A. Nienke, stated to Painters Local 159:

> "For your information purpose, prior to your recent correspondence, Midwest Drywall met with Local 109 representatives in Omaha, Nebraska for collective bargaining. Midwest Drywall offered to sign a collective bargaining agreement with Local 109 including lawful clauses of an Agreement. Its offer is still there for Local 109 to accept."

Five months later,  Painters Local 159 brought before the Joint Trade Board of the Painters and Decorators Joint Committee, Inc. a charge against Midwest Drywall asserting "a violation of the Master Agreement, Article IV, Section 1(b) (50/50 Clause), through continuing failure to enter into a collective bargaining agreement for painting and taping work in or near

Omaha, Nebraska." The Board found that Midwest Drywall admitted that it had not entered into

nor become bound by the other jurisdiction agreement of IBPAT Local Union No. 109 and had

not paid required wages and benefits to its painters and tapers. The Board ordered Midwest

Drywall to work with Painters Local 109 to sign a collective bargaining agreement and that

Painters Local 159 work with Midwest Drywall to resolve that continuing violation of the Master

Agreement. After the hearing before the Board, Painters Local 159's representative, Leonard

Wittman, on April 10, 2000, told Midwest Drywall that the finding was not going to be enforced.

The Board retained jurisdiction and took no further action.

   Further, given the ambiguity of Article IV, the intent of the parties may be considered to

interpret the meaning of Article IV, including the intent describe above. Also, when the

collective bargaining agreements between Painters Local 159 and Midwest Drywall established

through a statutory collective bargaining relationship are read as a whole, Article IV is intended

to cover only when Midwest Drywall has entered into a collective bargaining agreement for

painting or taper work through a statutory collective bargaining relationship with an outside-

jurisdiction Painters Local Union or when Painters Local 159 members travel as employees for

Midwest Drywall outside the jurisdiction of Painters Local 159.

   Midwest Drywall has relied upon Painters Local 159's promise and representations

concerning the application of Article IV in their collective bargaining relationship.

   In 1999, Midwest Drywall established a statutory 8(f) collective bargaining relationship

with and entered into a collective bargaining agreement with Carpenters Local Union No. 444

that did not include the work of tapers. In November, 2001, Carpenters Local Union No. 444

represented and submitted evidence to Midwest Drywall that it represented a majority of

Midwest Drywall's tapers employed in Omaha, Nebraska. Midwest Drywall thereafter in a

statutory 8(f) relationship entered into a collective bargaining agreement with Carpenters Local Union Nos. 444 and 1055 covering certain work, including taper work, in a defined geographical area in Nebraska. That collective bargaining agreement terminated in May, 2003, and Carpenters Local Union Nos. 444 and 1055 filed a 9(a) representation petition with the Regional Office of the National Labor Relations Board. On September 10, 2003, following a National Labor Relations Board conducted secret ballot election, the National Labor Relations Board issued a Decision and Order that a majority of the employees' votes were not cast for the Union.

During the duration of its collective bargaining agreements with Carpenters Local Union Nos. 444 and 1055, Midwest Drywall made contributions for employees performing work covered by the agreements including drywall finishers and tapers, to the Omaha Construction Industry Pension Fund in accord with the negotiated and signed collective bargaining agreements and after the termination of the collective bargaining agreement reached an agreement with the Omaha Construction Industry Pension Fund as to the assessment of withdrawal liability and paid an additional $490,000.00 into said Fund.

Under the Pension Fund's claims in the present case, however, Midwest Drywall, contrary to its statutory collective bargaining relationship with Carpenters Local Union Nos. 444 and 1055 and contrary to the statutory rights of its employees, would nevertheless continue to be bound by the terms of a collective bargaining agreement signed by a Painters Local Union with another employer. Contrary to the National Labor Relations Act and the Labor Management Relations Act, the Pension Fund's claim would do away with statutory collective bargaining relationships and statutory protected employees' rights, because the Pension Fund claims that Midwest Drywall is, by fiat, bound to a Painters Local Union agreement.

The Pension Fund's claims are inconsistent with the law governing the principles of an

8(f) collective bargaining relationship and the employee rights protections established by the National Labor Relations Act and the Labor Management Relations Act and application of the Acts by the Courts and the National Labor Relations Board. Painters Local 159 did not and does not expressly or impliedly represent itself to be the collective bargaining agent for Midwest Drywall's foreign jurisdiction employees. Painters Local 159 did not and does not expressly or impliedly represent itself to be the authorized agent for foreign Painters District Councils and/or Painters Local Unions. By its conduct and the conduct of other Painters District Councils and Painters Local Unions, Painters Local 159 is not the collective bargaining agent for Midwest Drywall's foreign jurisdiction employees or the authorized agent for foreign Painters District Councils and Painters Local Unions. As such, Painters Local 159 owes no duty of fair representation to foreign jurisdiction employees. Without a statutory 8(f) or 9(a) collective bargaining relationship, an unidentified Painters Local Union or Painters District Council outside the jurisdiction of Painters Local 159 is not the exclusive collective bargaining agent for Midwest Drywall's employees. To impose the terms of a Painters District Council and/or Painters Local Union's agreement with another employer on Midwest Drywall and its employees in the absence of a statutory 8(f) or 9(a) collective bargaining relationship would be unlawful under 29 U.S.C. §§158(a) and 158(b) of the National Labor Relations Act.

Midwest Drywall has further relied upon Painters Local 159's promise and representations concerning the application of Article IV in their collective bargaining relationship. In February, 2007, Midwest Drywall and Painters Local 159 entered into a Memorandum of Understanding waiving Article 4 in the Master Agreement for the duration of the Agreement.

The Pension Fund, as a third party beneficiary of the agreement between Painters Local 159 with Midwest Drywall, is bound by Painters Local 159's promise and representations and is barred under the doctrine of promissory estoppel from asserting a position contrary to Local 159's promise and representations that would be to the detriment of Midwest Drywall.

Midwest Drywall has paid all contributions to funds as specified in a collective bargaining agreement it has entered into with a Painters District Council and/or Painters Local Union with whom it has or has had a collective bargaining relationship and pursuant to the parties' course of dealing and the interpretations of the collective bargaining agreements.

The Pension Fund's claims are further illegal as such claims are in violation of 29 U.S.C. §186, which in relevant part prescribes that it is unlawful for Midwest Drywall to pay monies to funds, including to the Pension Fund, when, among other requirements, the payments are not for the sole and exclusive benefit of the employees of Midwest Drywall and the detailed basis on which payments are to be made is not specified in a written agreement with Midwest Drywall.

Pursuant to 29 U.S.C. §159(a), Midwest Drywall entered into a collective bargaining agreement with Painters District Council 3. Pursuant to 29 U.S.C. §158(f), for a period of time from July 13, 1999, until the substantial completion of Midwest Drywall's work on the FDA Jefferson Laboratories, Jefferson, Arkansas job, Midwest Drywall entering into a Memorandum of Understanding and Area Contract with Painters District Council 80. For a period of time prior to May 19, 2003, pursuant to 29 U.S.C. § 158(f), Midwest Drywall had entered into collective bargaining agreements with Painters District Council 3, Painters Local 76 and after May 19, 2003, pursuant to 29 U.S.C. § 159(a), has entered into a collective bargaining agreement with said labor organization. Pursuant to 29 U.S.C. § 158(f), Midwest Drywall has entered into collective bargaining agreements with Painters Local 159.

The written collective bargaining agreements entered into by Painters District Council 3 and by Painters Local 76 with Midwest Drywall do not contain any basis upon which payments are to be made to the Pension Fund. In a prior written collective bargaining agreement entered into by Painters Local 76 with Midwest Drywall, Midwest Drywall agreed to make, as specified in said collective bargaining agreement for employees covered by said collective bargaining agreement, contributions to the International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund (IUPAT-JATF) and to the International Union of Painters and Allied Trades Labor Management Cooperative Fund (LMCF) and made contributions as specified in said collective bargaining agreement. In the current written collective bargaining agreement entered into by Painters Local 76 with Midwest Drywall, Midwest Drywall agreed to make contributions as specified in said collective bargaining agreement to the IUPAT-JATF and has made contributions as specified in said collective bargaining agreement. In the written collective bargaining agreement entered into by Painters District Council 3 with Midwest Drywall, Midwest Drywall agreed to make contributions for employees covered by said agreement to the Labor Management Cooperative Fund and made contributions as specified in said collective bargaining agreement.

In the written collective bargaining agreement entered into between Midwest Drywall and Painters District Council 80 effective from July 13, 1999, until the substantial completion of Midwest Drywall's work on the FDA Jefferson Laboratories, Jefferson, Arkansas job, Midwest Drywall agreed to make contributions for employees covered by said agreement to the Pension Fund and made contributions as specified in said collective bargaining agreement.

In the written collective bargaining agreement entered into between Painters Local 159 and Midwest Drywall, Midwest Drywall agreed to make contributions for employees covered by

said agreement to the Labor Management Cooperative Fund, agreed to honor authorizations for check-off of political contributions from employees who are union members to the Political Action Together - Political Committee (PAT-PC), and has complied with said provisions including the parties' interpretation of said agreement and the course of dealing between the parties.

The written collective bargaining agreements entered into between Painters Local 159 and Midwest Drywall contain detailed basis, as to each employee engaged in work covered by said agreement, on which contributions are to be made to the Pension Fund. Midwest Drywall has complied with the collective bargaining agreements entered through a statutory collective bargaining relationship with Painters Local 159 and as the collective bargaining agreements have been interpreted through the Decision and Order of the Joint Trade Board of the Painters and Decorators Joint Committee, Inc. and by Painters Local 159's promises and representations to Midwest Drywall in the course of the dealing between the parties. The Pension Fund, as a third party beneficiary of the written agreements between Local 159 and Midwest Drywall, is bound by the course of dealing between Painters Local 159 and Midwest Drywall under the agreements and the interpretation of the agreements.

**INTERROGATORY NO. 3.16:**     State the legal and factual basis or bases for the allegations made in Paragraphs 3, 4 and 6 of the Separate and Additional Defenses set forth in Your Answer to the Complaint, and for each such allegation, identify each witness who can support the allegations and identify all tangible evidence or documents which you contend support said allegations or which will be utilized to prove said allegations, and identify the custodians thereof.

**ANSWER:**   Answering in part, Midwest Drywall answers with its answer to Interrogatory No. 3.15 above. Answering further as to paragraphs 3 and 4, Midwest Drywall states that the witness is Steven A. Nienke and the tangible evidence or documents are bates numbered MWD0004, MWD0052 to MWD0092, MWD0093 to MWD0109, MWD0110 to MWD0113, and MWD0377.

As to paragraph 6, Midwest Drywall states that the witness is Steven A. Nienke and the tangible evidence or document is bates numbered MWD0110 to MWD0113.

I state under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief formed with legal advice.

MIDWEST DRYWALL CO. , INC.

Signed on: October 25, 2007

Denis H. Dieker, Chief Financial Officer

As to objections,

MORRIS, LAING, EVANS, BROCK & KENNEDY, CHTD.

By

Robert D. Overman, KS Bar No. 08155
Morris, Laing, Evans, Brock & Kennedy, Chtd.
300 N. Mead, Suite 200
Wichita, Kansas  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226
E-mail:  roverman@morrislaing.com

Charles F. Walters
D.C. Bar No. 444529
Seyfarth Shaw, LLP
Suite 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 828-5393
E-mail:  cwalters@seyfarth.com

Date: October 25, 2007

*Attorneys for Defendant Midwest Drywall Co., Inc.*

41

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2007, I caused the foregoing Midwest Drywall Co., Inc. Responses and Objections to the International Painters and Allied Trades Pension Fund's Interrogatories to Midwest Drywall Co., Inc.(First Set), to be sent by Federal Express, overnight delivery, and acceptable electronic mail to the following:

Sanford G. Rosenthal
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
E-mail: SRosenthal@JSLex.Com

Shanna M. Cramer
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
E-mail: SCramer@JSLex.Com

*Attorneys for Plaintiff Fund*