**EXHIBIT 40**

Westlaw.

48 Fed.Appx. 188                                                                                              Page 1
48 Fed.Appx. 188, 2002 WL 31245970 (C.A.6 (Mich.)), 29 Employee Benefits Cas. 1948
**(Cite as: 48 Fed.Appx. 188)**

▶Trustees of B.A.C. Local 32 Insurance Fund v. Ohio Ceiling and Partition Co., Inc.
C.A.6 (Mich.),2002.
This case was not selected for publication in the Federal Reporter.NOT RECOMMENDED FOR FULL--TEXT PUBLICATIONSixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)
United States Court of Appeals,Sixth Circuit.
THE TRUSTEES OF THE B.A.C. LOCAL 32 INSURANCE FUND; Marble and Terrazzo Industry Pension Fund; Tile, Marble and Terrazzo Industry Joint Industry Training Fund; Great Lakes Ceramic Tile Council Fund; Tile, Marble and Terrazzo Industry Supplemental Unemployment Benefit Plan; Tile, Marble and Terrazzo Industry Vacation and Holiday Fund; Bricklayers International Pension Fund; B.A.C. Local 32, Plaintiffs-Appellants,
v.
OHIO CEILING AND PARTITION COMPANY, INCORPORATED, Defendant-Appellee.
No. 01-1396.

Oct. 4, 2002.

Local union and trustees of multiemployer employee welfare benefit funds brought action under Employee Retirement Income Security Act (ERISA) to collect employee benefit contributions allegedly due under collective bargaining agreement. The United States District Court for the Eastern District of Michigan entered judgment in favor of employer, and plaintiffs appealed. The Court of Appeals, Guy, Circuit Judge, held that traveling contractors clause did not obligate employer to make employee benefits contributions for work performed in area for which employer had no agreement with any local affiliate.

Affirmed.

West Headnotes

**Labor and Employment 231H** ⟲502

231H Labor and Employment
　231HVII Pension and Benefit Plans
　　231HVII(D) Contributions and Funding
　　　231Hk501 Employees for Whom Contributions Must Be Made
　　　　231Hk502 k. In General. Most Cited Cases
　(Formerly 296k102)
Provision of traveling contractors clause in agreement between employer and local union, by which employer agreed to abide by terms and conditions of "agreement in effect in the jobsite area," when performed work outside area covered by agreement with local union and "within the area covered by an agreement with another affiliate" of union, did not obligate employer to make employee benefits contributions for work performed in area for which employer had no agreement with any local affiliate, where work was performed under collective bargaining agreement (CBA) with another union claiming jurisdiction over work and under which contributions were made to associated employee benefit funds. Employee Retirement Income Security Act of 1974, § 515, 29 U.S.C.A. § 1145.

*189 On Appeal from the United States District Court for the Eastern District of Michigan.

Before GUY and BATCHELDER, Circuit Judges; and QUIST, District Judge.[FN*]

　　FN* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

GUY, Circuit Judge.
　**1 Plaintiffs appeal from the entry of judgment in favor of the defendant, Ohio Ceiling and Partition Company, Inc. (OCP), in this action seeking to collect employee benefit contributions under § 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145. Trustees of seven employee welfare benefit funds claim that contributions are due under a collective bargaining agreement between the Bricklayers and Allied Craftworkers (BAC), Local 32 of Michigan, and certain Independent Contractors (Michigan BAC Agreement). Although OCP was not a signatory to the BAC Local 32 Agreement, *190 plaintiffs claim

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00131-GK    Document 35-12    Filed 02/06/2008    Page 3 of 9

48 Fed.Appx. 188                                                                                                         Page 2
48 Fed.Appx. 188, 2002 WL 31245970 (C.A.6 (Mich.)), 29 Employee Benefits Cas. 1948
**(Cite as: 48 Fed.Appx. 188)**

OCP was bound to that agreement by virtue of the Traveling Contractor clause in a collective bargaining agreement between BAC Local 46 of Northern Ohio and the Ohio Contractors Association (Ohio BAC Agreement)-an agreement to which OCP had admittedly assented.

After a bench trial, the district court found that the Traveling Contractor clause did not bind OCP to the Michigan BAC Agreement. The district court also concluded that since OCP had paid contributions to other plans on behalf of the carpenters union employees that performed the work in Michigan, OCP should not be required to pay benefits to the bricklayers funds over what was essentially a jurisdictional dispute between the unions over covered work. After review of the record and the arguments presented on appeal, we affirm the judgment.[FN1]

> FN1. The named plaintiffs included the union, BAC Local 32 of Michigan, and the Trustees of the BAC Local 32 Insurance Fund; Tile, Terrazzo and Marble Industry Pension Fund; Tile, Marble & Terrazzo Industry Joint Industrial Training Fund; Great Lakes Ceramic Tile Council Fund; Tile Terrazzo and Marble Industry Supplemental Unemployment Benefit Fund; Tile, Terrazzo and Marble Industry Vacation and Holiday Fund; and Bricklayers International Pension Fund.

I.

Defendant OCP is an interior systems contractor located in Holland, Ohio. Started as a lathe and plastering contractor in 1968, OCP gradually expanded its services and now can perform complete flooring projects; including carpet, sheet vinyl, and hard tile. OCP did not begin doing tile, marble and terrazzo work (T-M-T work) until the late 1990s. Plaintiffs seek contributions for hours worked by the carpenters union employees who performed T-M-T work on two projects that OCP completed in Michigan. Matthew Townsend, OCP's president, testified that he hired union carpenters from Ohio for the Michigan jobs because the carpenters had a variety of skills needed for interior contracting work and because using the same carpenters from job to job made it possible to know what quality of work to expect. Plaintiffs have conceded that OCP made benefit contributions for the work in question to the carpenters union funds in accordance with the collective bargaining agreements between OCP and the local and national carpenters unions.

The parties stipulated that OCP was bound by: (1) a national collective bargaining agreement with the United Brotherhood of Carpenters and Joiners of America (National Carpenters CBA); (2) a local collective bargaining agreement with the Northwest Ohio Regional Council of Carpenters, Carpenters, Lathers and Floorlayers Local Union No. 248 (Ohio Floorlayers CBA); and (3) a local collective bargaining agreement with the Northwest Ohio Regional Council of Carpenters Local Union Nos. 248, 372, 1138, 1581 and 2239 (Ohio Carpenters CBA). The National Carpenters and Ohio Floorlayers CBAs expressly included T-M-T work as covered work and required that employers make fringe benefit contributions to the specified carpenters employee benefit funds.

**\*\*2** As mentioned earlier, OCP was not a signatory to either the Michigan BAC Agreement, under which plaintiffs claim contributions are due, or the bricklayers national agreement. Instead, plaintiffs claim that OCP was bound to the Michigan BAC Agreement as a result of the Traveling Contractors clause found in the local Ohio BAC Agreement. In 1995, before OCP had begun to perform any T-M-T **\*191** work, OCP signed an Assent to the Ohio BAC Agreement in order to be able to do plaster work within the territorial area covered by that agreement; namely, the counties and townships in northern Ohio that are specified in paragraph 8 of that agreement. The critical clause, set forth in paragraph 44, provided as follows:

TRAVELING CONTRACTORS-When the Employer has any work specified in this agreement to be performed outside of the area covered by this agreement and within the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftsman, the Employer agrees to abide by the full terms and conditions of the agreement in effect in the jobsite area. Employees covered by the agreement who are sent to projects outside of the area covered by this agreement shall be paid at least the established minimum wage scale specified in Appendix A of this agreement but in no case less than the established minimum wage scale of the local agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite local agreement. The employer shall in all other matters be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00131-GK    Document 35-12    Filed 02/06/2008    Page 4 of 9

48 Fed.Appx. 188                                                                                         Page 3
48 Fed.Appx. 188, 2002 WL 31245970 (C.A.6 (Mich.)), 29 Employee Benefits Cas. 1948
**(Cite as: 48 Fed.Appx. 188)**

governed by the provisions established in the jobsite local agreement. If employees are sent to work on a project in an area where there is no agreement covering the work, the full terms and conditions of this agreement shall apply.

The district court emphasized the explicit territorial jurisdiction of the Ohio BAC Agreement and concluded that the Traveling Contractors clause clearly and unambiguously applied only to BAC Local 46 employees, that is "employees covered by this agreement," who were "sent" to work on projects outside the area covered by the agreement. In addition, the district court concluded that BAC Local 32 was not intended as a third-party beneficiary of the Ohio BAC Agreement. Plaintiffs argue that this interpretation erroneously limits the extra-territorial effect of this provision by ignoring the scope of the first sentence.

Testimony from Robert Wilson, business manager for BAC Local 32 of Michigan, made clear that Local 32 believed it had a right to the T-M-T work performed by the carpenters from Ohio under the Jurisdictional Agreement and Disclaimer executed on July 16, 1997, between the national bricklayers and carpenters unions. On the other hand, Robert Bernius, the top official of the Northwest Regional Council of Carpenters, testified that the carpenters had retained jurisdiction over T-M-T work as long as the employer did not perform T-M-T work exclusively. Bernius denied that his local was alone in this interpretation and confirmed that there were procedures for resolving such jurisdictional disputes between the unions. Wilson conceded that although BAC Local 32 was aware that OCP was doing the work in question, Local 32 made no jurisdictional claim to the work.

**\*\*3** In January 2000, after the work was completed, plaintiffs filed this action seeking unpaid contributions for the T-M-T work. The district court denied plaintiffs' motion for summary judgment in October 2000. At the conclusion of the bench trial, the district court rendered its decision in favor of defendant OCP. Judgment was entered in favor of OCP on March 1, 2001, with costs and attorney fees to be taxed according to law. This appeal followed.

II.

The district court's conclusions of law following a bench trial are reviewed *de novo,* while its findings of fact are reviewed for clear error. **\*192***Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 341 (6th Cir.1997). We begin with § 515 of ERISA, which provides that:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. This provision entitles multiemployer plans to rely on the literal terms of written commitments between the plan, the union, and the employer and, as a result, the actual intent or understanding of the contracting parties is immaterial when the meaning of that language is clear. See *Bakery & Confectionery Union and Indus. Int'l Health Benefits and Pension Funds v. New Bakery Co.,* 133 F.3d 955, 959 (6th Cir.1998); *Bakery & Confectionery Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co.,* 118 F.3d 1018, 1021 (4th Cir.1997). The effect of this provision is to accord ERISA funds special status, akin to a holder in due course under commercial law, and entitle them to enforce the writing regardless of the defenses that might be available under the common law of contracts. *N.W. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.,* 270 F.3d 1018, 1025 (6th Cir.2001), *cert. denied,* 535 U.S. 1017, ----, 122 S.Ct. 1605, 1606, 152 L.Ed.2d 620, (2002); *New Bakery Co.,* 133 F.3d at 959.[FN2] Even so, ERISA funds are not entitled to enforce a nonexistent contractual obligation. *DeVito v. Hempstead China Shop, Inc.,* 38 F.3d 651, 654 (2d Cir.1994). Whether a contractual provision is ambiguous is a question of law for the court to determine. *Walcher & Fox,* 270 F.3d at 1025.

> FN2. Thus, employers may not assert traditional contract defenses "such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law" to avoid the clear terms of their agreements. *Cent. States, S.E. and S.W. Areas Pension Funds v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1153 (7th Cir.1989) (*en banc*).

A. Traveling Contractor Clause

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

48 Fed.Appx. 188                                                                                                                          Page 4
48 Fed.Appx. 188, 2002 WL 31245970 (C.A.6 (Mich.)), 29 Employee Benefits Cas. 1948
**(Cite as: 48 Fed.Appx. 188)**

The first hurdle to plaintiffs' recovery is the district court's determination that the Traveling Contractor clause clearly and unambiguously applied only to employees sent from BAC Local 46 in Ohio to perform work outside the area covered by the Ohio BAC Agreement. Taking issue with this interpretation, plaintiffs argue that the first sentence of the clause broadly obligates a traveling employer doing covered work to abide by any agreement between another BAC affiliate and other employers that includes the jobsite within its territorial jurisdiction. Plaintiffs maintain that the district court ignored the first sentence and erroneously viewed the second sentence, which adds a qualification regarding the wage rates to be paid to "[e]mployees covered by [this] agreement" who are "sent" to work on a project, as establishing the scope of the entire Traveling Contractor clause.

**\*\*4** Plaintiffs rely on several cases from other jurisdictions that enforced similar traveling contractor clauses. On close examination, however, these cases are of limited assistance in interpreting the Traveling Contractor clause at issue in this case. The two principle cases, cited for the proposition that traveling contractor clauses are valid, involved somewhat different clauses and arose in the context of an action by the local union to enforce an arbitration award against a nonsignatory employer. See _McKinstry Co. v. Sheet Metal Workers' Int'l Local 16_, 859 F.2d 1382 (9th Cir.1988); **\*193**_Local Union No. 36, Sheet Metal Workers' Int'l v. Atlas Air Conditioning Co._, 926 F.2d 770 (8th Cir.1991).

In _McKinstry_, the employer had a CBA with Local 99 of the Sheet Metal Workers' International (SMWI) that contained traveling contractor provisions. McKinstry became the successful bidder on a job in an area within the jurisdiction of SMWI Local 16, with which McKinstry did not have a CBA. Local 16 brought a grievance claiming that McKinstry had violated the subcontracting clause in the CBA it had signed with _Local 99,_ by hiring a nonunion subcontractor to do the sheet metal work. The grievance was arbitrated, McKinstry was found to have violated its agreement with Local 99, and damages were awarded to Local 16. McKinstry brought an action to vacate the arbitration award, and the issue on appeal was whether the agreement between Local 99 and McKinstry conferred enforceable benefits on Local 16, including the right to arbitration of grievances.

The court explained that when arbitration is sought by a nonsignatory to the agreement, that party must show that the signatories intended it to derive benefits from the agreement and that the nonsignatory party has the right to enforce those benefits. 859 F.2d at 1384-85. While the court rejected the employer's contention that the clauses applied only to workers from the Local 99 area who were sent to a job site in another area, the court agreed that the "language is indeed ambiguous." _Id. at 1386._ Finding that the clauses were meant to benefit sheet metal workers from locals in other areas, the court concluded that McKinstry and Local 99 intended for nonsignatory SMWI locals to derive benefits from the agreement and, therefore, that Local 16 was entitled to arbitrate grievances against McKinstry.

In _Atlas Air Conditioning,_ the Eighth Circuit relied on _McKinstry_ to enforce an arbitration award that found the traveling contractor clauses required Atlas to comply with the CBA of an affiliated SMWI local covering the territory where Atlas was working. Although Atlas argued that the local adjustment board for the job site area did not have jurisdiction to hear the grievance, the court found the jurisdictional objection was both untimely and without merit. In rejecting that claim on the merits, the court concluded that the following clause obviously meant that Atlas was required to comply with the job site agreement.

**\*\*5** Except as provided in Section 2 & 6 of this Article, the Employer agrees that journeymen sheet metal workers hired outside of the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the Local Agreement covering the territory in which such work is performed or supervised.

926 F.2d at 772. This conclusion was reached without discussion, and the actual language differs enough from the clause at issue in this case that it is of limited assistance to our inquiry.

One case on which plaintiffs place heavy reliance involved both the same BAC traveling contractor clause and an action under ERISA to recover benefits. See _Trustees of the Colo. Tile, Marble & Terrazzo Workers Pension Fund v. Wilkinson & Co._, Nos. 96-1431/1205, 1998 WL 43172 (10th Cir. Feb.3, 1998) (unpublished decision). In that case, however, the employer did not challenge the meaning of the traveling contractor clause.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

48 Fed.Appx. 188
48 Fed.Appx. 188, 2002 WL 31245970 (C.A.6 (Mich.)), 29 Employee Benefits Cas. 1948
(Cite as: 48 Fed.Appx. 188)

Page 5

Wilkinson had a CBA with BAC Local 77 in New Jersey that contained the traveling contractor clause. Wilkinson traveled to Colorado and hired a nonunion subcontractor to perform certain interior marble work at the Denver International Airport. BAC Local 6 in Colorado, with \*194 which Wilkinson did not have a CBA, claimed the work was covered by its CBA with other employers. Pension fund trustees sued under § 515 of ERISA to recover contributions for all hours of covered work performed within its territorial jurisdiction. Wilkinson argued that the CBA was ambiguous regarding the type of work covered, but conceded that the traveling contractor clause would bind it to the Colorado BAC Agreement. As an aside, the court noted that traveling contractor clauses were found to be valid in *McKinstry* and *Atlas*. The court explained:

In the ordinary § 515 case, the plans seeking the contributions are the ones named in the collective bargaining agreement or otherwise have a more direct relationship with the employer. Here, the trustees' § 515 claim arises through operation of the traveling contractors clause. The type of work Wilkinson performed in Colorado triggered the clause, thus requiring Wilkinson to comply with the terms of the Colorado CBA, which in turn required the payment of contributions to the trustees. Had Wilkinson performed the same work in Local 77's home territory, it could have been subject to a § 515 claim. Wilkinson does not challenge the enforceability of the traveling contractors clause per se, nor does it argue that the trustees here should be distinguished for any reason from the typical § 515 plaintiff. Under these circumstances, we see no reason why the clause should not be enforced to support the trustees' § 515 claim.

1998 WL 43172, at \*6 (footnotes omitted).[FN3] Although the Tenth Circuit's decision supports the proposition that the clause can be understood to bind an employer to a job site agreement to which it was not a signatory, the court was not asked to determine whether that meaning is clear and unambiguous.

FN3. Plaintiffs also cite *Merritt-Meridian Construction Corp. v. Local 64, BAC International Union*, No. 90-1228, 1991 WL 15527 (N.D.N.Y. Feb. 5, 1991) (unpublished decision), in which the court denied a motion to remand because an arbitration agreement existed by virtue of the BAC traveling contractor clause. The court cited *McKinstry* and found the employer was bound by the arbitration provision in the affiliate BAC local's CBA. There is no indication, however, that the employer disputed the meaning of the traveling contractor clause.

\*\*6 Although not cited by the parties, this court has found one case in which the meaning of a nearly identical traveling contractor clause was directly addressed in an action to collect contributions under § 515. See *Trustees of the BAC, Local 5 New York Retirement, Welfare Apprenticeship Training and Journeyman Upgrading and Labor-Management Coalition Funds v. Charles T. Driscoll Masonry Restoration Co., Inc.*, 165 F.Supp.2d 502 (S.D.N.Y.2001). In that case, Driscoll Masonry, a nonunion employer, signed a collective bargaining agreement with BAC Local 5 in order to do work on one job within Local 5's territorial jurisdiction. Driscoll performed a number of jobs in areas covered by agreements between certain BAC affiliates and other employers, but continued to refuse to sign agreements with those other BAC locals. Local 5 and the trustees of its employee benefit funds demanded fringe benefit contributions for covered work performed by Driscoll's employees in New York but outside the territorial jurisdiction of the Local 5 agreement. When Driscoll refused, the funds sued under § 515 of ERISA.

The district court explained that to prevail, the funds must show that the agreement created an unambiguous contractual obligation for the defendants to make contributions. 165 F.Supp.2d at 510. The \*195 Local 5 funds relied on the first sentence of the clause, which stated that:

When the employer has any work specified in ARTICLE IV of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an Agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the employer agrees to abide by the full terms and conditions of the Agreement in effect in the jobsite area.

*Id.* at 506 (quotation marks and emphasis omitted). As is apparent, this language is nearly identical to the first sentence of the clause that plaintiffs rely on in this case. The court in *Driscoll* concluded that this sentence clearly and unambiguously applied only if the employer had entered into a collective bargaining agreement with

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00131-GK  Document 35-12  Filed 02/06/2008  Page 7 of 9

48 Fed.Appx. 188                                                                                    Page 6
48 Fed.Appx. 188, 2002 WL 31245970 (C.A.6 (Mich.)), 29 Employee Benefits Cas. 1948
**(Cite as: 48 Fed.Appx. 188)**

the BAC affiliate that covered the area in which the work was to be performed. In other words, "if Driscoll (the employer) does work as specified in Article IV (masonry) in an area of the state outside of Local 5's jurisdiction where Driscoll has an agreement with another BAC local (the other local), then Driscoll pays benefits in accordance with its agreement with the other local." *Id.* at 511.[FN4]

> FN4. The court also noted that this interpretation was supported by the deposition testimony of the president of BAC Local 5. Because the case was decided on cross motions for summary judgment, the court disregarded the contrary statements made in a subsequent affidavit by the president of Local 5.

Local 5 had also argued that the fourth sentence bound Driscoll to pay benefits for covered work performed anywhere in New York where Driscoll did not have a CBA with another BAC affiliate. As in this case, sentence four provided that: " 'If employees are sent to work in an area where there is no local Agreement covering the work specified in ARTICLE IV of this Agreement, the full terms and conditions of this Agreement shall apply.' " *Id.* at 506 (emphasis omitted). Disagreeing with Local 5, the court found that it applied only when employees performing masonry work within Local 5's territorial jurisdiction were subsequently sent to work on a project outside Local 5's territorial jurisdiction. *Id.* Summary judgment was granted to Driscoll.

**\*\*7** We find that the first sentence of the BAC Traveling Contractor clause is susceptible to more than one interpretation. The phrase "within the area covered by an agreement with another affiliate of the International [BAC]" could refer to an agreement between OCP and the BAC affiliate, or it could refer to an agreement between any employer and the BAC affiliate. The *Driscoll* court found it unambiguously means the former, while plaintiffs argue that it unambiguously means the latter. Or, the reference in the first sentence to "any work specified in this agreement" could refer to work to be performed by employees covered by the Ohio BAC Agreement. Certainly, the second, third, and fourth sentences specifically refer to employees covered by the agreement who are sent to work in an area outside the territorial jurisdiction of the Ohio BAC Agreement. This is consistent with the district court's reading of the clause as a whole and in the context of the express territorial limits of the Ohio BAC Agreement.

When a contractual provision is susceptible to more than one reasonable interpretation it is ambiguous and the intent of the parties to the contract may be considered. Although Wilson, the business manager for BAC Local 32 of Michigan, testified to his understanding of the clause, the only evidence of the parties' intent when entering into the Ohio BAC Agreement was the testimony of OCP's president. Townsend testified that when he signed the agreement\*196 he understood its territorial limits to be the specified counties and townships in northern Ohio. He also did not understand or intend that the Ohio BAC Agreement would bind OCP to what was essentially a national agreement with every BAC affiliate outside the northern Ohio area that had a CBA with any employer. This testimony is bolstered by the fact that although OCP was a union employer and had signed the National Carpenters CBA, it had not signed a national agreement with the International Bricklayers and Allied Craftworkers Union.

Accordingly, we affirm the district court's finding that the plaintiffs cannot rely on the Traveling Contractor clause in the Ohio BAC Agreement to bind OCP to the Michigan BAC Agreement. Even if we were to conclude otherwise, we also find that plaintiffs cannot overcome the second hurdle necessary to recover contributions-that they were entitled to contributions under the Michigan BAC Agreement.

B. Obligation to Pay Contributions

After determining that the Traveling Contractor clause did not bind OCP to the Michigan BAC Agreement, the district court also concluded that

since the defendant paid all of the ERISA benefits for all of its employees in Michigan under contract terms that they had with the carpenters' union, it [ ] certainly would be a windfall should Local 32 receive any benefits because they would not be in a position, number one, to pay any kind of benefit later on because the carpenters' union is going to do it. And certainly neither the company should be-the defendant company in this particular matter, should be put in a position where they have to pay twice, and the only benefit would be a windfall to the pension plan of Local 32 and their trustees. Also, there would be no benefit to the employees.

**\*\*8** The whole scheme of ERISA and the reason

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00131-GK    Document 35-12    Filed 02/06/2008    Page 8 of 9

48 Fed.Appx. 188                                                                                                          Page 7
48 Fed.Appx. 188, 2002 WL 31245970 (C.A.6 (Mich.)), 29 Employee Benefits Cas. 1948
**(Cite as: 48 Fed.Appx. 188)**

for ERISA was to ensure that ... employers will pay the benefits and that the employees can take advantage of it. In this case it would be a useless kind of exercise because they've already been paid. The carpenters who did the work ... are going to get their benefit contribution added to it.

The Court has some major concerns in this particular case. The Court believes essentially [that] the fund and its trustees used this case as a jurisdictional dispute. And I think to some extent they have to reexamine their fiduciary duties. That the union and its obligations to its members is much different than the fund and its trustees to exercise discretion. These kinds of cases cannot be used for jurisdictional disputes or anything of that nature.

Plaintiffs maintain that OCP's payment of contributions to the carpenters union funds cannot excuse OCP's breach of the agreement to contribute to the bricklayers funds for all hours of covered work. While we agree that several of plaintiffs' criticisms of the court's comments have merit, we are persuaded that this situation presents a more difficult question than is suggested by plaintiffs' arguments. As we see it, it is not the possible double payment or the concern over a windfall that is the heart of the issue, but rather that the work was performed under a CBA with another union claiming jurisdiction over the work and under which contributions were made to the associated employee benefit funds.

Plaintiffs rely principally on the general proposition that, as indicated earlier, ERISA funds seeking contributions under § 515 are not subject to traditional contract defenses. Consistent with this proposition, courts have held that the mere fact that an award of benefits could cause an employer to "pay double" would not be *197 sufficient to relieve the employer of its contractual obligation to make contributions to the ERISA funds. See Brogan v. Swanson Painting Co., 682 F.2d 807, 809-10 (9th Cir.1982) (cash payments to nonunion employees in an amount equal to the contributions did not itself excuse the obligation to contribute to the trust funds); O'Hare v. Gen. Marine Transp. Corp., 740 F.2d 160, 170 (2d Cir.1984) (purchase of equivalent health care insurance for employees did not excuse failure to contribute to funds). We are not convinced that this case is similar to either Brogan or O'Hare, or that the protection of § 515 should be extended to this situation, even though one unreported district court decision relied on by plaintiffs concluded otherwise. See Trustees of the BAC, Local 5 New York Retirement, Welfare, Apprenticeship Training and Journeymen Upgrading and Labor-Management Coalition Funds and BAC Local 5 v. Plaster Master, Inc., No. 99-5194 (S.D.N.Y. filed Jan. 9, 2001) (unreported decision) (citing Brogan and rejecting defense that contributions were made to a competing union).

In further support of their position, plaintiffs rely on Hutter Construction Co. v. International Union of Operating Engineers, 862 F.2d 641 (7th Cir.1988), as representing an analogous conflict between the competing jurisdictional claims of two unions. In Hutter, the court was asked to affirm an arbitrator's decision awarding damages to the operators union for breach of the subcontracting provisions in its CBA with Hutter despite the fact that the NLRB had awarded the work to the laborers union. The Seventh Circuit concluded that the arbitrator's award and the NLRB decision did not conflict because there was a distinction between seeking the work and seeking payment for the work. In a footnote, the court stated: "We recognize that Hutter will now pay two unions for work that was performed by one. This unfortunate result, however, is solely attributable to Hutter's decision to enter into conflicting collective bargaining agreements." Id. at 645 n. 16.Plaintiffs argue that OCP's predicament likewise results from its decision to enter into conflicting agreements. In Hutter, however, the conflict was between a determination on the merits that the employer breached the CBA with one union and a finding by the NLRB that the other union had a superior right to the work. Here, neither has actually been determined.

**\*\*9** More importantly, to the extent that the rationale in Hutter may apply here, there is a split among the circuits that have addressed the dilemma presented in Hutter. While the Seventh and Ninth Circuits adhere to the distinction between seeking the work and seeking payment for the work, the First and Third Circuits have rejected such a distinction as "ephemeral" and held that an employer is not liable in damages to the disappointed union when it acts in accordance with an NLRB ruling resolving the jurisdictional dispute. See T. Equip. Corp. v. Mass. Laborers' Dist. Council, 166 F.3d 11 (1st Cir.1999); Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n v. NLRB, 1 F.3d 1419 (3d Cir.1993). This court has not specifically addressed the distinction drawn in Hutter, but has rejected a claim for damages for breach of contract by one union when the NLRB

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

resolved the jurisdictional dispute in favor of another union. See *Int'l Union, United Auto., Aerospace and Agric. Implement Workers (UAW) and its Local 1519 v. Rockwell Int'l Corp.*, 619 F.2d 580, 584-85 (6th Cir.1980) (interpreting *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964)). *Rockwell* suggests that this circuit would not adopt the distinction made by the court in *Hutter*.

Finally, we are sympathetic to the district court's concern about the use of *198 ERISA to press a jurisdictional dispute over the assignment of T-M-T work. It is undisputed that both the carpenters and bricklayers CBAs expressly include T-M-T work as covered work. Emphasizing their role as fiduciaries for the funds, plaintiffs distance themselves from any claim by Local 32 that it had a right to the work. Even so, the real question is whether plaintiffs could demonstrate a contractual obligation to make contributions to the bricklayers funds when the carpenters union agreements purported to cover the same work, the work was assigned to employees covered by the carpenters union agreements and contributions were made in full to the carpenters union funds.

C.A.6 (Mich.),2002.
Trustees of B.A.C. Local 32 Insurance Fund v. Ohio Ceiling and Partition Co., Inc.
48 Fed.Appx. 188, 2002 WL 31245970 (C.A.6 (Mich.)), 29 Employee Benefits Cas. 1948

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.