## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND          )
ALLIED TRADES INDUSTRY              )
PENSION FUND,                       )
                   Plaintiff,       )          Civil Action No. 06-131 (GK)
                                    )          **Next-Scheduled Court Deadline**
                                    )          **Pretrial Conference**
v.                                  )
                                    )
MIDWEST DRYWALL CO., INC.,          )
                                    )
                   Defendant.       )

### OPPOSITION OF PLAINTIFF PENSION FUND TO DEFENDANT
### MIDWEST DRYWALL'S MOTION FOR SUMMARY JUDGMENT

Richard B. Sigmond
(I.D. No. 446969)
Kent Cprek, Esquire
(I.D. No. 478231)
Jennings Sigmond, P.C.
The Penn Mutual Towers
510 Walnut Street
Independence Square
Philadelphia, PA  19106-3683
(215) 351-0609/0615

Joseph E. Kolick, Jr.
(I.D. No. 292979)
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2253

Date:  February 7, 2008              *Attorneys for Plaintiff*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

STATEMENT OF THE CASE........................................................................................2

I.    THE PENSION FUND'S CLAIMS ....................................................................2

II.   THE MATERIAL UNDISPUTED FACTS.........................................................3

III.  THE DISPUTED FACTS ...................................................................................5

ARGUMENT.................................................................................................................7

I.    MIDWEST DRYWALL'S LABOR LAW DEFENSES ARE NOT
      COGNIZABLE UNDER ERISA AND, IN ANY EVENT, ARE
      WITHOUT MERIT ............................................................................................7

      A.    Midwest Drywall's Labor Law Defenses Are Not Cognizable In An
            Action Under Section 515 Of ERISA Because They Go Merely To  The
            Formation Of The Contract...................................................................7

      B.    The National Labor Relations Board Had Exclusive Jurisdiction To
            Decide Midwest Drywall's Unfair Labor Practice Claims.....................10

      C.    The Out-of-Area Agreement Is A Permissible Construction Industry
            Pre-Hire Agreement ............................................................................12

      D.    Midwest Drywall's Remaining Illegality Arguments Are Without Merit.............15

II.   THE OUT-OF-AREA CLAUSE UNAMBIGUOUSLY REQUIRES
      BENEFIT FUND CONTRIBUTIONS FOR OUT-OF-AREA WORK ............16

III.  SECTION 515 PRECLUDES MIDWEST DRYWALL'S RELIANCE
      ON THE UNION'S ALLEGED ORAL REPRESENTATIONS .......................18

IV.   THE PENSION FUND IS ENTITLED TO CONTRIBUTIONS BASED
      ON MIDWEST DRYWALL'S BREACH OF SUBCONTRACTING
      PROVISIONS ...................................................................................................19

V.    THE PENSION FUND IS THE AUTHORIZED COLLECTION AGENT
      FOR THE ANCILLARY FUNDS.....................................................................20

CONCLUSION............................................................................................................20

i

# TABLE OF AUTHORITIES

Page

Cases

*Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees
    of America v. Lockridge*, 403 U.S. 274 (1971) ........................................10

*Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310 (2d Cir.), *cert. denied*, 498
    U.S. 982 (1990) ........................................18

*Berry v. Garza*, 919 F.2d 87 (8th Cir. 1990) ........................................9

*Bituminous Coal Operators' Ass'n v. Connors*, 867 F.2d 625 (D.C. Cir. 1989) ........................8, 9, 18

*Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148
    (7th Cir. 1989) ........................................8, 9, 10, 18

*Donald Schriver, Inc. v. NLRB*, 635 F.2d 859 (D.C. Cir. 1980) ........................................20

*Flynn v. Beeler Barney Assocs. Masonry Contractors, Inc.*, No. Civ.A.02-1411, 2004 WL
    3712630 (D.D.C. Aug. 10, 2004) ........................................2

*Flynn v. Dick Corp.*, 481 F.3d 824 (D.C. Cir. 2007) ........................................ *passim*

*Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distribs.*, 689 F.2d
    1339 (9th Cir. 1982) ........................................12

*Harris & Ruth Painting Contracting, Inc. v. Painters & Tapers Local Union 487*, No.
    Civ. S-96-1030 (E.D. Cal. Mar. 21, 1997) ........................................2

*Int'l Bhd. of Painters & Allied Trades Union & Indus. Pension Fund v. Darnell Painting
    Co.*, No. 97-0368 (PLF) (D.D.C. Sept. 29, 2000) ........................................2, 17

*Int'l Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731 (1961) ........................................13

*J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Local Union 1*, 398
    F.3d 967 (7th Cir. 2005) ........................................9

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ........................................11

*Lewis v. Benedict Coal Corp.*, 361 U.S. 459 (1960) ........................................9

*Local Union No. 36, Sheet Metal Workers' Int'l Ass'n v. Atlas Air Conditioning Co.*, 926
    F.2d 770 (8th Cir. 1991) ........................................2

ii

*M.R.S. Enters., Inc. v. Sheet Metal Workers' Int'l Ass'n, Local 40*, 429 F. Supp. 2d 72 (D.D.C. 2006) ...................................................................................................................13

*Martin v. Garman Constr. Co.*, 945 F.2d 1000 (7th Cir. 1991), *cert. denied*, 502 U.S. 1122 (1992)...................................................................................................................9

*McKinstry Co. v. Sheet Metal Workers' Int'l. Ass'n, Local Union No. 16*, 859 F.2d 1382 (9th Cir. 1988)..................................................................................................................2

*Mo-Kan Teamsters Pension Fund v. Creason*, 716 F.2d 772 (10th Cir. 1983), *cert. denied*, 464 U.S. 1045 (1984) ...................................................................................9, 11, 12

*N.Y. State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc.*, 382 F.3d 272 (2d Cir. 2004)..........................................................................................8, 18

*San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) ...................................10, 11

*Trs. of the Colo. Tile, Marble & Terrazzo Workers Pension Fund v. Wilkinson & Co.*, 134 F.3d 383 (table) (10th Cir. 1998) .....................................................................................2

*Trs. of Glaziers, Architectural Metal & Glass Workers Local Union No. 27 Welfare & Pension Funds v. Gibson*, No. 03-2546, 2004 WL 868678 (7th Cir. Apr. 20, 2004).............17

*Trs. of Nat'l Automatic Sprinkler Indus. Pension Fund v. Fairfield County Sprinkler Co.*, 243 F.3d 112 (2d Cir. 2001)...........................................................................................15

*Truck Drivers & Helpers, Local Union 568 v. NLRB*, 379 F.2d 137 (D.C. Cir. 1967)................16

*W. R. Grace & Co. v. Local 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757 (1983)..............................................................................17

Administrative Decisions

*Howell Insulation Co.*, 311 N.L.R.B. 1355 91993) ...............................................................14, 16

*John Deklewa*, 282 N.L.R.B. 1375 (1987), *enforced*, 843 F.2d 770 (3d Cir.), *cert. denied*, 488 U.S. 889 (1988)...................................................................................................13, 16

Statutes

29 U.S.C. § 158(a)(1)...........................................................................................................12

29 U.S.C. § 158(a)(2)...........................................................................................................12

29 U.S.C. § 158(a)(5))..........................................................................................................13

iii

DSMDB-2390130

29 U.S.C. § 158(b)(1)(A) .................................................................................12, 13

29 U.S.C. § 158(b)(3) ...........................................................................................13

29 U.S.C. § 158(f) ........................................................................................ *passim*

29 U.S.C. § 185 .......................................................................................2, 7, 9, 12

29 U.S.C. § 186 ........................................................................................2, 10, 15

29 U.S.C. § 1145 .......................................................................................... *passim*

iv

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, | ) ) ) | |
| Plaintiff, | ) ) ) ) | Civil Action No. 06-131 (GK) **Next-Scheduled Court Deadline Pretrial Conference** |
| v. | ) ) | |
| MIDWEST DRYWALL CO., INC., | ) ) | |
| Defendant. | ) | |

**OPPOSITION OF PLAINTIFF PENSION FUND TO DEFENDANT
MIDWEST DRYWALL'S MOTION FOR SUMMARY JUDGMENT**

Under Section 515 of ERISA "an employee benefit plan is analogous to a holder in due course" and therefore, "defenses available to an employer attempting to avoid contributing to a benefit plan are ordinarily limited to claims that the agreement allegedly obligating the employer to pay benefits is either invalid or does not apply to the employer." *See Flynn v. Dick Corp.*, 481 F.3d 824, 829 (D.C. Cir. 2007) ("*Dick Corp.*"). Plaintiff Pension Fund claims that the "out-of-area" clause of Midwest Drywall's collective bargaining agreement with a Nevada union requires it to make contributions to the Pension Fund for work performed outside Nevada in the amounts set forth in collective bargaining agreements between sister local unions and employers in the area where the work is performed. Midwest Drywall asserts that: 1) the out-of-area clause of its labor agreement was entered into in violation of the National Labor Relations Act and, therefore, is invalid, and 2) the clause does not require contributions unless Midwest Drywall signs the sister union's collective bargaining agreement.

Midwest Drywall's position should be rejected because out-of-area clauses, which are routine in the construction industry, consistently have been enforced by the courts. *See, e.g.*, *Dick Corp.*, 481 F.3d at 831 ("the . . . traveling contractor's clause binds Dick Corporation to a

CBA in force at a 'foreign' jobsite even if the Company is not a signatory thereto"); *id.* at 831-33

(clause does not violate Section 302 of the Labor Management Relations Act, 29 U.S.C. § 186);

*Trs. of the Colo. Tile, Marble & Terrazzo Workers Pension Fund v. Wilkinson & Co.*, 134 F.3d

383 (table), 1998 WL 43172, at *22 (10th Cir. 1998); *Local Union No. 36, Sheet Metal Workers'*

*Int'l Ass'n v. Atlas Air Conditioning Co.*, 926 F.2d 770, 772 (8th Cir. 1991); *McKinstry Co. v.*

*Sheet Metal Workers' Int'l Ass'n, Local Union No. 16*, 859 F.2d 1382, 1386 (9th Cir. 1988);

*Flynn v. Beeler Barney Assocs. Masonry Contractors, Inc.*, No. Civ.A.02-1411, 2004 WL

3712630, at *5 (D.D.C. Aug. 10, 2004).  Moreover, while differently worded clauses, negotiated

by other construction unions, have been found ambiguous and, sometimes, have been construed

to not apply unless the employer has signed a separate contract with the "foreign" local union,

this particular clause (used by affiliates of the International Union of Painters and Allied Trades),

has been construed to unambiguously require signatory employers to make benefit contributions

for out-of-area work irrespective of whether they have signed an agreement with the foreign

local union.  *See Int'l Bhd. of Painters & Allied Trades Union & Indus. Pension Fund v. Darnell*

*Painting Co.*, No. 97-0368 (PLF) (D.D.C. Sept. 29, 2000) ("*Darnell Painting*") (enforcing out-

of-area clause in favor of Plaintiff fund) (attached hereto as Exhibit 1); *Harris & Ruth Painting*

*Contracting, Inc. v. Painters & Tapers Local Union 487*, No. Civ. S-96-1030 (WBS/JFM) (E.D.

Cal. Mar. 21, 1997) (Pl. Ex. 15).  Accordingly, Midwest Drywall's motion should be denied.

## STATEMENT OF THE CASE

### I.    THE PENSION FUND'S CLAIMS

The Pension Fund asserts claims for contributions owed it and other benefit funds

("the Ancillary Funds") for which it serves as collection agent.  The claims are brought under

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and under Section 515 of

the Employee Retirement Income Security Act ("ERISA"), which provides that:

2

> Every employer who is obligated to make contributions to a
> multiemployer plan under the terms of the plan or under the terms of a
> collectively bargained agreement shall, to the extent not inconsistent with
> law, make such contributions in accordance with the terms and conditions
> of such plan or such agreement.

29 U.S.C. § 1145.

## II.    THE MATERIAL UNDISPUTED FACTS[1]

The only material facts are few and simple. Since April 1998, Midwest Drywall

admittedly was, and is, a party to successive collective bargaining agreements with Painters and

Allied Trades District Council 15 and Local Union 159 (collectively, "the Union").[2] *See* Nienke

Decl. ¶¶ 5, 28, 29; Smirk Decl. ¶ 5, Pl. Exs. 5(a)-(d). The current agreement covers the period

July 1, 2007 through June 30, 2011. *See* Smirk Decl. ¶ 5; Pl. Ex. 5(d). Each agreement covered

painting and drywall taping work performed by Midwest Drywall employees, and provided for

the payment of defined wages and benefits for work performed within the "area jurisdiction,"

which was defined as those counties within the State of Nevada within the jurisdiction of Local

Union 159. *See* Pl. Exs. 5(a)-(d). Each agreement also contained an out-of-area" clause that

provided that:

> The Employer party hereto shall, when engaged in work outside the
> geographic jurisdiction of the Union party to the agreement, comply with
> all lawful clauses of the collective bargaining agreement in effect in said
> other geographic jurisdiction and executed by the employers of the

---

[1]    Record citations are to the Declaration of Steven A. Nienke ("Nienke Decl.") filed by Midwest Drywall in support of its motion for summary judgment; the exhibits filed by Midwest Drywall in support of its motion for summary judgment ("Def. Ex."); the Declarations of Gary Meyers ("Meyers Decl."), Robert Moore ("Moore Decl."), and John Smirk ("Smirk Decl.") filed by the Pension Fund in support of its motion for summary judgment; the exhibits filed in support of the Pension Fund's motion for summary judgment ("Pl. Ex."); and the additional Declaration of John Smirk ("Second Smirk Decl.") attached as Exhibit 2 to this Opposition. Citations to Midwest Drywall's memorandum of points and authorities in support of its motion for summary judgment are abbreviated ("Def. Mem."), and those to the Pension Fund's memorandum in support of its motion for summary judgment are abbreviated ("Pl. Mem.").

[2]    District Council 15 is the parent union of Local Union 159. *See* Smirk Decl. ¶ 1. The parent union of District Council 15 is the International Union of Painters and Allied Trades, AFL-CIO, CLC ("IUPAT"). *Id.* ¶ 4; Def. Ex. 7.

DSMDB-2387594

> industry and the affiliated Local Unions in that jurisdiction, including but
> not limited to, the wages, hours, working condition, fringe benefits, and
> procedures for the settlement of grievances set forth therein . . . .

*See* Pl. Exs. 5(a)-(d), Art. 4, § 1(b).

In early 2000, Local Union 159 filed a grievance alleging non-compliance by Midwest Drywall with the out-of-area clause. *See* Nienke Decl. ¶ 19; Smirk Decl. ¶ 6. A hearing was held before the Joint Trade Board, the arbitration panel empowered to resolve disputes concerning the interpretation and application of the collective bargaining agreement. *See* Nienke Decl. ¶ 20; Pl. Ex. 5(a), Art. 25. The Joint Trade Board sustained the grievance, holding that: 1) "Midwest was required by the Master Agreement, as a signatory employer, to pay its covered employees (painters and tapers) wages required by the Other Jurisdiction Agreement, as well as contributions to the fringe benefit trust funds required by the Other Jurisdiction Agreement"; 2) "Midwest conceded that it has not entered into or become bound by the Other Jurisdiction Agreement of IBPAT Local Union No. 109 ("Local 109"), nor has Midwest paid required wages and benefits to, or in behalf of, its painters and tapers for covered work of the Projects"; and 3) "Midwest is found and concluded to be in continuing violation of the 50-50 Clause of the Master Agreement, and that a final determination of damages for lost wages and benefits may be determined at a future hearing by the Board, unless Midwest and the Union are able to resolve this violation within a reasonable period after the date of this Decision and Order." *See* Smirk Decl. ¶ 7; Pl. Ex. 9; Def. Ex. 13.

On February 8, 2007, Midwest Drywall and the Union executed a memorandum of understanding that provided as follows:

> This Memorandum of Understanding between International Union of
> Painters and Allied Trades, District Council 15 (the Union) and Midwest
> Drywall (the Employer) constitutes a waiver of Article 4 of the current
> Painters and Decorators Master Agreement, to which the Employer is
> signatory. The parties agree that this Memorandum shall be in effect for
> the current Agreement, for the duration of the Agreement.

4

*See* Nienke Decl. ¶ 27; Smirk Decl. 8; Pl. Ex. 10.  The out-of-area clause was part of Article 4 of the Master Agreement referred to in the memorandum of understanding (*see* Pl. Ex. 5(c), Art. 4, § 1(b)), and the Master Agreement expired on June 30, 2007 (*id.* at 45).

Notwithstanding the out-of-area clause, an audit conducted by the Pension Fund's auditors revealed that Midwest Drywall did not make pension contributions on all out-of-area work performed by it during the period of January 1, 2001 through June 30, 2004.  *See* Moore Decl. ¶¶ 4, 8; Pl. Ex. 13.  Midwest Drywall admits that, except where it has signed agreements with other local unions affiliated with IUPAT, it did not make contributions to the Pension Fund with respect to out-of-area work performed from July 1, 2004 through the present, insisting that it would be "illegal" for it to do so.  *See* Def. Mem. at 2, 12.

## III.    **THE DISPUTED FACTS**

For the reasons stated in Section III of the Argument, *infra*, the Pension Fund does not believe the remaining facts proffered by Midwest Drywall in support of its motion for summary judgment are material to resolution of this case.  Nonetheless, out of an abundance of caution, we highlight here the key factual assertions that the Pension Fund disputes.  In conformity with Local Rule 56.1, we also file a Statement of Genuine Issues which identifies those factual contentions made by Midwest Drywall which we dispute and indicates whether Midwest Drywall's factual contentions are not properly supported, controverted by otherwise admissible evidence proffered by the Pension Fund or both.

The Pension Fund disputes the statement at paragraph 9 of Mr. Nienke's Declaration and paragraph 10 of Midwest Drywall's Statement of Material Facts as to Which There is No Genuine Issue ("Midwest Drywall's Statement") that "Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the collective bargaining agent for Midwest Drywall's employees who work solely in locations outside the jurisdiction of

5

Painters Local 159." The out-of-area clause itself establishes the Union as the collective bargaining representative for painting and taping employees employed by Midwest Drywall in such locations. *See* Pl. Exs. 5(a)-(d), Art. 4, § 1(b). The Union is specifically authorized and instructed to seek such protection for employees working in the geographic jurisdiction of its sister local unions by Section 242 of the IUPAT Constitution. *See* Def. Ex. 7 at 152.

The Pension Fund disputes the self-serving characterization of the decision of the Joint Trade Board set forth at paragraphs 20 and 21 of Mr. Nienke's Declaration and paragraphs 21 and 22 of Midwest Drywall's Statement. Mr. Nienke's description of the findings and conclusions of the Joint Trade Board is at odds with the Decision and Order of the Joint Trade Board. *See* Pl. Ex. 9. We also dispute that Leonard Whitman made the statement attributed to him by Mr. Nienke to the effect that the Union would not enforce the decision of the Joint Trade Board. That affidavit testimony is not otherwise admissible. First, it is irrelevant because, under Section 515 of ERISA, Midwest Drywall cannot rely on oral statements made by Union representatives to avoid its written obligations to the Pension Fund. *See infra* pp. 18-19. Second, to the extent this testimony is proffered for the truth of the matter asserted by Whitman, it is inadmissible hearsay.

The Pension Fund also disputes the truth of statements contained in Midwest Drywall's Exhibits 14 and 15. The statements -- to the effect that Midwest Drywall was current in its payments of fringe benefit contributions and was complying with its collective bargaining agreement -- are not admissible. First, the exhibits are not authenticated by affidavit testimony and are inadmissible on that ground. Second, the statements in those exhibits are inadmissible hearsay made by non-parties to this litigation with no authority to speak on behalf of the Pension Fund. Third, the statements are contradicted by the Declaration of Robert E. Moore, filed as Exhibit 3 in support of the Pension Fund's motion for summary judgment.

6

The Pension Fund also disputes the contention, made in paragraph 31 of Midwest Drywall's Statement and paragraph 26 of Mr. Nienke's Declaration, that, in January 2007, an unidentified representative of Painters District Council 15 "represented to Thomas Pfundstein that the proposed Memorandum of Understanding would be re-established with the new July 1, 2007 agreement." Mr. Nienke's affidavit testimony as to what Mr. Pfundstein told him an unnamed Union representative told Mr. Pfundstein is double hearsay and, therefore, it is not admissible. Beyond that, the testimony is irrelevant because, under Section 515 of ERISA, Midwest Drywall cannot rely on oral statements made by Union representatives to avoid its written obligations to the Pension Fund. *See infra* pp. 18-19. In any event, John Smirk, the Union officer responsible for collective bargaining negotiations, has sworn the statement was not made. *See* Second Smirk Decl. ¶ 5.

Finally, the Pension Fund disputes the contention, made in paragraph 34 of Midwest Drywall's Statement and paragraph 29 of Mr. Nienke's Declaration, that, in July 2007, Mr. Smirk told Mr. Pfundstein that "he would re-issue a new Memorandum of Understanding for the new agreement." Mr. Nienke's affidavit testimony as to what Mr. Pfundstein told him that Mr. Smirk told Mr. Pfundstein is double hearsay, it is irrelevant (*see infra* pp. 18-19), and Mr. Smirk denies making the statement. *See* Second Smirk Decl. ¶ 7.

## ARGUMENT

**I.    MIDWEST DRYWALL'S LABOR LAW DEFENSES ARE NOT COGNIZABLE UNDER ERISA OR SECTION 301 AND, IN ANY EVENT, ARE WITHOUT MERIT**

### A.    Midwest Drywall's Labor Law Defenses Are Not Cognizable In An Action Under Section 515 Of ERISA Because They Go Merely To The Formation Of The Contract

Midwest Drywall's principal claim of illegality rests on the proposition that by extending contractual protection to employees working outside the normal jurisdiction of the

DSMDB-2387594

Union, Midwest Drywall and the Union violated the unfair labor provisions of the National

Labor Relations Act ("the Act"), 29 U.S.C. §§ 151 *et seq.* Midwest Drywall, however misses an

important distinction. Under well-settled law, unlawful or improper conduct in the formation of

a contract is no defense to a Section 515 claim brought by a multiemployer benefit fund. Rather,

in a Section 515 case, the only valid illegality defense is a claim that making the contributions

required by the contract would be "inconsistent with law." Thus, defenses asserting that the

Union engaged in misconduct in negotiating the agreement, *see Bituminous Coal Operators'*

*Ass'n v. Connors*, 867 F.2d 625, 634 (D.C. Cir. 1989) ("*Connors*") (employer could not defend

on the ground that union fraudulently failed to disclose that contributions required by the

collective bargaining agreement would not be deductible by the employer); that the union

promised not to enforce the contribution obligation in accordance with its terms, *see Cent. States,*

*Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149-50 (7th Cir.

1989) ("*Gerber*") (employer could not defend on the ground that union representative agreed, in

a side letter, that the union would only enforce the requirement of benefit fund contributions for

three employees); or that the union orally agreed to "cap" the hours on which benefit

contributions were required, *see N.Y. State Teamsters Conference Pension & Ret. Fund v. United*

*Parcel Serv., Inc.*, 382 F.3d 272, 281 (2d Cir. 2004) ("*United Parcel Service*"), are unavailable in

a Section 515 action as a matter of law.

Most significantly for purposes of this case, an employer may not defend on the

ground that the Union was not the majority representative of the employer's employees, and

therefore, execution of the contract was an unfair labor practice. As explained by the Tenth

Circuit:

> If Creason believed that the Union did not represent a majority of his
> employees, his proper recourse was before the NLRB. Lack of majority
> status can only be challenged in an unfair labor practice proceeding, over

8

which the NLRB has exclusive jurisdiction. It is not a valid defense to a section 301 action for accrued contractual obligations.

*See Mo-Kan Teamsters Pension Fund v. Creason*, 716 F.2d 772, 775 (10th Cir. 1983), *cert. denied*, 464 U.S. 1045 (1984) (citation omitted); *see also Gerber*, 870 F.2d at 1153 ("If the employer simply points to a defect in [the contract's] formation – such as fraud in the inducement, oral promises to disregard the text, *or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law* – it still must keep its promise to the pension plans.") (emphasis added); *Martin v. Garman Constr. Co.*, 945 F.2d 1000, 1005 (7th Cir. 1991), *cert. denied*, 502 U.S. 1122 (1992) ("[A]s we held in *Central States*, many of the defenses available under the NLRA or under traditional contract law do not fly under ERISA. The one-man [unit] rule may remain valid for purposes of unfair labor practice proceedings while counting for naught when the contract is cognizable under ERISA.");[3] *Berry v. Garza*, 919 F.2d 87, 89-90 (8th Cir. 1990) ("Because Garza knowingly entered into a facially valid collective bargaining agreement with the Union, he is now estopped from raising the defense of lack of majority status to avoid his obligation to the Fund.").

As these holdings make plain, a pension plan is "'not a typical third party beneficiary,'" subject to any defense that could be raised against the signatory union. *See Connors*, 867 F.2d at 632 (quoting *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 468 (1960)). Rather, "trustees of a pension fund are in a position *superior to that of the union* in enforcing the collective bargaining agreement against the employer." *Id.* at 633-34 (emphasis added). This

---

[3]    In *Martin*, the National Labor Relations Board had held that the employer was free to repudiate a three-year pre-hire agreement when, after two months of the contract term, its workforce had shrunk to one employee. Nonetheless, the Seventh Circuit held that the employer was liable under Section 515 of ERISA to make contributions for the entire three-year term of the agreement. Subsequently, in *J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Local Union 1*, 398 F.3d 967 (7th Cir. 2005), the Court held that a union could not enforce a collective bargaining agreement that had been repudiated under the Board's one-man unit rule, distinguishing *Martin* on the ground that the decision there "rested on the statutory language and unique considerations present in the ERISA context," and those considerations did not apply where the claim was not brought under Section 515 of ERISA. *Id.* at 977.

9

special status is the product of a conscious Congressional choice.  As explained by Judge

Easterbrook, Congress was concerned that simple collection actions not be converted into

"lengthy, costly, and complex litigation concerning claims and defenses unrelated to the

employer's promise and the plans' entitlement to the contributions."  *See Gerber*, 870 F.2d at

1153 (quoting Statement of Congressman Thompson, the House Manager of the 1980

amendments to ERISA that added Section 515, 126 Cong. Rec. 23039).  To prevent such side

issues from imperiling the funding of multi-employer funds "Federal pension law must permit

trustees of plans to recover delinquent contributions efficaciously, and without regard to issues

which might arise under labor-management relations law – other than 29 U.S.C. § 186."  *Id.*

Midwest Drywall does not mount a defense under 29 U.S.C § 186 (no doubt because

the D.C. Circuit's holding in *Dick Corp.* would make any such defense futile).  Rather, it raises a

host of claims under labor-management relations law.  Even were those defenses viable as a

matter of labor law against the Union (which, as shown below, they would not be), they are not

available in this ERISA action.  Rather, ERISA Section 515 requires Midwest Drywall to honor

its written promise to contribute to the Pension Fund on out-of-area painting and taping work.

### B.    The National Labor Relations Board Has Exclusive Jurisdiction To Decide Midwest Drywall's Unfair Labor Practice Claims

Even without the passage of Section 515 of ERISA, Midwest Drywall's unfair labor

practice defenses could not be heard by this Court.  Rather, the National Labor Relations Board

has exclusive jurisdiction to construe the Act and resolve unfair practice charges.  In *San Diego

Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959) ("*Garmon*"), the Court held that

both state and federal courts lack jurisdiction to remedy conduct that is arguably protected or

prohibited by the Act.  In *Amalgamated Ass'n of Street, Electric Railway & Motor Coach

Employees of America v. Lockridge*, 403 U.S. 274 (1971), the Court made clear that the *Garmon*

10

DSMDB-2387594

principle precludes court jurisdiction over breach of contract claims where the claim rests on a

term said to be implied in labor law, rather than on the terms of the agreement itself.

> The legislative determination that courts are fully competent to resolve
> labor relations disputes through focusing on the terms of a collective-
> bargaining agreement cannot be said to sweep within it the same
> conclusion with regard to the terms of union-employee contracts that are
> said to be implied in law. That is why the principle of *Smith v. Evening
> News* [371 U.S. 195 (1962)] is applicable only to those disputes that are
> governed by the terms of the collective-bargaining agreement itself.

*Id.* at 300-01.

Here, of course, Midwest Drywall's illegality defense rests squarely on the claim that

the out-of-area agreement violates the Act. Therefore, irrespective of the Congressional decision

to preclude such defenses where the claim is brought by a multiemployer pension fund under

Section 515, the defense would be barred by the *Garmon* principle.

The narrow exception to *Garmon* carved out in *Kaiser Steel Corp. v. Mullins*, 455

U.S. 72 (1982) ("*Mullins*"), does not apply. In *Mullins*, the Court merely permitted a defense

where the contract clause that compelled payments itself violated Section 8(e) of the Act. In

reaching this conclusion, the Court emphasized that: "Section 8(e) provides not only that 'it

shall be an unfair labor practice' to enter an agreement containing a hot-cargo clause, but also

that 'any contract or agreement entered into heretofore or hereafter containing [a hot cargo

clause] shall be to such extent unenforcible and void.'" *Id.* at 84. Therefore, "[w]hile only the

Board may provide affirmative remedies for unfair labor practices, a court may not enforce a

contract provision which violates § 8(e)." *Id.* at 86.

Subsequent decisions have confined the *Mullins* exception so as to allow only Section

8(e) defenses. Contentions that other unfair labor practices make a labor agreement voidable,

must be presented to the Board. *See Mo-Kan Teamsters Pension Fund*, 716 F.2d at 775 ("Lack

of majority status can only be challenged in an unfair labor practice proceeding, over which the

11

DSMDB-2387594

[Board] has exclusive jurisdiction.  It is not a valid defense to a section 301 action for enforcement of accrued contractual obligations." (citation omitted)).  As the Ninth Circuit explained:

> In the instant case, the Employers are not seeking to interpret the terms of a collective bargaining agreement, but rather to avoid the entire agreement.  The thrust of their contention is that both the Employers and the Union committed an unfair labor practice by recognizing the Union as the exclusive bargaining agent and entering into a collective bargaining agreement when the Union did not represent the majority of the employees. . . .  This is quite distinct from the situation in *Mullins*, where the Court held that the district court could properly interpret a provision of a contract to determine if it was void under Section 8(e) of the NLRA.

*See Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distribs.*, 689 F.2d 1339, 1343-44 (9th Cir. 1982).

Midwest Drywall does not claim the clause requiring pension contributions violates Section 8(e).  Rather, like the employers in *Mo-Kan Teamsters Pension Fund* and *Custom Auto Glass Distributors*, it claims that it and the Union committed an unfair labor practice by extending the contract to out-of-area employees who had not selected the Union as their bargaining representative.  That claim can only be adjudicated by the Board.

### C.    The Out-of-Area Agreement Is A Permissible Construction Industry Pre-Hire Agreement

Midwest Drywall's contention (Def. Mem. at 13-19) that the out-of-area clause violates Section 8(a)(1) and (2) and 8(b)(1)(A) of the Act is contrary to the plain language of Section 8(f) of the Act, which provides that:

> It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members . . . because  (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title Act prior to the making of such agreement . . . .

12

DSMDB-2387594

29 U.S.C. § 158(f). As the Board explained in *John Deklewa & Sons*, Congress enacted Section 8(f) for the express purpose of permitting construction employers and unions to enter into contracts "without initial reference to the union's actual majority status." 282 N.L.R.B. 1375, 1380 (1987), *enforced*, 843 F.2d 770 (3d Cir.), *cert. denied*, 488 U.S. 889 (1988). This exception to the normal rule was designed to accommodate the sporadic nature of construction employment, where many employees work for one employer for the duration of a given project, are laid off, and seek employment (often through the union hiring hall) with another employer, on another project. *Id.* Employers find it advantageous to enter "pre-hire" contracts with unions to obtain access to the pool of skilled labor available through the union hiring hall and also to know their labor costs in advance of bidding work. *Id.*; *see also M.R.S. Enters., Inc. v. Sheet Metal Workers' Int'l Ass'n, Local 40*, 429 F. Supp. 2d 72, 75 n.2 (D.D.C. 2006).

Thus, while a non-construction employer violates Sections 8(a)(1) and (2) of the Act by entering into a collective bargaining agreement without proof that a majority of its employees want the union to speak for them (and the union correspondingly, violates Section 8(b)(1)(A) of the Act), *see Int'l Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731 (1961), a construction employer and a construction union are free to execute a "pre-hire" agreement. *See Deklewa*, 282 N.L.R.B. at 1380. In such circumstances, the parties' negotiations are not regulated by the duty to bargain in good faith that is imposed on employers and majority unions. *See* 29 U.S.C. § 158(a)(5), (b)(3). Rather, either party is free to refuse to negotiate, to insist that it will only negotiate for some employees, or to cover all employees wherever employed.

Given the clear authorization of Section 8(f) of the Act, it is not surprising that, despite the prevalence of out-of-area agreements in the construction industry (*see* cases cited *infra* p. 2), Midwest Drywall cannot cite a single case, from either the Board or the courts,

DSMDB-2387594

holding or suggesting that the Act renders such agreements unlawful.[4]  Far from supporting

Midwest Drywall's novel argument, the one Board case Midwest Drywall does cite concerning

an out-of-area agreement, *Howell Insulation Co.*, 311 N.L.R.B. 1355 (1993), indicates that such

agreements are enforceable contracts.  The issue presented in *Howell Insulation* was whether the

"foreign" local union had a statutory right to receive information relevant to a grievance alleging

a breach of the out-of-area clause of the "home" local's collective bargaining agreement.  The

Board held that it did not, reasoning that "[t]he duty to supply requested information arises from

a *statutory* bargaining obligation."  *Id.* at 1356 (emphasis added).  The duty, however, runs only

to the to the "the *statutory* representative of its employees," and does not require that information be

supplied to "a union that is not the *statutory* representative of the employer's employees."  *Id.*

(emphasis added).  Accordingly, as the foreign local union was "neither signatory to an 8(f)

agreement" nor "the 9(a) representative of the Respondent's employees," it was not entitled to

rights that flowed from the statutory mandate to bargain in good faith.  *Id.*

Nonetheless, the Board made clear that the out-of-area clause was enforceable under

contract law.  It explained that:

> The Respondent's relationships with outside locals may, by virtue of
> article 1 of Local 78's collective-bargaining agreement [article 1 was the
> out-of-area clause and Local 78 was the "home" local], confer certain
> contractual rights on those locals as third party beneficiaries to the
> Respondent's collective-bargaining agreement with Local 78.  Such a
> relationship does not, however, confer *statutory* rights on those outside
> locals.

*Id.*

---

[4]      Given its contention that the out-of-area clause is illegal under the Act, it is at first blush
curious that Midwest Drywall has not asked the Board, the administrative agency that has
primary jurisdiction to interpret the Act, to invalidate the clause.  The most likely explanation for
this tactical choice is that Midwest Drywall understands that the Board, with its wealth of
experience in construing the Act, would give its argument short shrift.

DSMDB-2387594

Here, the Pension Fund does not seek to enforce an obligation to bargain in good faith under the Act. Rather, as a third-party beneficiary of the agreements between the Union and Midwest Drywall, it seeks, under Section 515 of ERISA, to enforce Midwest Drywall's written promise to make pension contributions on out-of-area work. As that written promise is not "inconsistent with law," ERISA compels its enforcement. *See Dick Corp.*, 481 F.3d at 829.[5]

### D.    Midwest Drywall's Remaining Illegality Arguments Are Without Merit

None of Midwest Drywall's remaining illegality arguments merits extended discussion. First, Midwest Drywall baldly asserts that requiring it to observe the terms of a collective bargaining agreement with out-of-area local unions somehow violates federal labor law. *See* Def. Mem. at 19. But Midwest Drywall does not identify a single federal statute it asserts has been violated. The only federal statutory provision mentioned, Section 8(d) of the Act, has no relevance whatsoever, as all it does is define the duty to bargain, and clearly does not forbid that which Section 8(f) expressly permits. Nor does the reliance on *Trustees of the National Automatic Sprinkler Industry Pension Fund v. Fairfield County Sprinkler Co.*, 243 F.3d 112 (2d Cir. 2001) or the lower court opinion in *Dick Corp.* help Midwest Drywall, as the former is inconsistent with, and the latter was reversed by, the D.C. Circuit in *Dick Corp.*

Second, the assertion that "the Pension Fund's claim in effect bars Midwest Drywall's employees right to exercise their Section 7 right to seek an election under the NLRA and/or to seek representation by another labor organization" (Def. Mem. at 22) is simply wrong. Section 8(f) expressly provides that a pre-hire agreement does not bar an election petition. Therefore, if any "foreign" painters and tapers wish to be unrepresented, or to be represented by

---

[5]    While a few courts have refused to enforce out-of-area clauses, those decisions either rest on a construction of Section 302 of the Taft-Hartley Act, 29 U.S.C § 186, that has been rejected by the District of Columbia Circuit, *contrast Trs. of Nat'l Automatic Sprinkler Indus. Pension Fund v. Fairfield County Sprinkler Co.*, 243 F.3d 112 (2d Cir. 2001) *with Dick Corp.*, 481 F.3d 824, or they construe out-of-area provisions with different language than that here involved, *see* cases discussed in *Dick Corp.*, 481 F.3d at 830 and Pl. Mem. at 12, 13.

15

DSMDB-2387594

another union, all they need do is file a proper petition and the Board will conduct an election.
*See Deklewa*, 282 N.L.R.B. at 1380. If the majority of those voting choose another union or no union, the Board certification will trump the 8(f) out-of-area agreement. *Id.* at 1381.

Third, the suggestion that employees will somehow be deprived of their statutory right to fair representation is a red herring. That obligation is imposed by law as a corollary to a union's assumption of the role of exclusive bargaining representative. *See Truck Drivers & Helpers, Local Union 568 v. NLRB*, 379 F.2d 137, 146 (D.C. Cir. 1967). Neither the collective bargaining obligation, nor internal union rules can eliminate or vary that statutory obligation.

Finally, the suggestion that the agreement is not enforceable because the Union cannot bind other local unions also misses the point. No one argues that "foreign" local unions are bound by the District Council 15 agreement. Our contention is that Midwest Drywall is bound to make benefit contributions called for in those agreements. The agreement could have just as easily used the out-of-area rates set by the Davis-Bacon Act, any other benchmark, or the agreement could have expressly set forth the rates in each of the foreign areas. Instead, for efficiency, the parties agreed to incorporate the sister-union rates into the agreement through the out-of-area clause. That the parties chose to use the agreements negotiated by the Union's sister local unions does not require those unions to be parties to the agreement. Rather, like the Pension Fund, the foreign local unions are third-party beneficiaries. *See Howell Insulation*, 311 N.L.R.B. at 1356.

## II.    THE OUT-OF-AREA CLAUSE UNAMBIGUOUSLY REQUIRES BENEFIT FUND CONTRIBUTIONS FOR OUT-OF-AREA WORK

We demonstrate at pages 11-16 of the Pension Fund's memorandum in support of its motion for summary judgment that the out-of-area clause unambiguously requires contributions for out-of-area work. Rather than burden the record with repetition, we simply incorporate that argument. We add only three brief points. First, Judge Friedman also has found that the painters

16

out-of-area clause unambiguously requires such contributions.  *See Darnell Painting*, slip op.

at 7.

Second, at page 27 of its memorandum, Midwest Drywall asks rhetorically "what if

the work performed by Midwest Drywall's employees in a foreign jurisdiction, such as drywall

finishing and taping, is covered by a collective bargaining agreement between Midwest Drywall

and another craft union, such as a Carpenter Local Union?"  The obvious answer is that if

Midwest Drywall assumed mutually inconsistent contractual obligations, the party that does not

receive performance (here, the Pension Fund) is entitled to damages.  The situation is no

different than where one contracts to sell the same car to two different buyers; one gets the car

and the other gets damages.  Midwest Drywall is entitled to little sympathy if it "sold the same

car twice," as in that circumstance, "[t]he dilemma . . . was of the Company's own making.  [It]

committed itself voluntarily to two conflicting contractual obligations."  *See W. R. Grace & Co.*

*v. Local 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S.

757, 767 (1983).  As explained by Judge Posner:

> . . . if a CBA with X union directs that contributions to a designated fund
> must be made for hours worked on a job covered by the CBA, the fund
> can insist on payment even if the work is done by members of union X or
> by persons unaffiliated with any union. The Fund's claim is based on the
> terms of the CBA, not on principles of labor law. If the CBA provides that
> contributions to the Fund are to be made for glazing work, Gibson cannot
> avoid his obligations by assigning that work to nonunion members or, as
> here, members of a different union.
>
> . . . . It is unfortunate that Gibson will now have to contribute to the funds
> of two unions, but he is in a pickle that he created.

*See Trs. of Glaziers, Architectural Metal & Glass Workers Local Union No. 27 Welfare &*

*Pension Funds v. Gibson*, No. 03-2546, 2004 WL 868678, at *1-*2 (7th Cir. Apr. 20, 2004).

Third, by the time it agreed to the 2001-2004 agreement (its third consecutive

agreement with the Union), Midwest Drywall knew that the Joint Trade Board (the arbitration

DSMDB-2387594

Panel charged with interpreting the agreement) had construed the out-of area clause to require it,

when performing out-of-area work, to pay the wages and benefits required under agreements

between "foreign" local unions and employers. *See* Pl. Ex. 9; Pl. Mem at 13-14.

**III.     SECTION 515 PRECLUDES MIDWEST DRYWALL'S RELIANCE ON
           THE UNION'S ALLEGED ORAL REPRESENTATIONS**

In an action under Section 515 of ERISA, an employer may not defend on the basis of

oral statements made by the union during negotiation of the collective bargaining agreement

requiring contributions.  As the D.C. Circuit has explained:

> It is thus clear that AEC's suggestion that it should be permitted to pursue
> discovery regarding the bargaining history of the national agreement must
> also fail.  Section 515 ends our inquiry with a determination of what is
> required by the written terms of the Agreement.  Since the bargaining
> history of the National Agreement is irrelevant to the facial meaning of its
> terms, so too is the evidence sought by AEC irrelevant to any material fact
> in this action, and AEC is therefore not entitled to the discovery it seeks.

*See Connors*, 867 F.2d at 636; *see also United Parcel Service*, 382 F.3d at 280 (an employer may

not "invok[e] as a defense an oral or otherwise unwritten agreement with the union 'not to

enforce the [written] terms of the collective bargaining agreement' with respect to multiemployer

plan contributions") (quoting *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d

Cir.), *cert. denied*, 498 U.S. 982 (1990)); *Gerber*, 870 F.2d at 1149.  "If the employer simply

points to a defect in its formation – such as . . . oral promises to disregard the text . . . – it must

still keep its promise to the pension plans." *Id.* at 1153.  "This rule – like the common law parol

evidence rule – gives the employer a salutary incentive to memorialize any unwritten

understanding with the union concerning pension contributions, affords an easy way to enforce

legislative protections of negotiated rights, and assures that [pension] plans and their auditors

will not become unwilling arbitrators in disputes arising from unwritten understandings between

employers and unions." *United Parcel Service*, 382 F.2d at 280-81.

DSMDB-2387594

Accordingly, even if they were adequately supported and undisputed,[6] the claimed oral promises to not enforce the award of the Joint Trade Board, or to grant a new, written waiver of the out-of-area clause for the current agreement could not defeat the Pension Fund's Section 515 claim. If Midwest Drywall did not wish to bind itself in foreign jurisdictions, it should not have agreed to the contract. Certainly, after the 2000 Joint Trade Board decision, Midwest Drywall can make no claim that it misunderstood the import of the clause; the Joint Trade Board clearly stated that the clause obligated Midwest Drywall "to pay its covered employees (painters and tapers) wages required by the Other Jurisdiction Agreement, as well as contributions to the fringe benefit trust funds required by the Other Jurisdiction Agreement." Def. Ex. 13, at 2 ¶ 2. Yet, it thereafter signed three additional agreements containing the clause without obtaining a written waiver (other than the waiver that was effective from February 8, 2007 until June 30, 2007). In these circumstances, whatever impact the Union's conduct might have on its own ability to collect back wages for out-of-area employees, that conduct cannot bar the Pension Fund's claim under Section 515.

## IV.  THE PENSION FUND IS ENTITLED TO CONTRIBUTIONS BASED ON MIDWEST DRYWALL'S BREACH OF SUBCONTRACTING PROVISIONS

*Dick Corp.* holds that an employer who promises to perform out-of-area work under the provisions of the union agreement in effect in the area where the work is performed and then subcontracts that out-of-area work in violation of the subcontracting provisions of the foreign agreement is liable for contributions that would have been due but for the breach of the subcontracting clause. *See* 481 F.3d at 831-33  The notion that Midwest Drywall can escape its

---

[6]      As discussed *supra*, Midwest Drywall's evidence regarding District Council 15's intentions consists of inadmissible hearsay and documents that are not authenticated. Accordingly, under Rule 56(e), which requires affidavits "made on personal knowledge," which "set forth facts as would be admissible in evidence," that "evidence" cannot be used to support Midwest Drywall's motion. Beyond that, this hearsay testimony is controverted by a proper declaration. *See* Second Smirk Decl. ¶¶ 5, 7.

DSMDB-2387594

contractual commitment on the ground that the subcontracting provisions of the foreign agreement are outside the context of collective bargaining is simply nonsense. The obligation to comply with the foreign agreement arises by virtue of Midwest Drywall's collective bargaining agreement with the Union, and there can be no serious contention that that agreement does not create a collective bargaining relationship. *See Donald Schriver, Inc. v. NLRB*, 635 F.2d 859 (D.C. Cir. 1980).

**V.     THE PENSION FUND IS THE AUTHORIZED COLLECTION AGENT FOR THE ANCILLARY FUNDS**

The Declaration of Gary Meyers, Administrator of the Pension Fund, filed with the Pension Fund's motion for summary judgment, establishes that the Pension Fund is the authorized collection agent for the Ancillary Funds. *See* Meyers Decl. ¶ 5. Therefore, Midwest Drywall's contention that the Pension Fund may not collect contributions due those funds must be rejected.

**CONCLUSION**

For the foregoing reasons, Midwest Drywall's motion for summary judgment should be denied.

> BY:  /s/ Richard B. Sigmond
> Richard B. Sigmond, Esquire
> (I.D. No. 446969)
> Kent Cprek, Esquire
> (I.D. No. 478231)
> Jennings Sigmond, P.C.
> The Penn Mutual Towers
> 510 Walnut Street
> Independence Square
> Philadelphia, PA  19106-3683
> (215) 351-0609/0615

20

DSMDB-2387594

BY: /s/ Joseph E. Kolick, Jr.
Joseph E. Kolick, Jr., Esquire
(I.D. No. 292979)
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2253

Date:  February 7, 2008                    *Attorneys for Plaintiff*

DSMDB-2387594

## CERTIFICATE OF SERVICE

I, Joseph E. Kolick, Jr., state under penalty of perjury that I caused a copy of the foregoing Opposition of Plaintiff Pension Fund to Defendant Midwest Drywall's Motion for Summary Judgment and accompanying documents to be served electronically via the CM/ECF System or acceptable electronic mail and/or placed in the U.S. mail with postage for first class delivery or fax on the date set forth below addressed to:

Richard B. Sigmond, Esq.
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA  19106-3683
Telephone:  (215) 351-0609
Facsimile:  (215) 922-3524

Robert D. Overman, Esq.
Morris, Laing, Evans, Brock & Kennedy, Chtd.
300 N. Mead, Ste 200
Wichita, KS  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226

Charles F. Walters, Esq.
Seyfarth Shaw, LLP
815 Connecticut Avenue, NW, Ste. 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 282-5393

Date: February 7, 2008                    /s/ Joseph E. Kolick, Jr.
                                          Joseph E. Kolick, Jr.