**Civil Action No. 06-131 (GK)**

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



FILED

SEP 2 9 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES UNION AND INDUSTRY PENSION FUND, et al., <br><br> Plaintiffs <br><br> v. <br><br> DARNELL PAINTING COMPANY, INC. a/k/a DARNELL PAINTING, <br><br> Defendant and Third-Party Plaintiff <br><br> v. <br><br> LOCAL UNION NO. 8 BROTHERHOOD OF PAINTERS AND ALLIED TRADES, GARY, INDIANA, <br><br> and <br><br> STEPHEN J. SMITH, <br><br> Third-Party Defendants. | Civil Action No. 97-0368 (PLF) |

## MEMORANDUM OPINION AND ORDER

This is an ERISA action brought by an employee pension fund, the International Brotherhood of Painters and Allied Trades Union and Industry Pension Fund, and its trustees (jointly "IBP," the "Pension Fund" or the "Fund") against Darnell Painting Company, Inc. ("Darnell"). Under a pension plan adopted as part of a collective bargaining agreement covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.



§ 1001 *et seq.*, IBP seeks a payroll audit for the period from July 1, 1995, through August 4, 1997, costs of the audit, unpaid contributions, interest, damages, and attorneys' fees and costs.

## I. BACKGROUND

Darnell, a Toledo, Ohio corporation, is a commercial painting contractor that sought to work on the construction of a Don Pablo's Restaurant in Hobart, Indiana in July and August, 1995. Painters Local Union No. 8 ("Local 8"), a local labor union affiliated with IBP, insisted that if Darnell wanted to work on the Don Pablo's job, Darnell would have to sign the Local 8 collective bargaining agreement ("CBA") and post the required fringe benefit bond. Charles Darnell, the President of Darnell, met with Steven Smith of Local 8, discussed details of the collective bargaining agreement and signed a one page Memorandum of Agreement that bound Darnell to the terms of the Local 8 CBA and the master collective bargaining agreement between Local 8 and a larger contractors' association in Indiana.[1]

---

[1] The Memorandum of Agreement signed by Charles Darnell, for Darnell Painting, provides in part:

> THIS AGREEMENT, made and entered into in Lake County, Indiana by and between Darnell Painting Co., Inc. ("EMPLOYER") and LOCAL UNION NO. 8, BROTHERHOOD OF PAINTERS AND ALLIED TRADES, GARY INDIANA ("UNION"). In consideration of the mutual promises of each other, the parties hereby AGREE as follows:
>
> * * *
>
> 2.   The Parties do hereby adopt the latest AGREEMENT, and all approved amendments thereto and any future AGREEMENT between the UNION and the Northwest Indiana Chapter of the Painting and Decorating Contractors of America ("ASSOCIATION") and the terms and conditions of any Trust

2

Darnell was given copies of several documents, including the master collective bargaining agreement.

The parties agree that the Memorandum of Agreement was signed on August 3, 1995, and that it was repudiated at the latest on August 4, 1997, when Darnell sent a letter to Local 8 expressly repudiating the agreement. Darnell claims that the agreement was actually repudiated when Darnell completed work on the Don Pablo's job on August 31, 1995, and thus that it was not required to make contributions to the Fund after that date. Darnell also argues that because it never intended to be bound by the master CBA, and in turn by the "out-of-area" clause, its obligations under the Memorandum of Agreement do no extend to work done outside the Local 8's five-county area of operations.

---

> Fund Agreements (The Painting Industry Insurance Fund, The Painting Industry Pension Fund and The Northwest Indiana Painters Joint Apprenticeship Training Trust Fund) and the Administrative Dues of the UNION, accepting and ratifying the appointment of the Employer Trustees and their successors and agreed to be bound by all of their terms and conditions thereof for the duration of such AGREEMENT and any future AGREEMENTS and for the period of any subsequent extensions including any amendments which may be subsequently made. Notice to the ASSOCIATION shall be deemed as notice to the undersigned employer, unless either party serves written notice upon the other at least sixty (60) days prior to the stated expiration date in the Agreement or to any subsequent expiration date of a desire to terminate this Memorandum of Agreement.
>
> \* \* \*
>
> 4.  The EMPLOYER acknowledges the receipt of the latest Agreement with the UNION and the ASSOCIATION.

3

When Darnell refused to allow plaintiffs to conduct a contribution compliance audit covering a period of time later than August 31, 1995, and with a scope beyond Local 8's five-county geographic jurisdiction, IBP filed suit. Darnell filed a third party complaint against Local 8, claiming that Local 8 had committed fraud and made misrepresentations during the contract negotiations by inducing Darnell to sign the Memorandum of Agreement and by representing to Darnell orally that its obligations extended only to work done within Local 8's five-county area. The Court dismissed the third party complaint for lack of personal jurisdiction, leaving IBP and Darnell as the only parties to this case. Based on deposition testimony, plaintiffs estimate Darnell's principal liability to IBP to be approximately $87,140, with the actual amount to be determined after an audit is conducted.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. *Defendant's Motion For Summary Judgment*

Defendant Darnell argues that this Court lacks jurisdiction because the National Labor Relations Board has exclusive and primary jurisdiction over any claims for delinquent contributions and related issues for the period after the agreement was repudiated. As noted, it maintains that the agreement was repudiated at the end of August 1995. Thus, according to Darnell, this action does not concern a violation of the Memorandum of Agreement and the master CBA incorporated therein, but instead is an unfair labor practice complaint within the exclusive jurisdiction of the NLRB. Darnell points to a "finding" by the NLRB that the agreement was repudiated in late August 1995 and argues that the NLRB has already "ruled conclusively" on all issues related to any post-August 1995 liability. See Def. Mot. to Dismiss

or for Partial Summ. J. at 15-19 and Ex. A (September 19, 1997, letter from National Labor Relations Board to Alan G. Ross, Esq., regarding Darnell Painting Company, Inc.).

Defendant's attempt to reframe this case as an unfair labor practices case fails. For the reasons articulated by plaintiffs and upon a careful examination of the NLRB letter relied upon by defendant, the Court concludes that the NLRB has made no determination with respect to any post-August 1995 liability, the status of the CBA, or Darnell's liability under the Memorandum of Agreement. The statements made in the NLRB notice simply do not go as far as defendant claims they do. The Court therefore concludes that there was no repudiation by virtue of Darnell's completion of the work on the Don Pablo's job on August 31, 1995, and that the Court has jurisdiction over all of plaintiffs' claims. See Pls. Reply Mem. in Opp'n to Def. Mot. for Summ. J. at 1-12. If Darnell was obligated to make payments to the Fund, that obligation continued until defendant explicitly repudiated the agreement between Darnell and Local 8 on August 4, 1997.[2]

Defendant also argues that there are genuine issues of material fact concerning Darnell's defense of fraud in the execution. It asserts that fraud in the execution is a recognized defense in an action brought by a pension fund for delinquent contributions pursuant to a CBA and that Steven Smith's conduct in obtaining Darnell's consent to be bound by the CBA constituted fraud in the execution. IBP responds that Darnell's argument is not really one of fraud in the execution, but instead is one of fraud in the inducement — a defense

---

[2] Defendant also argues that summary judgment should be entered for defendant with respect to any liability after August 1995 because there are no genuine issues of material fact. This argument depends on defendant's assertion that the agreement was repudiated and that Darnell's liability came to an end on August 31, 1995. As stated *supra*, defendant has proffered no evidence to support this claim.

5

that by law an employer may not raise under ERISA. See Pls. Mem. in Supp. of Mot. for Summ. J. at 16-33. The Court agrees with plaintiffs that defendant is attempting to assert a fraud in the inducement defense, which is not an available defense in this type of case. See, e.g., Agathos v. Starlite Motel, 977 F.2d 1500, 1505 (3d Cir. 1992) (Section 515 of ERISA, 29 U.S.C. § 1145, precludes employers from raising a variety of traditional contract defenses, including fraud in the inducement); Iron Workers' Local No. 25 Pension Fund v. Allied Fence and Security Systems, Inc., 922 F. Supp. 1250, 1259-60 (E.D. Mich. 1996) (same).

### B. *Plaintiffs' Motion For Summary Judgment*

Plaintiffs argue that because Darnell signed a Memorandum of Agreement which incorporated the master CBA by reference, this case really involves a dispute over an "out-of-area" clause in the master CBA. The out-of-area clause in the master CBA provides that Darnell's obligations shall apply even when work is done outside the Local 8's five-county geographic jurisdiction. Plaintiffs argue that by signing the Memorandum of Agreement, Darnell contractually obligated itself to contribute to the Pension Fund for the length of the Agreement — from August 3, 1995 until express repudiation on August 4, 1997 — without regard to whether that work was completed within the Local 8's five-county geographic jurisdiction or beyond. Defendant argues that it was not so obligated because Steven Smith, business manager for Local No. 8, told Charles Darnell, the President of Darnell, that the agreement covered just the five-county area including and adjacent to Hobart, Indiana, and that Darnell never intended to sign an agreement that covered Darnell's entire work force.

The problem with defendant's argument is that the one-page written Memorandum of Agreement clearly incorporates the master CBA containing the out-of-area clause. Under that clause in the master CBA, if Darnell performs work in some other jursidiction it is bound by all the terms and conditions of the collective bargaining agreement in effect in that jurisdiction. It is undisputed that Mr. Darnell is an educated individual who has had more than thirty years of experience in business and in negotiating and executing contracts. Therefore, as long as the terms of the contract that he signed were clear and unambiguous, Mr. Darnell was bound by those written terms regardless of what another party to the contract may have told him was intended by the language. See UMWA 1974 Pension v. Pittston Co., 984 F.2d 469, 473 (D.C. Cir. 1993) (court may resolve contract dispute as a matter of law when "agreement admits of only one reasonable interpretation"); Carey Canada, Inc. v. Columbia Casualty Co., 940 F.2d 1548, 1556 (D.C. Cir. 1991) ("Evidence of surrounding circumstances is admissible only where the written contract is ambiguous.").

An agreement is ambiguous only if it is reasonably susceptible to more than one interpretation, and there is no ambiguity here. See Barnstead Broadcasting Corp. v. Offshore Broadcasting Corp., 886 F. Supp. 874, 878 (D.D.C. 1995). The Memorandum of Agreement clearly and unambiguously evidences Darnell's agreement to be bound by the terms of the master CBA which contained the out-of-area clause. Mr. Darnell read and signed the one-page Memorandum of Agreement and cannot rely on an oral representation inconsistent with its terms. Since the Memorandum of Agreement "admits of only one reasonable interpretation,"

plaintiffs are entitled to judgment as a matter of law. <u>UMWA 1974 Pension v. Pittston Co.</u>, 984 F.2d at 473; <u>see</u> <u>Country Club Associates Ltd. Partnership v. FDIC</u>, 918 F. Supp. 429, 433 (D.D.C. 1996).

An Order consistent with this Memorandum Opinion shall be issued this same day.

SO ORDERED.

/s/ Paul L. Friedman
PAUL L. FRIEDMAN
United States District Judge

DATE: 9/29/00