**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 06-131 (GK) **Next-Scheduled Court Deadline Pretrial Conference** |
| v. | ) ) | |
| MIDWEST DRYWALL CO., INC., | ) ) | |
| Defendant. | ) | |

**PLAINTIFF PENSION FUND'S REPLY TO MIDWEST DRYWALL'S
OPPOSITION TO THE PENSION FUND'S MOTION FOR SUMMARY JUDGMENT**


Richard B. Sigmond
(I.D. No. 446969)
Kent Cprek, Esquire
(I.D. No. 478231)
Jennings Sigmond, P.C.
The Penn Mutual Towers
510 Walnut Street
Independence Square
Philadelphia, PA 19106-3683
(215) 351-0609/0615


Joseph E. Kolick, Jr.
(I.D. No. 292979)
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2253

Date: February 19, 2008          *Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I.   THERE ARE NO MATERIAL FACTUAL DISPUTES ...................................2

II.  MIDWEST DRYWALL'S LEGAL DEFENSES ARE WITHOUT MERIT ...................4

   A.  Unfair Labor Practice Defenses Are Not Available Against A Claim
       Under Section 515 Of ERISA.............................................................4

   B.  Section 8(f) Expressly Permits The Out-Of-Area Agreement................6

III. THE AGREEMENT UNAMBIGUOUSLY REQUIRES CONTRIBUTIONS
     FOR OUT-OF-AREA WORK.........................................................................7

IV.  MIDWEST DRYWALL DOES NOT DISPUTE THAT THE RELIEF
     SOUGHT BY THE PENSION FUND IS PROPER IF IT IS LIABLE ...........10

   A.  Midwest Drywall Does Not Dispute The Pension Fund's
       Delinquency Calculation...................................................................10

   B.  Liquidated Damages, Interest, And Audit Costs Are Also Owed
       Under The Terms Of The Plan...........................................................11

   C.  A Further Audit Should Be Ordered With Respect To Amounts Due After
       June 30, 2004 ....................................................................................11

   D.  ERISA Mandates an Award of Attorney Fees.....................................12

   E.  The Court Should Order Future Compliance.......................................12

CONCLUSION.............................................................................................12

DSMDB-2390130

## TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310 (2d Cir.), *cert. denied*, 498 U.S. 982 (1990)..................................................................................................9

*Berry v. Garza,* 919 F.2d 87 (8th Cir. 1990).................................................................4

*Carpenters Labor-Management Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237 (D.D.C. 2007) ....................................................................................10, 11

*Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv. Inc.,* 870 F.2d 1148 (7th Cir. 1989)..............................................................................................4

*Connell Construction Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616 (1975).....................................................................................................5

*Flynn v. Dick Corp.*, 481 F.3d 824 (D.C. Cir. 2007) ...............................................7, 8

*Flynn v. Mastro Masonary Contractors*, 237 F. Supp. 2d 66 (D.D.C 2002)...........10, 11

*Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distribs.*, 689 F.2d 1339 (9th Cir. 1982)................................................................................................5

*Int'l. Union of Painters & Allied Trades, Local Unions No. 970 & 1144 v. NLRB*, 309 F.3d 1 (D.C. Cir. 2002).....................................................................................6

*Jim McNeff, Inc. v. Todd*, 461 U.S. 260 (1983) ..........................................................7

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) .....................................................5

*Martin v. Garman Constr. Co.*, 945 F.2d 1000 (7th Cir. 1991), *cert. denied*, 502 U.S. 1122 (1992)....................................................................................................5

*Mo-Kan Teamsters Pension Fund v. Creason,* 716 F.2d 772 (10th Cir. 1983), *cert. denied,* 464 U.S. 1045 (1984) .................................................................4, 5, 10

*N.Y. State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc.*, 382 F.3d 272 (2d Cir. 2004)...................................................................................9

*Trustees of BAC Local 32 Insurance Fund v. Ohio Ceiling & Partition Co.*, 48 F. App'x. 188 (6th Cir. 2002)...............................................................................7, 8

DSMDB-2390130

*Trustees of Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No.
    05CV1665, 2007 WL 3124612 (E.D.N.Y. Oct. 23, 2007) .......................................................10


Administrative Decision

*John Deklewa & Sons, Inc.*, 282 N.L.R.B. 1375 (1987), *enforced*, 843 F.2d 770, *cert.
    denied*, 488 U.S. 889 (1988) ......................................................................................................6


Statutes

29 U.S.C. § 8(f) ...........................................................................................................................6

29 U.S.C. § 158(f) .......................................................................................................................6

29 U.S.C. § 185 ...........................................................................................................................5

29 U.S.C. § 1132(g)(2) ........................................................................................................10, 12

DSMDB-2390130

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 06-131 (GK) **Next-Scheduled Court Deadline** **Pretrial Conference** |
| v. | ) ) | |
| MIDWEST DRYWALL CO., INC., | ) ) | |
| Defendant. | ) | |

**PLAINTIFF PENSION FUND'S REPLY TO MIDWEST DRYWALL'S
OPPOSITION TO THE PENSION FUND'S MOTION FOR SUMMARY JUDGMENT**

Midwest Drywall's Opposition ("Def. Opp.") is, for the most part, a reprise of the

legal arguments advanced in support of its cross-motion for summary judgment. Those

contentions should be rejected for the reasons advanced in the Pension Fund's opposition to

Midwest Drywall's summary judgment motion ("Pl. Opp."), which establishes that:

(1) Midwest Drywall's labor law defenses (a) are not available as a matter of law to defend

against the Pension Fund's ERISA claim for contributions due, (b) are within the exclusive

jurisdiction of the National Labor Relations Board ("the Board") to decide unfair labor

practice claims, and (c) are without merit, as Section 8(f) of the National Labor Relations Act

("the Act") permits unions and employers in the construction industry to enter enforceable

collective bargaining agreements without any showing of majority support by the employees

covered by those agreements; (2) the out-of-area clause used by affiliates of the International

Union of Painters and Allied Trades ("IUPAT"), unlike the differently worded clauses used

by other unions, unambiguously requires benefit fund contributions on out-of-area work at

the rate set forth in collective bargaining agreements in effect between the IUPAT Local

Union and employers covering work in the jobsite area, and any conceivable ambiguity was

removed by an April 2000 arbitration award that so-construed the out-of-area clause. Accordingly, the Court should conclude that summary judgment is appropriate as to liability.

Beyond that, Midwest Drywall's opposition does not dispute that, if it is liable, the audit report submitted by Robert Moore correctly calculates the contributions due for out-of-area work performed by painters and tapers employed by Midwest Drywall through June 30, 2004. Nor does Midwest Drywall make any showing that it made contributions for such out-of-area work. To the contrary, it implicitly admits, by its insistence that contributions were not due for this work, that no contributions were made for out-of-area work. Accordingly, the summary judgment order should find Midwest Drywall liable for unpaid contributions on out-of-area work for the period covered by the audit report in the amount calculated by the Pension Fund auditor.

Similarly, Midwest Drywall does not dispute that, if it is liable, ERISA mandates it pay liquidated damages, interest, attorney fees and costs. Accordingly, the summary judgment order should direct payment of those amounts.

As to work performed since July 1, 2004, no audit has been performed. For such out-of-area work, the Court should order that Midwest Drywall submit to a further audit and retain jurisdiction to fix the amount due for this period.

Finally, the Court should order Midwest Drywall to honor its contractual promise to make benefit fund contributions for future out-of-area work.

## I.      THERE ARE NO MATERIAL FACTUAL DISPUTES

In a transparent attempt to postpone the day of reckoning, Midwest Drywall has submitted a 128 page statement of genuine issues of material fact. Aside from being the antithesis of the "concise" statement required by Local Rule 56.1, Midwest Drywall's

DSMDB-2395051v01

rambling discourse does nothing to create a genuine issue as to any *material* fact.  To the contrary, the key material facts are admitted.  They are:

1.  Midwest Drywall was a party to four consecutive agreements, covering work performed by painters and drywall finishers (tapers) during the period April 1998 through June 30, 2011, with Painters Local Union 159 and its parent body Painters and Allied Trades District Council 15 (collectively, "the Union").  *See* Pl. Ex. 5(a) – (d).[1]

2.  Each agreement contained an out-of-area clause providing that Midwest Drywall "shall, when engaged in work outside the geographic jurisdiction of the union party to the agreement, comply with all lawful clauses of the collective bargaining agreement in effect in said other geographic jurisdiction and executed by the employers of the industry and affiliated local unions in that jurisdiction, including but not limited to . . . fringe benefits." *See* Pl. Ex. 5(a) – (d), Art. 4, § 1(b).

3.  In April 2000, the Joint Trade Board issued an arbitration award holding that Midwest Drywall breached the out-of-area clause of the agreement by not paying painters and tapers employed in the jurisdiction of Painters Local Union 109 the wages and benefit contributions required under the collective bargaining agreement between Local Union 109 and local employers.  *See* Pl. Ex. 9; Def. Ex. 13.

4.  In February 2007, the Union and Midwest Drywall executed a memorandum of understanding waiving the out-of-area clause for the remaining term of the 2004-2007 collective bargaining agreement.  *See* Pl. Ex. 10; Def. Ex. 24.

5.  The 2004-2007 collective bargaining agreement expired on June 30, 2007. *See* Pl. Ex. 5(c).

---

[1]    "Pl. Ex." refers to the exhibits submitted in support of the Pension Fund's motion for summary judgment, and "D. Ex." refers to exhibits submitted in support of Midwest Drywall's motion for summary judgment.

DSMDB-2395051v01

6.  Midwest Drywall authorized the Negotiating Committee of the Southern Nevada Chapter of the Painting and Decorating Contractors of America ("PDCA") to represent it in negotiations with the Union for a new 2007 collective bargaining agreement. *See* Nienke Decl. ¶ 28.

7.  The Union and the PDCA reached agreement and executed a collective bargaining agreement covering the period July 1, 2007 through June 30, 2011.  *See* Pl. Ex. 5(d).

8.  No written waiver of the out-of-area clause of the 2007 agreement was ever executed.

9.  During the period January 1, 2001 through June 30, 2004 Midwest Drywall did not make benefit fund contributions on out-of-area work performed by painters and tapers employed by it outside Nevada.  *See* Moore Decl. ¶¶ 4, 8; Pl. Ex. 13.

## II.    MIDWEST DRYWALL'S LEGAL DEFENSES ARE WITHOUT MERIT

### A.    Unfair Labor Practice Defenses Are Not Available Against A Claim Under Section 515 Of ERISA

The only illegality defense available in a Section 515 action is that the contributions sought are themselves "inconsistent with law."  *See* Pl. Opp. at 7-10.  In particular, Midwest Drywall's principle claim, that the employer and the Union committed an unfair labor practice by executing a collective bargaining agreement before out-of-area employees authorized the Union to act for them, is not a permissible defense.  *See Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv. Inc.,* 870 F.2d 1148, 1153 (7th Cir. 1989); *Berry v. Garza,* 919 F.2d 87, 89-90 (8th Cir. 1990); *Mo-Kan Teamsters Pension Fund v. Creason,* 716 F.2d 772, 775 (10th Cir. 1983), *cert. denied,* 464 U.S. 1045 (1984). The only exception to this rule barring unfair labor practice defenses is a claim that the agreement to contribute violates Section 8(e) of the Act, which explicitly renders agreements

4

that violate its terms "unenforceable and void." *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 84 (1982). That exception, however, does not extend to unfair labor practices challenging the capacity of the union to make the agreement requiring contributions. *See Mo-Kan Teamsters Pension Fund*, 716 F.2d at 775; *Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distribs.*, 689 F.2d 1339, 1343-44 (9th Cir. 1982); *Martin v. Garman Constr. Co.*, 945 F.2d 1000, 1005 (7th Cir. 1991), *cert. denied*, 502 U.S. 1122 (1992).

Midwest Drywall, however, makes no Section 8(e) claim. It merely urges that the Union was not the authorized, majority representative of out-of-area workers. Accordingly, its reliance on *Mullins* and other Section 8(e) cases (such as *Connell Construction Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616 (1975)) is misplaced. Its unfair labor practice defenses "count[] for naught" in this ERISA case. *See Martin*, 945 F.2d at 1005.

Finally, although Section 515 of ERISA was enacted for the purpose of eliminating, as against multi-employer funds seeking contributions, employer defenses that might be available against the union in a breach of contract action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, most courts that have considered the issue have held that run-of-the-mill unfair labor practice defenses (like those raised here) are not available even under Section 301. Rather, the Board's exclusive jurisdiction to resolve unfair labor practice claims deprives the courts of jurisdiction to hear such claims. *See* Pl. Opp. at 10-12. Therefore, if Midwest Drywall wants to press its unfair labor practice claims, it must do so before the Board.

DSMDB-2395051v01

### B.    Section 8(f) Expressly Permits The Out-Of-Area Agreement

No doubt Midwest Drywall has studiously avoided the Board because it fully understands that the Board, with its expertise in the construction of the Act, would make short shrift of its claims.  That is because Congress, in Section 8(f) of the Act, 29 U.S.C. § 158(f), expressly permitted construction industry unions to sign pre-hire agreements, and those agreements are binding during their term.  *See John Deklewa & Sons, Inc.*, 282 N.L.R.B. 1375 (1987), *enforced*, 843 F.2d 770, *cert. denied*, 488 U.S. 889 (1988); *Int'l. Union of Painters & Allied Trades, Local Unions No. 970 & 1144 v. NLRB*, 309 F.3d 1, 5-6 (D.C. Cir. 2002).  That is all that occurred here.  Midwest Drywall agreed that, if it hired painters and tapers outside Nevada, it would compensate them in accordance with agreements between local employers and the Union's sister unions.[2]

One reason for this construction industry exception is that union hiring halls are often employers' best source of skilled labor, and construction unions ordinarily will not refer workers to employers unwilling to contractually agree to union scales.  *See Deklewa*, 282 N.L.R.B. at 1380.  Here, Midwest Drywall had a choice.  It could attempt to bid and perform work in Las Vegas without access to the Union's members or it could sign a collective bargaining agreement and gain access to the Union hiring hall.  The contract offered by the Union obligated Midwest Drywall to provide union wages and benefits to its painters and tapers working in other (perhaps less heavily unionized) parts of the country.  If Midwest Drywall found that price too high, it should have refused to sign the agreement, and taken the risk that it would miss out on the Las Vegas construction boom for lack of trained

---

[2]    To protect employee free choice, Congress provided that, unlike majority-union contracts, Section 8(f) agreements do not serve as a bar to representation petitions filed during their term.  *See* 29 U.S.C. § 8(f); *Deklewa*, 282 N.L.R.B. at 1380-81, 1385.  Thus, if the out-of-area employees wish to be represented by another union or work without union representation, they can petition for a Board-conducted election at any time.  If a majority of employees votes against union representation, that vote "will void the 8(f) agreement."  *Id.* at 1385.

DSMDB-2395051v01

Union craft workers.  Instead, it made the business judgment to accept the contract, and it

reaped the benefits of that contract.  In these circumstances, "having had the music, [Midwest

Drywall] must pay the piper." *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 271 (1983) (enforcing

the employer's obligation to make benefit contributions required under a "minority union"

contract executed pursuant to Section 8(f)).

## III.     THE AGREEMENT UNAMBIGUOUSLY REQUIRES CONTRIBUTIONS FOR OUT-OF-AREA WORK

Midwest Drywall's reliance on the Sixth Circuit's finding of ambiguity in

*Trustees of BAC Local 32 Insurance Fund v. Ohio Ceiling & Partition Co.*, 48 F. App'x. 188

(6th Cir. 2002), is misplaced.  There, as in *Flynn v. Dick Corp.*, 481 F.3d 824 (D.C. Cir.

2007), the court construed a clause used by affiliates of the Bricklayers Union.  Both Circuits

found ambiguity in the first sentence of that clause, which read:

> When the Employer has any work specified in this agreement to be
> performed outside the area covered by this agreement and within the
> area covered by an agreement with another affiliate of the International
> Union of Bricklayers and Allied Craftsman, the Employer agrees to
> abide by the full terms and conditions of ***the Agreement in effect in
> the job site area.***

*See Ohio Ceiling*, 48 F. App'x. at 191; *Dick Corp.*, 481 F.2d at 830 (quoting the Agreement

at issue there) (emphasis added).  Both Circuits found this language ambiguous because "the

phrase 'within the area covered by an agreement with another affiliate of the International

[BAC]' could refer to an agreement between [Ohio Ceiling] and the BAC affiliate, or it could

refer to an agreement between any employer and the BAC affiliate." *See Ohio Ceiling*, 48 F.

App'x. at 195. *See also Dick Corp.*, 481 F.3d at 830.  Based on different parole evidence, the

Sixth Circuit construed the clause to require a signed agreement between the employer and

the foreign local union, while the D.C. Circuit construed it to require contributions even

DSMDB-2395051v01

where the employer had not signed an agreement with the foreign local union.  *Compare Ohio Ceiling*, 48 F. App'x. at 195 *with Dick Corp.* 481 F.3d at 830-31.

Here, by contrast, the collective bargaining agreement specifies that Midwest Drywall is to comply with "the collective bargaining agreement in effect in said other geographic jurisdiction ***and executed by the employers of the industry and the affiliated Local Unions in that jurisdiction***."  *See* Pl. Exs. 5(a)-(d), Art. 4 § 1(b).  The emphasized language removes the ambiguity present in the Bricklayers' clause.  The only possible interpretation is that Midwest Drywall is obligated to make contributions required by the agreement between the foreign local unions and *other* employers in the industry.

In any event, in April 2000, *before* Midwest Drywall signed the 2001, 2004 and 2007 agreements (Pl. Exs. 5(b)-(d)), the Joint Trade Board had construed the clause to mean that Midwest Drywall was "required by the Master Agreement . . . to pay its covered employees (painters and tapers) wages required by the Other Jurisdiction Agreement, as well as contributions to the fringe benefit funds required by the Other Jurisdiction Agreement." *See* Pl. Ex. 9 at 2; Def. Ex. 13 at 2.

Midwest Drywall's suggestion -- that by ordering it to initiate good faith discussions to resolve the dispute, the Joint Trade Board implicitly conditioned Midwest Drywall's obligation to pay on its reaching agreement with the out-of-area local (Def. Opp. 31) -- simply cannot be squared with the opinion.  First, the Joint Trade Board did not find the Master Agreement obligated Midwest Drywall to negotiate with out-of-area locals; it found (in the above-quoted passage) that the out-of-area clause obligated it to pay wages and benefits on out-of-area work.  Second, far from making a contract breach depend on the outcome of negotiations, the Joint Trade Board found Midwest Drywall in continuing

8

violation and ordered settlement discussions as an alternative to entering a back pay award.

Thus, the full remedial paragraphs, from which Midwest Drywall quotes selectively, read:

> That Midwest is found and concluded to be in continuing violation of the 50-50 Clause of the Master Agreement, and that a final determination of damages for lost wages and benefits may be determined at a future hearing by the Board, **unless Midwest and the Unions are able to resolve this violation within a reasonable period after the date of this Decision and Order.**
>
> That the Union and Midwest shall forthwith enter into good faith discussions and use their best efforts, through communication with Local 109, the IBAT International Representatives and any other interested parties, **to resolve Midwest's continuing violation and to ensure that future projects outside the jurisdiction of the Union are performed in compliance** with the terms and provisions of the Master Agreement during the effective period of the Shop Card Labor Agreement between the Union and Midwest.

*See* Pl. Ex. 9 at 2-3, ¶¶ 4-5 (emphasis added).

The Union's failure to subsequently seek a back pay award or otherwise enforce the award does not bind the Pension Fund. As the Second Circuit explained, an employer may not "invok[e] as a defense an oral or otherwise unwritten agreement with the union 'not to enforce the [written] terms of the collective bargaining agreement' with respect to multiemployer plan contributions." *See N.Y. State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc.*, 382 F.3d 272, 280 (2d Cir. 2004) (quoting *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir.), *cert. denied*, 498 U.S. 982 (1990)); *see also* Pl. Opp. at 18-19. If an oral agreement with the union is insufficient, mere inaction is certainly not enough.

In summary, the out-of-area clause is clear and unambiguous and the April 2000 arbitration award removed any doubt (however unreasonable that doubt may have been) as to its meaning. Accordingly, it should be enforced as written.

DSMDB-2395051v01

IV.    **MIDWEST DRYWALL DOES NOT DISPUTE THAT THE RELIEF SOUGHT BY THE PENSION FUND IS PROPER IF IT IS LIABLE**

When judgment is entered against an employer for unpaid contributions, "ERISA [29 U.S.C. §1132(g)(2)] provides that the court must award:  (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; and (4) reasonable attorney's fees and costs of the action." *See Flynn v. Mastro Masonary Contractors*, 237 F. Supp. 2d 66,70 (D.D.C 2002); *Carpenters Labor-Management Pension Fund  v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 241 (D.D.C.  2007).

A.    **Midwest Drywall Does Not Dispute The Pension Fund's Delinquency Calculation**

In an ERISA collection action, "the opinion of an auditor is a sufficient basis for an award of a specific amount of damages." *See Trustees of Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05CV1665, 2007 WL 3124612 at *10 (E.D.N.Y. Oct. 23, 2007); s*ee also, e.g.*, *Mo-Kan Teamsters Pension Fund,* 716 F.2d at 777-78.  Here, the Pension Fund's auditor, Robert Moore, conducted an audit of books and records of Midwest Drywall, and concluded that, during the period January 1, 2001 through June 30, 2004, Midwest Drywall had failed to make required contributions in the following amounts:

- $603,370.43 to the Pension Fund,
- $12,722.13 to the apprenticeship fund, and
- $3,233.40 to the labor-management cooperation fund

*See* Pl. Ex. 13.

Of this amount, all but $1,405 (representing pension contributions for work performed within the jurisdiction of Local Union 159) was for out-of-area work. *See* Pl. Ex. 13 at 20-21.  Midwest Drywall does not deny that it employed painters and tapers outside Nevada during this period, nor does it claim it made contributions for this work.  Beyond that, its auditor, Steven Reiger, does not claim that Mr. Moore overstates the number of hours

10

worked by out-of-area painters and tapers, or that he used the wrong hourly contribution rates

for such work.  Rather, Midwest Drywall's auditor concludes that no contributions are due

because he takes as his premise that no contributions are due on out-of-area work.  *See* Def.

Ex. 4.[3]

Accordingly, there is no factual dispute as to the amount of delinquent

contributions owed through June 30, 2004.

> **B.     Liquidated Damages, Interest, And Audit Costs Are Also Owed**
> **Under The Terms Of The Plan**

Similarly, Midwest Drywall makes no defense, other than its contention that the

out-of-area clause is illegal or does not apply, to the Pension Fund's showing that liquidated

damages, interest, and audit costs are recoverable (*see* Pl. Mem. 16-19), nor does it challenge

the Pension Fund's calculation of the amounts due.  Accordingly, should it grant summary

judgment in favor of the Pension Fund, the Court should award liquidated damages and

interest through the date of the judgment at the rates provided for in the Plan (*see* Pl. Ex. 7,

Art. 10 § 10.12) and audit costs (*see* Pl. Ex. 6, Art. V).

> **C.     A Further Audit Should Be Ordered With Respect To Amounts Due**
> **After June 30, 2004**

The prior audit covered only through June 30, 2004.  Since that time, Midwest

Drywall has continued (except for the period covered by the written waiver, February 8, 2007

through June 30, 2007) to be obligated to make benefit fund contributions on out-of-area

work.  The Pension Fund seeks an order requiring Midwest Drywall to cooperate in a further

audit covering this period.  Such relief is clearly appropriate, *see Mastro Masonary*

*Contractors*, 237 F. Supp. 2d at 70; *Freeman-Carder*, 498 F. Supp. 2d at 242, and Midwest

---

[3]     Midwest Drywall's auditor does challenge Mr. Moore's conclusion that pension
contributions of $1,405 are owed for work performed in Nevada.  That challenge creates a
true factual dispute.  We therefore concede these amounts should not be awarded at this time.

DSMDB-2395051v01

Drywall does not contest its propriety. Accordingly, should the Court grant summary judgment, it should order Midwest Drywall to cooperate in an audit covering that period and retain jurisdiction to determine the amount of additional contributions owed.

### D.    ERISA Mandates an Award of Attorney Fees

Midwest Drywall does not dispute that ERISA mandates an award of attorney fees in successful collection actions. *See* 29 U.S.C. § 1132(g)(2). Accordingly, the order should provide for an award of attorney fees and costs in a reasonable amount and grant the Pension Fund leave to file a fee petition.

### E.    The Court Should Order Future Compliance

Nor does Midwest Drywall dispute that ERISA also provides that the Court "shall award . . . such other legal or equitable relief as the court deems appropriate." Here, it would be appropriate to order Midwest Drywall to make all required contributions on future out-of-area work.

### CONCLUSION

For the foregoing reasons, as well as those set forth in our opening memorandum and in our Opposition to Midwest Drywall's Motion for Summary Judgment, the Court should grant the Pension Fund's Motion for Summary Judgment.

> BY: /s/ Richard B. Sigmond
> Richard B. Sigmond, Esquire
> (I.D. No. 446969)
> Kent Cprek, Esquire
> (I.D. No. 478231)
> Jennings Sigmond, P.C.
> The Penn Mutual Towers
> 510 Walnut Street
> Independence Square
> Philadelphia, PA  19106-3683
> (215) 351-0609/0615

DSMDB-2395051v01

BY: /s/ Joseph E. Kolick, Jr.
Joseph E. Kolick, Jr., Esquire
(I.D. No. 292979)
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2253

Date:  February 19, 2008                *Attorneys for Plaintiff*

13

## CERTIFICATE OF SERVICE

I, Joseph E. Kolick, Jr., state under penalty of perjury that I caused a copy of the foregoing Plaintiff Pension Fund's Reply to Midwest Drywall's Opposition to the Pension Fund's Motion for Summary Judgment to be served electronically via the CM/ECF System or acceptable electronic mail and/or placed in the U.S. mail with postage for first class delivery or fax on the date set forth below addressed to:

Richard B. Sigmond, Esq.
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA  19106-3683
Telephone:  (215) 351-0609
Facsimile:  (215) 922-3524

Robert D. Overman, Esq.
Morris, Laing, Evans, Brock & Kennedy, Chtd.
300 N. Mead, Ste 200
Wichita, KS  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226

Charles F. Walters, Esq.
Seyfarth Shaw, LLP
815 Connecticut Avenue, NW, Ste. 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 282-5393

Date: February 19, 2008                    /s/ Joseph E. Kolick, Jr.
                                           Joseph E. Kolick, Jr.