IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED    )
TRADES INDUSTRY PENSION FUND     )
     )
     Plaintiff     )    Civil Action No. 06-131 (GK)
     v.     )    Next-Scheduled Court Deadline
     )    Pretrial Conference
MIDWEST DRYWALL CO., INC.     )
     )
     Defendant.     )
     )

## DEFENDANT MIDWEST DRYWALL CO., INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Robert D. Overman
KS Bar No. 08155
MORRIS, LAING, EVANS, BROCK &
KENNEDY, CHTD.
300 N. Mead, Suite 200
Wichita, Kansas  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226
E-mail:  roverman@morrislaing.com

Charles F. Walters
D.C. Bar No. 444529
SEYFARTH SHAW, LLP
815 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 828-5393
E-mail:  cwalters@seyfarth.com

February 19, 2008     *Attorneys for Defendant Midwest Drywall Co., Inc.*

TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    THE MATERIAL UNDISPUTED FACTS .............................................................. 4

III.   ARGUMENT .................................................................................................................. 5

       A.    The Court Has a Duty to Determine Whether to Enforce the 50-50 Clause
             Violates Federal Law. ................................................................................................ 5

       B.    To Enforce the 50-50 Clause to Require Midwest Drywall and Its Employees Who
             Work Solely Outside the Jurisdiction of Painters Local 159 to Be Subject to the
             Terms and Conditions of Foreign Painters Local Union CBAs With Other Employers
             In the Absence of a Collective Bargaining Relationship between Midwest Drywall
             and the Foreign Local Union Violates the NLRA. ........................................................ 8

       C.    The No. 159 CBA 50-50 Clause Is Susceptible to More Than One Reasonable
             Interpretation and Is Therefore Ambiguous. .............................................................. 18

       D.    The Pension Fund Is Not Entitled to Contributions Based on Subcontracting
             Provisions In Collective Bargaining Agreements Between Foreign Local Unions and
             Other Employers In the Absence of a Collective Bargaining Relationship Between
             Midwest Drywall and the Foreign Local Unions as the Claims Violate the NLRA ... 20

IV.    CONCLUSION ............................................................................................................. 21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | Civil Action No. 06-131 (GK) |
| v. | ) ) | Next-Scheduled Court Deadline Pretrial Conference |
| MIDWEST DRYWALL CO., INC. | ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## DEFENDANT MIDWEST DRYWALL CO., INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, Midwest Drywall Co., Inc. (Midwest Drywall), by its undersigned attorneys and pursuant to Local Civil Rule 7(d) and all other applicable rules, in support of its Motion for Summary Judgment hereby submits its reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Pension Fund's Opposition).

## I.    INTRODUCTION

Despite the Pension Fund's contention at pages 1 and 7 to 8 in the Pension Fund's Opposition, Midwest Drywall does not contend herein that the Article IV, 50-50 Clause in its collective bargaining agreement with Painters Local 159 was entered into in violation of the National Labor Relations Act (NLRA) or that there was "unlawful or improper conduct in the formation of a contract." Also, despite the Pension Fund's contention at pages 8 to 9 in the Pension Fund's Opposition, Midwest Drywall does not contend that Painters Local 159 was not the representative of Midwest Drywall's employees who perform work **within** the work and area jurisdiction specified in

1

the No. 159 CBA entered into between Midwest Drywall and Painters Local 159. Facts in the record before the Court are not disputed that in reference to employees represented by Painters Local 159 and employed by Midwest Drywall within the work and area jurisdiction of Painters Local 159 during the time relevant to the Pension Fund's claims, none of these employees were brought by Midwest Drywall to work in an outside jurisdiction. (S. Nienke's Dec. ¶ 6.) Therefore, the second proviso in Section 1(b) in the Article IV, 50-50 Clause in the No. 159 CBA entered into between Midwest Drywall and Painters Local 159 is not at issue in the present case. Further, despite the Pension Fund's assertion at page 12 in the Pension Fund's Opposition, Midwest Drywall does not contend that Painters Local 159 has "extended the contract to out-of-area employees who had not selected the Union (Painters Local 159) as their bargaining representative."

Midwest Drywall does assert that Painters Local 159 was not and is not the representative of Midwest Drywall's employees who work **solely in locations outside** the area jurisdiction specified in Article III in the No. 159 CBA. Midwest Drywall does assert that to require Midwest Drywall to make contributions to the Pension Fund based on the Pension Fund's view of the No. 159 CBA 50-50 Clause, Section 1(b) would command conduct that violates the NLRA.

The 50-50 Clause, Section 1(b) in the Painters Local 159 CBA is not a naked promise to pay monies to the Pension Fund. The 50-50 Clause does not provide a detailed or other basis on which payments are to be made to the Pension Fund. The Pension Fund's claims only exist by enforcing on Midwest Drywall and its employees who work solely outside the jurisdiction of Painters Local 159 all of the terms and conditions of collective bargaining agreements in a foreign jurisdiction, including but not limited to, subcontracting restrictions and enforcing on Midwest Drywall's employees the deduction of union/administrative dues from their pay, work permit requirements, and work rules, without the existence of a Section 8(f) or Section 9(a) collective bargaining relationship between

Midwest Drywall and a foreign Painters Local Union and without the protection of the employee's Section 7 rights. To require Midwest Drywall to make contributions to the Pension Fund based on the Pension Fund's view of the No. 159 CBA 50-50 Clause, Section 1(b) commands conduct that violates the declared public policy of the NLRA, violates Sections 8(a)(1) and (2), 8(b)(1)(A), and 8(f) of the NLRA, and voids NLRA Section 7 rights of Midwest Drywall's employees.

To avoid unlawful application of the No. 159 CBA 50-50 Clause, Section 1(b), it should be construed, as interpreted by the Joint Committee in its April 14, 2000, Decision and Order, that the enforcement of the payment of contributions to benefit funds only occurs if Midwest Drywall and a foreign Painters Local Union have entered into a collective bargaining agreement through a collective bargaining relationship. The No. 159 CBA 50-50 Clause, Section 1(b) cannot lawfully be enforced to apply to Midwest Drywall's employees working solely outside the jurisdiction of Painters Local 159 and to foreign local unions with whom Midwest Drywall does not have a Section 8(f) or Section 9(a) collective bargaining relationship as required under the NLRA. The construction claimed by the Pension Fund would require the Court to adopt a construction that violates the NLRA.

The cases cited by the Pension Fund at pages 1 to 2, 17, and 19 in the Pension Fund's Opposition are not controlling in the present case. The cases therein cited are not legal precedent that contract language such as the 50-50 Clause, Section 1(b) is automatically deemed to be lawful and do not address the issues of law raised by Midwest Drywall in the present case that Sections 8(a)(1) and (2), 8(b)(1)(A), and 8(f) of the NLRA prohibit enforcing on employees the terms and conditions of a labor agreement without the existence of a collective bargaining relationship between an employer and the collective bargaining representative of the employer's employees to be covered by the labor agreement with protection of the employees' Section 7 rights.

Section 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145, provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, **to the extent not inconsistent with law**, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (emphasis added).

A court may not enforce a contract, including contributions to a multiemployer pension fund, that violates the NLRA. The Pension Fund's claims violate the law and cannot be enforced.

## II.    THE MATERIAL UNDISPUTED FACTS

In support of its Motion for Summary Judgment, Midwest Drywall filed a Statement of Material Facts As To Which There Is No Genuine Issue (Midwest Drywall SOMF) containing 38 separately identified paragraphs supported by Steven Nienke's Declaration, pleadings, and/or disclosure and discovery materials on file with the Court. Midwest Drywall's Exhibits Nos. 1 through 32 are copies of Bates numbered documents produced by the Pension Fund and/or by Midwest Drywall in disclosures and/or in response to discovery requests filed herein and are the only documents referenced in Steven Nienke's Declaration. Documents produced by the parties in response to discovery or in disclosures are self-authenticating. See *Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc.*, 46 F. Supp. 2d 769, 771-772, (N.D. Ill. 1999). The Pension Fund disputes only Midwest Drywall SOMF ¶¶ 10, 21, 22, 31, and 34. As to Midwest Drywall SOMF ¶ 10, the Pension Fund's reference to the record to support its dispute does not address Midwest Drywall's SOMF that "Painters Local 159 did not and has not expressly or impliedly represented itself to Midwest Drywall to be the collective bargaining agent for Midwest Drywall's employees who work solely in locations outside the jurisdiction of Painters Local 159." As to Midwest Drywall's SOMF ¶¶ 21 and 22, the Pension Fund's reference to the record to support its

dispute does not contradict Midwest Drywall's SMOF. Therefore, in determining Midwest Drywall's

Motion for Summary Judgment, the Court should assume that the facts identified by Midwest

Drywall's SOMF, except Midwest Drywall's SOMF ¶¶ 31 and 34, are admitted. Local Civil Rule

56.1 and Fed. R. Civ. P. Rule 56(c).

**III.     ARGUMENT**

    **A.     The Court Has a Duty to Determine Whether to Enforce the 50-50 Clause Violates Federal Law.**

To require Midwest Drywall to make contributions to the Pension Fund based on the Pension

Fund's view of the No. 159 CBA 50-50 Clause, Section 1(b) would command conduct that violates

the NLRA.

In *Kaiser Steel Corporation v. Mullins,* 455 U.S. 72 (1982), the issue before the Supreme

Court was "whether a coal producer, when it is sued on its promise to contribute to union welfare

funds based on its purchases of coal from producers not under contract with the union, is entitled to

plead and have adjudicated a defense that the promise is illegal under the antitrust and labor laws."

*Id.* at 74. The collective bargaining agreement between the United Mine Workers of America

(UMW) and hundreds of coal producers, including Kaiser Steel Corporation, required signatory

employers to contribute to specified employee health and retirement funds. It required employers to

pay specified amounts for each ton of coal produced and for each hour worked by covered

employees. It also included a purchased-coal clause requiring employers to contribute to the trust

specified amounts on each ton of two thousand pounds of bituminous coal "after production by

another operator, procured or acquired by [the employer] for use or for sale . . ." *Id.* Kaiser made

contributions based on the coal it produced and the hours worked by its miners, but did not report the

coal it acquired from others or make contributions based on such purchased coal. The trustees of the

funds sued Kaiser under ERISA seeking to enforce Kaiser's obligation to report and contribute with

respect to coal not produced by Kaiser but acquired from others. Kaiser defended on the grounds,

among others, that the purchased-coal clause violated Section 8(e) of the NLRA. The lower courts

rejected Kaiser's defense of illegality.

     The Supreme Court reversed the judgment of the Court of Appeals holding that:

> We do not agree, in the first place, that if Kaiser's agreement to contribute based on
> purchased coal is assumed to be illegal under either the Sherman Act or the NLRA, its
> promise to contribute could be enforced without commanding unlawful conduct. The
> argument is that employers' contributions to union welfare funds are not, in themselves and
> standing alone, illegal acts and that ordering Kaiser to pay would therefore not demand
> conduct that is inherently contrary to public policy. Kaiser, however, did not make a naked
> promise to pay money to the union funds. The purchased-coal provision obligated it to pay
> only if it purchased coal from other employers and then only if contributions to the UMW
> funds had not been made with respect to that coal. Kaiser's obligation arose from and was
> measured by its purchases from other producers. . . . It is plain enough that to order Kaiser to
> pay would command conduct that assertedly renders the promise an illegal undertaking under
> the federal statutes.

*Id.* at 79.

     In its decision, the Supreme Court held that the question of the legality of the disputed clause

was not within the exclusive jurisdiction of the NLRB and in so holding stated:

> . . . The Board is vested with primary jurisdiction to determine what is or is not an unfair
> labor practice. As a general rule, federal courts do not have jurisdiction over activity which
> "is arguably subject to § 7 or § 8 of the [NLRA]," and they "must defer to the exclusive
> competence of the National Labor Relations Board." *San Diego Building Trades Council v.*
> *Garmon,* 359 U.S. 263, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). See also, *Garner v.*
> *Teamsters,* 346 U.S. 485, 490-491, 74 S.Ct. 161, 165-166, 98 L.Ed. 228 (1953). **It is also**
> **well established, however, that a federal court has a duty to determine whether a**
> **contract violates federal law before enforcing it. "The power of the federal courts to**
> **enforce the terms of private agreements is at all times exercised subject to the**
> **restrictions and limitations of the public policy of the United States as manifested in . . .**
> **federal statutes . . . Where the enforcement of private agreements would be violative of**
> **that policy, it is the obligation of courts to refrain from such exertions of judicial**
> **power."** *Hurd v. Hodge,* 334 U.S. 24, 34-35, 68 S.Ct. 847, 853, 92 L.Ed. 1187 (1948)
> (footnotes omitted).
> . . .
> . . . Were the rule otherwise, parties could be compelled to comply with contract clauses, the
> lawfulness of which would be insulated from review by any court.

455 U.S. at 83-86 (emphasis added).

The Supreme Court further recognized that nine days after the Court of Appeals had issued its decision under review, Congress had enacted 29 U.S.C. § 1145. In response to the funds trustees' argument that Congress intended to preclude employers from raising illegality defenses and after review of the legislative history of 29 U.S.C. § 1145, the Supreme Court held:

> Assuming, *arguendo*, that the 1980 Amendments are applicable to this case, they do not alter the result. Far from abolishing illegality defenses, § 306(a) [29 U.S.C. § 1145] explicitly requires employers to contribute to pension funds only where doing so would not be "inconsistent with law." Even if § 306(a) were construed as completely embracing the views of Senator Williams and Representative Thompson, the statute would not require prohibiting Kaiser from raising defenses to the purchased-coal clause. The legislators did not say that employers should be prevented from raising all defenses; rather they spoke in terms of "unrelated" and "extraneous" defenses. As the United States points out in its brief, none of the cases the legislators endorsed "involved the enforcement of a contribution clause that itself was alleged to violate the law."

> Respondents' contention that § 306(a) permits only one defense to be raised in suits to recover delinquent contributions-that the making of the payment itself violates § 302(a) of the LMRA-must be rejected for another reason. Respondents' argument necessarily assumes that in enacting § 306(a), Congress implicitly repealed the antitrust law, the labor laws, and any other statue which might be raised as a defense to a provision in a collective-bargaining agreement requiring an employer to contribute to a pension fund. Since "repeals by implication are disfavored," " 'the intention of the legislature to repeal must be clear and manifest.' " The statutory language provides no basis for implying such a repeal, and nowhere in the legislative history is there any mention that § 306(a) might conflict with other laws.

455 U.S. at 87-88 (citations and footnotes omitted).

In the present case, the Pension Fund, without support in the record, asserts at page 1 in the Pension Fund's Opposition that out-of-area clauses "are routine in the construction industry." Midwest Drywall has entered into numerous collective bargaining agreements with unions void of language similar to the language at issue in Section 1(b) of the 50-50 Clause. (For example Midwest Drywall's Exhibits 2, 16, 18, and 22.) Regardless of whether such clauses are "routine," the Supreme Court in *Kaiser, supra,* stated:

> . . . We are unpersuaded that Congress intended to give pension fund trustees the benefit of illegal bargains that were not, and should not have been, relied upon to ensure the solvency of the trust funds.

455 U.S. at 88.

As cited above by the expressed language in *Kaiser, supra,* the decision is not a "narrow exception to *Garmon*" as asserted by the Pension Fund at page 11 in the Pension Fund's Opposition. Also, despite the Pension Fund's contention at page 11 in the Pension Fund's Opposition, the holding in *Kaiser*, *supra,* is not restricted "to allow only Section 8(e) defenses." See *Painters District Council No. 3 Pension Fund v. Johnson*, 566 F.Supp. 592, 598 (1983), wherein the District Court cited as authority *Kaiser, supra,* and held that a pension fund's and union's effort to limit by contract an employer's right to repudiate prehire agreements is unenforceable. In the present case, the question of the legality of the contract, the 50-50 Clause, Section 1(b) is properly before the Court and is not within the exclusive jurisdiction of the NLRB.

**B.  To Enforce the 50-50 Clause to Require Midwest Drywall and Its Employees Who Work Solely Outside the Jurisdiction of Painters Local 159 to Be Subject to the Terms and Conditions of Foreign Painters Local Union CBAs With Other Employers In the Absence of a Collective Bargaining Relationship between Midwest Drywall and the Foreign Local Union Violates the NLRA.**

The Pension Fund at page 15 in the Pension Fund's Opposition asserts that "it seeks . . . to enforce Midwest Drywall's written promise to make pension contributions on out-of-area work." However in the No. 159 CBA, Article IV, 50-50 Clause, Section 1(b), neither the Pension Fund nor pension contributions are identified but only exist if part of  "fringe benefits" provided in a "collective bargaining agreement in effect in said other geographical jurisdiction and executed by the employers of the industry and the local unions in that jurisdiction." The portion of the 50-50 Clause, Section 1(b), at issue herein provides:

(b)  And further provided that the employer or contractor, when engaged in work outside the geographical jurisdiction of the Union party to this Agreement shall comply with all of the

lawful clauses of the collective bargaining agreement in effect in said other geographical jurisdiction and executed by the employers of the industry and the local unions in that jurisdiction, including but not limited to, the provisions of the wages, hours, working conditions and all fringe benefits therein provided, including grievances; . . .

(Midwest Drywall's Exhibit 3, at p. 5.)

Thus, the No. 159 CBA 50-50 Clause, Section 1(b) is not a naked promise to pay monies to the Pension Fund. The Pension Fund's claims only exist by enforcing on Midwest Drywall and its employees, who work solely outside the jurisdiction of Painters Local 159, all of the terms and conditions of collective bargaining agreements in a foreign jurisdiction, including but not limited to, subcontracting restrictions and enforcing on Midwest Drywall's employees the deduction of union/administrative dues from their pay, work permit requirements, and work rules, without the existence of a Section 8(f) or Section 9(a) collective bargaining relationship between Midwest Drywall and a foreign Painters Local Union and without the protection of the employees' Section 7 rights. To require Midwest Drywall to make contributions to the Pension Fund based on the Pension Fund's view of the No. 159 CBA 50-50 Clause, Section 1(b) commands conduct that violates the declared public policy of the NLRA, violates Sections 8(a)(1) and (2), 8(b)(1)(A), and 8(f) of the NLRA, and voids NLRA Section 7 rights of Midwest Drywall's employees. Although the Pension Fund at page 14 in the Pension Fund's Opposition considers these underlying policies of the NLRA to be a "novel argument," Midwest Drywall in its Memorandum of Points and Authority in Support of Its Motion for Summary Judgment (which we incorporated by reference) cites the Court to decisions issued by the United States Supreme Court, Federal Circuit Courts of Appeal, Federal District Courts, and the NLRB that do not regard these public policies and law as "novel."

Undisputed facts in the record before the Court establish that Painters Local 159 does not represent Midwest Drywall's employees who have not worked within the work and area jurisdiction of the Painters Local 159 CBA and that Painters Local 159 did not and has not expressly or impliedly

represented itself to Midwest Drywall to be the collective bargaining agent for Midwest Drywall's

foreign jurisdiction employees. (S. Nienke's Dec. ¶ 9.) Also, Painters Local 159 did not and has not

expressly or impliedly represented itself to Midwest Drywall to be the authorized agent for foreign

Painters District Councils and/or Painters Local Unions. (S. Nienke's Dec. ¶ 10.) During the time

relevant to the Pension Fund's claims, Midwest Drywall has only had collective bargaining

relationships with and entered into collective bargaining agreements with one foreign Painters

District Council (Painters District Council 3) and with one foreign Painters Local Union (Painters

Local 76). (S. Nienke's Dec. ¶¶ 3, 4, and 13.) Painters District Council 3 and Painters Local Union 76

have not represented to Midwest Drywall that Painters Local 159 was or is the collective bargaining

agent for Midwest Drywall's employees working in their jurisdictional areas or was or is their

authorized agent for collective bargaining. (S. Nienke's Dec. ¶ 11.)

The NLRA expressly provides:

It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self organization, and designation of representative of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

29 U.S.C. § 151.

The declared public policy of the NLRA is codified in the rights of employees expressed in

Section 7, in the protections provided in Sections 8(a)(1) and 8(b)(1)(A) and in the provisos in

Sections 8(d) and (f), and in the selection of representative procedure in Section 9. The Pension

Fund's claims, contrary to the full rights of employees under the NLRA, in the absence of a

collective bargaining relationship between Midwest Drywall and a foreign Painters Local Union

would force on foreign jurisdiction employees the payment of administration fees/dues, work restrictions and rules, and representation by a foreign Painters Local Union.

The NLRB in *Howell Insulation Co*., 311 NLRB 1355 (1993), clearly held that an outside jurisdiction clause, similar to that contained in the No. 159 CBA, Article IV, 50-50 Clause, Section 1(b) does not confer Section 8(f) or 9(a) rights on a foreign local union. In so holding the NLRB found:

> We find, contrary to the judge, that Local 90 is not the statutory representative of the Respondent's employees. **Local 90 is neither signatory to an 8(f) agreement with Respondent, nor is it the 9(a) representative of the Respondent's employees.** The Respondent's relationship with outside locals may, by the virtue of article 1 of the Local 78's collective-bargaining agreement, confer certain contractual rights on those locals as third party beneficiaries to the Respondent's collective-bargaining agreement with Local 78. **Such a relationship does not, however, confer statutory rights on those outside locals. Consequently, the Respondent did not enjoy a statutory relationship with Local 90**, . . .

*Id*. at 1356 (emphasis added). The question of whether enforcement of the outside jurisdiction clause violated the NLRA was not presented to NLRB in *Howell, supra*.

In *Connell Construction Company, Inc. v. Plumbers & Steamfitters Local 100*, 421 U.S. 616 (1975), the Supreme Court addressed the legality of a subcontracting agreement under the construction industry proviso to Section 8(e) in the setting of a Section 8(f) pre-hire agreement. It was clear to the Supreme Court that "[o]ne of the major aims of the 1959 Act (amendments to the NLRA, including Section 8(e)) was to limit 'top-down' organizing campaigns," *Id*. at 632. The Supreme Court found that this major aim "would be undermined seriously if the proviso to s 8(e) were construed to allow unions to seek subcontracting agreements, at large, from any general contractor vulnerable to picketing." *Id*. at 633. The Supreme Court held that such "authorization extends only to agreements in the context of collective-bargaining relationships" and not to agreements with "stranger" contractors. *Id*. at 631 and 633. Therefore, the Supreme Court made it

clear that it is a violation of the NLRA to enforce the terms and conditions of a pre-hire agreement that is not established through a collective bargaining relationship.

In the absence of a Section 8(f) or Section 9(a) relationship, an unnamed foreign local union is not the lawful bargaining representative of Midwest Drywall employees. In the absence of a collective bargaining relationship between Midwest Drywall and a foreign local union, it violates Sections 8(a)(1) and (2), 8(b)(1)(A), and 8(f) of the NLRA to enforce the terms and conditions of a foreign local union's agreement with another employer on Midwest Drywall's employees. Collective bargaining agreement obligations cannot exist independent of a union's representation of the bargaining unit employees. Pre-hire agreements are allowed in the construction industry only under careful safeguards to protect the Section 7 rights of employees and the employer's right to repudiate pre-hire agreements. See *Dana Corporation*, 351 NLRB No. 28 (2007) and *John Deklewa & Sons,* 282 NLRB 1375, 1380-1381, *enf'd* 843 F.2d 770 (3d Cir.), *cert. denied* 109 S.Ct. 222 (1988).

Undisputed facts in the record before the Court establish that during the time relevant to the Pension Fund's claims, Midwest Drywall has established collective bargaining relationships pursuant to Sections 8(f) and 9(a) and entered into collective bargaining agreements with foreign Painters Local 76 and with foreign Painters District Council 3, with Regional Councils, District Councils, and Local Unions of the Brotherhood of Carpenters and Joiners of America, and with the United Brotherhood of Carpenters and Joiners of America (UBCJA) covering drywall taping and finishing work. (S. Nienke's Dec. ¶¶ 3, 4, 23, 24, 25, 30, and 31.) The Pension Fund at page 17 in the Pension Fund's Opposition asserts that "if Midwest Drywall assumed mutually inconsistent contractual obligations, the party that does not receive performance (here the Pension Fund) is entitled to damages." The Pension Fund's assertion flies in the face of the Supreme Court's interpretation of 29 U.S.C. §1145, as noted above in *Kaiser, supra,* and that Congress did not intend "to give pension

fund trustees the benefit of illegal bargains . . ." 455 U.S. at 88. The cases cited by the Pension Fund at page 17 in the Pension Fund's Opposition do not hold that two mutually inconsistent contractual obligations - one lawful and the other in violation of law - entitle damages to a party seeking to enforce an obligation that violates the law. It would violate the NLRA to enforce the No. 159 CBA 50-50 Clause, Section 1(b) as claimed by the Pension Fund to force on Midwest Drywall and its employees who work solely outside the jurisdiction of Painters Local 159, a collective bargaining agreement between a foreign Painters Local Union and another employer in the absence of a Section 8(f) or a Section 9(a) collective bargaining relationship between Midwest Drywall and the foreign Painters Local Union.

Midwest Drywall at pages 15 to 17, 20 to 23, and 25 to 26 of Midwest Drywall's Memorandum in Support of its Motion for Summary Judgment sets forth additional examples based on facts in the record before the Court how the enforcement of the 50-50 Clause, Section 1(b) to impose on Midwest Drywall and its employees (who work solely outside the jurisdiction of Painters Local 159) collective bargaining agreements between a foreign Painters Local Union and other employers violates the NLRA. We incorporate those arguments and further discuss one of the examples based on the following undisputed facts in the record before the Court.

In the summer of 1999, Midwest Drywall met with Painters Local Union 109's representative, discussed what the union proposed for a collective bargaining agreement, including scope of work, but did not reach an agreement with Painter's Local Union 109 to cover taper work in Omaha, Nebraska. (S. Nienke's Dec. ¶ 14.) In November, 2001, Carpenters Local Union No. 444 represented and submitted evidence to Midwest Drywall that it represented a majority of Midwest Drywall's tapers employed in Omaha, Nebraska. Midwest Drywall thereafter through a Section 8(f) collective bargaining relationship entered into a collective bargaining agreement with Carpenters

Local Union Nos. 444 and 1055 covering work, including taper work, in Omaha, Nebraska. That

collective bargaining agreement terminated in May, 2003, and Carpenters Local Union Nos. 444 and

1055 filed a 9(c) representation petition with the NLRB. The NLRB conducted an election for

bargaining unit employees and issued a Decision and Order that a majority of the employees' votes

were not cast for the union. (S. Nienke's Dec. ¶¶ 23 and 24, Midwest Drywall's SOMF ¶¶ 27 and 28.)

> The second proviso in Section 8(f) of the NLRA, 29 U.S.C. § 158(f), states:

> > Provided further, That any agreement which would be invalid, but for clause (1) of this
> > subsection, shall not be a bar to a petition filed pursuant to section 9(c) or 9(e).

In establishing an overall framework for the interpretation and application of Section 8(f), the NLRB

in *John Deklewa & Sons, supra*, stated:

> > When parties enter into an 8(f) agreement, they will be required, by virtue of Section 8(a)(5)
> > and Section 8(b)(3), to comply with that agreement unless the employees vote, in a Board-
> > conducted election, to reject (decertify) or change their bargaining representative. Neither
> > employers nor unions who are party to 8(f) agreements will be free unilaterally to repudiate
> > such agreements. During its term, an 8(f) contract will not act as a bar to petitions pursuant to
> > Section 9(c) or (e). . . .

> > In the event of an election, a vote in favor of the signatory union, or a rival union, will result
> > in that union's certification and the full panoply of Section 9 rights and obligations. A vote to
> > reject the signatory union will void the 8(f) agreement and will terminate the 8(f)
> > relationship. In that event, the Board will prohibit the parties from reestablishing the 8(f)
> > relationship covering unit employees for a 1-year period. The purpose of this general
> > prohibition is to preclude an employer and a union both from ignoring the electorally
> > expressed preference of a majority of unit employees and from maintaining an 8(f)
> > relationship during a period when the Act precludes holding another election, the availability
> > of which is the *sine qua non* safeguard to permitting and enforcing an 8(f) contract. Failure to
> > terminate the 8(f) relationship or its premature reestablishment after an election will subject
> > the parties to 8(a)(2) and 8(b)(1)(A) liability.
> > . . .
> > Employee free choice will be enhanced most directly by the resuscitation of 8(f)'s second
> > proviso. By giving full force and effect to the second proviso and, at the same time,
> > precluding the contract parties from acting solely in their own interest to force
> > continued compliance with or abandonment of the agreement, the principles will operate to

assure that employees will not be deprived of their collectively bargained rights (via unilateral contract repudiation) or be forced to continue working under the regimen of a union that they would prefer to reject or change.

282 NLRB at 1385 to 1386 (footnotes omitted).

In footnote 47, the NLRB further stated:

By giving full force and effect to the second proviso, our rules should reduce the dangers of "top down" organizing warned against in *Higdon*, 434 U.S. at 346-347. . . . (Wherein the Supreme Court in *Higdon* cited *Connell Construction Company, Inc. v. Plumbers & Steamfitters Local 100, supra.*).

*Id.* at 1386.

Under the Pension Fund's claims, Midwest Drywall's employees, in violation of their Section 7 rights, would be governed by the terms and conditions of a collective bargaining agreement signed by a foreign Painters Local Union with another employer in Omaha, Nebraska not only when the employees had expressed that they wanted to be represented by the Carpenters Local Union, but also after the majority of the employees' voted not to be represented by a union. To enforce that 50-50 Clause, Section 1(b) as claimed by the Pension Fund would violate the basic statutory requirements of collective bargaining relationships and protected employees' rights under the NLRA.

Although the Pension Fund at pages 4, and 17 to 19 in the Pension Fund's Opposition recognizes the Painters and Decorators Joint Committee, Inc. (Joint Committee) April 14, 2000, Decision and Order, the Pension Fund fails to recognize the complete extent of the Decision and Order. At a hearing before the Joint Committee on April 10, 2000, Painters Local 159 asserted a violation of the Master Agreement, Article IV, Section 1(b) against Midwest Drywall "through a continuing failure to enter into a collective bargaining agreement and comply with its lawful clauses for painting and taping work performed by Midwest Drywall Co., Inc. ('Midwest') on projects located in or near Omaha, Nebraska ('Projects'); . . . " (Midwest Drywall's Exhibit 13.)  Despite the Pension Fund's argument, the Joint Committee did not solely find that Midwest Drywall was required by the

15

Master Agreement to pay its covered employees wages and fringe benefits required by the Other Jurisdiction Agreement. Clearly in conjunction with that finding, the Joint Committee further found that Midwest Drywall had "not entered into nor become bound by the Other Jurisdiction Agreement of IBPAT Union No. 109 ('Local 109') . . . " and "that the Union and Midwest shall forthwith enter into good faith discussions and use their best efforts, through communications with Local 109, the IBPAT International representatives and other interested parties, to resolve Midwest's continuing violation  . . . " (Midwest Drywall's Exhibit 13, pp. 2-3.) The Joint Committee ordered Midwest Drywall and the Union "to forthwith initiate good faith discussion and efforts to resolve Midwest's continuing violation of the Master Agreement" and retained jurisdiction of the matter for purpose of entering a final order of contract damages. The Joint Committee did not have further hearing or issue any further order in the matter. (Midwest Drywall's SOMF ¶ 22.)  The undisputed facts in the record before the Court, based on a document produced by the Pension Fund in response to Midwest Drywall's Request for Production of Documents, establish that on April 16, 2004, Painters Local 159's Business Manager Mike Dunham in an email to Gary Meyers (the Administrator of the Pension Fund) and copied to John Smirk (Painters Local 159's Business Manager/Secretary Treasurer) stated that Midwest Drywall is "living up to the terms and conditions (including wage and benefit increases) of the new agreement." (Midwest Drywall's Exhibit 15, document Bates numbered PF1079.) [1]

Without Midwest Drywall establishing a collective bargaining relationship and entering into and becoming bound to an Outside Jurisdiction Agreement, the Joint Committee did not impose the

---

[1]    In footnote 4 at page 14 in the Pension Fund's Opposition, the Pension Fund questions why Midwest Drywall has not asked the NLRB to invalidate the 50-50 Clause. The undisputed record before the Court establishes that Painters Local 159 has consistently communicated to Midwest Drywall in reference to Section 1(b) of the 50-50 Clause that it is not the position of Painters Local 159 to "hammer" Midwest Drywall into becoming signatory to an Outside Jurisdiction Agreement and Painters Local 159 has not sought to apply or to enforce the No. 159 CBA 50-50 Clause in violation of the NLRA. Based on these facts, it is clear why Midwest Drywall has not filed an unfair labor practice charge against Painters Local 159.

cost of foreign wages and fringe benefits on Midwest Drywall. That interpretation of the No. 159 CBA 50-50 Clause, Section 1(b) by the Joint Committee is consistent with the requirements for a lawful Section 8(f) pre-hire agreement under the NLRA. See *Connell Construction Company, Inc. v. Plumbers & Steamfitters Local 100*, *supra*, and *Howell Insulation Co.*, *supra.* [2]

Undisputed facts in the record before the Court establish that during the time relevant to the Pension Fund's claims Midwest Drywall has not entered into a collective bargaining agreement through a Section 8(f) or Section 9(a) collective bargaining relationship with any foreign Painters Local Union or foreign Painters District Council other than Painters Local Union 76 and Painters District Council 3 as admitted by Midwest Drywall in its Answer and under which Midwest Drywall has made all contributions as specified in a detailed basis in said collective bargaining agreements. (S. Nienke's Dec. ¶¶ 3, 4, 12 and 13.)

Undisputed facts in the record before the Court further establish that during the time relevant to the Pension Fund's claims Midwest Drywall has entered into successive collective bargaining

---

[2]    Further, the Constitution of the International Union of Painters and Allied Trades in Section 236(a) provides that a Painters District Council or Painters Local Union "shall enter into Collective Bargaining Agreements only with contractors or employers, whose principal place of business is located within the geographical jurisdiction of such District Council or Local Union" and may enter into agreements with an out-of-jurisdiction employer only under prescribed conditions including sending "to the District Council or Local Union in whose jurisdiction the employer's principal place of business is located notification that the agreement has been signed and a complete, signed copy of that agreement." (Midwest Drywall's Exhibit 7, p. 150.) The Pension Fund in response to Midwest Drywall's Request for Production of Documents produced a document that is an example of a foreign Painters Local Union's compliance with the IUPAT's Constitution. (Midwest Drywall's Exhibit 41, document Bates numbered PF0106 attached hereto.) No similar document was entered into between Midwest Drywall and a foreign Painters Local Union.

The No. 159 CBA in Article IV, Section 1, provides in part "It being understood that the principle place of business and the employment of the employer is in the area jurisdiction as stated, . . ." The area jurisdiction as stated in the No. 159 CBA in Article III, Section 1, includes "Clark County, Lincoln County, Nye County, Esmeralda County, in the State of Nevada and any other area jurisdiction awarded to Painters Local Union #159, by the International Brotherhood of Painters and Allied Trades." (Midwest Drywall's Exhibit 3, pp. 4-5.) Midwest Drywall was an out-of-jurisdiction employer to any Painters District Council or Painters Local Union other than Painters Local 159. Any foreign Painters District Council or foreign Painters Local Union could not have an agreement with Midwest Drywall unless it had a signed agreement with Midwest Drywall and sent a completed and signed copy of the agreement to Painters Local 159. The Constitution of the International Union of Painters and Allied Trades recognizes the necessity of establishing a collective bargaining relationship and entering into an agreement before an employer becomes bound to an Outside Jurisdiction Agreement. The Decision and Order of the Joint Committee as discussed above is consistent with the IUPAT's Constitution.

agreements through a collective bargaining relationship with Painters District Council 15/Painters Local 159 and has complied with the lawful provisions of said collective bargaining agreements including the specified detailed basis in which lawful contributions to the Pension Fund and other benefit funds are to be made. In the collective bargaining agreements entered into between Midwest Drywall and Painters District Council 15/Painters Local 159, Midwest Drywall also agreed to make contributions for employees covered by said agreement to the LMCF, to honor authorizations for check-off of political contributions from employees who are union members to the Political Action Together – Political Committee (PAT-PC). Midwest Drywall has complied with said provisions. (S. Nienke's Dec. ¶¶ 5 and 6, Midwest Drywall's Exhibit 4, and S. Regier's Dec. (attached hereto).)

    **C.**    **The No. 159 CBA 50-50 Clause Is Susceptible to More Than One Reasonable Interpretation and Is Therefore Ambiguous.**

Based on undisputed facts in the record before the Court, Midwest Drywall has established at pages 27 to 35 of Midwest Drywall's Memorandum of Points and Authority in Support of Its Motion for Summary Judgment that the No. 159 CBA 50-50 Clause is susceptible to more than one reasonable interpretation and is therefore ambiguous. Except as to one point raised by Midwest Drywall ("what if the work performed by Midwest Drywall's employees in a foreign jurisdiction, such as drywall finishing and taping, is covered by a collective bargaining agreement between Midwest Drywall and another craft union, such as a Carpenter Local Union?") and addressed above by Midwest Drywall, the Pension Fund did not respond to the specific ambiguities raised by Midwest Drywall.

Instead, the Pension Fund refers the Court to a Memorandum Opinion issued by United States District Court Judge Friedman in *Darnell Painting* (Pension Fund's Exhibit 1 attached to the Pension Fund's Opposition). The Pension Fund asserts at pages 16 to 17 in the Pension Fund's

Opposition that "Judge Friedman also has found that the painters out-of-area clause unambiguously requires contributions." Judge Friedman's Opinion does not support the Pension Fund's assertion.

In *Darnell*, the employer (Darnell) signed a one page Memorandum of Agreement (specific language quoted in the Opinion) that bound Darnell to the terms of the local union's CBA and the master agreement between the local union and a contractors association. The master agreement was not signed by Darnell and contained an out-of-area clause (language not quoted in the Opinion). Judge Friedman did not address whether the out-of-area clause violated the NLRA or whether the out-of-area clause was ambiguous. Judge Friedman addressed the Memorandum of Understanding and found:

> . . . Therefore, as long as the terms of the contract that he signed were clear and unambiguous, Mr. Darnell was bound by those written terms regardless of what another party to the contract may have told him was intended by the language. . . .
> . . . The Memorandum of Agreement clearly and unambiguously evidences Darnell's agreement to be bound by the terms of the master CBA which contained the out-of-area clause. Mr. Darnell read and signed the one-page Memorandum of Agreement and cannot rely on an oral representation inconsistent with its terms. . . . (Pension Fund's Exhibit 1, pp. 7-8).

In the present case, when the No. 159 CBA is read as a whole agreement, it is clear that Painters Local 159 is not the bargaining representative for Midwest Drywall's employees who are nonmembers of Painters Local 159 and who work solely outside the jurisdiction of Painters Local 159. Also, Painters Local 159 is not authorized or empowered to negotiate agreements for foreign Painters District Councils and/or for foreign Painters Local Unions as an International Agreement or otherwise. The Pension Fund's claims would be an assertion that Painters Local 159 was bargaining terms and conditions of employment for foreign employees whom it does not represent. The Pension Fund's claims conflict with the language of the No. 159 CBA as well as with the NLRA.

**D.**    **The Pension Fund Is Not Entitled to Contributions Based on Subcontracting Provisions In Collective Bargaining Agreements Between Foreign Local Unions and Other Employers In the Absence of a Collective Bargaining Relationship Between Midwest Drywall and the Foreign Local Unions as the Claims Violate the NLRA.**

The Pension Fund does not claim that Midwest Drywall breached the subcontracting provisions in Article XVI, Sections 3 and 4 in the No. 159 CBA entered into between Midwest Drywall and Painters Local 159. The Pension Fund claims that Midwest Drywall breached subcontracting provisions in collective bargaining agreements between foreign local unions and other employers not entered into with Midwest Drywall through a collective bargaining relationship. The Pension Fund at page 19 in the Pension Fund's Opposition relies on the holding in *Flynn v. Dick Corporation*, 481 F.3d 824 (D.C. Cir. 2007). As discussed by Midwest Drywall in Midwest Drywall's Opposition to the Pension Fund's Motion for Summary Judgment, the Circuit Court's decision in *Flynn v. Dick Corporation*, *supra,* is not controlling in the present case. The Circuit Court's decision in *Flynn v. Dick Corporation*, *supra,* is not legal precedent that contract language such as the 50-50 Clause is automatically deemed to be lawful. In its decision, the Circuit Court did not address the issues of law raised by Midwest Drywall in the present case that Sections 8(a)(1) and (2), 8(b)(1)(A), and 8(f) of the NLRA prohibit enforcing the terms and conditions of a labor agreement without the existence of a collective bargaining relationship between an employer and the collective bargaining representative of the employer's employees with protection of the employee's Section 7 rights. It is clear that the issues of law and undisputed material facts raised in the present case have not been considered by the Circuit Court.

The Pension Fund at page 20 in the Pension Fund's Opposition appears to assert that Midwest Drywall's legal arguments are "simply nonsense." The United States Supreme Court's holding in *Connell Construction Company Inc. v. Plumbers and Steamfitters Local Union No. 100, supra*, as

discussed above, is not "nonsense." During the time relevant to the Pension Fund's claims, it is undisputed that Midwest Drywall did not enter into a collective bargaining agreement through a collective bargaining relationship with foreign Painters Local Unions and/or foreign Painters District Councils other than with Painters District Council 3 and Painters Local Union 76, neither of which require contributions to be made to the Pension Fund. The Pension Fund's claims are illegal under the NLRA and the LMRA.

## IV.    CONCLUSION

The construction of the 50-50 Clause, Section 1(b) alleged by the Pension Fund not only would require the Court to ignore the full language of the No. 159 CBA between Midwest Drywall and Painters Local 159, but would force the Court to adopt a construction that violates the NLRA and the LMRA and would be contrary to the Joint Trade Board of the Painters and Decorators Joint Committee, Inc.'s interpretation of the No. 159 CBA, 50-50 Clause, Section 1(b).

To require Midwest Drywall to make contributions to the Pension Fund as to employees who work solely outside the jurisdiction of Painters Local 159 based solely on the No. 159 CBA 50-50 Clause, Section 1(b) would command conduct that renders the promise an illegal undertaking under the NLRA. Sections 8(a)(1) and (2), 8(b)(1)(A), and 8(f) of the NLRA prohibit enforcing on Midwest Drywall's employees who work solely outside the jurisdiction of Painters Local 159 the terms and conditions of a labor agreement without the existence of a collective bargaining relationship between Midwest Drywall and the foreign local union that would represent those employees with protection of the employees' Section 7 rights. Enforcement of the Pension Fund's claims as to employees who work solely outside the jurisdiction of Painters Local 159 violates the NLRA.

To avoid unlawful enforcement of the No. 159 CBA 50-50 Clause, Section 1(b), it should be construed to apply to foreign collective bargaining agreements entered into through collective

bargaining relationships between Midwest Drywall and a foreign Painters District Council or a foreign Painters Local Union. Midwest Drywall has identified the collective bargaining agreements it has entered into with foreign Painters District Councils or foreign Painters Local Unions through collective bargaining relationships. It is undisputed that Midwest Drywall has made all contributions as specified in a detailed basis in said collective bargaining agreements during the time relevant to the Pension Fund's claims. For Midwest Drywall to make any other payments would be illegal.

WHEREFORE, Midwest Drywall respectively requests that the Court grant Midwest Drywall's Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety and with prejudice.

Respectively submitted,

By  s/Robert D. Overman
Robert D. Overman
KS Bar No. 08155
MORRIS, LAING, EVANS, BROCK &
KENNEDY, CHTD.
300 N. Mead, Suite 200
Wichita, Kansas  67202-2722
Telephone:  (316) 262-2671
Facsimile:  (316) 262-6226
E-mail:  roverman@morrislaing.com

Charles F. Walters
D.C. Bar No. 444529
SEYFARTH SHAW, LLP
815 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20006
Telephone:  (202) 263-2400
Facsimile:  (202) 828-5393
E-mail:  cwalters@seyfarth.com

February 19, 2008                     *Attorneys for Defendant Midwest
                                       Drywall Co., Inc.*